| | | |
|---|---|---|
| **Devin G. Nunes,** | ) | **Case No. 5:19-cv-04064-CJW-MAR** |
| | ) | |
| Plaintiff, | ) | **Defendants' Brief in Support of Their** |
| | ) | **Motion to Dismiss, to Strike the Complaint** |
| v. | ) | **Pursuant to Cal. Civ. Proc. Code § 425.16,** |
| | ) | **and to Strike Pursuant to Fed. R. Civ. P.** |
| **Ryan Lizza** and **Hearst Magazines, Inc.,** | ) | **12(f)** |
| | ) | |
| Defendants. | ) | **(Oral Argument Requested)** |
| | ) | |

Defendants Ryan Lizza and Hearst Magazines, Inc. ("Defendants") respectfully submit this brief in support of their motion (the "Motion") to dismiss the Complaint filed in this case by Plaintiff Devin Nunes, *see* ECF No. 1 (the "Complaint"), pursuant to Fed. R. Civ. P 12(b)(6), to strike the Complaint pursuant to California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16, and to strike under Fed. R. Civ. P. 12(f).

# Table of Contents

Introduction .................................................................................................................1

Factual Allegations .......................................................................................................3

    A.    Devin Nunes Is a United States Congressman from California.............................3

    B.    *Esquire* Magazine Publishes the Article ................................................3

    C.    Congressman Nunes Files this Lawsuit ..................................................5

Argument .....................................................................................................................6

    I.    Congressman Nunes' Complaint Should Be Dismissed
Pursuant to Rule 12(b)(6) ......................................................................6

        A.    Only False, Defamatory, Factual Statements that Are "Of and
Concerning" Congressman Nunes Are Actionable Under
Both California and Iowa Law.......................................................8

        B.    None of the Challenged Statements Are Actionable ................................12

        C.    Congressman Nunes Has Failed to Plead Facts Sufficient to
Make His Allegation of Actual Malice "Plausible."..................................20

        D.    Congressman Nunes Has Failed to Plead an Underlying
Cause of Action to Sustain a Civil Conspiracy Claim...............................22

    II.    Congressman Nunes' Complaint Should Be Stricken
Pursuant to California's Anti-SLAPP Law..................................................23

        A.    California Law Supplies the Rule of Decision .......................................23

        B.    The California Anti-SLAPP Law's Motion-to-Strike
Provision Is a Substantive Immunity from Suit that
Applies in Federal Court...........................................................25

        C.    The Complaint Should Be Stricken Pursuant to California's
Anti-SLAPP Statute ................................................................26

    III.    This Court Should Strike All or Part of Plaintiff's Complaint
Because Its Words, Tone, and Averments Well Exceed the
Bounds of Permissible Pleading and Prejudice the Defendants by
Including Redundant, Immaterial, Impertinent, or Scandalous Matter ................27

Conclusion ........................................................................................................................30

Case 5:19-cv-04064-CJW-MAR   Document 19   Filed 01/22/20   Page 3 of 42

# Table of Authorities

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp., LLC,*
    783 F.3d 1328 (D.C. Cir. 2015) .................................................................19

*Aguilar v. Universal City Studios, Inc.,*
    174 Cal. App. 3d 384 (1985) ...................................................................10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................2, 6

*Bailey v. Fairfax Cty., Va.,*
    No. 1:10-cv-1031, 2010 WL 5300874 (E.D. Va. Dec. 21, 2010) ....................27

*Baker v. L.A. Herald Exam'r,*
    42 Cal. 3d 254 (1986) ........................................................................11, 12

*Balon v. Enhanced Recovery Co.,*
    316 F.R.D. 96 (M.D. Pa. 2016) .................................................................27

*Balzaga v. Fox News Network, LLC,*
    173 Cal. App. 4th 1325 (2009) ...............................................................8, 9

*Bandstra v. Covenant Reformed Church,*
    913 N.W.2d 19 (Iowa 2018) ....................................................................11

*Barreca v. Nickolas,*
    683 N.W.2d 111 (Iowa 2004) ..................................................................21

*Bartholomew v. YouTube, LLC,*
    17 Cal. App. 5th 1217 (2017) ...................................................................9

*Basic Chems., Inc. v. Benson,*
    251 N.W.2d 220 (Iowa 1977) ..................................................................22

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003) .................................................................25

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................2, 6

*Bertrand v. Mullin,*
    846 N.W.2d 884 (Iowa 2014) ..................................................................21

*Bertroche v. Mercy Physician Assocs., Inc.*,
No. 18-CV-59-CJW-KEM, 2019 WL 4307127 (N.D. Iowa Sept. 11, 2019) ..........................27

*Bierman v. Weier*,
826 N.W.2d 436 (Iowa 2013) ...............................................................................................9

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015).................................................................................................7

*Blatty v. N.Y. Times Co.*,
728 P.2d 1177 (Cal. 1986) ..................................................................................................9

*Blumenthal v. Drudge*,
No. Civ. A. 97-1968PLF, 2001 WL 587860 (D.D.C. Feb. 13, 2001) ....................................26

*Brummett v. Taylor*,
569 F.3d 890 (8th Cir. 2009) ..............................................................................................9

*Cameron v. Hardisty*,
407 N.W.2d 595 (Iowa 1987) .............................................................................................23

*Chapin v. Knight-Ridder, Inc.*,
993 F.2d 1087 (4th Cir. 1993) ...........................................................................................19

*Cochran v. NYP Holdings, Inc.*,
58 F. Supp. 2d 1113 (C.D. Cal. 1998) ..............................................................................15

*Condit v. Dunne*,
317 F. Supp. 2d 344 (S.D.N.Y. 2004)................................................................................25

*Craig v. City of Cedar Rapids, Iowa*,
826 N.W.2d 516 (Iowa Ct. App. 2012)................................................................................12

*Dodds v. Am. Broad. Co.*,
145 F.3d 1053 (9th Cir. 1998) ...........................................................................................20

*In re Fannie Mae 2008 Sec. Litig.*,
891 F. Supp. 2d 458 (S.D.N.Y. 2012)................................................................................27

*Foster v. Pfizer Inc.*,
No. 00-1287-JTM, 2000 WL 33170897 (D. Kan. Dec. 12, 2000)........................................30

*Franklin v. Dynamic Details, Inc.*,
116 Cal. App. 4th 375 (2004) .....................................................................................11, 16

*Fuqua Homes, Inc. v. Beattie*,
388 F.3d 618 (8th Cir. 2004) ............................................................................................24

iv

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974).................................................................................20

*Gomez v. J. Jacobo Farm Labor Contractor, Inc.*,
188 F. Supp. 3d 986 (E.D. Cal. 2016)......................................................28

*Good Gov't Grp. of Seal Beach, Inc. v. Superior Court*,
586 P.2d 572 (Cal. 1978) ...........................................................................7

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
398 U.S. 6 (1970)......................................................................................14

*Gregory v. McDonnell Douglas Corp.*,
552 P.2d 425 (Cal. 1976) ....................................................................15, 16

*Hammond v. Arch Ins. Sols.*,
No. 3:17-cv-00019, 2017 WL 11297279 (S.D. Iowa Sept. 6, 2017)..........27, 28, 30

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989)..................................................................................22

*Horsley v. Feldt*,
304 F.3d 1125 (11th Cir. 2002) ...........................................................14, 16

*Hovey v. Iowa State Daily Publ'n Bd., Inc.*,
372 N.W.2d 253 (Iowa 1985) ...................................................................10

*John's Insulation, Inc. v. Siska Constr. Co.*,
774 F. Supp. 156 (S.D.N.Y. 1991).............................................................23

*Johnson v. Nickerson*,
542 N.W.2d 506 (Iowa 1996) ...................................................................10

*Jones v. Palmer Commc'ns, Inc.*,
440 N.W.2d 884 (Iowa 1989) ......................................................................7

*Kiner v. Reliance Ins. Co.*,
463 N.W.2d 9 (Iowa 1990) ..........................................................................8

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)...................................................................................23

*Lauderback v. Am. Broad. Cos.*,
741 F.2d 193 (8th Cir. 1984) .....................................................................14

*Lee v. Lincoln Nat'l Life Ins. Co.*,
No. 18-CV-2063-CJW, 2018 WL 5660553 (N.D. Iowa Oct. 31, 2018)................18

*Lundell Mfg. Co. v. Am. Broad. Cos.*,
    98 F.3d 351 (8th Cir. 1996) ...............................................................................8

*Lunsford v. United States*,
    570 F.2d 221 (8th Cir. 1977) .............................................................................27

*Lyons v. Midwest Glazing*,
    265 F. Supp. 2d 1061 (N.D. Iowa 2003) ...........................................................23

