IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
Western Division

DEVIN G. NUNES     )
            )
  Plaintiff,      )
            )
v.            )   Case No. C19-4064-CJW-MAR
            )
            )
RYAN LIZZA      )
et al          )
            )
  Defendants.     )
            )

# PLAINTIFF'S RESISTANCE
# AND MEMORANDUM IN OPPOSITION
# TO DEFENDANTS' MOTION TO STAY DISCOVERY

Plaintiff, Devin G. Nunes, by counsel, pursuant to Local Rule ("LR") 7e, respectfully submits this Resistance and Memorandum in Opposition to the motion to stay discovery [*ECF No. 17*] filed by defendants, Ryan Lizza and Hearst Magazines, Inc. ("Defendants").

## I. INTRODUCTION

On September 30, 2018, Devin Nunes suffered egregious harm to his name and reputation because of false and defamatory statements intentionally published by the Defendants in an article titled, "**Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret**". [https://www.esquire.com/news-politics/a23471864/devin-nunes-family-farm-iowa-california/ (the "Lizza Hit Piece")]. In his complaint, Plaintiff alleges that the strong defamatory gist and false implication of the Lizza Hit Piece is that

Plaintiff, a United States Congressman and then-Chairman of the House Permanent Select Committee on Intelligence, was involved in, covered-up, conspired with others (including his family) to conceal, or was aware of criminal activity and other wrongdoing on his family's farm. Plaintiff asserts that the Defendants' statements accuse and impute to him dishonesty, deceit, lack of veracity, lack of integrity, conspiracy, corruption, abuse of power, and unethical behavior – all of which severely prejudices Plaintiff in his business and profession. Plaintiff asserts that the Defendants' false statements were excessively published and republished millions of times on the Internet and via social media with actual malice, causing Plaintiff substantial damage. [*ECF No. 1 ("Complaint"), ¶¶ 2, 3, 5, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 28, 29, 30, 31, 32*].

On January 3, 2020, the parties conducted a scheduling conference pursuant to Rule 26(f). On January 6, 2020, the parties jointly submitted a Scheduling Report, which establishes a discovery cut-off of September 7, 2020.

Plaintiff promptly served discovery on Defendants on January 7, 2020.

It is not surprising that the Defendants want to short-circuit and avoid discovery of their wrongdoing. However, it is not the practice of Federal Courts to delay. Delay severely prejudices victims of defamation, especially where, as here, the defendant refuses to retract, doubles-down and, in retaliation, publishes even ***more*** defamatory statements! Delay increases the risk that evidence is lost and witnesses, including alleged "sources" of the Lizza Hit Piece, go missing and are unavailable for deposition or trial. Delay clogs up the Courts and negatively impacts the public's perception of Judges, Lawyers and the quality of Justice. Delay rewards behemoth corporations, like Hearst,

who have enough money to attrite their victims, but who shun the search for Truth – in this case, discovery of the scheme to defame Devin Nunes.

## II.  DISCUSSION

The express purpose of the Federal Rules of Civil Procedure (the "Rules") is to "secure the just, speedy, and inexpensive determination of every action and proceeding." *Fed. R. Civ. P. 1.*  Consistent with the salutary policy of speedy justice, Rule 12(b) permits a defendant to assert certain defenses by motion, but, significantly, the Rule contains absolutely no "automatic stay" of discovery.  Rule 26(d) governs the timing and sequence of discovery.  A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f).  Rule 26(f) obligates the parties to confer "as soon as practicable – and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due" to discuss the case and develop a discovery plan.

The Federal Rules authorize broad discovery. *See, e.g., Fed.R.Civ.P. 26(b)(1)* ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.").  For purposes of pretrial discovery, relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Daniels v. City of Sioux City*, 294 F.R.D. 509, 512 (N.D. Iowa 2013) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  "Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise,

and to promote settlement.'" *Daniels*, 294 F.R.D. at 512 (quoting *Marook v. State Farm Mut. Auto Ins. Co.*, 259 F.R.D. 388, 394 (N.D. Iowa 2009) (further quotation omitted).

