## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### Western Division

| | | |
|---|---|---|
| DEVIN G. NUNES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. C19-4064-CJW-MAR |
| | ) | |
| | ) | **TRIAL BY JURY** |
| RYAN LIZZA | ) | **IS DEMANDED** |
| | ) | |
| -and- | ) | |
| | ) | |
| HEARST MAGAZINE MEDIA, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# <u>AMENDED COMPLAINT</u>

Plaintiff, Devin G. Nunes, by counsel, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure (the "Rules"), files the following Amended Complaint against defendants, Ryan Lizza ("Lizza") and Hearst Magazine Media, Inc., the publisher of *Esquire* magazine ("Hearst" or "*Esquire*"), jointly and severally.

Plaintiff seeks (a) compensatory damages and punitive damages in the sum of **$77,500,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from the date of the commencement of this action until the date of Judgment, and (c) costs incurred – arising out of the Defendants' defamation and common law conspiracy.

In support of his claims, Plaintiff states the following facts:

1

# I.  INTRODUCTION

1.     Lizza is a high-profile, left-wing political journalist, well-known for his extreme bias towards Plaintiff.[1]  Lizza was a fixture of the main stream media until December 2017, when his then-employer – *The New Yorker* magazine – summarily severed all ties and publicly terminated Lizza because of "improper sexual conduct". [https://www.nytimes.com/2017/12/11/business/ryan-lizza-sexual-misconduct.html; https://www.wigdorlaw.com/ryan-lizza-sexual-misconduct/].  Lizza's name was also included in the "Shitty Media Men" list that circulated in response to allegations published about Harvey Weinstein. [https://www.politico.com/story/2017/12/11/new-yorker-fires-ryan-lizza-sexual-misconduct-290504].[2]  In June 2018, *Esquire* announced that it had hired Lizza as the magazine's chief political correspondent. [https://splinternews.com/this-is-how-easy-it-is-for-a-man-accused-of-sexual-mis-1826675779].  Lizza only lasted a short time at *Esquire*.  During his brief tenure, however, he physically traveled to Sibley, Iowa, where he lurked around Plaintiff's grammar-school aged nieces and stalked members of Plaintiff's family, reducing Plaintiff's sister-in-law to tears.  [https://thefederalist.com/2018/10/02/ryan-lizzas-hit-piece-on-devin-nunes-extended-family-is-deeply-flawed/].

---

[1]     [*See, e.g.*, https://www.newyorker.com/news/news-desk/how-the-white-house-and-republicans-blew-up-the-house-russia-investigation; https://twitter.com/RyanLizza/status/987185831642304515].

[2]     The disturbing accounts of Lizza's misconduct, whether true or untrue, were available to anyone who googled his name in September 2018.  When members of Plaintiff's family saw Lizza driving around the neighborhood acting strangely, they googled his name and were very alarmed by the accusations of "improper sexual conduct".  In the article at issue in this case, Lizza falsely claimed that he was being threatened and intimidated.  In truth, it was his bizarre behavior that frightened townsfolk in Sibley and caused him to be followed.

2.     On September 30, 2018, Lizza and *Esquire* knowingly and recklessly injured Plaintiff's reputation with a scandalous hit piece that intentionally disparaged Plaintiff and his family, accused Plaintiff of dishonesty, deceit, conspiracy, and unethical practices, and severely impugned his integrity and skills as a United States Congressman. Lizza and *Esquire* published the hit piece online and, acting in concert with others, targeted Plaintiff via social media. The false and defamatory statements were foreseeably republished millions of times, including in thousands of print and digital magazines distributed and sold in Iowa, read by Iowans in Iowa.

3.     In this case, Plaintiff seeks money damages for the insult, pain, embarrassment, humiliation, mental suffering, anguish, and injury to his good name and professional reputation in Iowa and elsewhere, caused by the Defendants' defamation and excessive republication. The Defendants published click-bait, sensationalist, egregious misstatements to injure Plaintiff, to sell magazines for profit and publicity, and, in Lizza's case, to improve his standing and distract readers from his negative image and reputed history of "improper sexual conduct". The Defendants' had an axe to grind against Plaintiff, and wrote the hit piece in order to accomplish a nefarious purpose. Defendants' misconduct exemplifies the very worst of modern "journalism". They should be punished for their unlawful actions and a very strong message needs to be sent to prevent other so-called "journalists" from acting in a similar way.

