IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
Western Division

| | | |
|---|---|---|
| DEVIN G. NUNES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. C19-4064-CJW-MAR |
| | ) | |
| | ) | |
| RYAN LIZZA | ) | |
| et al | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# PLAINTIFF'S RESISTANCE
# AND MEMORANDUM IN OPPOSITION
# TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Devin G. Nunes, by counsel, pursuant to Local Rule ("LR") 7e, respectfully submits this Resistance and Memorandum in Opposition to the motion to stay discovery [*ECF No. 34*] filed by defendants, Ryan Lizza and Hearst Magazine Media, Inc. ("Defendants").

## I. INTRODUCTION

Words, like those freely employed by the Defendants in this case, tending to scandalize a public figure are, in the words of William Blackstone, "reputed more highly injurious than when spoken of a private man". *McKee v. Cosby*, 139 S.Ct. at 679 (Thomas, J., concurring) (quoting 3 W. Blackstone, Commentaries * 124)). At common law, libel of a public official was deemed an offense "'most dangerous to the people, and deserv[ing of] punishment, because the people may be deceived and reject the best

1

citizens to their great injury, and it may be to the loss of their liberties.'" *Id.* (quoting M. Newell, Defamation, Libel and Slander § 533 (1890) (quoting *Commonwealth v. Clap*, 4 Mass. 163, 169-170 (1808)); *accord White* v. *Nicholls*, 3 How. 266, 290 (1845)).

When did the media become so brazen that they hurle contumely upon public servants and dare to wrap it in the name of free speech?

On September 30, 2018, Devin Nunes suffered egregious harm to his name and reputation because of false and defamatory statements intentionally published by the Defendants in an article titled, "**Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret**". [https://www.esquire.com/news-politics/a23471864/devin-nunes-family-farm-iowa-california/ (the "Lizza Hit Piece")]. The purpose of the Lizza Hit Piece was obvious: it was perfectly timed to hurt Plaintiff in the upcoming Congressional election on November 6, 2018.[1] In his amended complaint, Plaintiff alleges that the strong defamatory gist and false implication of the Lizza Hit Piece is that Plaintiff, a United States Congressman and then-Chairman of the House Permanent Select Committee on Intelligence (the "House Intelligence Committee"), was involved in, covered-up, conspired with others (including his family) to conceal, or was aware of criminal activity and other wrongdoing on his family's farm. Plaintiff asserts that the Defendants' statements accuse and impute to him dishonesty, deceit, lack of veracity, lack of integrity, conspiracy, corruption, abuse of power, and unethical behavior – all of which severely prejudices Plaintiff in his business and profession. Plaintiff asserts that the Defendants' false statements were excessively published and republished millions of

---

[1] The Court may take judicial notice of the fact that the 2018 Congressional Election, in which Plaintiff sought re-election, occurred on November 6, 2018. The timing of Defendants' publication is clear evidence of their actual malice.

times on the Internet and via social media with actual malice, including in March and November 2019 long after the original publication,[2] causing Plaintiff substantial damage. [*ECF No. 23 ("Amended Complaint"), ¶¶ 2, 3, 5, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37*].

The matter is before the Court on Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and motion to strike certain parts of Plaintiff's amended complaint pursuant to Rule 12(f). The Court has subject matter jurisdiction pursuant to Title 28 U.S.C. § 1332. For the following reasons, Defendants' motions should be denied.

## II. <u>DISCUSSION</u>

To withstand a motion to dismiss, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679)). Courts also "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 fn. 4 (8th Cir. 2010)); *Braden v. Walmart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible"). Finally,

---

[2]     Defendants' excessive republication in 2019 of their stale story is evidence of their actual malice towards Plaintiff. *See infra*.

and perhaps most importantly, in assessing plausibility, Courts accept as true the facts alleged in the complaint and grant all reasonable inferences in favor of the nonmoving party. *Stufflebeam v. Harris*, 521 F.3d 884, 886 (8th Cir. 2008).[3]

## A.     *California Procedural Law Does NOT Apply*

Federal courts sitting in diversity apply the forum state's choice of law rules to determine the controlling *substantive* law. *See, e.g. Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1942) (cited in *Perez v. CRST International, Inc.*, 355 F.Supp.3d 765, 768 (N.D. Iowa 2018) (Williams, J.)).  Procedural matters, however, are governed by Federal law and the Federal Rules of Civil Procedure or, where not covered by Federal rules, the law of the forum. *See, e.g., Hiatt v. Mazda Motor Corp.,* 75 F.3d 1252, 1255 (8th Cir. 1996) ("It is, of course, well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state.") (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)); *Knievel v. ESPN*, 393 F.3d 1068, 1073 (9th Cir. 2005) ("Under the [*Erie*] doctrine … federal courts sitting in diversity must apply the Federal Rules of Civil Procedure") (citing *Hanna v. Plumer*, 380 U.S. 460, 470-471 (1965)); *Simmons Foods, Inc. v. Industrial Risk Insurers*, 863 F.3d 792, 797 (8th Cir. 2017) (procedural matters are governed by the law of the forum); *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir. 1995) ("If the law is procedural, then we apply the law of the forum state"); *Riske v. Truck Ins. Exchange*, 541 F,2d 768, 771 (8th Cir. 1976) ("[A] procedural issue ... is

