IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| **Devin G. Nunes,** | ) | Case No. 5:19-cv-04064-CJW-MAR |
| Plaintiff, | ) ) | **Defendants' Reply Brief in Further** |
| v. | ) ) | **Support of Their Motion to Dismiss, to Strike the Amended Complaint Pursuant** |
| **Ryan Lizza** and **Hearst Magazine Media, Inc.,** | ) ) | **to Cal. Civ. Proc. Code § 425.16, and to Strike Pursuant to Fed. R. Civ. P. 12(f)** |
| Defendants. | ) ) ) | **(Telephonic Oral Argument Scheduled for April 24, 2020, at 2:30 p.m.)** |

Defendants Ryan Lizza and Hearst Magazine Media, Inc. respectfully submit this reply brief in further support of their pre-answer motion to dismiss or strike the Amended Complaint filed in this case by Plaintiff Devin Nunes, *see* ECF No. 23, and in reply to Congressman Nunes's Resistance and Memorandum in Opposition to the Motion, *see* ECF No. 38 (the "Resistance" or "Res.").\*

---

\*      Except where defined herein, all capitalized terms in this reply brief have the same definition as in Defendants' opening brief, *see* ECF No. 37 ("Opening Brief" or "Opening Br.").

**Table of Contents**

Argument ..................................................................................................................................1

    I.      Congressman Nunes's Amended Complaint Should Be Dismissed........................1

          A.      The Resistance Largely Ignores the Allegedly Defamatory Explicit Statements ....................................................................................................1

          B.      Congressman Nunes Has Failed to State a Claim for Defamation by Implication ..................................................................................................3

          C.      The Resistance Fails to Explain How Congressman Nunes's Allegation of Actual Malice Is "Plausible." .................................................4

          D.      Congressman Nunes Has Failed to Plead a Civil Conspiracy Claim...........5

    II.     Congressman Nunes's Amended Complaint Should Be Stricken Pursuant to California's Anti-SLAPP Law .................................................................................5

          A.      California Law Supplies the Rule of Decision ............................................5

          B.      The California Anti-SLAPP Law Applies in Federal Court ........................6

    III.    This Court Should Strike the Amended Complaint Pursuant to Rule 12(f) ............7

Conclusion ................................................................................................................................7

## Table of Authorities

**Page(s)**

**Cases**

*Bierman v. Weier*,
  826 N.W. 2d 436 (Iowa 2013) ...................................................................................................1

*Bridges v. California*,
  314 U.S. 252 (1941) ....................................................................................................................2

*Edwards v. Nat'l Audubon Soc'y, Inc.*,
  556 F.2d 113 (2d Cir. 1977) .......................................................................................................5

*Forsher v. Bugliosi*,
  608 P.2d 716 (Cal. 1980) ............................................................................................................4

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ................................................................................................................2, 4

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984) ....................................................................................................................6

*Keeton v. Hustler Magazine, Inc.*,
  549 A.2d 1187 (N.H. 1988) ........................................................................................................6

*Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.*,
  103 F.3d 1422 (8th Cir. 1997) ....................................................................................................7

*Metabolic Research, Inc. v. Ferrell*,
  693 F.3d 795 (9th Cir. 2012) ......................................................................................................6

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ....................................................................................................................2

*Perez v. CRST International, Inc.*,
  355 F. Supp. 3d 765 (N.D. Iowa 2018) ......................................................................................6

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ......................................................................................................7

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) ....................................................................................................................5

*Stevens v. Iowa Newspapers, Inc.*,
  728 N.W.2d 823 (Iowa 2007) .....................................................................................................4

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*,
 No. 02 CV 2258 JM (AJB), 2007 WL 935703 (S.D. Cal. Mar. 7, 2007) .................................5

*Vangheluwe v. Got News, LLC*,
 365 F. Supp. 3d 836 (E.D. Mich. 2019) ................................................................................7

*White v. Fraternal Order of Police*,
 909 F.2d 512 (D.C. Cir. 1990) ...............................................................................................4

**Other Authorities**

Restatement (Second) of Conflict of Laws § 145 ...........................................................................6

Restatement (Second) of Conflict of Laws § 150(2) ......................................................................6

The Resistance leaves key dispositive arguments unchallenged. It mainly presents string cites[1]—which get the law wrong in several regards[2]—with little attempt to tether the principles from those authorities to the statements at issue here.[3] The Resistance does not save Congressman Nunes's claims, and the Motion should be granted.

