**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

DEVIN G. NUNES,

       Plaintiff,

vs.

RYAN LIZZA; and HEARST
MAGAZINE MEDIA, INC.,

       Defendants.

No. 19-CV-4064-CJW-MAR

**MEMORANDUM OPINION
AND ORDER**

_____

**TABLE OF CONTENTS**

I.     FACTUAL BACKGROUND ................................................................. 3

II.    PROCEDURAL HISTORY ................................................................. 5

III.   APPLICABLE LAW ........................................................................... 5

    A.    Standard Under FED. R. CIV. P. 12(b)(6)...................................... 5

    B.    Standard Under FED. R. CIV. P. 12(f)........................................... 7

    C.    Substantive Law and Choice of Law.............................................. 7

        1.    Defamation Law Generally.................................................. 8

        2.    Actual Malice..................................................................... 12

        3.    Defamation by Implication ................................................. 13

        4.    Anti-SLAPP ...................................................................... 17

IV.    ANALYSIS ................................................................................21

      A.    Count I - Defamation ...................................................22

          1.    Individual Statements...........................................22

          2.    Defamation by Implication ..................................34

              a.    Defamatory Inference...........................35

              b.    Subjective Intent ..................................38

          3.    Actual Malice.....................................................40

      B.    Count II - Conspiracy ..................................................47

      C.    Rule 12(f) Motion to Strike..........................................47

V.    CONCLUSION ...............................................................48

This matter is before the Court on defendants' Pre-Answer Motion to Dismiss, to Strike the Amended Complaint Pursuant to CAL. CIV. PROC. CODE § 425.16, and to Strike Pursuant to FED. R. CIV. P. 12(f) ("motion to dismiss"). (Doc. 34). Plaintiff filed a timely resistance. (Doc. 38). Defendants moved for leave to file an overlength reply brief, and plaintiff consented in part. (Doc. 40). The Court granted defendants' motion in part and gave defendants additional time to file their reply. (Doc. 41). Defendants timely replied to plaintiff's resistance. (Doc. 43). The Court held oral argument on defendants' motion to dismiss. (Doc. 46). The Court considers this matter fully submitted. For the following reasons, defendants' motion is **granted in part**, **denied in part**, **denied as moot in part**, and this case is **dismissed with prejudice**.

## I.      *FACTUAL BACKGROUND*

Plaintiff is a citizen of California and has represented California's 22nd District in the United States House of Representatives since 2003. (Doc. 23, at 3). Notably, plaintiff was the Chairman of the House Intelligence Committee during the investigation into Russian interference in the 2016 Presidential election. (*Id.*, at 7). Plaintiff grew up working on his family's dairy farm in Tulare County, California. (*Id.*, at 4). Plaintiff's family members include his father, Anthony Nunes Jr. ("Anthony Jr."), his mother, Toni Dian, his brother, Anthony Nunes III ("Anthony III"), and his sister-in-law, Lori Nunes. (Doc. 34-2, at 5-6). In 2006, plaintiff, Anthony Jr., Toni Dian, and Anthony III sold their farmland in Tulare County, California. (*Id.*, at 5). Anthony Jr. and Toni Dian later bought farmland in Sibley, Iowa and moved the family's dairy operation to Sibley. (*Id.*, at 5-6; Doc. 23, at 4). Anthony III and Lori Nunes also live in Sibley. (Docs. 34-2, at 5-6; Doc. 23, at 4). The dairy operation is called NuStar Farms, LLC ("NuStar"). (Doc. 34-2, at 10). Anthony Jr., Anthony III, Toni Dian, and Lori Nunes all operate NuStar. (Doc. 23, at 4). Plaintiff has no financial interest in NuStar and is not involved in its operations. (*Id.*, at 7; Doc. 34-2, at 7, 17).

Defendant Ryan Lizza ("Lizza") is a political journalist who at all relevant times worked for *Esquire* magazine. (Doc. 23, at 2). Hearst Magazine Media, Inc. ("HMMI")[1] publishes *Esquire*. (*Id.*, at 5). On August 27, 2018, Lizza traveled to Sibley, Iowa, to investigate NuStar's dairy operation. (Docs. 23, at 2; 34-2, at 7). As part of his reporting, Lizza interviewed multiple sources about undocumented immigrant labor use on Iowa dairy farms generally and NuStar's use of undocumented labor specifically. (Doc. 34-2, at 11-12, 18). Lizza also spoke to Jerry Nelson ("Nelson") a reporter for *Dairy Star* who previously wrote an article about NuStar. (*Id.*, at 7).

Lizza wrote an article (the "Article") which HMMI published both in print and online. (Docs. 34-2; 34-3).[2] The Court will discuss the relevant portions of the Article in detail in its analysis of the claims, but a brief overview is useful here. The headline of the online version of the Article states "Devin Nunes's Family Farm is Hiding a Politically Explosive Secret." (Doc. 34-2, at 2). The print version is entitled "Milking the System" and the text under the title asks "So why did [plaintiff's] parents and brother cover their tracks after quietly moving the farm to Iowa? Are they hiding something politically explosive?" (Doc. 34-3, at 4). In the seventh paragraph the Article states "So here's the secret: The Nunes Family dairy of political lore—the one where [plaintiff's] brother and parents work—isn't in California. It's in Iowa." (Doc. 34-2, at 5). The Article further explains the secret by discussing how plaintiff's family's move to Iowa was not publicized and was apparently obscured. (*Id.*, at 6-7). Lizza also recounts his

---

[1] Plaintiff's original complaint named Lizza and Hearst Magazines, Inc. as defendants. (Doc. 1, at 1). The amended complaint named Lizza and HMMI. The parties have not argued that HMMI is different from Hearst Magazines, Inc., or that HMMI has not been served. (*See* Doc. 24, at 1 n.1). Thus, the Court will assume HMMI is a proper defendant here.

[2] The Court will consider the Article as part of the record in ruling on defendants' motion to dismiss because it is necessarily embraced by plaintiff's complaint. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (citation omitted).

4

experience in Sibley investigating NuStar farms, including encounters with various members of plaintiff's family. (*Id.*, at 10, 13, 15-16). The Article also discusses the use of undocumented labor by midwestern dairies and NuStar.

Plaintiff challenges eleven statements in the Article and alleges the Article implies plaintiff conspired with his family and others to cover up NuStar's use of undocumented labor, and thus, defamed him. (Doc. 23, at 7-10). Plaintiff also claims that Lizza conspired with others to promote the Article and further defame plaintiff. (*Id.*, at 25-26). Plaintiff demanded defendants retract the Article. (*Id.*, at 25). Defendants refused, and plaintiff filed this suit.

## II.    PROCEDURAL HISTORY

Plaintiff filed his original complaint on September 30, 2019, alleging claims for defamation and common law conspiracy. (Doc. 1). On January 21, 2020, defendants moved to dismiss the original complaint. (Doc. 15). Defendants raised largely the same arguments as they do in this motion, including that plaintiff failed to plausibly allege defendants published the Article with actual malice. (Doc. 19). On February 3, 2020, plaintiff filed his amended complaint. (Doc. 23). The Court denied defendants' first motion to dismiss as moot with leave to refile Rule 12 motions attacking the amended complaint. (Doc. 24). Defendants moved to dismiss the amended complaint. (Doc. 34). The Court held oral argument on defendants' motion to dismiss on April 24, 2020. (Doc. 46).

## III.    APPLICABLE LAW

### A. Standard Under FED. R. CIV. P. 12(b)(6)

A complaint must contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . and a demand for the relief sought." FED. R. CIV. P. 8(a). Rule 12(b)(6) provides that a party may assert the defense of failure to state a claim upon which

5

relief can be granted by motion and that "[a] motion asserting [this] defense[ ] must be made before pleading if a responsive pleading is allowed." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," but "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.*, at 555-56. Indeed, a theory asserted need only be plausible, which requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the conduct alleged]." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has *alleged*—but has not *shown*—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added) (citation and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* When a pleading contains nothing more than conclusions, however, those conclusions are not entitled to the assumption of truth. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "[T]here is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Leimer v. State Mut. Life Assur. Co. of Worcester*, 108 F.2d 302, 306 (8th Cir. 1940).

6

## B. Standard Under FED. R. CIV. P. 12(f)

Rule 12(f) provides "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" either on its own motion or on a motion made by a party. Courts have broad discretion under Rule 12(f), but striking pleadings is an extreme measure, so such motions "are viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977)). Thus, the Court should not strike matters in the complaint that are not strictly relevant "if they provide 'important context and background' to claims asserted or are relevant to some object of the pleader's suit." *Holt v. Quality Egg, L.L.C.*, 777 F. Supp. 2d 1160, 1169 (N.D. Iowa 2011) (quoting *Stanbury*, 221 F.3d at 1063).

"Allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." *Jameson v. State Farm Mut. Auto. Ins. Co.*, 871 F. Supp. 2d 862, 867-68 (W.D. Mo. 2012) (alteration, citation, and internal quotation marks omitted). Matters are "immaterial" if they "have no essential or important relationship to the claim for relief." *Resolution Tr. Corp. v. Fiala*, 870 F. Supp. 962, 977 (E.D. Mo. 1994). Similarly, matters are "impertinent" when they "do not pertain to the issues in question." *Id.* Scandalous matters are those that cast a derogatory light on someone, usually a party, and bear nor relation to the controversy or prejudice the objecting party. *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005).

## C. Substantive Law and Choice of Law

The parties dispute whether Iowa or California law applies. The Court has diversity jurisdiction over this case under Title 28, United States Code, Section 1332. (Doc. 23, at 3-6). "A district court sitting in diversity applies the [substantive] law, including choice-of-law rules, of the state in which it sits." *Prudential Ins. Co. of*

7

*America v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). As the first step in the choice of law analysis the court must determine whether "there actually is a difference between the relevant laws of the different states." *Phillips v. Marist Soc. of Washington Province*, 80 F.3d 274, 276 (8th Cir. 1996) (citation omitted). "[W]here the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question." *Ronnoco Coffee, LLC v. Westfeldt Bros., Inc.*, 939 F.3d 914, 920 (8th Cir. 2019) (alteration in original) (quoting *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006)).