*Maressa v. N.J. Monthly*,
    445 A.2d 376 (N.J. 1982)......................................................................................7

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) ...............................................................................8

*Mechdyne Corp. v. Garwood*,
    707 F. Supp. 2d 864 (S.D. Iowa 2009) ................................................................9

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ..............................................................................7

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)................................................................................................11

*Miller v. Redwood Toxicology Lab., Inc.*,
    688 F.3d 928 (8th Cir. 2012) ..............................................................................18

*Mills v. State*,
    924 F. Supp. 2d 1016 (S.D. Iowa 2013) .............................................................12

*Nationwide Ins. Co. v. Cent. Mo. Elec. Coop., Inc.*,
    278 F.3d 742 (8th Cir. 2001) ..............................................................................27

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,
    No. CV 17-5577, 2018 WL 4353690 (D. Minn. Sept. 12, 2018) ............................8

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)......................................................................................2, 7, 9

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999) ..............................................................................25

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ..............................................................................19

*Philadelphia Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986)............................................................................................10

vi

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) ..................................................................8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ................................................................26

*Polygram Records, Inc. v. Superior Court*,
   170 Cal. App. 3d 543 (1985) ..................................................................9

*Ramsey v. Fox News Network, L.L.C.*,
   351 F. Supp. 2d 1145 (D. Colo. 2005) ..............................................6, 24

*Ratner v. Kohler*,
   No. CV 17-00542 HG-KSC, 2018 WL 1055528
   (D. Haw. Feb. 26, 2018) ........................................................................24

*Reader's Digest Ass'n v. Superior Court*,
   690 P.2d 610 (Cal. 1984) ................................................................21, 22

*Reeder v. Carroll*,
   759 F. Supp. 2d 1064 (N.D. Iowa 2010) ..............................................10

*Resolution Tr. Corp. v. Fiala*,
   870 F. Supp. 962 (E.D. Mo. 1994) ......................................................28

*Richter v. Advance Auto Parts, Inc.*,
   686 F.3d 847 (8th Cir. 2012) ..................................................................6

*Sanchez v. City of Fresno*,
   914 F. Supp. 2d 1079 (E.D. Cal. 2012) ................................................28

*Saunders v. Superior Court*,
   27 Cal. App. 4th 832 (1994) ..................................................................22

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) ....................................................................8

*Schmidt v. Wash. Newspaper Publ'g Co.*,
   No. CV N19C-03-262 CLS, 2019 WL 4785560
   (Del. Super. Ct. Sept. 30, 2019) ............................................................24

*Schuster v. U. S. News & World Report, Inc.*,
   602 F.2d 850 (8th Cir. 1979) ..................................................................7

*Sliger v. Prospect Mortg., LLC*,
   789 F. Supp. 2d 1212 (E.D. Cal. 2011) ................................................28

*Smith v. Maldonado*,
    72 Cal. App. 4th 637 (1999) ...................................................................10

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)...............................................................................21

*Stewart v. Rolling Stone LLC*,
    181 Cal. App. 4th 664 (2010) .................................................................26

*Taggart v. Drake Univ.*,
    549 N.W.2d 796 (Iowa 1996) ..................................................................9

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967)................................................................................7

*Tobinick v. Novella*,
    108 F. Supp. 3d 1299 (S.D. Fla. 2015) ...................................................25

*Totah v. Bies*,
    No. C 10-05956 CW, 2012 WL 762004 (N.D. Cal. Mar. 8, 2012) ........10

*Veasley v. CRST Int'l, Inc.*,
    553 N.W.2d 896 (Iowa 1996) ................................................................23

*Whitney v. Guys, Inc.*,
    700 F.3d 1118 (8th Cir. 2012) .................................................................6

*Wilson v. IBP, Inc.*,
    558 N.W.2d 132 (Iowa 1996) ................................................................10

*Wright v. Brooke Grp. Ltd.*,
    652 N.W.2d 159 (Iowa 2002) ...........................................................22, 23

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ...................................................12

*Wyo. Corp. Servs. v. CNBC, LLC*,
    32 F. Supp. 3d 1177 (D. Wyo. 2014).................................................14, 15

*Yates v. Iowa W. Racing Ass'n*,
    721 N.W.2d 762 (Iowa 2006) ........................................................9, 10, 12

**Statutes**

Cal. Civ. Proc. Code § 425.16 ...........................................................2, 26, 27

**Other Authorities**

Amber Phillips, *The Devin Nunes wiretapping saga, explained*, The Washington
   Post (Mar. 28, 2017, 10:10 AM) ............................................................................18

5 Fed. Prac. & Proc. Civ. § 1259 (3d ed.) ......................................................................29

Fed. R. Civ. P. 1 .............................................................................................................30

Fed. R. Civ. P. 8 .......................................................................................................27, 28

Fed. R. Civ. P. 12(b)(6) ........................................................................................ *passim*

Fed. R. Civ. P. 12(f) .............................................................................................. *passim*

Restatement (Second) of Conflict of Laws § 145 ..........................................................23

Restatement (Second) of Conflict of Laws § 150(2) ......................................................24

**Introduction**

Devin Nunes is one of the most prominent members of Congress. The California Congressman is the former Chairman of, and current ranking Republican member on, the House Permanent Select Committee on Intelligence (the "House Intelligence Committee"), which has played a central role in the most high-profile matters of Donald Trump's presidency. The actions that Congressman Nunes has taken (or not taken) in his roles with the House Intelligence Committee have been some of the most consequential in Congress over the last several years.

Given the significance of his position in the governance of the Nation, it is beneath his office for Congressman Nunes to demand $75 million in compensatory damages from a magazine for reporting that he has a "secret" concerning the location of a dairy farm. But that is what Congressman Nunes has done here, consistent with his recent crusade to weaponize the libel laws by filing specious defamation suits in transparent attempts to discourage speech that he views as critical of him.[1]

The "secret" in question is revealed in the *Esquire* article entitled "*Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret*" (the "Article"). The gist of the Article centers on Congressman Nunes—who famously touts his work in agriculture as part of his political persona—and how "the Nunes family dairy [farm] of political lore . . . isn't in California," as many believe. Rather, "[i]t's in Iowa," with his family (including those who served as his campaign finance chair) having moved the operation to Iowa over a decade ago. To be clear: This fact is undisputed in the Complaint. But Congressman Nunes filed his lawsuit nonetheless, taking issue with over a dozen statements in the Article that, he claims, are defamatory.

The Complaint is frivolous; none of the challenged statements are actionable, each for

---

[1]     *See, e.g.*, *Nunes v. Fusion GPS*, Case No. 1:19-cv-01148 (E.D. Va. Sept. 4, 2019); *Nunes v. McClatchy Co.*, Case No. CL19000629-00 (Va. Apr. 8, 2019).

one or more reasons.  Most are not statements "of and concerning" Congressman Nunes.  Most are not defamatory; that is, the statements would not tend to injure Congressman Nunes' reputation.  Several are actually or substantially true, as admitted in the Complaint.  And the remainder are nonactionable opinions, as evidenced by the literary journalism format of the Article and the overall context, and moreover such opinions are predicated on facts disclosed in the Article, and are therefore fair comment protected by the First Amendment.  *See infra* Point I.B.  Further, Congressman Nunes has not pleaded facts that would make his otherwise-conclusory allegation of "actual malice" plausible, as he must plead under *Twombly* and *Iqbal* (and prove under *Sullivan* and its progeny).  *See infra* Point I.C.  And with no viable underlying claim, Congressman Nunes' claim for "civil conspiracy" cannot survive on its own.  *See infra* Point I.D.

For these reasons, the Court should dismiss Congressman Nunes' Complaint pursuant to Rule 12(b)(6).  *See infra* Point I.  In addition, the Court should strike Congressman Nunes' Complaint pursuant to California's anti-SLAPP statute ("SLAPP" stands for "Strategic Lawsuit Against Public Participation"), and grant Defendants their attorneys' fees incurred in responding to this suit.  *See* Cal. Civ. Proc. Code § 425.16.  Congressman Nunes is an elected official representing the San Joaquin Valley and residing there.  Therefore, California law supplies the rule of decision in this case, *see* Point II.A; the California anti-SLAPP law's motion-to-strike provision is a substantive immunity from suit that applies in federal court, *see infra* Point II.B; and where, as here, a defendant successfully challenges the legal sufficiency of the plaintiff's complaint with an anti-SLAPP motion, a prevailing defendant shall recover his attorneys' fees under California law, *see infra* Point II.C.  Lastly, Defendants have included a Rule 12(f) motion to strike, requesting that if any aspect of this case were to survive their pre-answer dispositive

2

motions then the Court should strike various scandalous and immaterial allegations in his Complaint, and direct Congressman Nunes and his counsel to refrain from including any such content in future pleadings. *See infra* Point III.