Rule 26(c)(1) provides that a party from whom discovery is sought "may move for a protective order" and that the Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". *See* 8A Wright & Miller, Federal Practice & Procedure § 2037 (3rd ed. 2012) (Rule 26(c)'s good cause standard applies to a request to stay discovery pending the resolution of a motion to dismiss). "Rule 26(c)'s good cause requirement 'creates a rather high hurdle' for the moving party." *Wilson v. First Class Patrol Officers*, 2016 WL 1253179, at * 4 (D.S.C. 2016) (quoting *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006)).

Defendants move for a stay of discovery while their motion to dismiss is pending.[1]

Motions to stay discovery "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (citing *Kron Medical Corp. v. Groth*, 119 F.R.D. 636 (M.D.N.C. 1988)); *id. Bennett v. Fastenal Co.*, 2016 WL 10721816, at * 1 (W.D. Va. 2016) (Although the Court "'has broad discretion

---

[1]     In their motion, p. 1, Defendants argue that a stay will protect and safeguard "important First Amendment rights". **To be clear, the United States Supreme Court has repeatedly and without exception held that libelous speech is not protected by the First Amendment**. Simply put, there is "no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974); *United States v. Alvarez*, 132 S. Ct. 2537, 2560 (2012) ("false factual statements possess no First Amendment value."); *Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 504 (1984) (same).

to stay discovery pending resolution of a motion to dismiss,'" granting a stay on that basis is "'generally disfavored because delaying discovery may cause case management problems as the case progresses.'") (quoting *Fed. Ins. Co. v. S. Lithoplate, Inc.*, 2013 WL 4045924, at * 1 fn. 2 (E.D.N.C. 2013) (the fact that a defendant's Rule 12(b)(6) motion, if granted, could dispose of all claims against him is not reason enough to delay discovery)); *see Clinton v. Jones*, 520 U.S. 681, 693-696, 706-709 (1997) (finding that "a lengthy and categorical stay takes no account whatever of the respondent's interest in bringing the case to trial").

It is well-established that a stay of discovery should never be granted on a mere suggestion by counsel for a defendant that "there is some degree of foundation in law for the dispositive motion and a possibility that Defendants may prevail." *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 583 (D. Nev. 2013); *compare Hoxie v. Livingston County*, 2010 WL 822401, at * 1 (E.D. Mich. 2010) ("The wheels of justice would surely grind to a halt if discovery were stayed pending dispositive motions and based on such generic allegations of undue burden and expensive."); *Standard Bank PLC v. Vero Ins., Ltd.*, 2009 WL 82494, at * 2 (D. Colo. 2009) ("Parties always are burdened when they engage in litigation, whether the case ultimately is dismissed; summary judgment is granted; the case is settled; or a trial occurs. That is a consequence of our judicial system and the rules of civil procedure. There is no *special burden* on the parties in this case.") (emphasis added). This Court put it very well in *Daniels*:

> "While it is certainly true that future events and rulings may have the effect of rendering that discovery unnecessary, that is hardly an uncommon feature of civil litigation. Claims in many cases are disposed of, either by voluntary withdrawal or summary judgment, only after extensive discovery has taken place. I will not bar Daniels from conducting discovery at this stage of case simply because circumstances might change later."

5

294 F.R.D. at 513.

**A.** **There Is No Good Cause To Stay Discovery In This Case**

District courts have developed a variety of factors to consider in determining whether to grant a stay of discovery, "including: (1) whether there is a strong showing that a claim is unmeritorious; (2) the breadth of discovery and burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *United Fire & Casualty Company v. Illinois Consructors Corporation*, 2017 WL 11452040, at * 2 (N.D. Iowa) (Williams, J.) (quoting *Allen v. Agreliant Genetics, LLC*, 2016 WL 5416418, at * 2 (N.D. Iowa 2016) (citing *Chesney v. Valley Stream Union Free Sch. Dist.*, 236 F.R.D. 113, 116 (E.D.N.Y. 2006)). A court may also consider the complexity of the action, the stage of litigation, and conservation of judicial resources. *See id.*; *see also United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, 2014 WL 12618074, at * 1 (W.D. Mo. 2014) ("In determining whether to grant a motion to stay discovery pending the outcome of a dispositive motion, a court considers a variety of factors, including the movant's likelihood of success on the underlying motion; whether the movant will be irreparably harmed absent a stay; the breadth of the pending discovery; the balance of harms in delaying discovery against the possibility that the underlying motion will dispose of the case; the public interest; and judicial economy.").