## II.  PARTIES

4.     Plaintiff, Devin G. Nunes ("Plaintiff"), is a citizen of California. Born October 1, 1973, Plaintiff has served in the United States House of Representatives since 2003. He and his wife have three daughters. Plaintiff is the author of the book, *Restoring*

*the Republic*, which was published in September 2010. Plaintiff's family is of Portuguese descent, having emigrated from the Azores to California. From childhood, he worked on a farm that his family operated in Tulare County, California, for three generations. Plaintiff raised cattle as a teenager, used his savings to begin a harvesting business, and then bought his own farmland with his brother. Plaintiff's parents, brother and sister-in-law all live and work in Sibley, Iowa. They have operated a dairy farm in Sibley for more than a decade. Plaintiff currently serves as Ranking Member of the House Permanent Select Committee on Intelligence, having been appointed to the Committee in the 112th Congress and serving as Committee Chairman during the 114th and 115th Congresses. Congressman Nunes has traveled extensively to war zones to meet with soldiers and examine first-hand their status. As a member of the House Permanent Select Committee on Intelligence, he participates in oversight of the U.S. national security apparatus, including the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government. He authored the Hubbard Act of 2008 (H.R. 5825), which was named in honor of the Hubbard brothers of California – Jared, Nathan, and Jason. Jared and Nathan lost their lives serving in Iraq. Jason was discharged as a sole survivor, but was denied separation benefits upon leaving the Army. The Hubbard Act provides sole survivors with numerous benefits that were already offered to other soldiers honorably discharged. It relieves sole survivors from repaying any portion of their enlistment bonus; entitles them to the educational benefits of the Montgomery GI Bill; and allows them to receive separation pay and transitional healthcare coverage. [https://nunes.house.gov/about/; https://www.devinnunes.com/bio].

5.     Plaintiff's career as a United States Congressman is distinguished by his honor, dedication and service to his constituents and his country, his honesty, integrity, ethics, and reputation for truthfulness and veracity.   The qualities disparaged by Defendants – Plaintiff's honesty, veracity, integrity, ethics, judgment and performance as United States Congressman – are particularly valuable to Plaintiff and are absolutely necessary in the conduct of public office, including Plaintiff's then-role as Chairman of the House Intelligence Committee.

6.     Defendant, Lizza, is, upon information and belief, a citizen of Virginia or the District of Columbia.  Lizza wrote the hit piece at issue in this action for Hearst for publication in *Esquire* magazine.

7.     Defendant, Hearst, is a Delaware corporation.   Its headquarters and principal place of business is New York.  Hearst publishes *Esquire* magazine.  Hearst is a unit of Hearst Corporation, a global media, information and services company.  Hearst's print and digital assets reach 155 million readers and site visitors each month – two-thirds of all millennials, and over 80% of Gen Z and millennial women in the country.  *Esquire* magazine has a total print circulation of 759,922, 97% of which are subscriptions. [http://www.esquiremediakit.com/r5/home.asp].  Upon information and belief, Hearst has hundreds of thousands of print and digital subscribers and viewers who live and work in Iowa.

## III.  JURISDICTION AND VENUE

8.     The United States District Court for the Northern District of Iowa has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The parties are

citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees.

9. The Defendants are subject to specific personal jurisdiction in Iowa. They transact substantial business in Iowa and committed multiple acts of defamation in whole or in part in Iowa. They have minimum contacts with Iowa such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution. Defendants purposefully availed themselves of the privilege of doing business in Iowa. Defendants' defamation was purposefully directed at Iowa. Plaintiff's claims arise directly from and specifically relate to Defendants' publication of false and defamatory statements in Iowa. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

10. Venue is proper in the Western Division of the United States District Court for the Northern District of Iowa. A substantial part of the events giving rise to the claims stated in this action, including injury to Plaintiffs' name and reputation, occurred in Osceola County within the Western Division of the United States District Court for the Northern District of Iowa.

## IV.  STATEMENT OF THE FACTS

11. On September 30, 2018, Hearst published an article in *Esquire* magazine written by Lizza entitled "**Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret**".  [https://www.esquire.com/news-politics/a23471864/devin-nunes-family-farm-iowa-california/ (the "Lizza Hit Piece")].