---

[3]     In their memorandum in support of motion [*ECF No. 37*], the Defendants attempt to characterize the Lizza Hit Piece as "literary journalism".  Plaintiff disputes this characterization.

governed by the law of the forum"); *Alliant Energy Corp. v. Alltel Corp.*, 344 F.Supp.2d 1176, 1181 (S.D. Iowa) (same).

In their motion to dismiss [*ECF No. 34, ¶¶ 13-15*], Defendants assert that a California procedural law – California Civil Procedural Code § 425.16 – applies in this action. **It does not**.

There are two (2) independent reasons why the California procedural law does not apply:

First, the law of the forum – Iowa – governs matters of procedure. California's anti-SLAPP statute is, without doubt, a "procedural" remedy. *See, e.g., Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055-1056, 128 P.2d 713 (2006) ("The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights"). Because it is a matter of procedure, California's anti-SLAPP law does not apply in this case.

Importantly, **Iowa does not have an "anti-SLAPP" law**. Rather, § 659.2 of the Iowa Code provides as follows:

> "In any action for damages for the publication of a libel in a newspaper … if the defendant can show that such libelous matter was published … through misinformation or mistake, the plaintiff shall recover no more than actual damages, unless a retraction be demanded and refused as hereinafter provided. Plaintiff shall serve upon the publisher at the principal place of publication … a notice specifying the statements claimed to be libelous, and requesting that the same be withdrawn."

There is no question that Plaintiff fully complied with Iowa procedural law prior to filing this action. [*See, e.g., Amended Complaint, ¶ 38*].

Second, assuming, *arguendo*, the "local" laws of California – and not Iowa – governed, California's anti-SLAPP law would still not apply. It is well-settled that where local substantive law and a validly promulgated federal rule address the same question, but differ as to the answer, the federal rule controls. *Shady Grove Orthopaedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-399 (2010) (cited in *Fridman v. Bean, LLC*, 2019 WL 231751, at * 2 (D. D.C. 2019) (denying defendants' motion to dismiss under D.C.'s Anti-Slapp Act)).

**The overwhelming majority of Circuit Courts and District Courts have held that anti-SLAPP statutes directly collide with the Federal Rules of Civil Procedure, and, therefore, do not apply in diversity cases**. *See, e.g., Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019) (Because the Texas anti-SLAPP statute's "burden-shifting framework imposes additional requirements beyond those found in Rules 12 and 56 and answers the same question as those rules, the state law cannot apply in federal court"); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1352 (11th Cir. 2018) ("Rules 8, 12 and 56 create an affirmative entitlement to avoid pretrial dismissal that would be nullified by the Georgia anti-SLAPP statute if it were applied in a federal court"); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 673 (10th Cir. 2018) ("The proper course is to recognize the New Mexico anti-SLAPP statute as a procedural mechanism for vindicating existing rights and nothing more. Accordingly, the decision of the district court denying application of the New Mexico anti-SLAPP statute in this federal diversity action is AFFIRMED"), *cert. denied sub nom. AmeriCulture, Inc. v. Los Lobos Renewable Power, LLC*, 139 S.Ct. 591,202 (2018) (holding that the New Mexico anti-SLAPP statute "simply does not define the scope of any state substantive right or

remedy … the statute is procedural in all its aspects"); *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1334-1337 (D.C. Cir. 2015) (a federal court sitting in diversity must apply Federal Rules of Civil Procedure 12 and 56 rather than D.C.'s Anti-SLAPP law) (Kavanagh, J.); *Makaeff v. Trump University, LLC*, 715 F.3d 254, 275 (9th Cir. 2013) (Kosinski. J., concurring) ("Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof"); *see id. Orchestrate HR, Inc. v. Blue Cross Blue Shield Kansas*, 2019 WL 6327591, at * 3 (D. Kan. 2019) ("Although the Fifth Circuit's decision is not binding authority on this Court, the Court has reviewed *Klocke* and finds its analysis persuasive"); *Lampo Group, LLV v. Paffrath*, 2019 WL 3305143, at * 1-2 (D. Tenn. 2019) ("the Court finds that California's anti-SLAPP statute is not applicable in federal court … the Court is persuaded by the opinions of the D.C. and Eleventh Circuits and finds that given its probability standard, California's anti-SLAPP statute is in direct conflict with the Federal Rules of Civil Procedure"); *Libre by Nexus v. Buzzfeed, Inc.*, 311 F.Supp.3d 149, 158-162 (D. D.C. 2018) ("this court concludes that it must follow the clear guidance of the D.C. Circuit [in *Abba*] and deny the special motion to dismiss") (quotation and citation omitted); *Cockrum v. Donald J. Trump for President, Inc.*, 319 F.Supp.3d 158, 165 fn. 2 (D.D.C. 2018) ("The Court continues to adhere to its view that controlling precedent precludes the application of D.C.'s Anti–SLAPP Act in federal court."); *Platinum Press, Inc. v. Douros-Hawk*, 2018 WL 6435331, at * 3 (M.D.N.C. 2018) ("the Court finds that the [Texas anti-SLAPP] is not applicable in federal courts sitting in diversity and DENIES Defendant's Motion to Dismiss as it pertains to the TCPA"); *ABLV Bank v. Ctr. For*