## Argument

**I. Congressman Nunes's Amended Complaint Should Be Dismissed.**

**A. The Resistance Largely Ignores the Allegedly Defamatory Explicit Statements.**

1. *Congressman Nunes ignores at least six of the allegedly defamatory statements.*

Congressman Nunes lists 11 allegedly defamatory statements in his Amended Complaint. Am. Compl. ¶ 18. Defendants moved to dismiss his defamation claim as it concerns all of them. Opening Br. 13-20. The Resistance addresses only five statements, ignoring the rest. He has therefore conceded that the unaddressed statements are not actionable.

2. *Statements concerning Congressman Nunes's actions as Chairman of the House Intelligence Committee are protected opinion.*

In a single sentence, Congressman Nunes argues that several statements critiquing his actions as Chairman of the House Intelligence Committee, Am. Compl. ¶¶ 18(b), (c), are not protected opinion because they "accuse [him] of abusing his position as Chairman of the House Intelligence Committee, obstruction of the Russia investigation, prejudice, impartiality and

---

[1] Congressman Nunes argues that Iowa law supplies the rule of decision. Res. 8-10. This is not correct, *see* Opening Br. 29-31, and thus California's anti-SLAPP statute applies, *id.* at 31-32. However, Congressman Nunes does not dispute that, in considering the elements of his claims, there is "no true conflict because the law of defamation in both California and Iowa, infused with the First Amendment's requirements, are congruent." *Id.* at 10.

[2] For example, Congressman Nunes spends two pages describing libel *per se*, Res. 11-12, but, as here, when the "defendant is a media defendant, . . . the common law doctrine of libel *per se* cannot apply." *See Bierman v. Weier*, 826 N.W. 2d 436, 443 (Iowa 2013).

[3] For example, Congressman Nunes argues that the challenged statements are "of and concerning" him because his "name and references . . . are all over the" Article. Res. 18. He cites nothing for this proposition. The fact that some statements in the Article might be "of and concerning" him does not mean that all statements in the Article are "of and concerning" him.

unethical behavior." Res. 17.  These phrases and accusations are also subjective statements that are not capable of being objectively proven true or false.  Even adopting Congressman Nunes's (mis)characterization of Defendants' statement, he merely swaps one set of opinions for another.

But Congressman Nunes misses the point.  That these opinions are critical of him does not transform them into facts.  Congressman Nunes does not literally use a "battering ram," and whether he "shredd[ed] his own reputation and the independence of the historically nonpartisan committee" are not provably true or false.  These are opinions.  *See* Opening Br. 17-18.[4]

    3.    *Statements that Congressman Nunes kept secret the family farm's move to Iowa are nondefamatory statements of opinion.*

Congressman Nunes fails to explain how statements that he sought to keep the family farm's move to Iowa a "secret," Am. Compl. ¶¶ 18(a), (e), (h), are defamatory at all.  As explained, since there is nothing untoward about moving one's farm, it cannot be defamatory to note that such a move was kept secret.  Opening Br. 14.  While Congressman Nunes does address the separate opinion argument, he incorrectly claims that the facts on which the opinion is based are "provably false."  Res. at 17.  The disclosed facts are:  (i) The Nunes family moved its farming operation to Iowa, and (ii) this (a) has attained little-to-no press attention, (b) was absent from a press release issued by Steve King's office in connection with Congressman