There are four relevant areas of law here: general defamation law, actual malice, defamation by implication, and California's anti-SLAPP statute, CAL. CIV. PROC. CODE § 425.16. The Court will examine each of these categories to set forth the relevant law, determine the presence of any conflicts, and apply Iowa's choice of law rules as necessary.

### 1. Defamation Law Generally

Defendants assert that Iowa and California defamation law do not conflict on several aspects of law relevant to defendants' motion to dismiss. (Doc. 37, at 21-24). Defendants also argue some relevant points of defamation law derive from the First Amendment (*id.*, at 22-23), and thus apply equally in California and Iowa. Plaintiff does not identify any conflict of Iowa and California common-law. (*See* Doc. 38, at 4-8). The Court will consider the aspects of defamation law in turn.

Only statements "of and concerning" the plaintiff can support a defamation claim. *Venckus v. City of Iowa City*, 930 N.W.2d 792, 809 (Iowa 2019); *John Doe 2 v. Superior Court*, 206 Cal. Rptr. 3d 60, 68 (Cal. Ct. App. 2016). The court may decide, as a matter of law, whether a statement is capable of being "of and concerning" the plaintiff. *See Reeder v. Carroll*, 759 F. Supp. 2d 1064, 1083 (N.D. Iowa 2010); *Tamkin v. CBS Broad., Inc.*, 122 Cal. Rptr. 3d 264, 274 (Cal. Ct. App. 2011).

Under the First Amendment, "a public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation." *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986). Iowa and California apply the *Hepps* standard. *See Johnson v. Nickerson*, 542 N.W.2d 506, 511 n.3 (Iowa 1996) (citing *Hepps*, 475 U.S. at 775-76); *Stolz v. KSFM 102 FM*, 35 Cal. Rptr. 2d 740, 743 (Cal. Ct. App. 1994) (quoting *Hepps*, 475 U.S. at 775-76).

The falsity plaintiff must prove is not the literal falsity of every detail of the Article. Rather, plaintiff must prove that the "gist" or "sting" of the challenged statements are substantially false. *Doe v. Hagar*, 765 F.3d 855, 863 (8th Cir. 2014).[3] "The gist or sting of a defamatory charge is the heart of the matter in question—the hurtfulness of the utterance." *Id.* (citation and internal quotation marks omitted); *see also Ferlauto v. Hamsher*, 88 Cal. Rptr. 2d 843, 851 (Cal. Ct. App. 1999) ("Libel law overlooks minor inaccuracies and concentrates on substantial truth. What is critical in assessing whether a statement is capable of defamatory meaning is the substance, the gist, the sting, of the libelous charge." (citation and internal quotation marks omitted)).

The Supreme Court has held there is not "a wholesale defamation exemption for anything that might be labeled 'opinion,'" and the Court rejected the idea of "an additional separate constitutional privilege for 'opinion.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 21 (1990) (citation omitted). The essence of a defamation claim, however, is the existence of a false statement of fact. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974); *Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 283 (1974); *see also McGarry v. Univ. of*

---

[3] The "gist" or "sting" is often discussed as part of the defendant's affirmative defense of truth. *See Hagar*, 765 F.3d at 863; *Smith v. Des Moines Pub. Sch.*, 259 F.3d 942, 947 (8th Cir. 2001); *Behr v. Meredith Corp.,* 414 N.W.2d 339, 342 (Iowa 1987). As discussed above, plaintiff is a public figure, and the Article concerns issues of public concern. Thus, plaintiff must prove the falsity of the "gist" or "sting" of the Article.

*San Diego*, 64 Cal. Rptr. 3d 467, 479 (Cal. Ct. App. 2007). Thus, statements "that are not sufficiently factual to be capable of being proven true or false and statements that cannot reasonably be interpreted as stating actual facts are absolutely protected under the Constitution." *Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 771 (Iowa 2006); *see also Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 n.2 (9th Cir. 1990) (noting that *Milkovich* "leaves protected the category of speech known as 'pure opinion'—that is, statements that do not imply facts capable of being proved true or false.").

Whether a statement implies a provably false factual assertion is an issue of law for the Court to decide. *Jones v. Palmer Commc'ns, Inc.*, 440 N.W.2d 884, 891 (Iowa 1989) *overruled on other grounds by Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 224 (Iowa 1998); *Franklin v. Dynamic Details, Inc.*, 10 Cal. Rptr. 3d 429, 436 (Cal. Ct. App. 2004). Iowa and California courts engage in similar analyses to determine if a statement of opinion implies the existence of a provably false assertion of fact.

The Iowa Supreme Court adopted the following four-factor test:

> The first factor is whether the alleged defamatory statement has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous. The second factor is the degree to which the alleged defamatory statements are objectively capable of proof or disproof. The third factor is the context in which the alleged defamatory statement occurs. The final factor we consider is the broader social context into which the alleged defamatory statement fits.

*Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018) (alterations, citations, and internal quotation marks omitted). California courts engage in a "totality of the circumstances test" to determine if a statement implies a provably false factual assertion. *Moyer v. Amador Valley Joint Union High Sch. Dist.*, 275 Cal. Rptr. 494, 497 (Cal. Ct. App. 1990). Under this test courts examine the language of the statement and the context in which the defendant made the statement. *Franklin*, 10 Cal. Rptr. 3d

10

at 436-37. In construing the context of the statement, courts consider whether the author disclosed the factual basis for the statement and whether the statement implies the existence of other, undisclosed defamatory facts. *See id.* at 437-38; *see also Yates*, 721 N.W.2d at 771 ("[S]tatements of opinion can be actionable if they imply a provable false fact, or rely upon stated facts that are provably false." (quoting *Moldea v. New York Times Co.,* 22 F.3d 310, 313 (D.C.Cir.1994))).

In short, both Iowa and California courts consider the language of the challenged statement in the context of the entire communication to determine if it implies a statement of fact. *See Yates*, 721 N.W.2d at 770 (Iowa 2006); *Franklin*, 10 Cal. Rptr. 3d at 436-37 (citation omitted). If a statement does not imply the existence of a provable fact, then the statement is not actionable. *Bandstra*, 913 N.W.2d at 47; *Franklin*, 10 Cal. Rptr. 3d at 436-37.

If a court determines a statement expresses or implies facts about the plaintiff the court must then determine whether the facts are defamatory. "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Accent Media, Inc. v. Young*, 12-CV-07-LRR, 2013 WL 12140468, at *9 (N.D. Iowa Sept. 11, 2013); *Sutrisno v. WebMD Practice Servs., Inc.*, Case No. CV 04-4516 MMM (RZx), 2005 WL 8154571, at *19 (C.D. Cal. June 30, 2005) (both quoting RESTATEMENT (SECOND) OF TORTS, § 559 (1977)). In both Iowa and California, a court can determine as a matter of law whether a challenged statement is capable of a defamatory meaning. *See Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 830 (Iowa 2007); *ZL Techs., Inc. v. Does 1-7*, 220 Cal. Rptr. 3d 569, 589 (Cal. Ct. App. 2017) (citation omitted). Courts examine the entire communication and the totality of the circumstances to make this determination. *ZL Techs., Inc.*, 220 Cal. Rptr. 3d at 589; *see also* RESTATEMENT (SECOND) OF TORTS, § 614 cmt. c (1977) (noting that the court, in determining if a

statement is susceptible to a defamatory meaning, must "take into account all the circumstances surrounding the communication of the matter complained of as defamatory"). The test is whether a reasonable reader could understand the statement as having the purported defamatory meaning. *Yates*, 721 N.W.2d at 772 (citation omitted); *ZL Techs., Inc.*, 220 Cal. Rptr. 3d at 589.

To recap, under either Iowa or California law plaintiff must plausibly plead the Article contained false and defamatory statements of and concerning plaintiff, and that under the circumstances defendants' statements implied provably false assertions of fact rather than defendants' opinions. The Court can determine each of these issues as a matter of law at this stage. Because there is no conflict between Iowa and California law as to these general points the Court need not engage in the choice of law analysis.

### 2. Actual Malice

As a matter of federal law, plaintiff must also allege that defendants acted with actual malice in publishing the Article. When a diversity case presents an issue of constitutional law federal courts must analyze the constitutional issue independent of state law. *John Doe CS v. Capuchin Franciscan Friars*, 520 F. Supp. 2d 1124, 1135 (E.D. Mo. 2007) (citation omitted). State court interpretations of the Constitution are "of weight" but are "not binding upon a Federal Court." *Id.* (quoting *Aftanase v. Econ. Baler Co.*, 343 F.2d 187, 193 (8th Cir.1965)).

The First Amendment limits a state's power to award damages for defamation actions brought by public officials. *New York Times Co. v. Sullivan*, 376 U.S. 254, 282-83 (1964); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 499 (1991) ("The First Amendment protects authors and journalists who write about public figures by requiring a plaintiff to prove that the defamatory statements were made with what [the Supreme Court] has called 'actual malice[.]'"). The highest courts in Iowa and California likewise recognize the First Amendment requires public officials to prove "actual

12

malice." *Bertrand v. Mullin*, 846 N.W.2d 884, 892 (Iowa 2014); *Reader's Digest Assn. v. Superior Court*, 690 P.2d 610, 615 (Cal. 1984). Plaintiff, a sitting congressman who was running for reelection at the time defendants published the Article, is a public official. *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 299 (1971) (finding that elected mayor was "without question" a public official requiring proof of actual malice) (citing *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271-72 (1971); *Sullivan*, 376 U.S. at 279-80). Thus, the actual malice requirement applies. The Eighth Circuit Court of Appeals recently held that a defamation plaintiff must also plead facts to support a finding of actual malice under the *Twombly/Iqbal* standard to survive a Rule 12(b)(6) motion to dismiss. *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020).

As a matter of constitutional law, as recognized by Iowa and California, plaintiff must plead and prove actual malice to prevail on his defamation claim. Thus, there is no conflict of law on this issue and the Court need not engage in the choice of law analysis.