## Factual Allegations

### A. Devin Nunes Is a United States Congressman from California.

Devin Nunes is a "citizen of California" who has served in the United States Congress since 2003, and currently represents California's 22nd Congressional District. Compl. ¶ 4. He is the ranking Republican member on the House Intelligence Committee and, at the time of the Article's publication, served as the House Intelligence Committee's Chairman. *Id.* He is indisputably a "public official" within the meaning of defamation law.

Before serving in Congress, Congressman Nunes spent many years farming in California. "From childhood," he worked on his family's farm in Tulare County, California. *Id.* He "raised cattle as a teenager," later began his own "harvesting business," and then "bought his own farmland with his brother." *Id.*

### B. *Esquire* Magazine Publishes the Article.

*Esquire* Magazine is a publication of Hearst Magazine Media, Inc. ("HMMI"); "Hearst Magazines, Inc.," the named defendant, does not publish *Esquire*, and has no relevance or relationship to the facts alleged in the Complaint. *See* ECF No. 7; January 21, 2020 Declaration of Ravi V. Sitwala ("Sitwala Decl.") ¶ 3. Plaintiff alleges that *Esquire* has a total print circulation of 759,922, and that its content is also published on Esquire.com. Compl. ¶ 7. *Esquire*'s articles tend to be written in the style of literary journalism, which combines journalistic research with the techniques of prose writing in the reporting of stories about real-life, public-interest events, often through the perspective of the author's first-person observations.

3

The Article is a good example of this literary journalism. Authored by Lizza, Hearst Communications, Inc. (HMMI's predecessor-in-interest) first published the Article on Esquire.com on September 30, 2018, and then published it in the November 2018 print edition of *Esquire* magazine. *See* Sitwala Decl., Exs. A (the Article as published on Esquire.com), B (the Article as it appeared in the November 2018 print edition of *Esquire*). The cover of the print edition includes this headline: "One Powerful Congressman, 2,000 Cows, and a Small Town's Big Secret | A Very Weird Political Thriller | By Ryan Lizza." *Id.*, Ex. B. Consistent with the literary journalism style, on the page preceding any text in the print edition (and near the top of the online edition) appears a full-page illustration depicting Lizza sweating while driving past dairy farms in Sibley, Iowa, with hundreds of cows staring at him on both sides of the road and a white GMC Yukon appearing in his rear-view mirror, the driver focused on Lizza. *Id.*, Exs. A, B.

These elements reflect the tone of Lizza's first-person reporting, as he takes the reader into his investigation into the Nunes family farm. *Id.*, Exs. A, B. As the Article explains (and Congressman Nunes does not dispute), Congressman "Nunes grew up in a family of dairy farmers in Tulare, California, and as long as he has been in politics, his family dairy has been central to his identity and a feature of every major political profile written about him." *Id.* The Article points to several instances of prior reporting on Congressman Nunes in which his family farm was featured. *Id.*

The Article then reveals that "[t]he Nunes family dairy of political lore—the one where his brother and parents work—isn't in California. It's in Iowa." *Id.* The family moved their farming operations to Sibley, Iowa more than a decade ago. *Id.* The Article explains that Congressman Nunes appears to have kept this fact a "secret," and that he "tried to conceal" it.

4

*Id.*  As Lizza discloses in the Article—and notwithstanding the frequent reference in the press to the Nunes family farming operation—"as far as I could tell, until late August, neither Nunes nor the local California press that covers him had ever publicly mentioned that his family dairy is no longer in Tulare[, California]." *Id.*  The Article then describes several instances where Lizza would have expected to find reference to the family farm on which Congressman Nunes used to work having moved to Iowa—for example, in a press release for a campaign rally for Congressman Steve King in his Iowa district, which Congressman Nunes attended—but Lizza found no such disclosure. *Id.*  The Article then asks, "[w]hy would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?" *Id.*

The foregoing appears within the first 14 paragraphs of the 68-paragraph Article. *See id.*, Ex. A.[2]  The rest of the Article concerns Lizza's experience reporting on this story in and around Sibley, Iowa, with discussion of the local farm economy and the Nunes family farm.  However, the Article makes clear that Congressman Nunes "had no financial interest in his parents' Iowa dairy operation." *Id.*, Exs. A, B.  And the Article does not otherwise state or suggest that Congressman Nunes was involved in the operation of the farm. *See id.*

### C. Congressman Nunes Files this Lawsuit.

Congressman Nunes initiated this action by filing his Complaint with this Court on September 30, 2019.  The Complaint asserts one count of defamation based on 15 allegedly false statements (which are recounted and addressed below), and one count of civil conspiracy.  However, the Complaint is more notable for what it fails to allege.  Notably, it does not plead

---

[2]  This count includes the summary paragraph that appears at the top of the Article.  In the print edition, the 12th and 13th paragraphs are combined for formatting reasons; thus, the foregoing appears within the first 13 paragraphs of the 67-paragraph Article as it appears in print. *Id.*, Ex. B.

facts establishing falsity, much less Defendants' knowledge or reckless disregard of falsity, both of which are his burden as a matter of well-established federal and state constitutional law. Because of these and other fatal legal defects discussed below, the Complaint fails to state a claim and is subject to dismissal under California's anti-SLAPP law.

**Argument**

**I.      Congressman Nunes' Complaint**
**Should Be Dismissed Pursuant to Rule 12(b)(6)**

"To survive a motion to dismiss" pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court must draw all reasonable inferences in favor of the nonmoving party and accept facts alleged in the complaint as true, *see Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.*

Importantly, the Court must be mindful of the chilling effect that costly and protracted litigation can have on speech concerning a public official, and thus the need to dispose of meritless claims swiftly, and before discovery is had.  It would be antithetical to the First Amendment for a court to entertain frivolous lawsuits by a public official when the effect, if not intent, of such protracted litigation is to cause the media to think twice before reporting on the official.  *See Ramsey v. Fox News Network, L.L.C.*, 351 F. Supp. 2d 1145, 1153 (D. Colo. 2005) (in granting motion to dismiss defamation claims, "recogni[zing] that the threat of protracted litigation in defamation cases could have a chilling effect upon constitutionally protected rights

of free speech"); *see also Schuster v. U. S. News & World Report, Inc.*, 602 F.2d 850, 855 (8th Cir. 1979) (in granting summary judgment motion, "The Supreme Court has recognized that the cost of defending a protracted lawsuit can chill first amendment rights.") (citing *Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967) ("Fear of large verdicts in damage suits . . . , even fear of the expense involved in their defense, must inevitably cause publishers to 'steer wider of the unlawful zone.'"); *Maressa v. N.J. Monthly*, 445 A.2d 376, 387 (N.J. 1982) ("Our courts should resolve free speech litigation more expeditiously whenever possible. The perpetuation of meritless actions, with their attendant costs, chills the exercise of press freedom."); *Good Gov't Grp. of Seal Beach, Inc. v. Superior Court*, 586 P.2d 572, 578 (Cal. 1978) ("[B]ecause unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of cases involving free speech is desirable.").

Against those weighty concerns, the *Twombly*/*Iqbal* standard takes on particular relevance. Under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), to maintain an action for defamation, a public official such as Congressman Nunes must plead (and ultimately prove) "actual malice" on the part of Defendants; that is, he must plead and prove, by "clear and convincing" evidence, that the defendant(s) made the challenged statements with knowledge of their falsity or reckless disregard of falsity, *see Jones v. Palmer Commc'ns, Inc.*, 440 N.W.2d 884, 890 (Iowa 1989) (citing and discussing *Sullivan*). This is described in greater detail *infra* Point I.C.[3]

---

[3]      Although not yet addressed by the Eighth Circuit Court of Appeals, all Courts of Appeals that have considered this question have held that a complaint should be dismissed if a public official or public figure defamation plaintiff fails to plead factual matter sufficient to make her allegation of actual malice "plausible." *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-02 (11th Cir. 2016) ("The district court still properly dismissed the complaint because Michel did not adequately plead that the statements were published with actual malice."); *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (the defendant's "decision to focus on [the plaintiff's] controversial authentications, while ignoring both his other authentications and his satisfied clients, does not plausibly suggest that Grann 'entertained serious doubts as to the truth of his

### A. Only False, Defamatory, Factual Statements that Are "Of and Concerning" Congressman Nunes Are Actionable Under Both California and Iowa Law.