Applying the identified factors and considering the purpose of the Federal Rules and the disfavored status of motions to stay discovery, the Court should deny Defendants' motion in this case. Although a stay would benefit the Defendants, it would significantly prejudice the Plaintiff and delay justice. Simply put, there is no good cause.

1.      *Plaintiff's Claims Are Meritorious*

Defendants argue in their brief [*ECF No. 17-1, p. 6*] that a stay of discovery is appropriate because resolution of Defendants' motion to dismiss is "likely" to dispose of the case or, perhaps, "narrow" it. Defendants fail to make a "strong showing" that Plaintiff's claims are unmeritorious.

a.      *California Procedural Law Does NOT Apply*

Federal courts sitting in diversity apply the forum state's choice of law rules to determine the controlling *substantive* law. *See, e.g. Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941) (cited in *Perez v. CRST International, Inc.*, 355 F.Supp.3d 765, 768 (N.D. Iowa 2018) (Williams, J.)). Procedural matters, however, are governed by Federal law and the Federal Rules of Civil Procedure or, where not covered by Federal rules, the law of the forum. *See, e.g., Hiatt v. Mazda Motor Corp.,* 75 F.3d 1252, 1255 (8th Cir. 1996) ("It is, of course, well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state.") (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)); *Knievel v. ESPN*, 393 F.3d 1068, 1073 (9th Cir. 2005) ("Under the [*Erie*] doctrine … federal courts sitting in diversity must apply the Federal Rules of Civil Procedure") (citing *Hanna v. Plumer*, 380 U.S. 460, 470-471 (1965)); *Simmons Foods, Inc. v. Industrial Risk Insurers*, 863 F.3d 792, 797 (8th Cir. 2017) (procedural matters are governed by the law of the forum); *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir. 1995) ("If the law is procedural, then we apply the law of the forum state"); *Riske v. Truck Ins. Exchange*, 541 F,2d 768, 771 (8th Cir. 1976) ("[A] procedural issue ... is

governed by the law of the forum"); *Alliant Energy Corp. v. Alltel Corp.*, 344 F.Supp.2d 1176, 1181 (S.D. Iowa) (same).

In their motion to dismiss [*ECF No. 15, ¶¶ 10-12*], Defendants assert that a California procedural law – California Civil Procedural Code § 425.16 – applies in this action.  **It does not**.

First, the law of the forum – Iowa – governs matters of procedure.  California's anti-SLAPP statute is, without doubt, a "procedural" remedy. *See, e.g., Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055-1056, 128 P.2d 713 (2006) ("The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights").  Because it is a matter of procedure, California anti-SLAPP law does not apply in this case.  **Iowa does not have an "anti-SLAPP" law**.  Rather, § 659.2 of the Iowa Code provides as follows:

> "In any action for damages for the publication of a libel in a newspaper … if the defendant can show that such libelous matter was published … through misinformation or mistake, the plaintiff shall recover no more than actual damages, unless a retraction be demanded and refused as hereinafter provided. Plaintiff shall serve upon the publisher at the principal place of publication … a notice specifying the statements claimed to be libelous, and requesting that the same be withdrawn."

There is no question that Plaintiff fully complied with Iowa procedural law prior to filing this action. [*See, e.g., Complaint, ¶ 35*].