12. Hearst published the Lizza Hit Piece online, in print and via social media.

6

13.     The strong defamatory gist and false implication of the Lizza Hit Piece is that Plaintiff conspired or colluded with his family and with others to hide or cover-up a "Politically Explosive Secret": that Plaintiff's family's dairy farm, NuStar Farms, employs undocumented labor.

14.     The Lizza Hit Piece was a deeply flawed and desperate attempt by the Defendants (a) to intentionally target Plaintiff and disparage him approximately one month ahead of the November 2018 Congressional election, (b) to undermine confidence in Plaintiff and interfere with his official duties as Chairman of the House Intelligence Committee to investigate Russian interference in the 2016 Presidential election, and (c) to retaliate against Plaintiff for exposing corruption, including, without limitation, the DNC and Clinton campaign's role in funding the salacious "Steele dossier". [https://www.breitbart.com/politics/2018/10/01/devin-nunes-parents-stalked-iowa-move/; https://twitter.com/TomFitton/status/1047176155118411777].

15.     From start to finish, the Lizza Hit Piece is a legion of lies and false implications. The click-bait headline falsely states or implies that Plaintiff owns an interest in "Devin Nunes's Family Farm" in Sibley, Iowa, and that Plaintiff was involved in hiding a "Politically Explosive Secret". In truth, there is no "secret". In truth, Plaintiff does not own an interest in his family's dairy farm in Iowa, never has, and is not involved in any way in its operations. Plaintiff, the "head of the House Intelligence Committee and one of President Trump's biggest defenders", had no knowledge of who the dairy farm hired and, therefore, could not and was not involved in any conspiracy or cover-up of the "Politically Explosive Secret". The Lizza Hit Piece is laden with false factual statements and connotations.

16.     The false claim that Plaintiff "conspired" with his own family, Congressman King, and an Iowa dairy publication to "hide" his family's "secret" is utterly unsupported by any evidence.  It is a malicious lie made out of whole cloth that spread like wildfire throughout mainstream media and on social media as a result of publication of the Lizza Hit Piece.

17.     The Lizza Hit Piece falsely portrays Lizza as a hard-working reporter earnestly investigating a real story on the ground in Iowa, being stalked and intimidated by Plaintiff's family.  In truth, as was reported almost immediately after publication of the Lizza Hit Piece, while he was in Sibley, Lizza stalked Plaintiff's grammar-school aged nieces, caused Plaintiff's family to believe he was a sexual predator cruising the local neighborhood for victims, frightened a family member to tears, and exploited a grieving mother.  Lizza's false portrayal underscores that he was out to get Plaintiff.

18.     Viewed in context and as a whole, the Lizza Hit Piece, directly and/or by implication, makes the following false and defamatory statements about Plaintiff:

    a.      "Devin Nunes has a secret".

    c.      Plaintiff "used the Intelligence Committee to spin a baroque theory about alleged surveillance of the Trump campaign that began with a made-up Trump tweet about how 'Obama had my 'wires tapped' in Trump Tower'".[3]

---

[3]     Lizza's statements are knowingly false for two (2) reasons.  First, following President Trump's tweet, Nunes immediately and publicly stated there was no evidence of a wiretap in Trump Tower, even if there was legitimate concern about other surveillance.     https://thefederalist.com/2017/03/23/heres-why-nunes-obama-spying-revelations-are-such-a-big-deal/].  Second, there is no dispute that there was surveillance of the Trump campaign.  It was laid out in great detail throughout both the mainstream media and the conservative press, which widely reported that Trump associates were targeted by FBI informants, FISA wiretaps, national security letters, and more.  Based on his review of the public record, Lizza knew his statements about Plaintiff were false.

b.      Plaintiff used his position as Chairman of the House Intelligence Committee as a "battering ram to discredit the Russia investigation and protect Donald Trump at all costs, even if it means shredding his own reputation and the independence of the historically nonpartisan committee in the process".

d.      "Devin; his brother, Anthony III; and his parents, Anthony Jr. and Toni Dian, sold their California farmland in 2006.  Anthony Jr. and Toni Dian, who has also been the treasurer of every one of Devin's campaigns since 2001, used their cash from the sale to buy a dairy eighteen hundred miles away in Sibley, a small town in northwest Iowa where they—as well as Anthony III, Devin's only sibling, and his wife, Lori—have lived since 2007 … [W]hat is strange is that the family has apparently tried to conceal the move from the public—for more than a decade".