*Advanced Def. Studies, Inc.*, 2015 WL 12517012, at * 3 (E.D. Va. 2015) ("Because the [District of Columbia anti-SLAPP] Act is procedural under *Erie*, it is not applicable in federal court").

Defendants' attempt to employ California's anti-SLAPP law in this diversity case is contrary to law. It is meritless. It should be rejected without more.

**B.** **_Iowa Law Governs The Substantive Issues In This Case_**

In tort cases, such as this, Iowa applies the *Restatement (Second) Conflict of Laws'* "most significant relationship" test to determine what state's law governs the substantive issues in the case. The *Restatement* provides as follows:

> "(1)    The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2)    Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a)    the place where the injury occurred,
> >
> > (b)    the place where the conduct causing the injury occurred,
> >
> > (c)    the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> >
> > (d)    the place where the relationship, if any, between the parties is centered."

*Perez*, 355 F.Supp.3d at 769. These contacts are to be evaluated according to their relative importance with respect to the particular issue. RESTATEMENT (SECOND) OF CONFLCT OF LAWS § 145 (AM. LAW INST. 2018). Section 6 of the *Restatement*, as referred to in Section 145, reads as follows:

> "(1)    A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

8

       (2)     When there is no such directive, the factors relevant to the choice of the applicable rule of law include

       (a)     the needs of the interstate and international systems,

       (b)     the relevant policies of the forum,

       (c)     the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

       (d)     the protection of justified expectations,

       (e)     the basic policies underlying the particular field of law,

       (f)     certainty, predictability and uniformity of result, and

       (g)     ease in the determination and application of the law to be applied.

*Perez*, 355 F.Supp.3d at 769 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6)).

Applying these factors, it is clear that Iowa is the state which, with respect to the issues, has the most significant relationship to the occurrence and the parties. Here, as in *Keeton v. Hustler Magazine, Inc.*, the injury occurred in Iowa, where the false statements were circulated by the Defendants and read by folks in Sibley, including Plaintiff's family members. 465 U.S. 770, 777 (1984) ("The tort of libel is generally held to occur wherever the offending material is circulated. Restatement (Second) of Torts § 577A, Comment a (1977). The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous. The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished."). Defendants travelled to Sibley, Iowa, falsely reported on events that supposedly occurred in Iowa (the putative use of

9

undocumented labor), wrote a scandalous article about Iowa dairy farmers and their son, referring to the Iowa farm as "**Devin Nunes's Family Farm**",[4] and published the article online and in print to subscribers in Iowa and republished via Twitter. [*Amended Complaint, ¶¶ 1, 2, 7, 9, 12*].  Lizza is a citizen of Virginia or the District of Columbia. His girlfriend, Olivia Nuzzi, works for New York Magazine in Washington, D.C.  Hearst is a Delaware corporation with headquarters in New York. [*Id., ¶¶ 6, 7*].  There is no "relationship" between the parties other than Plaintiff and his family in Iowa being the target of Defendants' defamation.  Iowa has a substantial interest in adjudicating this dispute. *Compare, e.g., Keeton,* 465 U.S. at 776 ("it is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State.").  Importantly, the Defendants agree that venue is proper in Iowa pursuant to 28 U.S.C. § 1391(b)(2). [*Amended Complaint, ¶ 10 ("*A substantial part of the events giving rise to the claims stated in this action occurred in Osceola County within the Western Division of the United States District Court for the Northern District of Iowa")].

**C.**     *Plaintiff Clearly Alleges A Claim Of Defamation*

The gist of defamation is the publication of written or oral statements which tend to injure a person's reputation and good name. *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996) (citation omitted).  To establish a prima facie case of defamation against a media defendant, a public figure must allege (1) publication (2) of a false and defamatory statement (3) concerning the plaintiff (4) with actual malice (5) that resulted in demonstrable injury. *Jones v. University of Iowa*, 836 N.W.2d 127, 149 (Iowa 2013) (citing *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 826 (Iowa 2007)); *see also*

---

[4]    The words carefully chosen by the Defendants clearly state that the farm is Plaintiff's "Family Farm", implying that Plaintiff has an interest in the farm.