---

[4]    That Congressman Nunes would argue that these statements are actionable speaks to how far he has strayed from foundational precedent securing First Amendment freedoms.  He cites *Gertz v. Robert Welch, Inc.* for the proposition that "there is 'no constitutional value in false statements of fact,'" Res. 16, but ignores the Supreme Court's explanation, three sentences later in *Gertz*, that "erroneous statement[s] of fact" are "nevertheless inevitable in free debate. . . . [a]nd punishment of error runs the risk of inducing a cautious and restrictive exercise of the constitutionally guaranteed freedoms of speech and press."  418 U.S. 323, 340 (1974).  He revealingly cites to English common law for the proposition that "libel of a public official [is] deemed an offense most dangerous to the people," Res. 1 (citations omitted), but that is not the tradition or law of this country or the individual states.  *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Bridges v. California*, 314 U.S. 252, 264 (1941) (in reversing contempt conviction for newspaper: "[T]o assume that English common law in this field became ours is to deny the generally accepted historical belief that one of the objects of the Revolution was to get rid of the English common law on liberty of speech and of the press.") (citation omitted).

Nunes's visit, and (iii) was intentionally omitted from a regional dairy industry publication's story about the Nunes family farm, at the family's request. Opening Br. 16-17. Congressman Nunes does not dispute these facts. And Congressman Nunes does not address the other reasons the Article's reporting that he has a "secret" is protected opinion. *See* Opening Br. 14-15.

**B. Congressman Nunes Has Failed to State a Claim for Defamation by Implication.**

The First Amendment requires that, to be an actionable implication, "the communication, by the particular manner or language in which the true facts are conveyed, [must] suppl[y] *additional*, *affirmative evidence* suggesting that the defendant *intends* or *endorses* the defamatory inference." *See* Opening Br. 21-24 (first emphasis added) (describing the *Janklow/White* rule). Congressman Nunes does not dispute that this rule applies to this case. He declines to address it. He does not point to any allegation or evidence of intent in the publication itself that could satisfy his high burden. Yet again, Congressman Nunes has conceded the point through silence.

Putting aside the lack of evidence of intent from the Article itself, no reasonable reading of the Article supports Congressman Nunes's allegedly defamatory implication. He proffers *ipse dixit* that the Article implies that he kept secret that the "'family farm' employs undocumented labor," Res. 15, but ignores the fact that the Article, reviewed in its entirety, includes several statements expressly refuting that inference: Congressman Nunes "ha[s] no financial interest in his parents' Iowa dairy operation," and the Article adds: "Is it possible the Nuneses have nothing to be seriously concerned about? *Of course* . . . ." Sitwala Decl., Exs. A, B (emphasis added).

Congressman Nunes also fails to address the fact that—as explained in the Opening Brief—a horizontal line appears in the Article between Congressman Nunes's "secret" (addressed in the first 14 paragraphs) and what Lizza learns during his investigation, including NuStar's hiring of undocumented laborers reported in the 54th paragraph. *Id.* These signal to readers that Congressman Nunes's "secret," described in the beginning, is separate from the

3

farm's hiring practices, described near the end of the Article. These cues distinguish the Article from the cases relied upon by Plaintiff,[5] and Congressman Nunes cannot make a claim from his "extra sensitive perception." *Forsher v. Bugliosi*, 608 P.2d 716, 723 (Cal. 1980).[6]

Lastly, Congressman Nunes does not seriously respond to Defendants' argument that—assuming the Article could support the alleged implication—that implication would be nonactionable opinion. Opening Br. 26-27. He simply asserts that "whether Plaintiff knew that his family's farm employed 'undocumented labor'" and/or "conspired with anyone in a 'secret' effort to" cover it up is a "provably false assertion[] of fact." Res. 17. This ignores the Article as a whole, its broader social context, its tone and setting, the undisputed disclosed facts on which the alleged implication is premised, and the Article's recognition that there may be nothing of concern although it is raising questions based on the stated facts. Opening Br. 26-27.

### C. The Resistance Fails to Explain How Congressman Nunes's Allegation of Actual Malice Is "Plausible."

Congressman Nunes argues that actual malice "cannot be resolved on a motion to dismiss under Rule 12(b)(6)," Res. 19, but does not dispute that, under *Twombly* and *Iqbal*, the Court must consider whether he has alleged facts sufficient to make it plausible that Defendants acted with constitutional "actual malice." Opening Br. 9-10, 27-28, *see Gertz*, 418 U.S. at 35 n.6.