### 3. *Defamation by Implication*

Both Iowa and California recognize that a statement can be defamatory by implication. *See Stevens*, 728 N.W.2d at 827; *Issa v. Applegate*, 242 Cal. Rptr. 3d 809, 820 (Cal. Ct. App. 2019). A statement is defamatory by implication when the defendant either juxtaposes a series of facts to imply a defamatory connection between them or omits facts to create a defamatory implication. *Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010) (quoting *Weller v. Am. Broad. Co.*, 283 Cal. Rptr. 644, 652 n.10 (Cal. Ct. App. 1991); *Stevens,* 728 N.W.2d at 827 (quoting Dan B. Dobbs, PROSSER & KEETON ON THE LAW OF TORTS § 116, at 117 (Supp. 1988)). The Court must determine as a matter of law whether a reasonable person could conclude the statements at issue can bear the allegedly defamatory implication. *See Bertrand*, 846 N.W.2d at 896 n.3 (upholding district court's grant of judgment notwithstanding the verdict on a defamation by implication claim when no reasonable juror could understand the statements to give

rise to the implication alleged by the plaintiff); *Issa*, 242 Cal. Rptr. 3d at 824 (noting that defamation by implication requires that the implication drawn is reasonable, thus "a plaintiff may not construct an actionable statement by reading whatever implication it wishes into the defendants' words[.]" (internal quotation marks omitted) (quoting *Metabolife Int'l v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001))). A public figure, and by extension a public official, must prove actual malice as an element of defamation by implication. *See Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 883-84 (9th Cir. 2016); *Bertrand*, 846 N.W.2d 884, 897. Thus, there is no conflict of law as to the general requirements of defamation by implication.

Defendants argue that for plaintiff to succeed on his defamation by implication claim plaintiff must also plead and prove that "the article in question can[ ] be read to imply that [defendants] espoused the validity of the" alleged implication. *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 648-49 (8th Cir. 1985), *affirming summ. j. in full on reh'g en banc*, 788 F.2d 1300 (8th Cir. 1986). Defendants assert the D.C. Circuit adopted *Janklow* in holding that a communication may be defamatory by implication only when "the communication by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference[.]" *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990). Defendants also argue that since *White*, numerous other courts have held that a plaintiff asserting defamation by implication must plead and prove that the defendant subjectively intended to convey the defamatory implication.[4] Defendants assert that the subjective intent requirement is grounded in the First Amendment, not state tort law. Plaintiff does not dispute, or even address, the applicability of the subjective intent requirement.

---

[4] Defendants refer to this as the *Janklow/White* rule, but the Court will refer to it as the "subjective intent requirement."

It is unclear if there is a conflict between California and Iowa law on the subjective intent requirement. Courts applying California law have held that a plaintiff must prove "that the defendant 'intended to convey the defamatory impression.'" *De Havilland v. FX Networks, LLC*, 230 Cal. Rptr. 3d 625, 646 (Cal. Ct. App. 2018) (quoting *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1063-64 (9th Cir. 1998)) *review denied* (July 11, 2018), *cert. denied*, 139 S. Ct. 800, 202 L. Ed. 2d 572 (2019). In 2014, the Iowa Supreme Court declined to address the subjective intent requirement because the parties failed to thoroughly brief the issue. *Bertrand*, 846 N.W.2d at 896 n.3. The Court is unaware of any subsequent Iowa cases addressing the issue. Thus, it is an open question whether Iowa Courts would apply the subjective intent requirement.

Regardless, there is no conflict between Iowa and California law because the Court finds on its independent analysis that the First Amendment dictates the application of the subjective intent requirement. In *Sullivan*, the Supreme Court held that the Constitution does not allow "[a state law] rule compelling the critic of official conduct to guarantee the truth of all his factual assertions" because

> [u]nder such a rule, would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so.

376 U.S. at 279. Such a rule would "dampen[ ] the vigor and limit[ ] the variety of public debate" in violation of the First Amendment. *Id.* The Seventh Circuit Court of Appeals, citing *Sullivan*, held that "requiring a publisher to guarantee the truth of all the inferences a reader might reasonably draw from a publication would undermine the uninhibited, open discussion of matters of public concern." *Woods v. Evansville Press Co.*, 791 F.2d 480, 487 (7th Cir. 1986). Other courts have likewise held that the First Amendment requires that the plaintiff prove the speaker subjectively intended the defamatory inference. *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th

15

Cir. 1993) ("[B]ecause the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true. The language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference." (footnote omitted)); *Hogan v. Winder*, No. 2:12-CV-123 TS, 2012 WL 4356326, at *9 (D. Utah Sept. 24, 2012), *aff'd*, 762 F.3d 1096 (10th Cir. 2014) ("[T]he requirement that a plaintiff in a libel-by-implication case show that the defendant intended the implication is grounded in the First Amendment, and is therefore an issue of federal—not state—law."); *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 634-35 (Tex. 2018) (noting the First Amendment imposes special responsibilities on judges in defamation by implication cases to avoid potential chilling effects and adopting the subjective intent requirement) *reh'g denied* (Sept. 28, 2018), *cert. denied*, 139 S. Ct. 1216 (2019); *Sassone v. Elder*, 626 So. 2d 345, 354 (La. 1993) ("[A]dequate protection of freedom of the press at least requires that the plaintiffs prove that the alleged implication is the *principal* inference a reasonable reader or viewer will draw from the publication as having been intended by the publisher."); *see also Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) (relying on federal case law to uphold summary judgment on plaintiff's defamation by implication claim when plaintiff "utterly fail[ed] to demonstrate that [defendant] intended or knew of the implied messages [plaintiff] attribute[d] to the [statement]"); *Dodds*, 145 F.3d at 1064 (holding the plaintiff was required to show that the defendant "intended to convey the defamatory implication" and noting "all the courts of appeal that have considered cases involving defamation by implication have imposed a similar actual intent requirement") (citing *Chapin*, 993 F.2d at 1093; *White*, 909 F.2d at 520).

In short, although Iowa has declined to address the subjective intent requirement, there is no conflict of law on this issue. The First Amendment requires a plaintiff in a

defamation by implication case to plead and prove that the defendant subjectively intended or endorsed the defamatory implication. Thus, there is no conflict of law for the Court to resolve.

### 4. *Anti-SLAPP*

Defendants assert their motion as both a Rule 12(b)(6) motion to dismiss and a special motion to strike under California's anti-SLAPP[5] statute, CAL. CIV. PROC. CODE § 425.16. (Doc. 37, at 40-43). The purpose of California's anti-SLAPP statute is to combat "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech." CAL. CIV. PROC. CODE § 425.16(a). The anti-SLAPP statute accomplishes this goal by allowing a plaintiff to attack a defamation complaint via a special motion to strike, requiring the plaintiff to show a probability of success on the merits, and allowing defendants to recover attorneys' fees and costs if they prevail on the special motion to strike. *Id.* at § 425.16(b)-(c), (f).

Defendants seek to recover attorneys' fees and costs under the anti-SLAPP statute if they prevail on their special motion to strike. Defendants argue the anti-SLAPP statute is substantive, not procedural, law. (Docs. 37, at 42; 43, at 7). Defendants then argue that California has the most significant relationship to this case so California substantive law, including the anti-SLAPP statute, apply. (Docs. 37, at 40-42; 43, at 5-6). Plaintiff argues the anti-SLAPP statute does not apply in federal court because it is procedural, not substantive, and is thus preempted by the Federal Rules of Civil Procedure. (Doc. 38, at 4-8). If the anti-SLAPP statute is substantive, plaintiff argues Iowa has the most significant relationship to this case and thus Iowa substantive law applies. (*Id.*, at 8-10).

There is a split of authority about whether state anti-SLAPP statutes apply in federal court. *See Lampo Grp., LLC v. Paffrath*, No. 3:18-CV-01402, 2019 WL

---

[5] SLAPP is an acronym for "strategic lawsuit against public participation." *De Havilland* 230 Cal. Rptr. 3d at 631 n.4.

17

3305143, at *2 (M.D. Tenn. July 23, 2019) (comparing federal cases applying and declining to apply various anti-SLAPP statutes). The Eighth Circuit Court of Appeals has not addressed the applicability of anti-SLAPP statutes in federal courts. *See Unity Healthcare, Inc. v. Cty. of Hennepin*, 308 F.R.D. 537, 540 (D. Minn. 2015). When a state statute arguably conflicts with a Federal Rule of Civil Procedure courts must determine (1) whether the Federal Rule is sufficiently broad so as to answer the same question as the state law, and (2) whether the Federal Rule violates the Rules Enabling Act. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349 (11th Cir. 2018); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015).

Turning to the first question, the Federal Rules are sufficiently broad to control and California's anti-SLAPP statute conflicts with the Federal Rules. The California anti-SLAPP statute creates a special motion to strike lawsuits involving issues of free speech. CAL. CIV. PROC. CODE § 425.16(b)(1). The defendant must file the special motion within sixty days of service of the complaint, or later with leave of court. *Id.* § 425.16(f). In ruling on a special motion to strike, courts must consider the pleadings as well as any supporting and opposing affidavits. *Id.* § 425.16(b)(2). Federal Rule of Civil Procedure 12 similarly provides a procedural mechanism to challenge the sufficiency of the complaint. A defendant must file a motion to dismiss for failure to state a claim before filing an answer, which may be twenty-one, sixty, or ninety days, depending on how the defendant is served. FED. R. CIV. P. 12(a)(1)(A), (b). Federal Rule of Civil Procedure 56 provides a procedural mechanism for testing the factual sufficiency of a claim. Like the anti-SLAPP statute, courts may consider affidavits in determining if a claim has enough factual support to go to trial. FED. R. CIV. P. 56(c). Rule 56 contains its own timing provision; "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." FED. R. CIV. P. 56(b).

The procedural mechanisms created by Rules 12 and 56 are "sufficiently broad" to control the means by which a defendant can challenge a claim before trial, and thus leave "no room for the operation of the motion-to-strike procedure." *Carbone*, 910 F.3d at 1352. Also, the anti-SLAPP statute provides different answers about when a defendant can challenge the sufficiency of a claim. The California statute provides sixty days (which can be extended) to challenge the sufficiency of the complaint itself or the factual sufficiency of the claim. CAL. CIV. PROC. CODE § 425.16(f). Under Rule 12, a motion attacking the sufficiency of the complaint may be due as little as twenty-one days after service, but under Rule 56 a motion attacking the factual sufficiency of a claim may be due as late as thirty days after the close of discovery.