Although California law should supply the rule of decision in this case—a fact dictating that California's anti-SLAPP law applies (*see infra* Point II)—for purposes of Rule 12(b)(6), there is no true conflict because the law of defamation in both California and Iowa, infused with the First Amendment's requirements, are congruent in the following material respects:

*First*, both states require that the article in question be read as whole, and any allegedly defamatory statements must be considered in their context. *See Lundell Mfg. Co. v. Am. Broad. Cos.*, 98 F.3d 351, 359 (8th Cir. 1996) ("Under Iowa law, whether a statement is defamatory 'must be determined by giving to the subject-matter thereof, as a whole, that meaning which naturally belongs to the language used.'" (quoting *Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 14 (Iowa 1990))); *Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1338 (2009) ("The publication in question must be considered in its entirety; it may not be divided into segments and each portion treated as a separate unit. It must be read as a whole in order to understand its import and the effect which it was calculated to have on the reader, and construed in the light of the whole scope of the publication." (quotation marks, alterations, and citations omitted)). And any allegedly defamatory statements must be judged objectively from the perspective of a reasonable reader; a defamation plaintiff may not maintain a claim premised on her own peculiar

---

publication'"); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (in defamation case, "[s]tates of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible"); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (affirming dismissal of complaint where plaintiff made only conclusory allegations of actual malice); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) ("[N]one of Schatz's allegations—singly or together— plausibly suggest that, given the articles' reporting, the RSLC either knew that its statements were false or had serious doubts about their truth and dove recklessly ahead anyway."). The one district court in this Circuit that has considered the same question is in accord. *See Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, No. CV 17-5577 (DWF/LIB), 2018 WL 4353690, at *4 (D. Minn. Sept. 12, 2018), *appeal docketed*, No. 18-3254 (8th Cir. Oct. 13, 2018) (dismissing defamation claim where public figure plaintiff "failed to adequately allege facts that would support a finding of actual malice").

or picayune interpretation of the article. *Yates v. Iowa W. Racing Ass'n*, <u>721 N.W.2d 762, 771</u> (Iowa 2006) ("The statement that the plaintiff must prove false is . . . what a reasonable reader or listener would have understood the author to have said."); *Balzaga*, <u>173 Cal. App. 4th at 1339</u> ("If no reasonable viewer could have reasonably understood the statement in the alleged defamatory sense, the matter may be decided as a question of law.").

 *Second*, both states require that the statements in question be susceptible to a defamatory meaning. *Yates*, <u>721 N.W.2d at 771-72</u>; *Bartholomew v. YouTube, LLC*, <u>17 Cal. App. 5</u>th 1217, 1226 (2017) ("If no reasonable reader would perceive in a false and unprivileged publication a meaning which tended to injure the subject's reputation in any of the enumerated respects, then there is no libel at all."). This is a question of law for the Court to decide. *Yates*, <u>721 N.W.2d at 772</u>; *Polygram Records, Inc. v. Superior Court*, <u>170 Cal. App. 3d 543, 551</u> (1985). "In carrying out this task, a court should not . . . 'indulge far-fetched interpretations of the challenged publication.'" *Mechdyne Corp. v. Garwood*, <u>707 F. Supp. 2d 864, 875</u> (S.D. Iowa 2009) (quoting *Yates*, <u>721 N.W.2d at 771-72</u>).

 *Third*, and as the Constitution mandates, both states require that the allegedly defamatory statement be "of and concerning" the plaintiff. *See, e.g.*, *Sullivan*, <u>376 U.S. at 287</u> (to hold defendant liable for allegedly libelous statements not shown to be "of and concerning" plaintiff is "constitutionally defective"); *Brummett v. Taylor*, <u>569 F.3d 890, 892</u> (8th Cir. 2009) (applying Iowa law); *Bierman v. Weier*, <u>826 N.W.2d 436, 464-65</u> (Iowa 2013); *Taggart v. Drake Univ.*, <u>549 N.W.2d 796, 802</u> (Iowa 1996); *Blatty v. N.Y. Times Co.*, <u>728 P.2d 1177, 1182</u> (Cal. 1986) ("In defamation actions the First Amendment also requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way."). The Court can decide this issue as a matter of law where there is no possibility that a reasonable

reader could understand the statement to be referring to the plaintiff. *See Reeder v. Carroll*, 759 F. Supp. 2d 1064, 1083 (N.D. Iowa 2010) (statement not "of and concerning" plaintiff as a "matter of law"); *Aguilar v. Universal City Studios, Inc.*, 174 Cal. App. 3d 384, 388 (1985) (similarity of names insufficient as "a matter of law" to establish "of and concerning" element).

*Fourth*, the plaintiff bears the burden of proving falsity, *Johnson v. Nickerson*, 542 N.W.2d 506, 511 n.3 (Iowa 1996)—also a Constitutional requirement, *see Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986)—and the truth of a statement defeats a defamation claim, *Totah v. Bies*, No. C 10-05956 CW, 2012 WL 762004, at *3 (N.D. Cal. Mar. 8, 2012) ("In all cases of alleged defamation, whether libel or slander, the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose." (citation omitted)); *Hovey v. Iowa State Daily Publ'n Bd., Inc.*, 372 N.W.2d 253, 256 (Iowa 1985) ("[I]f an allegedly defamatory statement is substantially true, it provides an absolute defense to an action for defamation."). And a plaintiff's burden to prove falsity cannot be met by relying only on minor inaccuracies; instead, the plaintiff must prove the challenged statement is materially false, meaning it must be substantially untrue. *See Yates*, 721 N.W.2d at 769-70 ("Slight inaccuracies of expression are immaterial provided the defamatory charge is true in substance." (citation omitted)). In deciding whether a statement is substantially true, courts look not at the literal truth or falsity of words, phrases, or passages, but at whether the "gist" or "sting" of the article is substantially true. If it is, there can be no recovery. *See, e.g., Wilson v. IBP, Inc.*, 558 N.W.2d 132, 140-41 (Iowa 1996). Where a complaint admits to the truth of the statement, then this issue may be decided as a matter of law. *See Smith v. Maldonado*, 72 Cal. App. 4th 637, 652 (1999), *as modified* (June 23, 1999) ("Plaintiff's admission of truth bars his defamation cause of action." (citation omitted)).

*Fifth*, the Constitution protects statements of opinion; the First Amendment protects "rhetorical hyperbole," as well as statements that are not "sufficiently factual to be susceptible of being proved true or false." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 21 (1990). Beyond those baseline Constitutional safeguards for opinion, the common law of both Iowa and California recognize broader protections, examining various factors to consider whether, in context, the statements would be understood by the reader as statements of opinion. For example, Iowa courts "utilize a four-part test to determine whether a statement is factual or a protected opinion": (1) "whether the alleged defamatory statement has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous"; (2) "the degree to which the [alleged defamatory] statements are objectively capable of proof or disproof"; (3) "the context in which the alleged defamatory statement occurs"; and (4) "the broader social context into which [the alleged defamatory] statement fits." *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018) (alterations in original) (quotation marks and citations omitted). Similarly, "California courts have developed a 'totality of the circumstances' test to determine whether an alleged defamatory statement is one of fact or of opinion," which examines (1) "the language of the statement" and (2) "the context in which the statement was made," and "demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed." *Baker v. L.A. Herald Exam'r*, 42 Cal. 3d 254, 260-61 (1986).

Both states also consider whether the author has disclosed the facts on which the statement is based. *See Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 387 (2004) (adopting the rule that "[a] statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning," because "[w]hen the facts

11

supporting an opinion are disclosed, readers are free to accept or reject the author's opinion based on their own independent evaluation of the facts" (quotation marks and citations omitted)); *see also Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1233-34 (N.D. Cal. 2014) ("When the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts." (citation omitted)); *Mills v. State*, 924 F. Supp. 2d 1016, 1034 (S.D. Iowa 2013) (author's "subjective impression[]" of a situation is not actionable if it does not imply the speaker possesses additional, undisclosed facts informing that impression); *Yates*, 721 N.W.2d at 771 ("[S]tatements of opinion can be actionable if they imply a provable false fact, or rely upon stated facts that are provably false." (citation omitted)). Whether a statement is one of opinion is a question of law for the Court to decide. *See Baker*, 42 Cal. 3d at 260; *Craig v. City of Cedar Rapids, Iowa*, 826 N.W.2d 516 (Iowa Ct. App. 2012).

**B. None of the Challenged Statements Are Actionable.**

Applying the foregoing law to the Complaint, none of the challenged statements are actionable, as a matter of law.

> 1. *Various statements to the effect that Congressman Nunes kept the family farm's move a "secret," or "concealed" the move, and may have "conspired" with his family and Congressman King to do so.*

Congressman Nunes challenges the following statements:

- "Devin Nunes has a secret." Compl. ¶¶ 20, 23(a).

- "Which brings us back to Nunes's secret." Compl. ¶ 20.

- "So here's the secret: The Nunes family dairy of political lore—the one where his brother and parents work—isn't in California. It's in Iowa." *Id.*

- "On the other hand, [Congressman Nunes] and his parents seemed to have concealed basic facts about the family's move to Iowa. It was suspicious." *Id.* ¶¶ 20, 23(f).