Second, even if, *arguendo*, the "local" laws of California – and not Iowa – governed, California's anti-SLAPP law would still not apply.  It is well-settled that where local substantive law and a validly promulgated federal rule address the same question, but differ as to the answer, the federal rule controls. *Shady Grove Orthopaedic Assocs.,*

*P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-399 (2010) (cited in *Fridman v. Bean, LLC*, 2019 WL 231751, at * 2 (D. D.C. 2019) (denying defendants' motion to dismiss under D.C.'s Anti-Slapp Act). **The overwhelming majority position is that anti-SLAPP statutes directly collide with the Federal Rules of Civil Procedure, and, therefore, do not apply in diversity cases**. *See, e.g., Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019) (Because the Texas anti-SLAPP statute's "burden-shifting framework imposes additional requirements beyond those found in Rules 12 and 56 and answers the same question as those rules, the state law cannot apply in federal court"); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1352 (11th Cir. 2018) ("Rules 8, 12 and 56 create an affirmative entitlement to avoid pretrial dismissal that would be nullified by the Georgia anti-SLAPP statute if it were applied in a federal court"); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 673 (10th Cir. 2018) ("The proper course is to recognize the New Mexico anti-SLAPP statute as a procedural mechanism for vindicating existing rights and nothing more. Accordingly, the decision of the district court denying application of the New Mexico anti-SLAPP statute in this federal diversity action is AFFIRMED"); *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1334-1337 (D.C. Cir. 2015) (a federal court sitting in diversity must apply Federal Rules of Civil Procedure 12 and 56 rather than D.C.'s Anti-SLAPP law) (Kavanagh, J.); *Makaeff v. Trump University, LLC*, 715 F.3d 254, 275 (9th Cir. 2013) (Kosinski. J., concurring) ("Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof"); *see id. Orchestrate HR, Inc. v. Blue Cross Blue Shield Kansas*, 2019 WL 6327591, at * 3 (D. Kan. 2019)

(applying *Klocke*); *Lampo Group, LLV v. Paffrath*, 2019 WL 3305143, at * 1-2 (D. Tenn. 2019) ("the Court finds that California's anti-SLAPP statute is not applicable in federal court … the Court is persuaded by the opinions of the D.C. and Eleventh Circuits and finds that given its probability standard, California's anti-SLAPP statute is in direct conflict with the Federal Rules of Civil Procedure"); *Cockrum v. Donald J. Trump for President, Inc.*, 319 F.Supp.3d 158, 165 fn. 2 (D.D.C. 2018) ("The Court continues to adhere to its view that controlling precedent precludes the application of D.C.'s Anti–SLAPP Act in federal court."); *Platinum Press, Inc. v. Douros-Hawk*, 2018 WL 6435331, at * 3 (M.D.N.C. 2018) ("the Court finds that the [Texas anti-SLAPP] is not applicable in federal courts sitting in diversity and DENIES Defendant's Motion to Dismiss as it pertains to the TCPA"); *ABLV Bank v. Ctr. For Advanced Def. Studies, Inc.*, 2015 WL 12517012, at * 3 (E.D. Va. 2015) ("Because the [District of Columbia anti-SLAPP] Act is procedural under *Erie*, it is not applicable in federal court").

Defendants' attempt to employ a California procedural rule in this diversity case is contrary to law. It is meritless. It should be rejected without more.

### b.  *Plaintiff Plausibly Alleges A Claim Of Defamation*

The gist of defamation is the publication of written or oral statements which tend to injure a person's reputation and good name. *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996) (citation omitted). To establish a prima facie case of defamation against a media defendant, a public figure must allege (1) publication (2) of a false and defamatory statement (3) concerning the plaintiff (4) with actual malice (5) that resulted in demonstrable injury. *Jones v. University of Iowa*, 836 N.W.2d 127, 149 (Iowa 2013) (citing *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 826 (Iowa 2007)); *see also*

*Johnson v. Nickerson*, 542 N.W.2d 506, 511 (Iowa 1996). The defamatory publication need not be explicit, but may be implied "by a careful choice of words in juxtaposition of statements." *Stevens*, 728 N.W.2d at 828 ("The article stated that Stevens rarely attended events about which he wrote, without revealing to the reader what defendant Harman knew—that personal attendance was not required by professional standards … When the evidence in the summary judgment record is viewed in the light most favorable to the resisting party, we conclude that a reasonable jury could find by clear and convincing evidence that this statement was false in its implication and was made with reckless disregard for the truth under the *New York Times* standard").