e.      "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?"

f.      "Other dairy farmers in the area helped me understand why the Nunes family might be so secretive about the farm:  Midwestern diaries tend to run on undocumented labor".

g.      "'They are immigrants and Devin is a strong supporter of Mr. Trump, and Mr. Trump wants to shut down all of the immigration, and here is his family benefiting from immigrant labor', documented or not".

h.      "Devin Nunes was the public figure at the heart of this, and he had no financial interest in his parents' Iowa dairy operation.  On the other hand, he and his

parents seemed to have concealed basic facts about the family's move to Iowa. It was suspicious. And his mom, who co-owns the Sibley dairy, is also the treasurer of his campaign".

i.     "There was no doubt about why I was being followed. According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor. One source, who was deeply connected in the local Hispanic community, had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs … asserting that the farm was aware of their status".

j.     "I laid out the facts I had uncovered in Sibley, including the intimidation of sources and the Devin Nunes angle, and asked him for advice. 'I'd tell that story,' he said. He paused and added, 'We're a sanctuary church, if you need a place to stay. You're safe here!'"

k.     "Is it possible the Nuneses have nothing to be seriously concerned about? Of course, but I never got the chance to ask because Anthony Jr. and Representative Nunes did not respond to numerous requests for interviews."[4]

---

[4]     The Lizza Hit Piece was sensational and scandalous. Lizza even exploited the death of Brenda Hoyer's son to promote his false narrative about Plaintiff and his family. Lizza wrote:

> "Then she told me something that knocked the wind out of me: 'My son recently took his life.' It came out of nowhere, and I barely knew how to respond. His name was Bailey. He was seventeen and he had died thirteen days ago. This was the first day the coffee shop had been open since his death. I noticed a Bible verse in chalk behind the counter: 'Do not fear for I have redeemed you. I have summoned you by name. You are mine.' The Lantern, I later learned, was actually a ministry that, according to its website, provides 'a safe place where everyone is welcome.' I liked it there and decided to make it my office while I was in Sibley".

19.     The Lizza Hit Piece ascribes and imputes to Plaintiff conduct, characteristics and conditions, including dishonesty, deception, lying, conspiracy, corruption, abuse of power, bias, lack of integrity and ethics, that would adversely affect his fitness to be a United States Congressman and/or businessperson.  The Lizza Hit Piece directly implies and insinuates that Plaintiff was involved in, covered-up, used his office to cover up, conspired with others to conceal, or was aware of criminal wrongdoing.

20.     With reckless disregard for the consequences of their actions, the Defendants excessively published the Lizza Hit Piece millions of times.  Not content with their original online and print publications, the Defendants employed social media as a weapon to amplify the false narrative about Plaintiff.

21.     At all times relevant to this action, Lizza had a Twitter account that he used to conduct his business on behalf of *Esquire*:



22.     On September 30, 2018, Lizza republished the Lizza Hit Piece to a new target audience – his 230,000+ followers on Twitter:



[https://twitter.com/ryanlizza/status/1046543162964156416?lang=en].

23.     On multiple occasions, *Esquire* republished the Lizza Hit Piece to its 400,000+ Twitter followers. [https://twitter.com/esquire/status/1046550720676327424; https://twitter.com/esquire/status/1046754438365491202]. On March 28, 2019, *Esquire*

gratuitously republished the Lizza Hit Piece together with the following false and
defamatory statement:



[https://twitter.com/esquire/status/1111272460299763712].  *Esquire* invited its 400,000+

followers to click the hyperlink and read the Lizza Hit Piece.

24.     On September 30, 2018, Lizza's girlfriend, Olivia Nuzzi ("Nuzzi"), a correspondent with *New York* magazine, tweeted the Lizza Hit Piece to her 200,000 Twitter followers:



[https://twitter.com/Olivianuzzi/status/1046551283891621889].   Acting in concert with Lizza, Nuzzi coordinated and heavily promoted Lizza's smear campaign, including his

appearance on CNN. Nuzzi confirmed that the Lizza Hit Piece was intended to be of, concerning and "about Devin Nunes":



[https://twitter.com/Olivianuzzi/status/1046810204724187148].