*Johnson v. Nickerson*, 542 N.W.2d 506, 511 (Iowa 1996). The defamatory publication need not be explicit, but may be implied "by a careful choice of words in juxtaposition of statements." *Stevens*, 728 N.W.2d at 828 ("The article stated that Stevens rarely attended events about which he wrote, without revealing to the reader what defendant Harman knew—that personal attendance was not required by professional standards … When the evidence in the summary judgment record is viewed in the light most favorable to the resisting party, we conclude that a reasonable jury could find by clear and convincing evidence that this statement was false in its implication and was made with reckless disregard for the truth under the *New York Times* standard").

Iowa courts recognize two types of defamation: defamation *per se* and defamation *per quod*. *Schlegel v. Ottumwa Courier, a Div. of Lee Enters., Inc.*, 585 N.W.2d 217, 222 (Iowa 1998). A statement constitutes defamation *per se* "if it has 'a natural tendency to provoke the plaintiff to wrath or expose him [or her] to public hatred, contempt, or ridicule, or to deprive him [or her] of the benefit of public confidence or social intercourse.'" *Johnson*, 542 N.W.2d at 510 (quoting *Prewitt v. Wilson*, 103 N.W. 365, 367 (Iowa 1905)). When statements are defamatory *per se*, a jury may "award substantial damages without the necessity of the plaintiff proving actual damage to reputation." *Schlegel*, 585 N.W.2d at 222. "In case of statements that are [defamatory] per se, damages for mental anguish or hurt feelings are allowed because damage to reputation is presumed." *Id.*; *see also Sawheny v. Pioneer Hi-Bred Int'l, Inc.*, 93 F.3d 1401, 1410 (8th Cir. 1996) ("Under Iowa law … [a]ttacking the integrity and moral character of a party constitutes [defamation] per se."); *Wilson v. IBP, Inc.*, 558 N.W.2d 132, 138-140 (Iowa 1996) ("We find that a reasonable juror could interpret Arndt's statements as constituting

slander per se. Iowa law is clear that '[a]n attack on the integrity and moral character of a party is libelous per se.' Arndt's statements to Dr. Hamsa regarding Wilson's alleged untruthfulness about his condition and the non-existent videotape could be reasonably understood as imputing dishonesty to Wilson and as an attack on his integrity and moral character"); *Spemcer v. Spencer*, 479 N.W.2d 293, 296 (Iowa 1991) (finding that publishing statements accusing someone of "being a liar, a cheater, or thief" qualifies as defamation per se); *Overstreet v. New Nonpareil Co.*, 167 S.W. 669, 672 (Iowa 1918) (finding that publishing statements that an individual is untrustworthy, a hypocrite and a traitor in his employment is actionable per se). Defamatory imputations affecting a person in his business, trade profession or office also qualify as defamation *per se*. *See, e.g., Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994) (citing Restatement (Second) of Torts §§ 570, 573; Restatement (Second) of Torts § 573 ("One who publishes a [defamatory statement] that ascribes to another conduct, characteristics or a condition that would adversely affect his [or her] fitness for the proper conduct of his [or her] lawful business, trade or profession, or of his [or her] public or private office, whether honorary or for profit, is subject to liability without proof of special harm."). *Per quod* defamation requires a third party to refer "to facts or circumstances beyond the words actually used to establish the defamation." *Bandstra*, 913 N.W.2d ay 46. "To succeed in proving defamation per quod, a party must prove six elements: (1) publication, (2) a defamatory statement, (3) falsity, (4) maliciousness, (5) the statement was of or concerning the party, and (6) a resulting injury." *Id.*

A person's right to an unimpaired reputation is one of the oldest and most cherished of all liberty interests. *Fuller v. Edwards*, 180 Va. 191, 198, 22 S.E.2d 26

(1942) ("[o]ne's right to an unimpaired limb and to an unimpaired reputation are, in each instance, absolute and has been since common law governed England. Indeed, an impaired reputation is at times more disastrous than a broken leg."). Iowa's defamation law "embodies the public policy that individuals should be free to enjoy their reputation unimpaired by false and defamatory attacks." *Bandstra*, 913 N.W.2d at 46-47; *compare Rosenblatt v. Baer*, 383 U.S. 75, 92-93 (1966) ("Society has a pervasive and strong interest in preventing and redressing attacks upon reputation. The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty"); *see Maytag v. Cummins*, 260 F. 74, 80 (8th Cir. 1919) ("one who publishes a libel in a newspaper or pamphlet which circulates among many people … thereby places it in permanent form where it will be more likely to continue in existence and to be read by many people, and where he causes it to be published in a newspaper or magazine he thereby evidences his intention that the readers shall read it, so that the natural and probable effect of publishing a libel is far more permanent, extensive and injurious to the victim than the mere speaking of the words it contains to one or more persons").