Congressman Nunes never proffers plausible facts that support the inference that Defendants published any of the challenged statements with actual malice—subjective knowledge of falsity or doubts as to truth. The argument that Defendants did not adhere to

---

[5] For example, in *Stevens*, the Iowa Supreme Court sustained a claim for defamation by implication where the defendant omitted a key fact, leaving readers with the defamatory and false impression that the plaintiff had fabricated columns. *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 831 (Iowa 2007). Congressman Nunes has not identified any omitted facts.

[6] Together with the above-referenced statements, these elements undermine any suggestion that the Article's "manner or language" conveys that Defendants "*intend[ed]* or *endors[ed]* the defamatory inference." *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990).

4

"journalistic standards in writing, editing and publishing" or "standards of ethics," Am. Compl. ¶ 35(a), is both unsupported by factual allegations and not itself sufficient to find actual malice. *See, e.g.*, *St. Amant v. Thompson*, 390 U.S. 727 (1968) (candidate's publication of unproven allegations about rival candidate, while failing to investigate same, was insufficient to prove actual malice, which requires showing of high degree of subjective awareness of probable falsity). Similarly, the rhetorical claims that Defendants "conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice," Res. 20 (citation omitted), and that Defendants "manufactured" false statements are conclusory and unsupported. Congressman Nunes makes much of his assertion that Defendants have "republished" the article by tweeting about it[7]—but that cannot support actual malice here; this lawsuit has not caused Defendants to harbor doubts about the Article's accuracy.[8]

### D. Congressman Nunes Has Failed to Plead a Civil Conspiracy Claim.

Congressman Nunes concedes that a claim for civil conspiracy is not itself actionable; it will only live if an underlying tort claim survives. Res. 22. The claim should be dismissed.

## II. Congressman Nunes's Amended Complaint Should Be Stricken Pursuant to California's Anti-SLAPP Law.

### A. California Law Supplies the Rule of Decision.

Congressman Nunes agrees that, for tort claims, Iowa courts apply the "most significant relationship" test reflected in the Restatement (Second) of Conflicts. Res. 8. For claims of

---

[7] Tweeting a link to the Article does not constitute "republication" of the Article, as a matter of law. *See Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02 CV 2258 JM (AJB), 2007 WL 935703, at *7 (S.D. Cal. Mar. 7, 2007).

[8] *See Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("Surely liability under the 'clear and convincing proof' standard of *New York Times v. Sullivan* cannot be predicated on mere denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.").

5

Case 5:19-cv-04064-CJW-MAR   Document 43   Filed 03/20/20   Page 9 of 13

defamation arising from content that is published in multiple states (such as the Article), "the state of most significant relationship will usually be the state *where the person was domiciled at the time*." Opening Br. 30 (quoting Restatement (Second) of Conflict of Laws (the "Restatement") § 150(2)). In most instances that will be "the state where the plaintiff has suffered the greatest injury by reason of his loss of reputation." *Id.* (citing cases).

Congressman Nunes ignores entirely Section 150 of the Restatement, and the many defamation cases cited in the Opening Brief that apply it. Instead, Congressman Nunes quotes *Perez v. CRST International, Inc.*, which does not involve a defamation claim. 355 F. Supp. 3d 765 (N.D. Iowa 2018). *Perez* concerns the application of Section 145 of the Restatement— entitled "The General Principle"—but the comments to Section 145 direct readers to Section 150 for multistate defamation claims, as it is a "particular tort[] as to which it is possible to state rules of greater precision." Restatement (Second) of Conflict of Laws § 145 cmt. a.[9]

### B. The California Anti-SLAPP Law Applies in Federal Court.

Plaintiff does not dispute that the circuit that embraces California has held that the California's anti-SLAPP statute applies in federal court, and that courts outside that circuit applying California law have applied California's anti-SLAPP law. Opening Br. 31. Instead, Congressman Nunes points to the circuit split in the application of various anti-SLAPP laws in federal court generally. Res. 5-8.[10] This misses the point; Defendants do not ask the Court to