The Federal Rules also answers the same question as the California anti-SLAPP statute about "the circumstances under which a court must dismiss a plaintiff's claim before trial." *Abbas*, 783 F.3d at 1333; *see also Carbone*, 910 F.3d at 1350-51. Regardless of how the defendant structures its challenge, California's anti-SLAPP statute requires a court to determine if "there is a probability that the plaintiff will prevail on the claim." CAL. CIV. PROC. CODE § 425.16(b)(3). Rule 12(b)(6) allows a defendant to challenge the sufficiency of a claim, and Rule 8 dictates what a claim must contain. Rule 8 requires that the facts alleged "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679 (2009). Under Rule 56, the evidence is sufficient to warrant a trial if the plaintiff can "designate specific facts showing that there is a genuine issue for trial." *Carbone*, 910 F.3d at 1351 (11th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Again, California's anti-SLAPP statute provides a different answer to the relevant question than do the Federal Rules. As to the pleadings themselves, the anti-SLAPP statutes' probability standard directly conflicts with the plausibility standard under the Federal Rules. *See Twombly*, 550 U.S. at 556 (holding Rule 8 "does not impose a

probability requirement" at the pleading stage, and a claim may survive a Rule 12(b)(6) motion "even if it strikes a savvy judge that actual proof of those facts is improbable"). To the extent an anti-SLAPP motion to strike includes affidavits, the probability standard is higher than the Rule 56 standard.  To determine if a claim is plausible, a court must weigh the evidence, but under Rule 56 "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In short, Rules 8, 12, and 56 answer the same questions as California's anti-SLAPP statute, and provide different answers to those questions.  *See Carbone*, 910 F.3d at 1352; *Abbas*, 738 F.3d at 1333-34.

Turning to the second part of the test, the Court finds Rules 8, 12, and 56 are valid under the Rules Enabling Act, Title 28, United States Code, Section 2072.  There is a high bar to challenge a rule under the Rules Enabling Act, and the Supreme Court has rejected every challenge to a federal rule that has come before it.  *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 110 (D.D.C. 2012) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (plurality), 431-32 (Stevens, J., concurring)). "The Rules Enabling Act empowers the Supreme Court to 'prescribe general rules of practice and procedure and rules of evidence' for the federal courts, 28 U.S.C. § 2072(a), but . . . such rules 'shall not abridge, enlarge or modify any substantive right,' *id.* § 2072(b)." *Carbone*, 910 F.3d at 1356.  A rule is properly categorized as procedural if it "really regulates procedure[.]" *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941). Rules 8, 12 and 56 regulate procedure "because they define the procedures for determining whether a claim is alleged in a sufficient manner in a complaint and whether there is a genuine dispute of material fact sufficient to warrant a trial." *Carbone*, 910 F.3d at 1357.  Thus, the Court finds that Rules 8, 12 and 56 are valid under the Rules

Enabling Act and preempt California's anti-SLAPP statute. *See id.*; *Abbas*, 783 F.3d at 1337.

Defendants argue their "motion challenges 'alleged deficiencies in the plaintiff's complaint,' and thus it 'must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies.'" (Doc. 43, at 7) (quoting *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018)). The attorneys' fee provision in the anti-SLAPP statute provides fees to "a prevailing defendant *on a special motion to strike*[.]" CAL. CIV. PROC. CODE § 425.16(c)(1) (emphasis added). Having found that Rules 8, 12, and 56 are sufficiently broad to control the issue, the Court must construe defendants' motion as a Rule 12(b)(6) motion, not a special motion to strike. Thus, under the plain language of the anti-SLAPP statute, the attorneys' fee provision does not apply. *See Abbas*, 783 F.3d at 1337 n.5 (declining to apply attorney's fee provision of anti-SLAPP statute when the statute "does not purport to make attorney's fees available to parties who obtain dismissal by other means, such as under Federal Rule 12(b)(6)"). The anti-SLAPP statute does not apply because it is preempted by the Federal Rules of Civil Procedure, and thus there is no conflict of law between Iowa and California. Defendants' motion is **denied in part** to the extent it relies upon California's anti-SLAPP statute.

Because there are no conflicts as to any of the relevant points of law, the Court need not engage further in the choice of law analysis. *Ronnoco Coffee, LLC*, 939 F.3d at 920. The Court will treat defendants' motion as a Rule 12(b)(6) motion to dismiss, and will apply federal, Iowa, and California law as appropriate.

## IV.    ANALYSIS

Defendants seek dismissal on three grounds. First, defendants argue, for various reasons, that none of the individual statements in the Article identified by plaintiff are

21

actionable as a matter of law.  Second, defendants argue the Article is not defamatory by implication because the Article is not capable of sustaining the plaintiff's alleged implication and plaintiff has not alleged facts that would show defendants subjectively endorsed or intended the defamatory implication.  Finally, defendants argue the amended complaint does not plausibly allege defendants acted with actual malice.  The Court will address each of these arguments in turn.

### A.  Count I - Defamation

#### 1.  Individual Statements

To state a claim for defamation plaintiff must specifically identify the allegedly defamatory statements.  *Johnson v. Schnuck Markets, Inc.*, 495 F. App'x 733, 736 (7th Cir. 2012); *see also Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 870 (6th Cir. 2020) (upholding dismissal of defamation claims when the plaintiff "failed to identify specific allegedly defamatory language"); *Kent v. Iowa*, 651 F. Supp. 2d 910, 964 (S.D. Iowa 2009) (noting that the plaintiffs "wholly fail[ed] to identify any specific statements by [defendants] that they allege are defamatory" and limiting analysis to specific statements in the record that could be defamatory).  Plaintiff's amended complaint identifies eleven allegedly defamatory statements.  (Doc. 23, at 8-10).  Defendants argue that none of the identified statements are defamatory for various reasons.  Defendants address most of the statements individually, but defendants address some related statements together.  (Doc. 37, at 24-31).  Plaintiff's brief largely ignores the individual statements he identifies and instead focuses on the implication of the Article as a whole.  In this section the Court will address the individual statements or groups of statements in the order presented in defendants' brief.  In the following section, the Court will address plaintiff's arguments about the alleged implications of the Article.

###### a. Statements about plaintiff concealing, keeping secret, or conspiring to keep secret that his family moved their farm to Iowa.

Plaintiff points to three allegedly defamatory statements in the Article surrounding his family members' move to Iowa:

> "Devin Nunes has a secret." (Doc. 23, at 8).

> "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?" (*Id.*, at 9).

> "On the other hand, he and his parents seemed to have concealed basic facts about the family's move to Iowa." (*Id.* at 9-10).

These statements are not actionable for several reasons. First, portions of the statements refer to plaintiff's family members, Congressman Steve King ("Congressman King"), or *Dairy Star* and those portions are not "of and concerning" plaintiff. To any extent that plaintiff's family moving to Iowa is "of and concerning" plaintiff, it is admittedly true, (*id.*, at 4), and not defamatory because it does not tend to harm plaintiff's reputation.

Statements to the effect plaintiff has a secret or concealed his family's move are also not defamatory.[6] It is not defamatory to alleged plaintiff concealed or kept secret his family's move to Iowa. *See Wyo. Corp. Servs. v. CNBC, LLC*, 32 F. Supp. 3d 1177, 1187 (D. Wyo. 2014) (finding that statements that plaintiff created shell corporations "to conceal ownership" were not defamatory); *Cannon v. Bee News Pub. Co.*, 8 F. Supp. 154, 156-57 (D. Neb. 1933) (statement that plaintiff was married in a "secret wedding"

---

[6] Plaintiff cites several cases discussing whether certain statements are defamatory per se. (Doc. 38, at 11-12; 14). Defamation per se is inapplicable against media defendants and thus irrelevant here. *See Johnson v. Nickerson*, 542 N.W.2d 506, 511 (Iowa 1996) ("Actual damages can no longer be recovered against a media defendant under a strict liability standard. Hence, in cases against a media defendant, the distinction between libel and libel per se has become irrelevant." (citing *Gertz*, 418 U.S. at 347 n.10)).

was not defamatory because plaintiff "had a right, if [he] saw fit, to withhold the knowledge" of the wedding).

Similarly, defendants' statement that plaintiff "conspired" to hide his family's move is also not actionable. At oral argument plaintiff argued defendants' use of the word "conspire" necessarily implies a criminal conspiracy, and thus the statement is defamatory. "Conspire" can include criminal conspiracy, but it has a broader definition meaning "to act in harmony toward a common end." *Conspire*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/conspire. The Article asks why plaintiff and others would "conspire to hide the fact that [plaintiff]'s family sold its farm and moved to Iowa?" (Doc. 23, at 9). The Court must determine as a matter of law whether a reasonable reader could interpret the statement as defamatory. *Yates*, 721 N.W.2d at 771-72; *ZL Techs., Inc.*, 220 Cal. Rptr. 3d at 589. The object of the "conspiracy" at issue was hiding plaintiff's family's move. Moving or concealing a move is not a crime. Because the object of the "conspiracy" is harmless, no reasonable reader could interpret the term "conspiracy" to imply criminal conduct in this context.

The statements at issue also do not assert provably false facts, nor do they imply the existence of undisclosed facts. The statements that plaintiff has a secret, hid or concealed his family's move, or conspired with others to hide the move do not have "precise core meaning for which a consensus of understanding exists." *Bandstra*, 913 N.W.2d at 47. There is no precise meaning for how many people can know a fact for it to remain a "secret" nor is there an accepted line between "hiding" or "concealing" a fact and simply declining to publicize it. Likewise, in this context there is no precise meaning of "conspiracy." For the same reasons, the challenged statements are not "objectively capable of proof or disproof[.]" *Id.* at 47 (alteration in original) (quoting *Yates*, 721 N.W.2d at 770).

The context of defendants' statements also weighs in favor of being protected opinions. The context of the publication includes the "social context" of the publication, which includes the style of writing and the intended audience. *Yates*, 721 N.W.2d at 770. The Article is written in a first-person perspective and includes numerous instances of Lizza's subjective mental impressions. This weighs against the statements being reasonably construed as statements of fact as opposed to Lizza's characterizations or opinions.