- "So why did his parents and brother cover their tracks after quietly moving the farm to Iowa? Are they hiding something politically explosive?" *Id.* ¶ 20.

- "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?" *Id.* ¶¶ 20, 23(e).

- "Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret." *Id.* ¶ 20.

- "There's nothing particularly strange about a congressman's family moving. But what is strange is that the family has apparently tried to conceal the move from the public—for more than a decade." *Id.* ¶¶ 20, 23(d).

None of these statements are actionable, for a host of reasons. *First*, insofar as they concern Congressman Nunes' brother, his parents, or Congressman Steve King, they are not "of and concerning" Congressman Nunes. Statements concerning the actions of the "congressman's family," actions of Congressman Nunes's "parents and brother," actions of Congressman King, or the status of the "family dairy of political lore" or "family farm" in which, as the Congressman admits and the Article discloses, he "does not own an interest" and "is not involved in any way in its operations," *id.* ¶ 20, have no bearing on the reputation of Congressman Nunes. Moreover, the fact that the family moved its farming operations to Iowa is (i) admittedly true, *id.* ¶ 4, and (ii) not defamatory, as the Article itself recognizes in noting that there is nothing strange about that. *See* Sitwala Decl., Exs. A, B ("There's nothing particularly strange about a congressman's family moving.").

*Second*, statements to the effect that Congressman Nunes "concealed" or kept "secret" the fact of the farm's move are, also, not defamatory. Because there is nothing illegal, shameful or wrong about the fact that Congressman Nunes' relatives moved the family farm to Iowa, as a matter of law, it is not defamatory to state that Congressman Nunes chose to keep that fact a secret. *See Wyo. Corp. Servs. v. CNBC, LLC*, 32 F. Supp. 3d 1177, 1187 (D. Wyo. 2014) (because "there is nothing illegal or shameful about hiding a person's ownership in a company," it was therefore not defamatory for defendant to state or imply that the plaintiff's "purpose" in creating a corporation was "to conceal ownership"). For the same reason, it is not defamatory for Defendants to report that Devin Nunes "conspired" to keep that fact "secret," an obvious rhetorical hyperbole in any event. *See Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (use of word "blackmail" to describe actions of public official not actionable "as a matter of law"); *Horsley v. Feldt*, 304 F.3d 1125, 1133 (11th Cir. 2002) (allegation in heated debate that the plaintiff had "conspired with others" to commit criminal acts nonactionable hyperbole; "a reasonable listener would not have taken the statement as a literal assertion that [the plaintiff] had actually conspired in the technical legal sense"); *Lauderback v. Am. Broad. Cos.*, 741 F.2d 193, 197 (8th Cir. 1984) (allegation that the plaintiff "was dealing unscrupulously with senior citizens, is more analogous to a broad, unfocused, wholly subjective comment than it is to specific accusations of felonious conduct").

*Third*, these statements are clearly nonactionable statements of opinion. The statements that Congressman Nunes kept the farm's move a "secret," or that he "concealed" it, are not readily capable of being proven true or false, and those words do not have an easily defined meaning (consider: to whom, to how many people, and in what contexts would Congressman Nunes need to disclose the fact of the farm's move before it could be said that he was no longer

keeping that fact a "secret" or "concealing" it?). *See Wyo. Corp. Servs.*, 32 F. Supp. 3d at 1187

(statement that purpose of creating legal entity was to "conceal ownership" was "opinion"; "it

cannot be proven true or false," and "[t]he statement does not imply the allegation of undisclosed

defamatory facts as the basis for [the] opinion" (citation omitted)).

Moreover, the Article's tone and setting as a work of literary journalism written in the

first-person perspective of the author establish that the challenged statements constitute

unactionable opinion. Sitwala Decl., Exs. A, B. The tone of the Article, which must be "taken

as a whole," *Gregory v. McDonnell Douglas Corp.*, 552 P.2d 425, 428 (Cal. 1976), is filled with

adjectives and introspective questions intended to reveal Lizza's mental impressions as he

conducted reporting for the Article. A cartoon-style illustration appears at the top of the Article,

Sitwala Decl., Exs. A, B., which the hard copy edition previews as being not a traditional news

report, but rather "A Very Weird Political Thriller," Sitwala Decl., Ex. B. These elements reflect

the levity evident in the author's voice. Together, all of these cues signal to readers that words

like "secret," "conceal," or "conspire" are, in the context of the Article, not being offered as

objective facts but rather the opinion of Lizza as he investigates the piece. *See Cochran v. NYP

Holdings, Inc.*, 58 F. Supp. 2d 1113, 1121 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000)

(statements in *New York Post* column were opinion considering "the general tenor of the entire

work," which included a dramatic lead paragraph that "set the tone for the remainder of the

column" and featured sarcasm and figurative language throughout).

Relatedly—according to Congressman Nunes—Lizza is "a high-profile, left-wing

political journalist, well-known for his extreme bias towards" Congressman Nunes. *See* Compl.

¶ 1. If that's true—which the Court should assume for purposes of deciding this motion—then

readers would anticipate Defendants' statements about Nunes to be framed as an attempt to

persuade as opposed to straight news reporting, and readers would weigh such statements accordingly. *See Gregory*, 552 P.2d at 428 ("[W]here potentially defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion."); *see also Horsley*, 304 F.3d at 1133.

Further, the Article discloses the constituent facts that led to the author's opinion that Congressman Nunes kept the move a "secret," and that he "conspired" with his family and Congressman King to do so. The author states that, "[a]s far as I could tell, until late August, neither Nunes nor the local California press that covers him had ever publicly mentioned that his family dairy is no longer in Tulare." Sitwala Decl., Exs. A, B. In announcing that Congressman Nunes would be visiting his district, Congressman Steve King's office issued a press release stating that "Congressman Nunes' family has operated a dairy farm in Tulare County, California for three generations", but "[t]here was no mention that the Nunes family actually lived up the road in Sibley, where they operated a dairy." *Id.* The Article even reports on efforts to keep Devin Nunes' name out of a regional dairy industry publication's news story on the Nunes family farm in Iowa. *Id.* In sum, "the facts supporting [the] opinion[s] are disclosed," and so "readers are free to accept or reject the author's opinion based on their own independent evaluation of the facts." *See Franklin*, 116 Cal. App. 4th at 387.

> 2. *Congressman Nunes used his position as Chairman of the House Intelligence Committee "as a battering ram to discredit the Russia investigation and protect Donald Trump at all costs, even if it means shredding his own reputation and the independence of the historically nonpartisan committee in the process."* Compl. ¶ 23(b).

This statement is clearly protected opinion. No reasonable reader would believe that Congressman Nunes, in fact, used or uses a battering ram for any purpose. Rather, the reference

to a "battering ram" is rhetorical hyperbole, not subject to being objectively proven true or false. The same applies to the statement that Congressman Nunes may have "shredded his own reputation and the independence of the historically nonpartisan committee." And as for whether Nunes has sought to "discredit the Russia investigation and protect Donald Trump at all costs"— it's not clear whether Congressman Nunes is alleging that this is false (and on what basis), but in any event this is also a statement of opinion, for the reasons stated above.

> 3. *Congressman Nunes "used the Intelligence Committee to spin a baroque theory about alleged surveillance of the Trump campaign that began with a made-up Trump tweet about how 'Obama had my 'wires tapped' in Trump Tower'"* Compl. ¶ 23(c).