### i.      ***Defendants' Statements Are False***

Iowa courts examine the "gist" or "sting" of a publication to determine whether it is false or "substantially untrue". *Campbell v. Quad City Times*, 547 N.E.2d 608. 510 (Iowa App. 1996) (citing *Behr v. Meredith Corp.*, 414 N.W.2d 339, 342 (Iowa 1987)). If the underlying facts are disputed, the issue of falsity is a matter for the jury. *Nelle v. WHO Television, LLC*, 342 F.Supp.3d 879, 892 (S.D. Iowa. 2018).

In this case, the defamatory "gist" is that Plaintiff conspired or colluded with his family and others to hide or cover-up a "Politically Explosive Secret": that Plaintiff's family's farm employs undocumented labor. The "sting" is that "Plaintiff was involved in, covered-up, used his office to cover up, conspired with others to conceal, or was aware of criminal wrongdoing." [*Complaint, ¶ 24 ("The Lizza Hit Piece ascribes and imputes to Plaintiff conduct, characteristics and conditions, including dishonesty, deception, lying, conspiracy, corruption, bias, lack of integrity and ethics, that would adversely affect his fitness to be a United States Congressman and/or businessperson")*].

## ii.    *Defendants' Statements Are Not Pure Opinion*

While the right of free speech provides absolute protection to statements which are "purely opinions", *Gertz*, 418 U.S. at 339, 340, statements clothed as "opinion" which imply that they are based on undisclosed, defamatory facts are not protected. *Lauderback v. American Broadcasting Companies, Inc.*, 741 F.2d 193, 195 (8th Cir. 1984). The Iowa Supreme Court recently repeated that "statements of opinion can be actionable if they imply a provably false fact, or *rely upon stated facts that are provably false*." *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018) (emphasis added) (quoting *Yates v. Iowa West Racing Ass'n*, 721 N.W.2d 762, 771 (2006)). In other words, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich v. Lorain Journal Co*, 497 U.S. 1, 18-19 (1990).

Here, Plaintiff alleges that the Lizza Hit Piece is laden with multiple provably false assertions of fact, including (a) whether Plaintiff "has a secret", (b) whether Plaintiff was involved in the operations of his family's dairy farm in Iowa, (c) whether Plaintiff knew that his family's farm employed "undocumented labor", and (d) whether Plaintiff conspired with anyone in a "secret" effort to cover-up illegal activity. In truth, as stated in his complaint, there was no "secret". Further, Plaintiff does not own an interest in his family's dairy farm in Iowa, never has, and is not involved in any way in its operations. And, Plaintiff, the "head of the House Intelligence Committee and one of President Trump's biggest defenders", had no knowledge of who the dairy farm hired and,

therefore, could not and was not involved in any conspiracy or cover-up of the "Politically Explosive Secret". [*Complaint, ¶ 20*].

### iii. <u>*Defendants' Statements Were Made With Actual Malice*</u>

In paragraphs 21 and 32 of his complaint, Plaintiff states multiple inter-related reasons why the Defendants' statements were made with "actual malice". Actual malice is a question of fact for the Jury. *See, e.g., Barreca v. Nickolas*, 683 N.W.2d 111, 123 (Iowa 2004) (actual malice is "ordinarily a matter for the jury"). It is a fact-intensive inquiry that cannot be resolved on a motion to dismiss under Rule 12(b)(6). Significantly, the issue cannot be resolved by looking at any one factor alone. In *Harte-Hanks Communications, Inc. v. Connaughton*, for example, the United States Supreme Court held that the "failure to investigate will not **alone** support a finding of actual malice." 491 U.S. 657, 692 (1989) (emphasis added); *see Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 5 (W.D. Va. 2016) ("Although failure to adequately investigate, a departure from journalistic standards, or ill will or intent to injure will not singularly provide evidence of actual malice, the court believes that proof of all three is sufficient to create a genuine issue of material fact. Plaintiff, however, goes further. Pointing to Erdely's own reporting notes [obtained in discovery], plaintiff also forecasts evidence that could lead a reasonable jury to find that Erdely had 'obvious reasons to doubt [Jackie's] veracity' or 'entertained serious doubts as to the truth of [her] publication.'").