25. On October 1, 2018, the then-editor-in-chief of *Esquire*, Jay Fielden ("Fielden"), combined and acted together with Lizza and Nuzzi to further advertise the Lizza Hit Piece and Lizza's appearance on CNN to spread the defamation to CNN's

millions of viewers.  Fielden published additional false and defamatory statements about

Plaintiff:



Jay Fielden ✔
@JayFielden

Tune in to @CNN at 1:45 to hear more about @RyanLizza
's Coen-Brothers-esque odyssey tracking down why
@RepDevinNunes hasn't exactly been honest about
where his family's 2,000 dairy cows call home.
#strangerthanfiction esquire.com/news-politics/... via
@Esquire

Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret
Why did Devin Nunes's parents and brother cover their tracks after quietly
moving their family farm to Iowa? Ryan Lizza went to Iowa in search of the trut…
🔗 esquire.com

10:40 AM · Oct 1, 2018 · Twitter Web Client

[https://twitter.com/JayFielden/status/1046771891040587777].

26.     Between September 30, 2018 and the present, Lizza, Nuzzi, Fielden and

*Esquire's* combined 800,000+ Twitter followers and other third-parties republished the

Lizza Hit Piece millions of times.

27.     The Lizza Hit Piece was republished by third-parties millions of times on

the Internet and via social media, *e.g.*:

https://www.rawstory.com/2018/09/one-devin-nunes-family-sold-farms-moved-iowa-decade-ago-still-calls-farmer/
("**All but one of Devin Nunes' family sold their farms and moved to Iowa over a decade ago — why are they hiding?**");

https://www.motherjones.com/politics/2018/10/devin-nunes-family-farm-california/
("**What an Explosive Story About Devin Nunes' Family Farm Means for His High-Profile House Race**");

https://fresnocountydemocrats.org/nunes-iowa-family-farm-exposed/
("It is disgusting that Devin Nunes has been lying for years about his family farm, pretending he is one of us.  Devin has shown once again that he's left the Valley and the values we hold dear behind just to make a profit.  His family moving their farm to Iowa and lying to Californians to protect Devin's political career is just the latest and most heinous example");

https://www.washingtonpost.com/politics/2018/10/02/just-how-politically-explosive-is-devin-nunes-secret-esquire-uncovered/
("**Just how 'politically explosive' is the Devin Nunes secret that Esquire uncovered?**");

https://www.salon.com/2018/10/01/devin-nunes-family-farm-may-use-undocumented-immigrant-labor/
("**Devin Nunes' family farm likely using undocumented labor** - The reporter who covered the story was tailed by members of Nunes' family as he conducted his interviews");

https://www.bloomberg.com/opinion/articles/2018-10-04/dairy-farmers-like-devin-nunes-flee-california-for-the-midwest
("**Devin Nunes Isn't the Only Dairy Farmer Souring On California**");

https://twitter.com/kylegriffin1/status/1046776772853944320
("Devin Nunes' family secretly relocated their dairy farm from California to Iowa more than a decade ago.  The farm reportedly relies heavily on the work of undocumented immigrants, according to Ryan Lizza in Esquire");

17

https://twitter.com/GlennThrush/status/1046819941100507136
("What's impressive about this amazing @RyanLizza story is that he doesn't caricature Nunes' positions on immigration to better 'peg' the story. He just lets the ambiguities and ironies pile up like dishes in a sink");

https://twitter.com/ikebarinholtz/status/1046567609930579970
("This is BONKERS and Devin Nunes simply has to go. Bravo @RyanLizza");

https://twitter.com/AynRandPaulRyan/status/1046750851874734082
("'Things got weird' should be the Republican's 2020 campaign slogan. Add one more scandal to the GOP #CultureOfCorruption");

https://twitter.com/evepeyser/status/1046834244880928770
("check out @RyanLizza's investigation into Devin Nunes' secret family dairy farm in Iowa");

https://twitter.com/SaysHummingbird/status/1047143285196828673
("Devin Nunes has a secret");

https://twitter.com/awprokop/status/1046564541054808064
("Come for Devin Nunes being deceptive about his biography, stay for Nunes's parents, brother, and sister-in-law *following @RyanLizza around* as he reports in Iowa");

https://twitter.com/TrueFactsStated/status/1158447685571174400
("Devin Nunes's Family Farm Moved to Iowa, Employs Undocumented Workers").