1.    *Defendants' Statements Are False and Defamatory*

Iowa courts examine the "gist" or "sting" of a publication to determine whether it is false or "substantially untrue". *Campbell v. Quad City Times*, 547 N.W.2d 608. 510 (Iowa App. 1996) (citing *Behr v. Meredith Corp.*, 414 N.W.2d 339, 342 (Iowa 1987)). If the underlying facts are disputed, the issue of falsity is a matter for the jury. *Nelle v. WHO Television, LLC*, 342 F.Supp.3d 879, 892 (S.D. Iowa. 2018). It is for the Court, in

the first instance, "to determine whether the words are capable of a defamatory meaning". *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 232 (Iowa 2004). In carrying out this task, the Court should construe the statements at issue "as the average or common mind would naturally understand [them]. If the court determines that a statement is indeed capable of bearing a defamatory meaning, then whether that statement is in fact "defamatory and false [is a question] of fact to be resolved by the jury." *Yates v. Iowa West Racing Ass'n*, 721 N.W.2d 762, 771-772 (2006) (citing Restatement (Second) of Torts § 614(1) (1877)). When the language of a publication is capable of two meanings – including the defamatory meaning ascribed by the plaintiff – "it is for the jury to say whether such meaning was the one conveyed." *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 116 (Iowa 1984); *id. Iowa Protection and Advocacy Services, Inc. v. Tanager Place*, 2005 WL 2035225, at * 5 (N.D. Iowa 2005) ("The statements are susceptible to two reasonable constructions, and therefore the jury should decide if they are defamatory per se. For example, the jury could find Piper's statements about 'roadblocking' and 'delaying' IP & A investigators to mean that Tanager Place was hiding something about R.J.'s disappearance. In this sense, Piper's statements could be construed to attack Tanager Place's integrity and affect its business. That said, the jury could just as easily find these same statements only indicated Tanager Place was not cooperating with IP & A's investigation-because it was jealously guarding its privacy, not covering something up"); *Mercer v. City of Cedar Rapids*, 104 F.Supp.2d 1130, 1172 (N.D. Iowa 2000) ("The court finds that the procedure outlined in *Kerndt* must be followed in this case, because the statements upon which Mercer's slander claim depends are not unambiguously defamatory *per se*. The court agrees that, in the context of the complete newspaper story,

there are reasonable inferences that Chief Byrne's comments specifically related to Mercer and specifically 'affect [ed] [Mercer] in ... her business, trade, profession, or office' as a police officer … Thus, it will be for the jury to decide among three possible conclusions: (1) one or both of the statements were reasonably understood as defamatory *per se;* (2) one or both of the statements were understood as defamatory, but not defamatory *per se* (the jury must then determine whether the plaintiff has shown malice, falsity, and damage); or (3) the statements were not understood as defamatory").

In this case, the defamatory "gist" is that Plaintiff conspired or colluded with his family and others to hide or cover-up a "Politically Explosive Secret": that Plaintiff's "family farm" employs undocumented labor.[5] The "sting" is that "Plaintiff was involved in, covered-up, used his office to cover up, conspired with others to conceal, or was aware of criminal wrongdoing." [*Amended Complaint, ¶ 13; ¶ 19 ("The Lizza Hit Piece ascribes and imputes to Plaintiff conduct, characteristics and conditions, including dishonesty, deception, lying, conspiracy, corruption, bias, lack of integrity and ethics, that would adversely affect his fitness to be a United States Congressman and/or businessperson. The Lizza Hit Piece directly implies and insinuates that Plaintiff was involved in, covered-up, used his office to cover up, conspired with others to conceal, or was aware of criminal wrongdoing.")*].

---

[5] The specific statements alleged to be defamatory are set out *in haec verba* in paragraph 18 of the amended complaint. It is a basic tenet of defamation law that the Court must construe the defendants' statements "as a whole", in context and in light of the surrounding circumstances. *Toney v. WCCO Television, Midwest Cable and Satellite, Inc.*, 85 F.3d 383, 396 (8th Cir. 1996) ("The question is not whether that article can be divided into two parts, and each of those parts so analyzed separately from each other that each would appear to be free from defamatory meaning. The article must be construed as a whole") (quotation omitted).

15

Defendants dispute the defamatory gist ascribed to the Lizza Hit Piece by Plaintiff. Defendants would have the Court divide the article into parts and analyze each of the parts independently. This approach was rejected by the Eighth Circuit in *Toney* and by every other Court to address the matter. The publication must be construed as a whole. When so viewed, it is obvious that the "Politically Explosive Secret" – a secret revealed by the Defendants 36 days from the Congressional Election – is that Plaintiff "conspire[d]" with his family and Steve King to hide the fact that NuStar Farms "run[s] on undocumented labor". That is precisely the meaning that was intended and that was understood by the legions on Twitter who hungrily republished the salacious story millions of times. [*See Amended Complaint, ¶ 27*].