---

[9] Plaintiff cites to *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). That case concerned whether an out-of-state defamation defendant was subject to personal jurisdiction in New Hampshire. Defendants are not challenging personal jurisdiction. Notably, subsequent reported opinions in the *Keeton* case suggest that the district court applied out-of-state substantive law of defamation, notwithstanding the personal jurisdiction ruling. *See generally Keeton v. Hustler Magazine, Inc.*, 549 A.2d 1187 (N.H. 1988).

[10] Congressman Nunes does not explain the relevance of decisions concerning other states' anti-SLAPP statutes. *See Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795, 799 (9th Cir. 2012) ("[W]hile all of the [anti-SLAPP] statutes have common elements, there are significant differences as well, so that each state's statutory scheme must be evaluated separately.").

apply the anti-SLAPP statute in a manner that could even arguably cause a conflict with the Federal Rules. The motion challenges "alleged deficiencies in the plaintiff's complaint," and thus it "must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) (citation omitted).[11] As applied, "California's anti-SLAPP statute just puts some extra skin in the game: if [Defendants] wins [their] motion, [they] get[] fees; but if the motion is frivolous or solely to delay, [Congressman Nunes] gets fees." *Id.* at 844-45. This tracks the rule that fee-shifting provisions are, as a general matter, substantive laws that apply in diversity cases in federal court. *Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.*, 103 F.3d 1422, 1434 (8th Cir. 1997).

### III. This Court Should Strike the Amended Complaint Pursuant to Rule 12(f).

Congressman Nunes argues that the challenged allegations "explain why members of the Nunes family were fearful of Lizza." Res. 24. This is misleading; the scandalous allegations are proffered as statements of fact in the first paragraph of the Amended Complaint and original complaint. Opening Br. 34 n.14. In any event: Setting aside whether (i) his family members in fact harbored these fears of Lizza, and (ii) such fears would be rational, Congressman Nunes makes no attempt to argue that his family members' alleged fears are relevant to his claims.

### Conclusion

For the reasons stated above and the Opening Brief, the Motion should be granted in full.

---

[11] As a sister district court has observed, *Planned Parenthood*'s "manner of harmonizing the Federal Rules and California's anti-SLAPP statute is entirely sensible." *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 836, 844 (E.D. Mich. 2019), *appeal docketed*, No. 19-1162 (6th Cir. Feb. 19, 2019) (applying California anti-SLAPP statute).

7

March 20, 2020                    **Ryan Lizza and Hearst Magazine Media, Inc., Defendants**

By: /s/ Jonathan R. Donnellan
Jonathan R. Donnellan, *Lead Counsel*\*
 *jdonnellan@hearst.com*
Ravi V. Sitwala\*
 *rsitwala@hearst.com*
Nathaniel S. Boyer\*
 *nathaniel.boyer@hearst.com*
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000
*\*Admitted Pro Hac Vice*

Michael A. Giudicessi
 *michael.giudicessi@faegrebd.com*
Nicholas A. Klinefeldt
 *nick.klinefeldt@faegrebd.com*
Susan P. Elgin
 *susan.elgin@faegrebd.com*
FAEGRE BAKER DANIELS LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

*Attorneys for Defendants*

## Certificate of Service

The undersigned certifies that a true copy of **Defendants' Reply Brief in Further Support of Their Motion to Dismiss, to Strike the Amended Complaint Pursuant to Cal. Civ. Proc. Code § 425.16, and to Strike Pursuant to Fed. R. Civ. P. 12(f)** was served upon the following parties through the court's CM/ECF electronic filing system on March 20, 2020.

/s/ Jonathan R. Donnellan
Jonathan R. Donnellan

Copy to:

Joseph M. Feller
 jfeller@kkfellerlaw.com
Steven S. Biss
 stevenbiss@earthlink.net

*Attorneys for Plaintiff*