The context also includes "public context or political arena in which the statements were made." *Id.* (citation and internal quotation marks omitted). Plaintiff alleges that Lizza is a "left-wing political journalist, well known for his extreme bias towards [p]laintiff." (Doc. 23, at 2). At the time defendants published the Article, plaintiff was a sitting Republican congressman running for re-election. (Doc. 23, at 3, 7). In this public context, the Court must construe the Article in light of this nation's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Sullivan*, 376 U.S. at 270. Accepting plaintiff's allegations as true, any reasonable reader would construe the Article in light of Lizza's well know political bias. Thus, any reasonable reader would understand defendants' use of terms like "secret" or "conspired" as the type of hyperbole that is to be expected in the political arena rather than an insinuation of fact. *Gregory v. McDonnell Douglas Corp.*, 552 P.2d 425, 428 (Cal. 1976). In this public context, no reasonable reader could construe Lizza's statements as facts rather than opinions.

Finally, the statements at issue cannot be construed as implying undisclosed defamatory facts because Lizza disclosed the basis for his conclusions. As to the statements that plaintiff's family's move was a "secret" or was "concealed," the Article states that Lizza was unable to find any mention from plaintiff or the press in plaintiff's

district mentioning the move. (Doc. 34-2, at 6). The Article also mentions a *Wall Street Journal* editorial which discussed plaintiff's family's dairy farm and featured a Tulare, California dateline. (*Id.*, at 5). Nothing in the context of the Article otherwise implies that defendants' characterization is based on any other undisclosed facts.

Similarly, as to the conclusion that plaintiff and others conspired to hide the move, the Article points to two specific instances that support the statement. First, the Article notes that plaintiff appeared at a town hall with Congressman King in a town fifty miles from Sibley. The press release for the event did not mention plaintiff's family ties to the district, and instead stated that plaintiff's "family has operated a dairy farm in Tulare County, California for three generations." (*Id.*, at 7). Second, the Article discusses how the *Dairy Star* article about NuStar mentioned several members of the Nunes family, but omitted plaintiff. (*Id.*). Nelson told Lizza he omitted plaintiff at plaintiff's family's request. (*Id.*). These facts show the basis for defendants' conclusion that plaintiff and others "conspired" to hide plaintiff's family's move, but do not imply the existence of other facts. The reader is "free to accept or reject [defendants'] opinion based on their own independent evaluation of the facts." *Franklin*, 10 Cal. Rptr. 3d at 438 (citation and internal quotation marks omitted).

For each of these reasons, the statements about plaintiff concealing, keeping secret, or conspiring to keep secret that his family moved their farm to Iowa are not defamatory as a matter of law.

> **b. Congressman Nunes used his position as Chairman of the House Intelligence Committee as a "battering ram to discredit the Russia investigation and protect Donald Trump at all costs, even if it means shredding his own reputation and the independence of the historically nonpartisan committee in the process." (Doc. 23, at 9).**

This statement is a protected opinion for two reasons. First, the statement is "rhetorical hyperbole" and is thus protected by the First Amendment. In, *Adelson v.*

26

*Harris*, 774 F.3d 803, 807 (2d Cir. 2014), the court held that statements that plaintiff's money was "dirty" and "tainted" was non-actionable rhetorical hyperbole protected by the First Amendment.  Terms like "battering ram," "at all costs," and "shredding" are similar rhetorical hyperbole as well.

Second, this statement also has no "precise core of meaning for which a consensus of understanding exists" and thus is not objectively capable of proof or disproof. *Bandstra*, 913 N.W.2d at 47 (citation omitted).  There is no core meaning about what it means to use a committee as a battering ram, protect someone at all costs, or shred one's own reputation.  Even if these terms had a precise meaning, plaintiff has not explained how such statements could be proved or disproved.  Plaintiff argues these statements "accuse Plaintiff of abusing his position as Chairman of the House Intelligence Committee, obstruction of the Russia investigation, prejudice, impartiality and unethical behavior." (Doc. 38, at 17).  Plaintiff fails, however, to identify any provably false facts implied by the Article that would lead to these conclusions.  Also, for the same reasons discussed in the previous section, the context of defendants' statements, particularly these statements about issues of fundamental public importance, must be construed as opinions entitled to protection in the context of political debate concerning a public official.

> ### c. Plaintiff "used the Intelligence Committee to spin a baroque theory about alleged surveillance of the Trump campaign that began with a made-up Trump tweet about how 'Obama had my "wires tapped" in Trump Tower[.]'" (Doc. 23, at 8).

Like the other statements about plaintiff's actions on the House Intelligence Committee, the statements at issue here are rhetorical hyperbole and/or nonactionable opinions.  As to whether plaintiff's theory about the origins was "baroque,"[7] or the tweet

---

[7] In the context used in the Article, "baroque" means "characterized by grotesqueness, extravagance, complexity, or flamboyance." *Baroque*, MERRIAM WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/baroque.

was "made-up," such descriptors cannot form the basis of a defamation claim.  *See Ferlauto*, 88 Cal. Rptr. 2d 843 (statements describing lawsuit and motions filed by plaintiff, an attorney, as "'stupid,' 'laughed at,' 'a joke,' 'spurious,' and 'frivolous,'" were common characterizations" of one party to the lawsuit and did not attack the plaintiff's competence or ethics as an attorney).  Similarly, whether plaintiff's theory about the origins of the surveillance of some members of President Donald Trump's ("President Trump") campaign staff is "baroque" does not imply allegations of a specific fact, and thus cannot support a defamation claim.  *See Craig v. City of Cedar Rapids, Iowa*, 826 N.W.2d 516 (Table) (Iowa Ct. App. 2012) (statement that plaintiff, or situation involving plaintiff, was a "blivet" was not actionable because under any reasonable definition of the term it did not imply any specific allegation of fact).

As to the origins of the theory, defendants' statement is not actionable for three reasons.  First, to the extent defendants assert President Trump "made up" the tweet, the statement is not of and concerning plaintiff.  Second, plaintiff has not alleged that the statement is false.  The statement at issue asserts that plaintiff's investigation "began with" President Trump's tweet that President Barak Obama had his "wires tapped" in Trump Tower.  (Doc. 23, at 8).  Plaintiff asserts he stated there was no evidence of a wiretap in Trump Tower.  (*Id.* at n.3).  These statements are not contradictory; President Trump's tweet could have been the genesis of plaintiff's investigation into surveillance of President Trump's associates even though plaintiff denied the truth of the tweet itself.  Plaintiff has the burden of proving falsity.  *Johnson*, 542 N.W.2d at 511 n.3; *Stolz*, 35 Cal. Rptr. 2d 743.  Plaintiff has not plead facts to plausibly assert falsity of this statement.

Third, even if the statement is factually inaccurate, the statement that plaintiff's theory about surveillance of the Trump campaign "began" with President Trump's tweet is not defamatory.  Defamation is not defined by minor inaccuracies, instead the "gist"

28

or "sting" of the statement must be defamatory. *Hagar*, 765 F.3d at 863. Regardless of the inspiration for plaintiff's investigation, the gist of the statement remains the same; plaintiff used his position as the Chairman of the Intelligence Committee to "spin a baroque theory" about the origins of surveillance of some of President Trump's campaign advisors. As set forth above, that statement is not defamatory. Thus, even if untrue, the statement that plaintiff's investigation "began" with President Trump's tweet is not defamatory.

> **d. "Devin; his brother, Anthony III; and his parents, Anthony Jr. and Toni Dian, sold their California farmland in 2006. Anthony Jr. and Toni Dian, who has also been the treasurer of every one of Devin's campaigns since 2001, used their cash from the sale to buy a dairy eighteen hundred miles away in Sibley, a small town in northwest Iowa where they—as well as Anthony III, Devin's only sibling, and his wife, Lori—have lived since 2007." (Doc. 23, at 9).**

Plaintiff has not alleged that any aspect of this statement is false, nor does plaintiff's brief articulate how this statement is defamatory. Plaintiff appears to admit the statements to the extent it alleges that plaintiff's parents, brother, and sister-in-law currently live and work in Sibley, Iowa. (Doc. 23, at 4). Regardless, nothing about this statement is defamatory. None of the facts about plaintiff's relation to various individuals and their real estate transactions tends to harm plaintiff's reputation. As a matter of law this statement is not defamatory.

> **e. "Devin Nunes was the public figure at the heart of this, and he had no financial interest in his parents' Iowa dairy operation. On the other hand, he and his parents seemed to have concealed basic facts about the family's move to Iowa. It was suspicious. And his mom, who co-owns the Sibley dairy, is also the treasurer of his campaign." (Doc. 23, at 9-10).**

To determine whether a statement is capable of a defamatory meaning or whether the statement is a protected opinion, the Court must determine if a reasonable reader

29

could understand the statement to be a defamatory statement of fact. This requires reading the statement in context. The challenged statement follows the portion of the Article discussing the alleged use of undocumented labor at NuStar. After some first-person narration of events that occurred while Lizza was in Sibley, the following language immediately precedes the challenged statement, "[Nelson] and I discussed the ethics of reporting on immigration and politics. What if an article triggered an ICE raid? Was there even a story here, anyway?" (Doc. 34-2, at 17).

In this context, the statement that plaintiff "was the public figure at the heart" of the story is a protected opinion. Whether plaintiff was "at the heart" of the story does not have a precise core meaning. *Bandstra*, 913 N.W.2d at 47. Specifically, it could mean plaintiff was involved in the underlying facts of the story or it could mean that as a United States Congressman, plaintiff was the public figure making the story a matter of public interest. Similarly, whether plaintiff is "at the heart" of the story is not "objectively capable of proof or disproof." *Id.* (citation omitted). Plaintiff cannot objectively prove who was at the heart of the Article and who is on the periphery. The literary and social context of the statement also indicates that it is an opinion and not an assertion of fact. *See Yates*, 721 N.W.2d at 770. Lizza narrates from his own perspective whether NuStar's use of undocumented labor is a story at all, then states that plaintiff is "the public figure at the heart" of the story. The following sentence notes plaintiff has no financial interest in NuStar. In this context, no reasonable reader could understand the statement that plaintiff was "at the heart" of the story to mean that he was involved in NuStar's use of undocumented labor. The Article then goes on to state reasons why there may be a story, including the concealment of the family's move, and the fact that one of the principals of NuStar is the treasurer of plaintiff's campaign. This again ties into the public interest aspect of the story. No reasonable person could find the challenged statements factually accuses plaintiff of anything defamatory in nature.