To the extent Congressman Nunes challenges this statement based on its characterization that he used the Intelligence Committee "to spin a baroque theory," it is nonactionable opinion, as that phrasing conveys no objectively provable statement of fact, much less a false one, and none is alleged. To the extent the statement's factual content is challenged, it is substantially true. Congressman Nunes cannot dispute that, in his capacity as Chairman of the House Intelligence Committee, he took steps to develop evidence that President Donald Trump's 2016 Presidential campaign was the subject of surveillance by federal authorities. For example, Congressman Nunes does not dispute that, as reported in the Article, he "famously" released a memorandum that "accuse[d] the FBI of bias in its effort to obtain a warrant to monitor the communications of Carter Page, a Trump foreign-policy advisor."[4] And Congressman Nunes

---

[4] *See, e.g.*, Memorandum, HPSCI Majority Staff, "Foreign Intelligence Surveillance Act Abuses at the Department of Justice and the Federal Bureau of Investigation," Jan. 18, 2018 (declassified by order of the President on Feb. 2, 2018), *available at* https://docs.house.gov/meetings/IG/IG00/20180129/106822/HMTG-115-IG00-20180129-SD001.pdf (the "Nunes Memo"), a true and correct copy of which is annexed to the Sitwala Declaration as Exhibit C. The Nunes Memo alleges that, during the early phases of the FBI's investigation into Russian interference in the 2016 United States elections, the FBI relied on politically motivated or questionable sources to obtain a FISA warrant (and subsequent renewals of the warrant) to conduct surveillance on a Trump campaign adviser, Carter Page. This matter of public record, which is expressly disclosed in the Article, may be considered by the Court on

cannot dispute that his actions to develop this theory began after President Trump published a

"made-up . . . tweet about how 'Obama had my 'wires tapped' in Trump Tower.'"[5]  Instead,

Congressman Nunes merely points out that he does not believe that the phones in Trump Tower

were tapped.  But that is not what the Article says—it only states that President Trump "made

up" the allegation.  It does not state or suggest that Congressman Nunes agrees with the

allegation.  But even if it did, the statement would still be substantially true, as the undisputed

"sting" and "gist" of the statement remains the same—specifically, that Congressman Nunes,

through his position on the House Intelligence Committee, "sp[u]n a baroque theory about

alleged surveillance of the Trump campaign . . . ."  Compl. ¶ 23(c).  Whether Congressman

Nunes believed Donald Trump's wiretap allegations that kick-started Congressman Nunes'

efforts to "spin a baroque theory about alleged surveillance" does not alter the effect that the

statement would have on the reader.

> 4.  *"Devin; his brother, Anthony III; and his parents, Anthony Jr. and Toni Dian,
> sold their California farmland in 2006. Anthony Jr. and Toni Dian, who has
> also been the treasurer of every one of Devin's campaigns since 2001, used
> their cash from the sale to buy a dairy eighteen hundred miles away in Sibley,
> a small town in northwest Iowa where they—as well as Anthony III, Devin's
> only sibling, and his wife, Lori—have lived since 2007"*  Compl. ¶ 23(d).

Congressman Nunes admits that these facts are true.  Compl. ¶ 4.  And the statements are

neither defamatory nor "of and concerning" Congressman Nunes.

---

this Rule 12(b)(6) motion to dismiss.  *See Lee v. Lincoln Nat'l Life Ins. Co.*, No. 18-CV-2063-CJW, 2018 WL 5660553, at *2 (N.D. Iowa Oct. 31, 2018) (Williams, J.) ("In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider, in addition to the face of the complaint, 'matters incorporated by reference or integral to the claim, items subject to judicial notice, *matters of public record*, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" (emphasis added) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

[5]      For a refresher on Donald Trump's March 4, 2017 tweets concerning "wiretapping" at Trump Tower and the subsequent unusual actions taken by Devin Nunes to develop evidence of surveillance on of the Trump campaign, *see* Amber Phillips, *The Devin Nunes wiretapping saga, explained*, The Washington Post (Mar. 28, 2017, 10:10 AM), https://www.washingtonpost.com/news/the-fix/wp/2017/03/28/the-devin-nunes-wiretapping-saga-explained/.

5. *"Devin Nunes was the public figure at the heart of this, and he had no financial interest in his parents' Iowa dairy operation. . . . [6]And his mom, who co-owns the Sibley dairy, is also the treasurer of his campaign."* Compl. ¶ 23(f).

To the extent this statement refers to persons other than Congressman Nunes, it is not "of and concerning" him. And, in any event, it is not defamatory to say that Congressman Nunes "ha[s] no financial interest in his parents' Iowa dairy operation." Furthermore, this fact is true, and it is admitted in the Complaint. Compl. ¶ 20.

6. *"I laid out the facts I had uncovered in Sibley, including the intimidation of sources and the Devin Nunes angle, and asked him for advice. 'I'd tell that story,' he said. He paused and added, 'We're a sanctuary church, if you need a place to stay. You're safe here!'"* Compl. ¶ 23(g).

This statement is not defamatory, and it is not "of and concerning" Congressman Nunes.

7. *"Is it possible the Nuneses have nothing to be seriously concerned about? Of course, but I never got the chance to ask because Anthony Jr. and Representative Nunes did not respond to numerous requests for interviews."* Compl. ¶ 23(h).

To the extent this statement concerns persons other than Congressman Nunes, it is not "of and concerning" him. Also, it is not an actionable statement of fact; it is a non-actionable question. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (Kavanaugh, J.) ("[I]t is generally settled as a matter of defamation law . . . that a question, 'however embarrassing or unpleasant to its subject, is not accusation.'" (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993)); *Abbas*, 783 F.3d at 1338 ("Questions indicate a defendant's 'lack of definitive knowledge about the issue.'" (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995)). And as it relates to Congressman Nunes, it is not defamatory to report that he did not respond to a request to be interviewed. Moreover, it is true

---

[6]    The omitted text reads "On the other hand, [Congressman Nunes] and his parents seemed to have concealed basic facts about the family's move to Iowa. It was suspicious." This text is set forth separately in the Complaint as a challenged statement, *see* Compl. ¶ 20, and is addressed above.

that he did not respond.

8. *Alleged implication of "criminal wrongdoing."* Compl. ¶ 24.

Congressman Nunes also alleges that "[t]he strong defamatory gist and false implication from the [Article] is that [Congressman Nunes] was involved in, covered-up, used his office to cover up, conspired with others to conceal, or was aware of criminal wrongdoing." *Id.* This appears to be an allegation of defamation not by what is expressly stated in the Article, but rather by what the Article supposedly implies. Broad-brush implication claims such as this one raise acute First Amendment concerns and are subject to particularly stringent review. Congressman Nunes does not specify what statement he is challenging as a basis for his implication claim, much less identify the "criminal wrongdoing" the Article supposedly implies. Nor does he allege any of the other requisites necessary to state a claim for defamation by implication. *See Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1063–64 (9th Cir. 1998) (statements must be "reasonably capable of sustaining [the implied defamatory] meaning" and, "[m]ore important, [the plaintiff] must show that a jury could reasonably find by clear and convincing evidence that [the defendant] intended to convey the defamatory impression" (citations omitted)). Accordingly, Congressman Nunes fails to state a claim for defamation by implication based on this statement.

**C. Congressman Nunes Has Failed to Plead Facts Sufficient to Make His Allegation of Actual Malice "Plausible."**

The Complaint fails to state a claim for defamation for an additional reason: It fails to allege facts sufficient to make it plausible that Defendants acted with "actual malice," that is, that they knew that any of the challenged statements were false, or that they recklessly disregarded the truth of the statements. *See supra* Point I.A. A publisher acts with "reckless disregard" when it has a "high degree of awareness of . . . probable falsity." *Gertz v. Robert Welch, Inc.*, 418 U.S.

323, 332 (1974). "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing," but rather whether "the defendant in fact entertained serious doubts as to the truth of his publication." *Reader's Digest Ass'n v. Superior Court*, 690 P.2d 610, 617-18 (Cal. 1984) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). This establishes a "subjective test, under which the defendant's actual belief concerning the truthfulness of the publication is the crucial issue." *Id.*

Importantly, the definition of "actual malice" in the *constitutional* sense is "unlike the common law definition of actual malice"; it "focuses upon the attitudes of defendants vis-à-vis the truth of their statements, as opposed to their attitudes towards plaintiffs." *Barreca v. Nickolas*, 683 N.W.2d 111, 120 (Iowa 2004). "[U]nder *New York Times*, a plaintiff cannot demonstrate actual malice 'merely through a showing of ill will or "malice" in the ordinary sense of the term.'" *Bertrand v. Mullin*, 846 N.W.2d 884, 899 (Iowa 2014) (quotation marks and citations omitted). "Stated differently, actual antagonism or contempt has been held insufficient to show malice." *Id.* (citation omitted).

Here, Congressman Nunes fails to satisfy the *Twombly*/*Iqbal* standard of pleading sufficient factual matter to make his allegation of actual malice "plausible." Although the Complaint is larded with conclusory allegations that Defendants had an agenda and harbored ill will and animus toward Congressman Nunes, *see, e.g.*, Compl. ¶ 37(b), (c), (h), these sorts of allegations have no bearing on Defendants attitude toward "the truth of their statements, as opposed to their attitudes towards plaintiffs." *Barreca*, 683 N.W.2d at 120.[7] Similarly, it does not matter if Defendants relied on sources who were biased against Nunes, another conclusory

---

[7] For the same reason, the allegation that Defendants used "unnecessarily strong and violent language, disproportionate to the occasion" is (besides being demonstrably false from the face of the Article) irrelevant to the issue of actual malice, Compl. ¶ 32(e)—and, assuming *arguendo* it is true, makes it all the more clear that many of the challenged statements are in fact opinions that cannot give rise to a defamation claim.

allegation. *See* Compl. ¶ 37(g); *Reader's Digest Ass'n*, <u>690 P.2d at 619</u> (evidence of a "failure to investigate" or reliance on "unreliable" sources or sources "known to be biased" "is relevant only to the extent that it reflects on the subjective attitude of the publisher"; "[t]he failure to conduct a thorough and objective investigation, standing alone, does not prove actual malice, nor even necessarily raise a triable issue of fact on that controversy").