Under familiar principles, the following allegations in Plaintiff's complaint must be accepted as true:

1.      Defendants "violated their own code or standards of ethics and abandoned all journalistic standards in writing, editing and publishing the Lizza Hit Piece." *See*

13

*Gilmore v. Jones*, 37 F.Supp.3d 630, 671 (W.D. Va. 2019) (a defendant's failure to observe journalistic standards, although not determinative, is relevant to the actual malice inquiry).

2.      Defendants "conceived a story line in advance of any investigation and then consciously set out to make the evidence conform to the preconceived story.  Lizza and Hearst pursued and regurgitated the preconceived narrative that they knew to be false. *See, e.g., Eramo*, 2016 WL 5234688, at * 5 (W.D. Va. 2016) ("evidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.") (quoting *Harris v. City of Seattle*, 152 Fed.Appx. 565, 568 (9th Cir. 2005)).

3.      Defendants manufactured the false statements out of whole cloth. *See Goodman v. Performance Contractors, Inc.*, 363 F.Supp.3d 946, 970-971 (N.D. Iowa) ("summary judgment is not appropriate on the basis of qualified privilege if there is a question of fact as to whether the speaker manufactured grounds for discharging the plaintiff"); *see also St. Anant v. Thompson*, 390 U.S. 727 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.  Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation").

4.      Defendants "published the false statements out of a desire to embarrass Plaintiff, undermine confidence in his abilities to act as Chairman of the House

Intelligence Committee, and influence the 2018 Congressional election."[2] *See, e.g., Poulston v Rock*, 251 Va. 254, 263, 476 S.E.2d 479 (1996) ("It is uncontroverted that Rock was out to 'get' Poulston and sought to accomplish this end by interfering with Poulston's employment and reputation.").

5.     "The Lizza Hit Piece evinces extreme bias, ill-will and a desire to hurt Plaintiff." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 315 fn 19 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice."); *id. AdvanFort Co. v. Maritime Executive, LLC*, 2015 WL 4603090, at * 8 (E.D. Va. 2015) ("If, in fact, TME knew of the bad blood between Plaintiffs and Defendant Cartner, it would have indeed had obvious reason to doubt Cartner's veracity and the accuracy of his statements given the blatantly hostile and sarcastic tone of the Article.").

6.     "Lizza and Hearst published the false defamatory statements out of a desire to gain notoriety, increase advertising and other revenues for Hearst, with reckless disregard for the consequences."

7.     "Lizza and Hearst relied on sources, including anonymous and unnamed persons, they knew were wholly unreliable and had an axe to grind against Plaintiff." *Barreca*, 683 N.W.2d at 123 ("In this case, Nickolas published the allegation to the public with no basis other than an anonymous and uncorroborated tip").

8.     Defendants "repeated, reiterated and republished the Lizza Hit Piece out of a desire to injure Plaintiff and to spread the poison in the pool." *Bertrand v. Mullin*, 846 N.W.2d 884, 900-901 (Iowa 2014) ("We reiterate that the actual malice element does

---

[2]     Defendants published the Lizza Hit Piece 38 days before the 2018 Congressional Election. They were clearly trying to harm Plaintiff's reputation ahead of the election.

not allow a defendant to purposefully avoid discovering the truth. Moreover, we acknowledge actual malice could be derived from the actions of a candidate in continuing to run an advertisement after being informed of a false implication in the advertisement. It goes without saying that a speaker who repeats a defamatory statement after being informed of the statement's unambiguous falsity does so at the peril of generating an inference of actual malice"); *Jones*, 836 N.W.2d at 149 (actual malice made be shown by "excessive publication"); *Eramo*, 2016 WL 5234688, at * 5 ("Repetition of another's words does not release one of responsibility if the repeater knows that the words are false or inherently improbable, or there are obvious reasons to doubt the veracity of the person quoted.") (quoting *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2nd Cir. 1969), *cert. denied*, 396 U.S. 1049 (1970) (stating that repetition is one factor that may be probative of actual malice)).