The republications caused by Lizza and *Esquire* continued unabated throughout 2019 and to this day, *e.g.*:

https://twitter.com/MsToucanSami/status/1112163714264899585

https://twitter.com/CortexDevin/status/1107982056447971328

https://twitter.com/deangloster/status/1115471152342650880

https://twitter.com/jackhutton/status/1157681338771574784

https://twitter.com/Ann_Ashford/status/1197718918489620481

https://twitter.com/kateirby/status/1211705436191240193

https://twitter.com/52Katydid/status/1203886750965227520

https://twitter.com/wsunmu/status/1199472934139678721

https://twitter.com/MarleyKD/status/1194249674640646150

https://twitter.com/TheGimpyNinja/status/1198606878395097088

https://twitter.com/tRumpNitemare/status/1216543054380916736

https://twitter.com/MinnesotaCitiz1/status/1223750573314494465

28.    On November 20, 2019, Lizza brazenly and gratuitously republished the

Lizza Hit Piece to his now 242,000 Twitter followers:



[https://twitter.com/RyanLizza/status/1197322014572371969]. Lizza's tweet has been republished over 3,900 times to date and has been liked 8,030 times.

29.     The Lizza Hit Piece was knowingly and intentionally flawed. Lizza came to Sibley with a preconceived storyline. He fabricated a "secret" where none existed. [*See, e.g.,* https://thefederalist.com/2018/10/02/ryan-lizzas-hit-piece-on-devin-nunes-extended-family-is-deeply-flawed/ ("It turns out that Nunes doesn't have a secret, that he's not a hypocrite on immigration policy, and that the Iowans Lizza met were wary of him slowly driving around town while children were at play because they discovered Lizza had recently been fired from his job for sexual misconduct … Since it's beyond creepy to be lurking around a congressmen's young nieces and other family members, Lizza makes the case that he has a reason other than his well-established animus toward Nunes for doing so … In interviews with more than half a dozen residents of Sibley, Iowa, they told a far different story. Lizza arrived in town and began slowly driving around neighborhoods in a dark car with out of town license plates. One neighbor of the Nunes family told me he spotted the car slowly driving by a Nunes family residence. This is in a small town where children play freely, and neighbors keep an eye out for each other. He expressed his concern to the family. Another resident told me that he encountered a Nunes family member crying because she'd discovered that the man who was surveilling her house had recently been fired for sexual misconduct. With three grammar-school aged daughters, she was concerned for their safety … In conversations with other residents of the town, they say that Lizza lied or mischaracterized other interactions as well. A woman who recently experienced the tragic death of her son and who had shown hospitality to Lizza was used for "color" in the story"); *see also*

['Collateral Damage': Iowa Town Residents Angered by Esquire Hit Piece on Devin Nunes https://www.breitbart.com/politics/2018/10/01/devin-nunes-parents-stalked-iowa-move/ ("**Disgraced Reporter Ryan Lizza Stalks Devin Nunes' Parents in Iowa**"); https://www.breitbart.com/politics/2018/10/07/collateral-damage-iowa-town-residents-angered-by-esquire-hit-piece-on-devin-nunes/ ("**'Collateral Damage': Iowa Town Residents Angered by Esquire Hit Piece on Devin Nunes**")].

## COUNT I – <u>DEFAMATION</u>

30.     Plaintiff restates paragraphs 1 through 29 of this Complaint, and incorporates them herein by reference.

31.     Lizza and Hearst made and published to third-parties, including, but not limited to, Nuzzi, CNN, to advertisers, subscribers, readers, viewers and followers of *Esquire*, and to print media, mainstream media and social media, numerous false factual statements of and concerning Plaintiff.  These statements are detailed verbatim above. Lizza and Hearst's false and defamatory statements were published and republished without privilege, justification or legal excuse of any kind.  The false and defamatory statements were not published in good faith or through misinformation or mistake.  Lizza and Hearst published the words intentionally to harm Plaintiff's reputation.