### 2. *Defendants' Statements Are Not Pure Opinion*

Libelous speech is not protected by the First Amendment. To be clear, there is "no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974); *id. Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 504 (1984) ("there are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality … Libelous speech has been held to constitute one such category") (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)).

While the right of free speech provides absolute protection to statements which are "purely opinions", *Gertz*, 418 U.S. at 339, 340, statements clothed as "opinion" which

imply that they are based on undisclosed, defamatory facts are not protected. *Lauderback v. American Broadcasting Companies, Inc.*, 741 F.2d 193, 195 (8th Cir. 1984).  The Iowa Supreme Court recently repeated that "statements of opinion can be actionable if they imply a provably false fact, or *rely upon stated facts that are provably false*." *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018) (emphasis added) (quoting *Yates*, 721 N.W.2d at 771)).  In other words, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich v. Lorain Journal Co*, 497 U.S. 1, 18-19 (1990).

Contrary to Defendants' suggestion, none of the statements in the Lizza Hit Piece constitute non-actionable opinion.  The statements in paragraphs 18(b) and 18(c) accuse Plaintiff of abusing his position as Chairman of the House Intelligence Committee, obstruction of the Russia investigation, prejudice, impartiality and unethical behavior. The Lizza Hit Piece is also laden with multiple provably false assertions of fact, including (a) whether Plaintiff "has a secret", (b) whether Plaintiff was involved in the operations of his family's dairy farm in Iowa, (c) whether Plaintiff knew that his family's farm employed "undocumented labor", and (d) whether Plaintiff conspired with anyone in a "secret" effort to cover-up illegal activity.  In truth, as stated in his amended complaint, there was no "secret".  Further, Plaintiff does not own an interest in his family's dairy farm in Iowa, never has, and is not involved in any way in its operations. And, Plaintiff, the "head of the House Intelligence Committee and one of President Trump's biggest defenders", had no knowledge of who the dairy farm hired and,

therefore, could not and was not involved in any conspiracy or cover-up of the "Politically Explosive Secret". [*Amended Complaint, ¶ 15*].

### 3. ***Defendants' Statements Were Of and Concerning Plaintiff***

Although defamatory words must refer to an ascertainable person, the plaintiff need not be named "if the alleged libel contains matters of description or other references therein, or the extraneous facts and circumstances ... show that plaintiff was intended to be the object of the alleged libel, and was so understood by others." *Wisner v. Nichols*, 143 N.W. 1020, 1025 (1913).

Plaintiff's amended complaint alleges that the defamatory statements are "of and concerning" him. [*Amended Complaint, ¶¶ 24, 31*]. Plaintiff's name and references to Plaintiff are all over the Lizza Hit Piece. The publication refers explicitly to Plaintiff and identifies him as "Devin", the "Nuneses", the "congressman's family", the "Nunes family", "his family", and the "Devin Nunes angle". The millions of recipients of the Lizza Hit Piece clearly understood that it was referring to Plaintiff. [*Amended Complaint, ¶¶ 24, 27*; Restatement(Second) of Torts § 564, cmt. a. ("It is necessary that the recipient of the defamatory communication understand it as intended to refer to the plaintiff."); *see Ball v. Taylor*, 416 F.3d 915, 917 (8th Cir. 2005) ("Here, Taylor's statements and actions at the press conference could reasonably be understood to be of and concerning each employee. Although Taylor did not state the employees names individually, he referred to them as a group, stated he was suing them because they had committed fraud, then handed his audience copies of the complaint, which identified the individual employees by name in the caption and contained their names, addresses, and positions in an appendix").

**4.** _**Defendants' Statements Were Made With Actual Malice**_

In paragraph 35 of his amended complaint, Plaintiff states multiple inter-related reasons why the Defendants' statements were made with "actual malice". Actual malice is a question of fact for the Jury. _See, e.g., Barreca v. Nickolas_, 683 N.W.2d 111, 123 (Iowa 2004) (actual malice is "ordinarily a matter for the jury"). It is a fact-intensive inquiry that cannot be resolved on a motion to dismiss under Rule 12(b)(6). Significantly, the issue cannot be resolved by looking at any one factor alone. In _Harte-Hanks Communications, Inc. v. Connaughton_, for example, the United States Supreme Court held that the "failure to investigate will not **alone** support a finding of actual malice." 491 U.S. 657, 692 (1989) (emphasis added); _see Eramo v. Rolling Stone, LLC_, 2016 WL 5234688, at * 5 (W.D. Va. 2016) ("Although failure to adequately investigate, a departure from journalistic standards, or ill will or intent to injure will not singularly provide evidence of actual malice, the court believes that proof of all three is sufficient to create a genuine issue of material fact. Plaintiff, however, goes further. Pointing to Erdely's own reporting notes [obtained in discovery], plaintiff also forecasts evidence that could lead a reasonable jury to find that Erdely had 'obvious reasons to doubt [Jackie's] veracity' or 'entertained serious doubts as to the truth of [her] publication.'").