The remaining portions of the statement are likewise not actionable. For the reasons explained in Section IV(A)(1)(a), the statement that "plaintiff and his parents seemed to have concealed basic facts about the family's move to Iowa" is not defamatory. Likewise, the statement that the alleged concealment was "suspicious" is a non-actionable opinion as it is merely the author's characterization of facts, and whether something is suspicious is incapable of proof or disproof. Finally, the statement "[plaintiff's] mom, who co-owns the Sibley dairy, is also the treasurer of [plaintiff's] campaign" is not actionable. Plaintiff does not allege the statement is false, and regardless, being the treasurer of one's own son's campaign does not tend to harm one's reputation. No aspect of this statement is actionable.

> f. *"I laid out the facts I had uncovered in Sibley, including the intimidation of sources and the Devin Nunes angle, and asked him for advice. 'I'd tell that story,' he said. He paused and added, 'We're a sanctuary church, if you need a place to stay. You're safe here!'" (Doc. 23, at 10).*

The only aspect of this statement "of and concerning" plaintiff is the portion discussing the "Devin Nunes angle." This statement is not, however, defamatory. As discussed in the previous section, any reasonable person reading the Article would understand the "Devin Nunes angle" to mean that NuStar is owned and operated by plaintiff's family members. This includes his mother, who is the treasurer of his campaign. Similarly, the existence of a "Devin Nunes angle" is a protected opinion, and defendants set forth the facts forming the bases of that opinion. Specifically, NuStar is owned and operated by plaintiff's immediate family members and plaintiff's mother is also the treasurer of his campaign. The Article explicitly notes, however, that plaintiff has no financial interest in NuStar. Thus, the "Devin Nunes angle" is merely defendants' opinion or characterization, does not imply the existence of other defamatory facts, and

31

any reasonable reader is free to accept or reject the presence of said angle based on the disclosed facts.

The remainder of the statement is also not "of and concerning" plaintiff. The reference to the "intimidation of sources" does not implicate plaintiff. The factual basis for this statement is disclosed. The Article discusses a call to one of Lizza's sources by a NuStar employee, Lizza being followed, including to interviews with sources by several of plaintiff's family members, and one of plaintiff's family members asking the owner of a coffee shop to throw Lizza and Nelson out of the shop during an interview. The Article does not mention plaintiff as having anything to do with any of this. Simply put, no reasonable reader could interpret the statement to assert that plaintiff was involved in the intimidation of sources. The remainder of the statement is a quote from Father Jim Callahan and has nothing to do with plaintiff. This statement cannot support a defamation claim.

> ### g. "Is it possible the Nuneses have nothing to be seriously concerned about? Of course, but I never got the chance to ask because Anthony Jr. and Representative Nunes did not respond to numerous requests for interviews." (Doc. 23, at 10).

Defendants argue that the question at the beginning of this statement cannot be defamatory. (Doc. 37, at 30) (citing *Abbas*, 783 F.3d at 1338). The *Abbas* court noted that questions, like opinions, can be defamatory when they imply the existence of defamatory facts. 783 F.3d at 1339. In context, however, this question does not imply the existence of undisclosed facts. This question immediately follows Lizza's recitation of facts leading him to believe that Anthony Jr. was "starting to panic" about the reports that NuStar employed undocumented labor. (Doc. 34-2, at 20). No reasonable reader could interpret the "something to worry about" as meaning anything other than NuStar's alleged employment of undocumented labor. The Article makes clear that plaintiff has

no financial interest in NuStar or control over its operations.  Thus, the question does not imply any factual assertion about plaintiff and cannot support a defamation claim.

The remainder of the statement is also not actionable.  The portion of the statement addressing Anthony Jr. declining to be interviewed is not "of and concerning" plaintiff. The portion of the statement concerning plaintiff is likewise not actionable because 1) plaintiff does not assert that it is false, and 2) there is nothing defamatory about declining to be interviewed.  Thus, no aspect of this statement is actionable.

> ### h. "'They are immigrants and Devin is a strong supporter of Mr. Trump, and Mr. Trump wants to shut down all of the immigration, and here is his family benefiting from immigrant labor', documented or not." (Doc. 23, at 9).

This statement is also not actionable for several reasons.  Plaintiff concedes the statement that his family are immigrants is substantially true.  (Doc. 23, at 4).  The statement that plaintiff "is a strong supporter of Mr. Trump" is a statement of opinion because whether plaintiff is a "strong supporter" of the President does not have an agreed-upon meaning and is not objectively capable of proof or disproof.  To any extent it is a statement of fact, plaintiff has not alleged that it is false, nor is it defamatory to support the President.  The statement that plaintiff's family benefits from immigrant labor is not of and concerning plaintiff.  The Article as a whole makes clear plaintiff has no financial interest in NuStar (Doc. 34-2, at 17) and that plaintiff's family members, not plaintiff, operate NuStar (*id.*, at 7).  Thus, no reasonable person could interpret this statement as implying that plaintiff himself was using or benefiting from immigrant labor, documented or otherwise.

33

### i. *Statements to the effect that NuStar relies on undocumented laborers.*

Plaintiff alleges the following statements are defamatory:

"Other dairy farmers in the area helped me understand why the Nunes family might be so secretive about the farm: Midwestern diaries [sic] tend to run on undocumented labor." (Doc. 23, at 9)

"There was no doubt about why I was being followed. According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor. One source, who was deeply connected in the local Hispanic community, had personally sent undocumented workers to Anthony Nunes[,] Jr.'s farm for jobs . . . asserting that the farm was aware of their status." (*Id.*, at 10)

These statements are not of and concerning plaintiff. As the Court discussed in the previous section, no reasonable person could construe the Article to mean that plaintiff had any financial interest in or management authority over NuStar. In the context of the Article it is clear that the "Nunes family" refers to plaintiff's parents, his brother, and his sister-in-law. The second paragraph makes this point abundantly clear, referring to the farm as "Anthony Nunes Jr.'s farm." No reasonable person could construe these statements as relating to plaintiff. Thus, these statements cannot support plaintiff's defamation claim.

As a matter of law none of the statements identified in plaintiff's amended complaint plausibly support a defamation claim. Defendants' motion is **granted** as to plaintiff's defamation claim based on the identified statements.

### 2. *Defamation by Implication*

Plaintiff fails to state a claim for defamation by implication for two reasons. First, no reasonable person could draw plaintiff's asserted implication from the Article. Second, even if a reasonable person could draw the implication, there is no indication that defendants intended or endorsed the implication.

### a. *Defamatory Inference*

Plaintiff's complaint asserts that the "false implication" of the Article is "that [p]laintiff conspired or colluded with his family and with others to hide or cover up . . . that [p]laintiff's family's dairy farm, NuStar Farms, employs undocumented labor." (Doc. 23, at 7). The amended complaint further explains the alleged false inference as follows:

> The . . . headline falsely states or implies that Plaintiff owns an interest in "Devin Nunes's Family Farm" in Sibley, Iowa, and that Plaintiff was involved in hiding a "Politically Explosive Secret."[ ] In truth, there is no "secret."[ ] In truth, Plaintiff does not own an interest in his family's dairy farm in Iowa, never has, and is not involved in any way in its operations. Plaintiff . . . had no knowledge of who the dairy farm hired and, therefore, could not and was not involved in any conspiracy or cover-up of the "Politically Explosive Secret[.]"

(*Id.*).[8] In his resistance, plaintiff similarly argues "the 'Politically Explosive Secret' – a secret revealed by the Defendants 36 days from the Congressional Election – is that Plaintiff 'conspire[d]' with his family and Steve King to hide the fact that NuStar Farms 'run[s] on undocumented labor.'" (Doc. 38, at 16).

The Court must determine as a matter of law if a reasonable reader could draw the alleged inference from the Article. *See Yates*, 721 N.W.2d at 771 (citing *Milkovich*, 497 U.S. at 16-17). Plaintiff must show that defendants' juxtaposition or omission of facts creates the false and defamatory inference. *See Price*, 620 F.3d at 1003 (citation omitted); *Stevens*, 728 N.W.2d at 827. Plaintiff does not allege the existence of any omitted facts, and thus plaintiff relies only on the alleged juxtaposition of facts to support his defamation by implication claim. In determining whether a reasonable reader could

---

[8] Plaintiff cites to another paragraph in his amended complaint as supporting his defamation by implication claim (Doc. 38, at 18) (citing Doc. 23, at 11). This paragraph contains no factual allegations or relevant explanation of the nature of plaintiff's claim and is thus irrelevant to the Court's analysis.

understand the defamatory implication, the plaintiff cannot "construct an actionable statement by reading whatever implication it wishes into the defendants' words[.]" *Issa*, 242 Cal. Rptr. 3d at 824 (citation omitted).

In determining if a publication is susceptible to a defamatory implication, courts consider whether it includes statements that directly negate or tend to negate the alleged implication. *See Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 148 (D.D.C. 2017) (granting motion to dismiss defamation by implication claim because article "specifically include[d] facts that negate[d] the implications" asserted); *Wyo. Corp. Servs.*, 32 F. Supp. 3d at 1189 (article could not carry inference that provider of shell corporations aided others in criminal acts when article included statements that plaintiff fully complied with the law, did not have knowledge of how its customers used the corporations, and had not been sued or sanctioned).

Reading the entire Article in context, no reasonable reader could reach plaintiff's alleged implication because the Article negates those implications. The Article states that plaintiff "has no financial interest" in NuStar. (Doc. 34-2, at 17). The Article also makes clear plaintiff is not involved in managing NuStar. (*See id.*, at 7) (noting that the *Dairy Star* article stated that NuStar was managed by Anthony Jr. "with his son and wife" and noting in the next paragraph plaintiff is not mentioned anywhere in the *Dairy Star* article). No reasonable reader could understand the Article to imply the exact opposite of its text, i.e. that plaintiff had some financial or managerial interest in NuStar.

Likewise, no reasonable reader could read the Article to imply plaintiff conspired with others to hide NuStar's use of undocumented labor. The Article is clear the conspiracy was "to hide the fact that [plaintiff]'s family sold its farm and moved to Iowa[.]" (*Id.*, at 7). Similarly, no reasonable reader could find the "politically explosive secret" referenced in the title of the Article is NuStar's use of undocumented labor. The Article states "[s]o here's the secret: The Nunes family dairy of political lore—the one

36

where his brother and parents work—isn't in California. It's in Iowa." (*Id.* at 5). Given these express statements, no reasonable reader could infer that plaintiff was involved in a conspiracy to hide NuStar's use of undocumented labor. *See Deripaska*, 282 F. Supp. 3d at 148; *Wyo. Corp. Servs.*, 32 F. Supp. 3d at 1189.