Also irrelevant is the allegation—again conclusory—that Defendants did not adhere to "standards of ethics" or "all journalistic standards in writing, editing and publishing." Compl. ¶ 32(a); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, <u>491 U.S. 657, 665</u> (1989) ("Petitioner is plainly correct in recognizing that a public figure plaintiff must prove more than an extreme departure from professional standards . . . "). The (conclusory) allegation of profit motive is also irrelevant. *Harte-Hanks Commc'ns, Inc.*, <u>491 U.S. at 667</u> ("If a profit motive could somehow strip communications of the otherwise available constitutional protection, our cases from *New York Times* to *Hustler Magazine* would be little more than empty vessels"); Compl. ¶ 32(d).

In sum: Even if the Article contained any otherwise actionable defamatory statements (and it does not, for the reasons stated *supra* Point I.B), Congressman Nunes has not pleaded that any of the allegedly defamatory statements were made with actual malice by Defendants.

### D. Congressman Nunes Has Failed to Plead an Underlying Cause of Action to Sustain a Civil Conspiracy Claim.

"Civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy [that] give rise to the action." *Wright v. Brooke Grp. Ltd.*, <u>652 N.W.2d 159, 172</u> (Iowa 2002) (quoting *Basic Chems., Inc. v. Benson*, <u>251 N.W.2d 220, 233</u> (Iowa 1977)); *Saunders v. Superior Court*, <u>27 Cal. App. 4th 832, 845</u> (1994) ("Although conspiracy to commit a tort is not a separate cause of action from the tort itself, alleging a conspiracy fastens liability on those who agree to the plan to commit the wrong as well as those

who actually carry it out."),  "Thus, conspiracy is merely an avenue for imposing vicarious liability on a party for the wrongful conduct of another with whom the party has acted in concert."  *Wright*, 652 N.W.2d at 172 (citing *John's Insulation, Inc. v. Siska Constr. Co.*, 774 F. Supp. 156, 162 (S.D.N.Y. 1991) ("Allegations of a civil conspiracy, therefore, are proper only for the purpose of establishing joint liability by co-participants in tortious conduct.")).

Here, for the reasons stated above, Congressman Nunes has failed to allege the underlying tort of defamation.  Therefore, there is no basis to sustain a separate claim for "civil conspiracy."

## II.     Congressman Nunes' Complaint Should Be Stricken Pursuant to California's Anti-SLAPP Law

### A. California Law Supplies the Rule of Decision.

"A federal court must apply the choice of law rules of the forum state in which it sits"— in this case, Iowa.  *Lyons v. Midwest Glazing*, 265 F. Supp. 2d 1061, 1072 (N.D. Iowa 2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  For tort claims, Iowa "follow[s] the Restatement's 'most significant relationship' methodology for choice of law issues."  *Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996); *Cameron v. Hardisty*, 407 N.W.2d 595, 597 (Iowa 1987) (quoting Restatement (Second) of Conflict of Laws § 145: "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties.").

For claims of defamation arising from content that is published in multiple states (such as the Article), the Restatement provides: "When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state *where the person was domiciled at the time*, if the matter complained of was published in

that state." Restatement (Second) of Conflict of Laws § 150(2) (emphasis added). As the Restatement explains:

> Rules of defamation are designed to protect a person's interest in his reputation. When there has been publication in two or more states . . . at least most issues involving the tort should be determined . . . by the local law of the state where the plaintiff has suffered the greatest injury by reason of his loss of reputation. This will usually be the state of the plaintiff's domicil if the matter complained of has there been published.

*Id.*; *see also Ratner v. Kohler*, No. CV 17-00542 HG-KSC, 2018 WL 1055528, at *6 (D. Haw. Feb. 26, 2018) (applying California law because "California has a significant interest in this case as Plaintiff's purported damages would most likely occur in California where he resides and conducts his business"); *Ramsey*, 351 F. Supp. 2d at 1149 (under Restatement, law of domicile of Ramsey family, Colorado, applied, notwithstanding that family spent some time living in Georgia); *Schmidt v. Wash. Newspaper Publ'g Co.*, No. CV N19C-03-262 CLS, 2019 WL 4785560, at *4 (Del. Super. Ct. Sept. 30, 2019), *amended on reconsideration*, No. CV N19C-03-262 CLS, 2019 WL 7000039 (Dec. 20, 2019) ("Plaintiff is a California resident, the injury occurred in California . . . . Therefore, the Court finds that California law applies to Plaintiff's claims."); *see also Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 622 (8th Cir. 2004) (applying the Restatement as adopted by the Missouri Supreme Court to hold that, "when defamatory material is published in two or more states," "the state where the defamed party has its principal place of business will usually be the state in which its reputation is most grievously affected, so long as the defamatory material is published in that state").

Applying this standard, Iowa choice of law rules dictate that California law supplies the rule of decision in this case. Congressman Nunes pleads that he is a "a citizen of California." Compl. ¶ 4. He has been an elected Congressman from the state since 2003. *See id.* Purported

harm to his reputation would be most acutely felt in the 22nd Congressional District of California, where Congressman Nunes was, at the time of publication, running for re-election. *Condit v. Dunne*, 317 F. Supp. 2d 344, 354 (S.D.N.Y. 2004) (applying California law because, "[a]s [the defamation] plaintiff was a [California] Congressman [at the time of the allegedly defamatory statement], his reputation necessarily was a matter of national significance, but it mattered most in California where he had been elected to office, and where the people whom he represented resided"). In fact, Congressman Nunes expressly alleges that the Article was published for the purpose of "influenc[ing] the 2018 Congressional election." Compl. ¶ 32(c). And the Complaint rejects the notion that Congressman Nunes has any ties to Iowa, or to the family farm in Sibley. *Id.* ¶ 20 ("Plaintiff does not own an interest in his family's dairy farm in Iowa, never has, and is not involved in any way in its operations.").

**B. The California Anti-SLAPP Law's Motion-to-Strike Provision Is a Substantive Immunity from Suit that Applies in Federal Court.**

The California anti-SLAPP law's motion-to-strike protections apply in federal court. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding that anti-SLAPP motion-to-strike and attorneys' fees protections apply in federal court when sitting in diversity). These protections constitute "substantive immunity from suit"— and thus a federal court, "sitting in diversity" and applying California defamation law, should apply the anti-SLAPP protections. *See Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003) ("Because California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this Court, sitting in diversity, will do so as well."). Courts outside the Ninth Circuit Court of Appeals applying California law as the rule of decision have therefore applied California's anti-SLAPP law to diversity actions pending in those courts. *See, e.g.*, *Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1305 (S.D. Fla. 2015) (applying California

substantive law and thus California's anti-SLAPP statute because, "[a]lthough framed as a rule of state procedure, California's anti-SLAPP statute protects substantive rights and thus applies in federal court"); *Blumenthal v. Drudge*, No. Civ. A. 97-1968PLF, 2001 WL 587860 (D.D.C. Feb. 13, 2001).  This Court should do the same.

### C.  The Complaint Should Be Stricken Pursuant to California's Anti-SLAPP Statute.

Under the California anti-SLAPP statute, "a cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike . . . ." Cal. Civ. Proc. Code § 425.16(b)(1).  Moreover, in ruling on an anti-SLAPP motion, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *See* Cal. Civ. Proc. Code § 425.16(b)(2); *see also Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 679 (2010), *as modified on denial of reh'g* (Feb. 24, 2010) (noting that a court "do[es] not evaluate the first prong of the anti-SLAPP test solely through the lens of a plaintiff's cause of action").

Where, as here, a defendant files an anti-SLAPP motion to strike "based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied sub nom. Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 139 S. Ct. 1446 (2019) (citation omitted).

Here, for all of the reasons stated above, Congressman Nunes has failed to plead a viable claim.  None of his statements are actionable, and Congressman Nunes could not possibly prevail on his claims.  The Court should grant Defendants' motion to strike the Complaint pursuant California's anti-SLAPP provision, and charge Defendants' attorneys' fees to Congressman

Nunes pursuant to Cal. Civ. Proc. Code § 425.16(c).