In sum, at this stage of the proceeding, when the Plaintiff's complaint is viewed in the light most favorable to him and when all reasonable inferences are drawn in his favor, as they are required to be, Defendants cannot make the "strong showing" that Plaintiff's claims are "unmeritorious".[3]

## 2. ***Consideration Of Other Identified Factors***

Consideration of other factors further confirms that a stay of discovery is wholly inappropriate in this case.

---

[3] Under Iowa law, "[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful." Civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy, in this case defamation, that give rise to the action. Thus, conspiracy is merely an avenue for imposing vicarious liability on a party for the wrongful conduct of another with whom the party has acted in concert. *See, e.g., Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 232-233 (Iowa 1977).

Defendants' reliance on *Blankenship v. Napolitano* is misplaced. *Blankenship* involved claims of defamation, false light and conspiracy levelled against "more than one-hundred individual and organizational defendants across the United States". Twenty-two (22) motions to dismiss were filed by defendants, with several defendants joining in a single motion. These motions moved for dismissal of the named defendants under Rule 12(b)(2) for lack of personal jurisdiction and/or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. As the filing of the motions, the parties in *Blankenship* had not held their Rule 26(f) conference. In their motion to stay discovery, the defendants in *Blankenship* argued that "the sheer number of defendants in different geographic locations makes coordinating discovery in this matter a 'remarkably complicated endeavor' and 'costly and burdensome.'" The District Court agreed with the defendants: "discovery at this stage with fifty-two (52) remaining named defendants, forty-six (46) of whom have filed motions to dismiss, makes even the initial stage of conducting the Rule 26(f) meeting a 'logistically challenging and highly burdensome exercise.'" 2019 WL 6173530, at * 1-4 (S.D. W. Va. 2019).

This case is not at all like *Blankenship*. Here, Defendants acknowledge that the Court has personal jurisdiction over them and that this is a proper venue for the trial of Plaintiffs' claims. Unlike *Blankenship*, the parties have conducted their Rule 26(f) conference and exchanged initial disclosures. There are only two Defendants in this case. They have filed a joint motion to dismiss, which challenges the sufficiency of the allegations in Plaintiff's complaint. Plaintiff's discovery is neither overbroad nor burdensome, as it is focused on the Defendants' reporting of the story at issue. This is not an overly complex action. Although it is convenient for the Defendants to talk about

17

the "conservation of judicial resources", the Court must balance the real harm to Plaintiff in delaying discovery against the mere "possibility" that the Defendants' motion will dispose of the case. The public interest, embodied in the Federal Rules, is "speedy" justice – not "justice delayed". Motions to stay discovery are disfavored because they grind justice to a halt. This benefits no one, but the Defendants.

## CONCLUSION

Counsel for the Defendants make a number of highly impertinent, unprofessional and untrue statements in the brief in support of motion to stay, which illustrates the weakness of Defendants' position. For instance, counsel calls Plaintiff a "serial filer of defamation cases in Virginia, and now Iowa, seeking to squash any criticism or inquiry into his background, beliefs, or record as an elected official, and somehow each incrementally harming his reputation in amounts such as $75,000,000 and $435,350,000." [*ECF No. 17-1, p. 5*].[4]

Rogue media defendants, like those in this case, are not above the law. The First Amendment affords them no protection whatsoever. In *Rosenblatt v. Baer*, the United States Supreme Court expressly affirmed that:

---

[4] The *ad damnum* claimed in this action is justified by the extreme breadth of the publications and nature of the harm inflicted upon Plaintiff, especially through Defendants' concerted use of social media. Importantly, the *ad damnum* in this action and unrelated cases filed by Plaintiff is in line with sums claimed by other plaintiffs in cases filed across the country. [*See, e.g., Sandmann v. Cable News Network*, Case 2:19-cv-00031-WOB-CJS (E.D. Ky) (Document 1 – Complaint, p. 57) ("Nicholas respectfully prays (a) That judgment be entered against CNN for substantial compensatory damages in an amount not less than Seventy-Five Million Dollars ($75,000,000.00); That judgment be entered against CNN for punitive damages in an amount not less than Two Hundred Million Dollars ($200,000,000.00); *Gabbard v. Clinton*, Case 1:20-cv-00558-VEC (S.D.N.Y.) (Document 1 – Complaint, ¶ 59) ("The Defamatory Statements were a substantial factor in causing Tulsi to suffer economic loss, in an amount to be proven at trial. At present, actual damages are estimated at $50 million—and counting")].