32.     By publishing the Lizza Hit Piece in print magazines distributed in Iowa and throughout the United States, on the Internet and via social media such as Twitter, Lizza and Hearst knew or should have known that their false and defamatory statements about Plaintiff would be republished over and over by third-parties millions of times to Plaintiff's detriment and injury.  By tweeting the Lizza Hit Piece themselves and by encouraging others to tweet, retweet and post the Lizza Hit Piece to Twitter, Lizza and

Hearst created an unreasonable risk that the defamatory matter in the Lizza Hite Piece would be communicated by third-parties. Republication by print media, mainstream media, and via social media in 2018 and 2019 was the natural, foreseeable, reasonably expected and probable consequence of Lizza and Hearst's actions and was actually and/or presumptively authorized by Lizza and Hearst. Lizza and Hearst are liable for the republications of the false and defamatory statements by third-parties.

33. Lizza and Hearst's false statements constitute defamation *per se* or defamation *per quod*. The statements impute to Plaintiff an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment. Lizza and Hearst's statements also prejudice Plaintiff in his profession as a United States Congressman.

34. Lizza and Hearst's false statements caused Plaintiff to suffer and incur both presumed and actual damages. Lizza and Hearst's false statements caused Plaintiff to suffer loss of standing in his professional field, insult, pain, embarrassment, humiliation, and mental suffering, harm to his name and reputation, out-of-pocket loss and other actual damages.

35. Lizza and Hearst acted with actual malice and reckless disregard for the truth for the following reasons:

        a. Lizza and Hearst and their editors and publishers violated their own code or standards of ethics and abandoned all journalistic standards in writing, editing and publishing the Lizza Hit Piece. https://members.newsleaders.org/resources-ethics-hearst ("We place our readers' interests above all others, and dedicate ourselves to the principles of truthfulness, fairness and independence. We understand that the free

flow of accurate information is vital to our system of government and the foundations of our economy … The deliberate introduction of false information into our newspapers will not be tolerated"); https://www.spj.org/ethicscode.asp ("Members of the Society of Professional Journalists believe that public enlightenment is the forerunner of justice and the foundation of democracy. Ethical journalism strives to ensure the free exchange of information that is accurate, fair and thorough. An ethical journalist acts with integrity. The Society declares these four principles as the foundation of ethical journalism and encourages their use in its practice by all people in all media")].

      b.    Lizza and Hearst conceived a story line in advance of any investigation and then consciously set out to make the evidence conform to the preconceived story. Lizza and Hearst pursued and regurgitated the preconceived narrative that they knew to be false.

      c.    Lizza and Hearst manufactured statements out of whole cloth and relied on sources, including anonymous and unnamed persons, they knew were wholly unreliable and had an axe to grind against Plaintiff and his family.

      d.    The Lizza Hit Piece evinces extreme bias, ill-will and a desire to hurt Plaintiff. Lizza and *Esquire* chose to manufacture and publish false statements about Plaintiff and to use unnecessarily strong and violent language, disproportionate to the occasion. Lizza and Hearst did not act in good faith because, in the total absence of evidence, they could not have had an honest belief in the truth of their statements about Plaintiff.

e.     Lizza, Nuzzi, Hearst and their agents excessively repeated, reiterated and republished the Lizza Hit Piece out of a desire to injure Plaintiff and to spread the poison in the pool.  Over a year after the original publication, Lizza resurrected the Lizza Hit Piece for no reason other than to harm Plaintiff.

f.     Lizza and Hearst published the preconceived narrative out of a desire to embarrass Plaintiff, undermine confidence in his abilities to act as Chairman of the House Intelligence Committee, and influence the 2018 Congressional election.  Lizza and Hearst knowingly presented half-truths and sensational statements in an effort to sell magazine and online subscriptions and out of a desire to gain notoriety, increase advertising and other revenues for Hearst, with reckless disregard for the consequences.

36.     Lizza and Hearst directed false and defamatory statements at Plaintiff with the specific intent to harm Plaintiff's reputation.  They lacked reasonable grounds for any belief in the truth of their statements.  They acted with willful and wanton disregard for the rights and safety of Plaintiff.

37.     As a direct result of Lizza and Hearst's defamation, Plaintiff suffered presumed damages and actual damages, including, but not limited to, insult, pain and suffering, emotional distress and trauma, insult, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage and injury to his personal and professional reputations, loss of enjoyment of life, diminished future earning capacity, out-of-pocket expenses and costs, in the sum of $75,000,000.00 or such greater amount as is determined by the Jury.