Under familiar principles, the following allegations in Plaintiff's complaint must be accepted as true:

1.      Defendants "violated their own code or standards of ethics and abandoned all journalistic standards in writing, editing and publishing the Lizza Hit Piece." _See Gilmore v. Jones_, 37 F.Supp.3d 630, 671 (W.D. Va. 2019) (a defendant's failure to

observe journalistic standards, although not determinative, is relevant to the actual malice inquiry).

2.    Defendants "conceived a story line in advance of any investigation and then consciously set out to make the evidence conform to the preconceived story. Lizza and Hearst pursued and regurgitated the preconceived narrative that they knew to be false. *See, e.g., Eramo*, 2016 WL 5234688, at * 5 (W.D. Va. 2016) ("evidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.") (quoting *Harris v. City of Seattle*, 152 Fed.Appx. 565, 568 (9th Cir. 2005)).

3.    Defendants manufactured the false statements out of whole cloth. *See Goodman v. Performance Contractors, Inc.*, 363 F.Supp.3d 946, 970-971 (N.D. Iowa) ("summary judgment is not appropriate on the basis of qualified privilege if there is a question of fact as to whether the speaker manufactured grounds for discharging the plaintiff"); *see also St. Anant v. Thompson*, 390 U.S. 727 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation").

4.    Defendants "published the false statements out of a desire to embarrass Plaintiff, undermine confidence in his abilities to act as Chairman of the House

Intelligence Committee, and influence the 2018 Congressional election."[6] *See, e.g., Poulston v Rock*, 251 Va. 254, 263, 476 S.E.2d 479 (1996) ("It is uncontroverted that Rock was out to 'get' Poulston and sought to accomplish this end by interfering with Poulston's employment and reputation.").

5.      "The Lizza Hit Piece evinces extreme bias, ill-will and a desire to hurt Plaintiff." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 315 fn 19 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice."); *id. AdvanFort Co. v. Maritime Executive, LLC*, 2015 WL 4603090, at * 8 (E.D. Va. 2015) ("If, in fact, TME knew of the bad blood between Plaintiffs and Defendant Cartner, it would have indeed had obvious reason to doubt Cartner's veracity and the accuracy of his statements given the blatantly hostile and sarcastic tone of the Article.").

6.      "Lizza and Hearst published the false defamatory statements out of a desire to gain notoriety, increase advertising and other revenues for Hearst, with reckless disregard for the consequences."

7.      "Lizza and Hearst relied on sources, including anonymous and unnamed persons, they knew were wholly unreliable and had an axe to grind against Plaintiff." *Barreca*, 683 N.W.2d at 123 ("In this case, Nickolas published the allegation to the public with no basis other than an anonymous and uncorroborated tip").

8.      Defendants "repeated, reiterated and republished the Lizza Hit Piece out of a desire to injure Plaintiff and to spread the poison in the pool." *Bertrand v. Mullin*, 846 N.W.2d 884, 900-901 (Iowa 2014) ("We reiterate that the actual malice element does

---

[6]      Defendants published the Lizza Hit Piece 36 days before the 2018 Congressional Election. They were clearly trying to harm Plaintiff's reputation ahead of the election.

not allow a defendant to purposefully avoid discovering the truth. Moreover, we acknowledge actual malice could be derived from the actions of a candidate in continuing to run an advertisement after being informed of a false implication in the advertisement. It goes without saying that a speaker who repeats a defamatory statement after being informed of the statement's unambiguous falsity does so at the peril of generating an inference of actual malice"); *Jones*, 836 N.W.2d at 149 (actual malice may be shown by "excessive publication");[7] *Eramo*, 2016 WL 5234688, at * 5 ("Repetition of another's words does not release one of responsibility if the repeater knows that the words are false or inherently improbable, or there are obvious reasons to doubt the veracity of the person quoted.") (quoting *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2nd Cir. 1969), *cert. denied*, 396 U.S. 1049 (1970) (stating that repetition is one factor that may be probative of actual malice)).

In sum, at this stage of the proceeding, when the Plaintiff's complaint is viewed in the light most favorable to him and when all reasonable inferences are drawn in his favor, as they are required to be, there is no question that Plaintiff has alleged actual malice.

**D.** ***Plaintiff Plausibly Alleges A Conspiracy To Defame***

Under Iowa law, "[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful." Civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy, in this case defamation, that give rise to the action. Thus, conspiracy is merely an avenue for

---

[7] In his amended complaint, ¶ 28, Plaintiff not only shows excessive republication of the Lizza Hit Piece in 2019, but republication *after* this case was filed. These facts admit of only one conclusion: that Defendants, both or one of them, were out to get Plaintiff.

imposing vicarious liability on a party for the wrongful conduct of another with whom the party has acted in concert. *See, e.g., McFarland v. McFarland*, 684 F.Supp.2d 1073, 1082 (N.D. Iowa 2010) (numerous citations omitted).