Plaintiff's defamation by implication claim also fails because plaintiff has not plausibly alleged that defendants' juxtaposition of facts, rather than his own, gives rise to the defamatory inference. The term "politically explosive secret" is used only in the title of the online version of the Article. (Doc. 34-2, at 2).[9] All discussion of plaintiff's family's secret and conspiracy to hide plaintiff's family's move is contained in the first thirteen paragraphs of the sixty-six-paragraph Article.[10] (*Id.*, at 2-7). Undocumented labor is not mentioned until the twenty-fifth paragraph and is first mentioned in a general statement that "Midwestern dairies tend to run on undocumented labor." (*Id.*, at 10). Three paragraph's later, Lizza reports a conversation with a local dairy farmer; Lizza asked "what the chances are that a farm the size of NuStar uses only fully legal dairy workers" to which the farmer responded "'It's next to impossible . . . [t]here's no dang way.'" (*Id.*, at 12). The Article first directly reports NuStar's alleged use of undocumented labor in the fifty-third paragraph when in relation to a source's statement. (*Id.*, at 18). Plaintiff does not explain how defendants juxtaposed these facts, which are scattered at disparate points throughout the Article, to somehow imply that plaintiff was involved in a conspiracy to hide NuStar's use of undocumented labor. Instead, plaintiff premises his claim entirely on his own juxtaposition and repositioning of facts. Viewing

---

[9] The phrase "politically explosive" is used in the caption under the title in both the online and print version of the Article. (Docs. 34-2, at 2; 34-3, at 4).

[10] Defendants describe the Article as having sixty-eight paragraphs. The Court counts sixty-six paragraphs but excluded the caption beneath the title from its calculation. The minor difference in the number of paragraphs has no bearing on the Court's decision.

the Article as a whole, no reasonable reader could draw the alleged defamatory inference, and plaintiff's subjective belief about the implication of the Article is insufficient to state a claim. *See Issa*, 242 Cal. Rptr. 3d at 824 (citation omitted).

### b. Subjective Intent

Even if a reasonable reader could draw plaintiff's proposed inference from the Article, plaintiff's defamation by implication claim still fails. As the Court found in Section III(C)(3), plaintiff must show that defendants intended or endorsed the defamatory inference. "[A] plaintiff who seeks to recover based on a defamatory implication—whether a gist or a discrete implication—must point to 'additional, affirmative evidence' within the publication itself that suggests the defendant 'intends or endorses the defamatory inference.'" *Tatum*, 554 S.W.3d at 635 (quoting *White*, 909 F.2d at 520 (emphasis omitted)). The determination of the author's intent "often require[s] an examination of the statements in the context of the article as a whole." *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012). There is generally no evidence of intent if the relevant facts appear in different sections of the Article addressing different topics. *Id.* at 467.

Plaintiff's resistance ignores the subjective intent requirement, and thus plaintiff has waived any argument on this issue. *See Wells v. LF Noll, Inc.*, No. 18-CV-2079-CJW-KEM, 2019 WL 5596409, at *9 (N.D. Iowa Oct. 30, 2019) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration in original) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)). Regardless, there is no evidence defendants intended the Article to imply that plaintiff conspired to hide NuStar's use of undocumented labor. The first thirteen paragraphs of the Article address plaintiff and his family's background as farmers in California and the circumstances surrounding plaintiff's family moving their dairy farm to Iowa. (Docs 34-2, at 2-7; 34-3, at 4-5). The only mention of a "conspiracy" comes

at the end of that section. (Docs. 34-2, at 7; 34-3, at 5). In both versions of the Article, the discussion of the "conspiracy" is followed by a clear section break. (*Id.*). Defendants reporting about NuStar's use of undocumented labor does not occur until some five sections and forty paragraphs later. (Docs. 34-2, at 18; 34-3, at 9). That portion of the Article mentions NuStar and Anthony Jr. but makes no mention of plaintiff. *Id.*

The Article discusses efforts to prevent Lizza from reporting NuStar's use of undocumented labor but identifies the individuals involved, and none of them are plaintiff. The Article states that Anthony III asked the owner of a coffee shop to throw Lizza and Nelson out of the shop during an interview. (Doc. 34-2, at 13, 20). It goes on to state that during an interview one of Lizza's sources received a call from "Flavio," a NuStar employee, asking the source to end the interview. (*Id.*, at 16). Lizza recounts being followed by various vehicles during his investigation. (*Id.*, at 15-16, 18-19). Lizza identifies the drivers of those vehicles as Anthony Jr., Anthony III, Lori Nunes, and Toni Dian. (*Id.*, at 20).

The Article specifically sets out the facts from which a reader could find an effort to cover up NuStar's use of undocumented labor, and specifically identifies the individuals involved in that effort. Even if a reader could somehow draw a defamatory inference from the Article, there is no evidence of defendants' subjective intent because defendants "merely convey[ed] materially true facts from which a defamatory inference [could] reasonably be drawn." *White*, 909 F.2d at 520. The discussion of plaintiff's family members' efforts to cover up NuStar's use of undocumented labor is not linked to the discussion of plaintiff's efforts to cover up the move of the family farm from California to Iowa. *See Tatum*, 554 S.W.3d at 635 (noting there is no evidence of intent when the publication reports separate sets of facts instead of linking key statements together to create an inference (citing *Biro*, 833 F. Supp. 2d at 467)). Plaintiff cannot, and does not, even attempt to allege that defendants subjectively intended to convey the

39

defamatory inference. Thus, plaintiff's defamation by implication claim fails as a matter of law.

The Court has discretion to dismiss for failure to state a claim with or without prejudice. *Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019) (citing *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012)). "Dismissal with prejudice may be warranted if amending the pleading would be futile." *Id.* (citing *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009)). The deficiencies in plaintiff's amended complaint, both as to the individual statements and plaintiff's defamation by implication claim, are largely because the statements at issue are not actionable as a matter of law. There are no additional facts plaintiff could allege to change the content of the Article, and thus a second amended complaint would be futile. Defendants' motion to dismiss is **granted as to Count I** in its entirety, and **Count I is dismissed with prejudice**.

### 3. Actual Malice

Even if the Article, either directly or by implication, contained false and defamatory statements, plaintiff still fails to state a claim. As a matter of federal law, and as recognized in both Iowa and California, plaintiff must prove defendants published the statements with "actual malice." "Actual malice" means the defendant published the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 280. The publisher of a statement acts with "reckless disregard" when it has a "high degree of awareness of . . . probable falsity." *Gertz*, 418 U.S. at 332 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Reckless disregard is not based on an objective standard; the plaintiff must offer facts to indicate the defendant subjectively had serious doubts about the truth of the statement. *Barreca v. Nickolas*, 683 N.W.2d 111, 123 (Iowa 2004); *Reader's Digest Assn.*, 690 P.2d at 619.

Plaintiffs must plead specific facts to create a reasonable inference that the defendant acted with actual malice. *Nelson Auto Ctr., Inc*, 951 F.3d at 958.

Actual malice in the First Amendment context is distinct from common law actual malice. Under the First Amendment, actual malice "has nothing to do with bad motive or ill will[.]" *Bertrand*, 846 N.W.2d at 898-99 (quoting *Harte-Hanks Commc'ns v. Connaughton,* 491 U.S. 657, 666 n.7 (1989)); *see also Makaeff v. Trump Univ., LLC*, 26 F. Supp. 3d 1002, 1008 (S.D. Cal. 2014). Thus, antagonism, contempt, or intent to inflict harm are insufficient to show actual malice; the plaintiff must show an intent to inflict harm through falsehood. *McCarney v. Des Moines Register & Tribune Co.*, 239 N.W.2d 152, 156 (Iowa 1976). Standing alone, reliance on biased or unreliable sources, failure to investigate, *Bertrand*, 846 N.W.2d at 895; *Reader's Digest Assn.*, 690 P.2d at 618, or failure to adhere to journalistic standards, *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 665, are insufficient to show actual malice.

Defendants argue plaintiff has not plausibly alleged defendants acted with "actual malice." (Doc. 37, at 38-40). Defendants assert plaintiff's allegations are not facts, they are conclusions. Defendants also argue that even if plaintiff's amended complaint alleges facts, those facts do not give rise to a reasonable inference of actual malice. Plaintiff argues that although certain allegations taken individually are insufficient to establish actual malice, plaintiff's allegations as a whole create an inference that defendants acted with actual malice.

The cases plaintiff cites in support of his argument highlight the factual insufficiency of his complaint. For example, plaintiff asserts defendants acted with actual malice because they failed to observe journalistic standards, conceived of a storyline in advance and sought to find evidence to confirm that story, and relied on unreliable or biased sources in researching the Article. (Doc. 38, at 19-21). These allegations, however, are "naked assertion[s]" devoid of "further factual enhancement," and "labels

41

and conclusions," that fail to plausibly assert actual malice. *Twombly*, 550 U.S. at 555, 557.

Plaintiff's brief cites *Gilmore v. Jones*, 370 F. Supp. 3d 630, 671 (W.D. Va. 2019), a case which highlights the type of factual background necessary to support a plausible inference of actual malice. (Doc. 38, at 19-20). In *Gilmore*, the plaintiff filmed the murder of Heather Heyer during counter-protests against the 2017 "Unite the Right" rally in Charlottesville, Virginia. 370 F. Supp. 3d at 642. The plaintiff sued various defendants who published videos and news articles accusing the plaintiff of being part of a "deep state" conspiracy to orchestrate violence during the protests allegedly to undermine President Trump and the "alt-right." *Id.* at 657, 671, 675-76.