**III.    This Court Should Strike All or Part of Plaintiff's Complaint Because Its Words, Tone, and Averments Well Exceed the Bounds of Permissible Pleading and Prejudice the Defendants by Including Redundant, Immaterial, Impertinent, or Scandalous Matter**

Federal judges enjoy "liberal discretion under Rule 12(f)" to strike all or part of a party's pleading, including his complaint. *Nationwide Ins. Co. v. Cent. Mo. Elec. Coop., Inc.*, 278 F.3d 742, 748 (8th Cir. 2001); *Bertroche v. Mercy Physician Assocs., Inc.*, No. 18-CV-59-CJW-KEM, 2019 WL 4307127, at *4 (N.D. Iowa Sept. 11, 2019). While courts disfavor such motions, *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977), the express language of Fed. R. Civ. P. 8 on pleading standards for a complaint and of Fed. R. Civ. P. 12(f) relating to unacceptable content of a pleading join to make clear why this case merits an exercise of this Court's broad discretion to strike all or part of Plaintiff's Complaint.

The text of Rule 12(f) starts with the concept a trial judge may strike any "redundant, immaterial, impertinent, or scandalous matter," and Rule 12(f) case law suggests courts should:

(a)    Test whether the challenged language lacks any bearing on the issues in the case,

(b)    Ask if evidence in support of the allegations would be admissible, and

(c)    Measure how retention of the allegations would result in prejudice to the movant.

*See, e.g.*, *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012). Or, as Chief Judge Jarvey of the Southern District of Iowa observed, "[t]rial courts have traditionally granted such motions where 'the allegations have no possible relation to the controversy, may cause prejudice to one of the parties, or confuse[] the issues.'" *Hammond v. Arch Ins. Sols.*, No. 3:17-cv-00019, 2017 WL 11297279, at *4 (S.D. Iowa Sept. 6, 2017) (quoting *Balon v. Enhanced Recovery Co.*, 316 F.R.D. 96, 98 (M.D. Pa. 2016)); *Bailey v. Fairfax Cty., Va.*, No. 1:10-cv-1031, 2010 WL 5300874, at *4 (E.D. Va. Dec. 21, 2010) (same).

As to what stands as "redundant, immaterial, impertinent, or scandalous matter" under Rule 12(f), case law provides further definitions, making content:

- Redundant if it "constitute[s] needless repetition" or is "foreign to the issue." *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011) (citations omitted); *Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, 188 F. Supp. 3d 986, 991 (E.D. Cal. 2016);

- Immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1122 (E.D. Cal. 2012) (citation omitted); *see also Hammond*, 2017 WL 11297279, at *4; and

- Impertinent if it "consists of statements that do not pertain to the issues in question." *Resolution Tr. Corp. v. Fiala*, 870 F. Supp. 962, 977 (E.D. Mo. 1994).

And, as to what is scandalous matter, Plaintiff's Complaint speaks for itself and clearly satisfies any definitional test.

The content of the Complaint's long and intricate averments lacks adherence to Rule 8 and clearly warrants the exercise of judicial discretion under Rule 12(f). *First*, rather than providing "a short and plain statement of the claim showing that the pleader is entitled to relief," and setting forth each allegation in a "simple, concise, and direct" manner, as Fed. R. Civ. P. 8 commands, Plaintiff's Complaint stacks 41 numbered paragraphs, some extending up to or more than a page in length and some with dozens of sentences, that among other things, call Defendant Lizza a stalker of children, a sexual predator, and a member of the "Shitty Media Men" and labels the *Esquire* magazine report in issue the "Lizza Hit Piece."[8]

---

[8] The scandalous, impertinent, and irrelevant statements that Defendants seek to have stricken are listed in the Motion, and are as follows: "Lizza was a fixture of the main stream

*Then*, as further detailed in Defendants' motion, Plaintiff uses the Complaint—under the guise of privileged court papers—to publish or republish inflammatory falsehoods and statements that themselves are defamatory against Defendants and to employ prejudicial *ad damnum* clauses, including one in bold face on page one that screams this lawsuit seeks "compensatory damages and punitive damages in the sum of **$75,000,000.00**."[9]

The inclusion and retention of these portions of the Complaint and all other similarly-offending portions setting forth redundant, immaterial, impertinent, and scandalous matter prejudice Defendants, in part because the language and the prolix pleading (a) impede Defendants from expeditiously making full denials and (b) impose such burdens on Defendants that they cannot litigate this case and defend themselves in the just, speedy, and inexpensive

---

media until December 2017, when his then-employer—The New Yorker magazine—summarily severed all ties and publicly terminated Lizza because of 'improper sexual conduct'." Compl. ¶ 1; "Lizza's name had been included in the '**Shitty Media Men**' list that circulated in response to allegations published about Harvey Weinstein." *Id.*; "The Lizza Hit Piece falsely portrays Lizza as a hard-working reporter earnestly investigating a real story on the ground in Iowa, being stalked and intimidated by Plaintiff's family. In truth, as was reported almost immediately after publication of the Lizza Hit Piece, while he was in Sibley, Lizza stalked Plaintiff's grammar-school aged nieces, behaved like a sex offender or pedophile cruising the local neighborhood for victims, frightened a family member to tears, and exploited a grieving mother." *Id.* ¶ 22; "It turns out that Nunes doesn't have a secret, that he's not a hypocrite on immigration policy, and that the Iowans Lizza met were wary of him slowly driving around town while children were at play because they discovered Lizza had recently been fired from his job for sexual misconduct . . . ." *Id.* ¶ 26; and "Another resident told me that he encountered a Nunes family member crying because she'd discovered that the man who was surveilling her house had recently been fired for sexual misconduct." *Id.*

[9]     One treatise notes: "There is some doubt as to whether the federal courts should require a party to assert the specific dollar amount of damages that is being claimed in a case to be tried before a jury. The concern has been expressed that the presence of such a demand may improperly influence the jury's decision if it becomes aware of a specific requested amount. It also may cause other indirect injury, such as unfavorable publicity, to the party defending against the claim and may adversely affect commercial relationships. . . . Some commentators are in agreement with the *Mitchell* court and would bar the inclusion of a specific *ad damnum* clause in any action to be tried to a jury on the theory that its disclosure, either by direct presentation in court or through outside publicity given to the pleading, might unnecessarily influence the jury's final determination of both the issue of liability and damages. Their argument continues that because the *ad damnum* clause usually is fabricated by the pleader and represents an unrealistically high estimate of damages that often bears no relationship to the amount of harm actually suffered, it is irrelevant to the ultimate resolution of the lawsuit." 5 Fed. Prac. & Proc. Civ. § 1259 (3d ed.)

manner contemplated by Fed. R. Civ. P. 1. Defendants inherently are harmed because "[p]rejudice occurs when the challenged pleading or allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party." *Hammond*, 2017 WL 11297279, at *4 (quoting *Foster v. Pfizer Inc.*, No. 00-1287-JTM, 2000 WL 33170897, at *2 (D. Kan. Dec. 12, 2000)).

Defendants therefore ask that this Court strike the Complaint in its entirety, or at least those portions of Plaintiff's Complaint referenced or quoted in the accompanying Rule 12(f) motion to strike.

## Conclusion

For the reasons stated above and their related motion papers, Defendants respectfully request that the Court dismiss the Complaint pursuant to Rule 12(b)(6); strike the Complaint pursuant to California's anti-SLAPP statute; strike some or all of the Complaint pursuant to Rule 12(f); and award Defendants their reasonable attorneys' fees incurred in responding to Congressman Nunes' Complaint.

*[Signature block on next page]*

January 21, 2020

**Ryan Lizza and Hearst Magazines, Inc.,
Defendants**

By: /s/ Jonathan R. Donnellan
Jonathan R. Donnellan, *Lead Counsel*\*
  *jdonnellan@hearst.com*
Ravi V. Sitwala\*
  *rsitwala@hearst.com*
Nathaniel S. Boyer\*
  *nathaniel.boyer@hearst.com*
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 649-2030
Telephone: (212) 649-2035
*\*Admitted Pro Hac Vice*

Michael A. Giudicessi
  *michael.giudicessi@faegrebd.com*
Nicholas A. Klinefeldt
  *nick.klinefeldt@faegrebd.com*
Susan P. Elgin
  *susan.elgin@faegrebd.com*
FAEGRE BAKER DANIELS LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

*Attorneys for Defendants*

**Certificate of Service**

     The undersigned certifies that a true copy of **Defendants' Brief in Support of Their Motion to Dismiss, to Strike the Complaint Pursuant to <u>Cal. Civ. Proc. Code § 425.16</u>, and to Strike Pursuant to <u>Fed. R. Civ. P. 12(f)</u>** was served upon the following parties through the court's CM/ECF electronic filing system on January 21, 2020.

<u>/s/  Jonathan R. Donnellan   </u><br>
Jonathan R. Donnellan

Copy to:

     Joseph M. Feller
      *jfeller@kkfellerlaw.com*
     Steven S. Biss
      *stevenbiss@earthlink.net*

     *Attorneys for Plaintiff*