"'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.' The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty … The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored … Surely if the 1950's taught us anything, they taught us that the poisonous atmosphere of the easy lie can infect and degrade a whole society."

383 U.S. 75, 92-93 (1966). The damage caused to a person's reputation by "journalists" who pursue political agendas is well-known, even in Virginia:

"A slander is preserved in no fixed or permanent form. It ordinarily soon fades out and is forgotten like the sound that carries it. But one who publishes a libel in a newspaper or pamphlet which circulates among many people, or even in a private letter, thereby places it in permanent form where it will be more likely to continue in existence and to be read by many people, and where he causes it to be published in a newspaper or magazine he thereby evidences his intention that the readers shall read it, so that the natural and probable effect of publishing a libel is far more permanent, extensive and injurious to the victim than the mere speaking of the words it contains to one or more persons."

*James v. Powell*, 154 Va. 96, 113-114, 152 S.E 539 (1930) (quoting *Maytag v. Cummins*, 260 F. 74, 80 (8th Cir. 1919)).

Words, like those employed by the Defendants in this case, tending to scandalize a public figure are, in the words of William Blackstone, "reputed more highly injurious than when spoken of a private man". *McKee v. Cosby*, 139 S.Ct. at 679 (Thomas, J., concurring) (quoting 3 W. Blackstone, Commentaries * 124)). At common law, libel of a public official was deemed an offense "'most dangerous to the people, and deserv[ing of] punishment, because the people may be deceived and reject the best citizens to their great injury, and it may be to the loss of their liberties.'" *Id.* (quoting M. Newell, Defamation, Libel and Slander § 533 (1890) (quoting *Commonwealth v. Clap*, 4 Mass. 163, 169-170 (1808)); *accord White* v. *Nicholls*, 3 How. 266, 290 (1845)).

For the reasons stated above, Plaintiff respectfully requests the Court to deny Defendants' motion to stay discovery.


DATED:          January 27, 2020


                    DEVIN G. NUNES


                    By:    /s/ Steven S. Biss
                           Steven S. Biss (VSB # 32972)
                           300 West Main Street, Suite 102
                           Charlottesville, Virginia 22903
                           Telephone:    (804) 501-8272
                           Facsimile:    (202) 318-4098
                           Email:        stevenbiss@earthlink.net
                           (*Admitted Pro Hac Vice*)

                           Joseph M. Feller, Esquire
                           (Iowa State Bar No. AT0002512)
                           Koopman, Kennedy & Feller
                           823 3rd Avenue
                           Sibley, Iowa 51249
                           Telephone:    (712) 754-4654
                           Facsimile:    (712) 754-2507
                           jfeller@kkfellerlaw.com

                           *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2020 a copy of the foregoing was served electronically in PDF upon counsel for the Defendants.

By:  */s/ Steven S. Biss*

    Steven S. Biss (VSB # 32972)
    300 West Main Street, Suite 102
    Charlottesville, Virginia 22903
    Telephone:    (804) 501-8272
    Facsimile:    (202) 318-4098
    Email:    stevenbiss@earthlink.net
    (*Admitted Pro Hac Vice*)

    Joseph M. Feller, Esquire
    (Iowa State Bar No. AT0002512)
    Koopman, Kennedy & Feller
    823 3rd Avenue
    Sibley, Iowa 51249
    Telephone:    (712) 754-4654
    Facsimile:    (712) 754-2507
    jfeller@kkfellerlaw.com

    *Counsel for the Plaintiff*