38.     Prior to filing this action, Plaintiff gave notice to the Defendants and made a demand for retraction of the defamatory statements at issue. The Defendants have failed and/or refuse to retract or withdraw the defamatory statements.

## COUNT II – <u>COMMON LAW CONSPIRACY</u>

39.     Plaintiff restates paragraphs 1 through 38 of his Complaint, and incorporates them herein by reference.

40.     Beginning in 2018 after *Esquire* hired him and continuing through the present, Lizza combined, associated, agreed or acted in concert with Nuzzi, with agents of *Esquire*, including Fielden, with agents and employees of CNN, and with others in social media for the express purposes of promoting, publishing and republishing the Lizza Hit Piece, defaming and injuring Plaintiff, and intentionally and unlawfully impeding and interfering with his business and employment as a U.S. Congressman. In furtherance of the conspiracy and preconceived plan, Lizza engaged in a joint scheme with others the unlawful purpose of which was to injure Plaintiff's personal and professional reputations, advance the left-wing goals of Nuzzi and Hearst, interfere with Plaintiff's duties as a United States Congressman, and influence the outcome of the 2018 Congressional election.

41.     The Lizza Hit Piece posted to the Internet on September 30, 2018. Lizza coordinated publication and republication of the defamation with CNN. CNN agreed to participate in the conspiracy and spread the false statements. Within hours, CNN had cameras on the ground in both Iowa and California at Plaintiff's family's farms seeking comment.

42.     Lizza acted intentionally, purposefully, without lawful justification, and with the express knowledge that he and his confederates were defaming Plaintiff and impugning his character.  As evidenced by their concerted action online and via Twitter, Lizza and Nuzzi acted with the express and malicious intent to cause Plaintiff permanent harm.

43.     Lizza's actions constitute a conspiracy at common law.

44.     As a direct result of Lizza's willful misconduct, Plaintiff suffered actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, mental suffering, injury to his reputation, special damages, costs, and other out-of-pocket expenses, in the sum of $75,000,000.00 or such greater amount as is determined by the Jury.


Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession. Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of Lizza, Nuzzi, Fielden, Hearst, CNN and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves his right to amend this Complaint upon discovery of additional instances of the Defendants' wrongdoing.


**<u>CONCLUSION AND REQUEST FOR RELIEF</u>**

WHEREFORE, Plaintiff, Devin G. Nunes, respectfully requests the Court to enter Judgment against Lizza and Hearst, jointly and severally, as follows:

A.     Compensatory damages in the amount of $75,000,000.00 or such greater amount as is determined by the Jury;

B.     Punitive damages in the amount of $2,500,000.00 or the maximum amount allowed by Iowa law;

C.     Prejudgment interest from September 30, 2019 until the date Judgment is entered at the maximum rate allowed by law;

D.     Postjudgment interest at the maximum rate allowed by law;

E.     Costs and such other relief as is just and proper.


**TRIAL BY JURY IS DEMANDED**


DATED:          February 3, 2020


Signature of Counsel on Next Page

DEVIN G. NUNES

By: */s/ Steven S. Biss*
    Steven S. Biss (VSB # 32972)
    300 West Main Street, Suite 102
    Charlottesville, Virginia 22903
    Telephone:    (804) 501-8272
    Facsimile:    (202) 318-4098
    Email:        stevenbiss@earthlink.net
    (*Admitted Pro Hac Vice*)

    Joseph M. Feller, Esquire
    (Iowa State Bar No. AT0002512)
    Koopman, Kennedy & Feller
    823 3rd Avenue
    Sibley, Iowa 51249
    Telephone:    (712) 754-4654
    Facsimile:    (712) 754-2507
    jfeller@kkfellerlaw.com

    *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: _/s/ Steven S. Biss_
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:     (804) 501-8272
Facsimile:     (202) 318-4098
Email:         stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Joseph M. Feller, Esquire
(Iowa State Bar No. AT0002512)
Koopman, Kennedy & Feller
823 3rd Avenue
Sibley, Iowa 51249
Telephone:     (712) 754-4654
Facsimile:     (712) 754-2507
jfeller@kkfellerlaw.com

*Counsel for the Plaintiff*