In Count II of his amended complaint, Plaintiff plausibly alleges that Lizza combined, associated, agreed or acted in concert with third parties, including Nuzzi, for the express purposes of promoting, publishing and republishing the Lizza Hit Piece, defaming and injuring Plaintiff, and intentionally and unlawfully impeding and interfering with his business and employment as a U.S. Congressman. The amended complaint identifies (a) the purpose of the conspiracy, (b) when it was hatched, (c) who participated in the overt acts, (d) the acts of defamation published in furtherance of the joint plan, (e) the parallel conduct and coordinated nature of the attacks, including the common theme and timing of the various social media attacks, appearance on CNN, etc., and (f) the role of each participant in accomplishing the common goal of the defamation campaign [*Amended Complaint, ¶¶ 2, 24, 25, 40, 42*].

Plaintiff sufficiently pleads a claim of civil conspiracy, and that Lizza is liable for the acts of defamation perpetrated by his co-conspirators. *Compare McFarland*, 684 F.Supp.2d at 1083-1084 ("The court concludes that taking, as it must, the facts alleged in the Amended Complaint as true, Burns has stated sufficient facts, at this preliminary stage of the litigation, to support his conspiracy claim. First, Burns makes allegations of an agreement or understanding among defendants to undertake conduct resulting in harm to him … Further, throughout his Amended Complaint, Burns alleges various acts by individuals that he claims were done for the purpose of denying him custody of HRBM

and to restrict his visitation with HRBM in furtherance of this conspiracy and that these acts caused injury to him").

**E.** _**Defendants' Motion to Strike Should Be Denied**_

"Motions to strike under [Rule] 12(f) are viewed with disfavor and are infrequently granted." _Lunsford v. United States_, 570 F.2d 221, 229 (8th Cir. 1977) (citation omitted) (cited in _Betroche v. Mercy Physician Associates, Inc._, 2019 WL 4307127, at * 4 (N.D. Iowa 2019)); _Nicholson v. Biomet, Inc._, 363 F.Supp.2d 931, 936 (N.D. Iowa 2019) ("striking a party's pleadings is an extreme measure, and, as a result, ... motions to strike under [Federal Rule of Civil Procedure 12(f) ] are viewed with disfavor and are infrequently granted.") (citations and quotations omitted).

The allegations about Lizza in ¶ 1 of the amended complaint are true. They are part of the pleadings and will be evidence in the case to explain why members of the Nunes family were fearful of Lizza and concerned about his behavior in Sibley. All the allegations in the amended complaint, including those in ¶ 29, are supported by evidence. Defendants will have a full and fair opportunity to examine and cross-examine Plaintiff's witnesses and to develop evidence to rebut Plaintiff's position. To the extent that any evidence is inadmissible under Rule 403 of the Federal Rules of Evidence, the Court is the gatekeeper and will keep it out.

## CONCLUSION

The Defendants talk about the "chilling effect" of discovery and speculate that the "intent" of this litigation is to "cause the media to think twice before reporting on the official". The intent of this litigation is to clear Plaintiff's name, restore his reputation, and seek actual damages from a Jury for the harm caused by the Lizza Hit Piece. The

First Amendment does not give Defendants *carte blanche* – a license to publish false and defamatory statements.  There is no "enhanced" pleading requirements in defamation cases, except that public figures must allege and prove actual malice.  The Defendants appear particularly oblivious to the real harms posed by the reckless dissemination of false statements in today's society.  Examples abound of public figures being stalked, threatened, even assaulted by users of social media enraged by fake news.  Defendants mass publicized false statements with the intent to cause harm.  They are not entitled to special treatment for their actions and the law neither condones nor excuses this new species of "free speech".

For the reasons stated above and at the hearing of this matter, Plaintiff respectfully requests the Court to deny Defendants' motion to dismiss.

DATED:      March 3, 2020

Signature of Counsel on Next Page

DEVIN G. NUNES


By:   */s/ Steven S. Biss*
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:    (804) 501-8272
        Facsimile:    (202) 318-4098
        Email:    stevenbiss@earthlink.net
        (*Admitted Pro Hac Vice*)

        Joseph M. Feller, Esquire
        (Iowa State Bar No. AT0002512)
        Koopman, Kennedy & Feller
        823 3rd Avenue
        Sibley, Iowa 51249
        Telephone:    (712) 754-4654
        Facsimile:    (712) 754-2507
        jfeller@kkfellerlaw.com

        *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.


By: _/s/ Steven S. Biss_
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:    (804) 501-8272
Facsimile:    (202) 318-4098
Email:          stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Joseph M. Feller, Esquire
(Iowa State Bar No. AT0002512)
Koopman, Kennedy & Feller
823 3rd Avenue
Sibley, Iowa 51249
Telephone:    (712) 754-4654
Facsimile:    (712) 754-2507
jfeller@kkfellerlaw.com

*Counsel for the Plaintiff*