The court considered the plaintiff's allegations against each defendant and pointed to specific evidence in the complaint to support a plausible inference that the defendants acted with actual malice. The court noted that the plaintiff identified previous articles by the defendants accusing others of staging tragedies for political purposes to support his assertion that the defendants conceived of the "deep state" conspiracy storyline in advance.[11] *Gilmore*, 370 F. Supp. 3d at 673-76, 678. Similarly, plaintiff plausibly alleged defendants failed to adhere to journalistic ethics because the complaint stated defendants did not contact plaintiff for comment before publishing their respective stories, among other factual allegations. *Id.* at 673, 676, 678, 680. The court also did not accept plaintiff's allegations that some of the defendants relied on unreliable sources at face

---

[11] Plaintiff cites to one previous article by Lizza and a tweet by Lizza as evidence of Lizza's "extreme bias toward Plaintiff." (Doc. 23, at 2). Plaintiff does not argue that this unrelated article or tweet are evidence of actual malice (*id.*, at 19-22), and it is not the Court's job to construct plaintiff's argument for him. *Horn v. Airway Servs., Inc.*, No. 18-CV-3053-CJW-MAR, 2020 WL 420834, at *22 (N.D. Iowa Jan. 27, 2020). In any event, the Court has reviewed the cited article and tweet. Even drawing all inferences in plaintiff's favor, the Court finds the cited items do not show an "extreme bias" toward plaintiff, and regardless, shed no light on whether defendants subjectively doubted the truth of the Article.

value.  Instead the court pointed out specific facts supporting plaintiff's conclusion.  *See id*. at 674 (defendant republished screenshots from a Reddit thread to bolster his claims); *Id*. at 680 (defendant published statements purportedly from a Charlottesville police officer but conceded the officer was "as-yet unidentified" and the statements were "unverified").  Throughout the court's analysis it focused on plaintiff's "concrete" factual allegations, based either on the plaintiff's personal knowledge, the challenged articles themselves, or other similar articles by defendants.  *See id*. at 680.  Here, plaintiff merely recites the conclusions various courts have reached in finding actual malice but fails to include the concrete factual allegations necessary to support such conclusions.

The other cases plaintiff cites also rely on specific facts in the record or factual allegations to reach the conclusions upon which plaintiff relies.[12]  *See, e.g.*, *St. Amant*, 390 U.S. at 733 (no evidence of actual malice when the record was silent on the source's reputation for veracity and there was no other evidence which should have caused defendant to doubt source's story); *Goodman v. Performance Contractors, Inc.*, 363 F. Supp. 3d 946, 970-71 (N.D. Iowa 2019) (finding triable issue on actual malice when record showed defendants coordinated their stories before making defamatory statement, a third-party could not confirm part of defendants' story, and defendants made the statements the day after plaintiff reported one defendant to human resources for making racist remarks); *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016) (denying summary judgment in favor of administrator when author's pitch for article included statements from which a jury could find the author expected to find inaction by the administrator and the author had published five similar articles).

---

[12] Plaintiff cites *Poulston v. Rock*, 467 S.E.2d 479 (Va. 1996) for the proposition that evidence that defendants were "out to get" him is evidence of actual malice.  (Doc. 38, at 21).  In *Poulston*, the "malice" was in relation to punitive damages, not "actual malice" in the constitutional sense.  467 S.E.2d at 263.  Thus, *Poulston* is not relevant here.

43

The Court will not reiterate every factual deficiency in the amended complaint, but some examples are illustrative. Plaintiff alleges defendants "relied on sources, including anonymous and unnamed persons, they knew were wholly unreliable and had an axe to grind against Plaintiff and his family." (Doc. 23, at 23). Plaintiff does not identify the sources, what axe the sources had to grind with plaintiff, or any factual basis from which the Court could plausibly find that defendants' sources were unreliable or that defendants knew or should have known they were unreliable. To the contrary, the Article itself refers to two unnamed, but not anonymous, sources who had firsthand knowledge of NuStar's use of undocumented labor. (Doc. 34-2, at 18). This is fundamentally different than the cases upon which plaintiff relies. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 315 n.10 (5th Cir. 1995) (noting that evidence of an ulterior motive can "bolster an inference of actual malice," and citing specific facts about the relationship between the parties from which the jury could have found that defendant made defamatory statements with actual malice); *AdvanFort Co. v. Mar. Exec., LLC*, No. 1:15-cv-220, 2015 WL 4603090, at *8 (E.D. Va. July 28, 2015) (finding that plaintiff could plausibly allege actual malice if plaintiff specifically asserted that defendant knew the author's relationship with plaintiffs had "gone sour" after their past "unsuccessful business relationship"); *Barreca*, 683 N.W.2d at 123 (reversing summary judgment when record established defendant made defamatory statement based on one anonymous and unverified phone call, and portions of the statement at issue arguably showed defendant "entertained serious doubts about the truth of the phone call").

Similarly, plaintiff alleges defendants acted with actual malice because they republished the Article. (Doc. 38, at 21-22). The amended complaint asserts defendants republished the Article by tweeting links to it. (Doc. 23, at 12-20). This argument fails both factually and as a matter of law. Publishing a link to an existing story is not a republication of the story. *See Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*,

44

No. 02 CV 2258 JM (AJB), 2007 WL 935703, at *8 (S.D. Cal. Mar. 7, 2007) (holding that linking to an article "is more reasonably akin to the publication of additional copies of the same edition of a book, which is a situation that does not trigger the republication rule" for purposes of the statute-of-limitations). Even if tweeting links to the Article constitutes republication, the cases plaintiff cites are inapposite here.

In *Bertrand*, 846 N.W.2d at 901, the Iowa Supreme Court noted "[i]t goes without saying that a speaker who repeats a defamatory statement after being informed of the statement's unambiguous falsity does so at the peril of generating an inference of actual malice." Plaintiff alleges "[p]rior to filing this action, Plaintiff gave notice to Defendants and made a demand for retraction[s]," (Doc. 23, at 25), but the amended complaint does not state that this occurred before the alleged republications, or that the demand informed defendants of the "unambiguous falsity" of the statements. *See Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("[M]ere denials, however vehement . . . are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.").

Plaintiff cites *Jones v. University of Iowa*, 836 N.W.2d 127, 149 (Iowa 2013), for the proposition "actual malice may be shown by excessive publication." (Doc. 38, at 22). The court in *Jones* stated that a speaker loses the protection of qualified privilege against defamation claims when "the speaker acts with actual malice, or exceeds or abuses the privilege through, for example, excessive publication or through publication to persons other than those who have a legitimate interest in the subject of the statements." 836 N.W.2d at 149 (quoting *Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 84 (Iowa 2001)). The court then clarified its discussion of excessive publication related only to privilege, not actual malice. *See id.* ("[Q]ualified privilege by its very nature does not allow widespread or unrestricted communication." (quoting *Spencer v. Spencer*, 479

N.W.2d 293, 297 (Iowa 1991))). The court analyzed the actual malice and privilege separately and discussed excessive publication only in its analysis of qualified privilege. *Id.* at 150. It is apparent from the Iowa Supreme Court's opinion that excessive publication only defeats qualified privilege but is not evidence of actual malice.

Plaintiff's complaint relies on "naked assertion[s]" and "labels and conclusions" which are devoid of "further factual enhancement," to establish actual malice. *Twombly*, 550 U.S. at 557. Plaintiff cannot rely on general assertions and must plead facts to support a finding of actual malice. *Nelson Auto Ctr., Inc*, 951 F.3d at 958. Although it is difficult for politicians like plaintiff to plead actual malice against the media while still complying with Rule 11(b)(3), that is precisely the result the First Amendment requires. The Court must assess plaintiff's claims "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Sullivan*, 376 U.S. at 270; *see also Bertrand*, 846 N.W.2d at 901-02 ("Among public figures and officials, an added layer of toughness is expected, and a greater showing of culpability is required under our governing legal standards to make sure the freedom of political speech . . . is not suppressed or chilled."). Even if a reasonable reader could find the challenged portions or implications of the Article to be false and defamatory, plaintiff still fails to state a claim because plaintiff has not plausibly alleged defendants acted with actual malice.

If the Article contained actionable statements or implications, the Court would still dismiss Count I with prejudice. Again, dismissal with prejudice is appropriate when no amount of repleading would cure the deficiency in the complaint. *Boxill*, 361 F. Supp. 3d at 880 n.7. Defendants moved to dismiss plaintiff's original complaint in part because plaintiff failed to allege actual malice. (Doc. 15). Plaintiff filed his amended complaint

46

in response to defendants' motion, and plaintiff added additional allegations related to actual malice. (Doc. 23). Because plaintiff has already had an opportunity to flesh out his actual malice allegations and still failed to plausibly plead actual malice, further repleading would be futile. Thus, the Court would still dismiss Count I with prejudice.

### B. Count II - Conspiracy

Plaintiff alleges Lizza conspired with others to defame plaintiff by promoting, publishing, and republishing the Article. (Doc. 23, at 25-26). Under both Iowa and California law, a claim for conspiracy must be predicated on some underlying tortious conduct. *See Olson v. City of N. Liberty*, 3:18-CV-00102, 2020 WL 1540227, at *9 (S.D. Iowa Mar. 31, 2020) ("Civil conspiracy is not in itself actionable. . .. Rather, it allows recovery when multiple actors work in concert to cause a tort." (alteration in original) (internal citations and quotation marks omitted)); *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1096 (N.D. Cal. 2017) ("[T]here is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results therefrom."). Because plaintiff's defamation claim fails as a matter of law, his conspiracy claim likewise fails. Defendants' motion to dismiss is **granted** and **Count II is dismissed with prejudice**.

### C. Rule 12(f) Motion to Strike

Because the Court is dismissing plaintiff's claims in their entirety, defendants' motion to strike is **denied as moot**. The Court notes, however, the material identified by defendants (Doc. 37, at 45) is immaterial, impertinent, and scandalous. Plaintiff's personal attacks on Lizza have no bearing on this case. This is apparent because plaintiff never refers to the challenged allegations in resisting defendants' motion to dismiss. The allegations likewise are prejudicial to Lizza and have criminal overtones. *See Jameson*, 871 F. Supp. 2d at 867-68.

## V.    CONCLUSION

For these reasons, defendants' motion (Doc. 34) is **granted** to the extent it seeks dismissal for failure to state a claim under Rule 12(b)(6).  Defendants' motion is **denied** to the extent it asserts a special motion to strike and seeks attorneys' fees and costs under CAL. CIV. PROC. CODE § 425.16.  Defendants' motion is **denied as moot** to the extent it seeks to strike plaintiff's allegations under Rule 12(f).  This case is **dismissed with prejudice**.

**IT IS SO ORDERED** this 5th day of August, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa