United States Court of Appeals
For the Eighth Circuit
_____

No. 20-2710
_____

Devin G. Nunes,

    *Plaintiff - Appellant*,

v.

Ryan Lizza,

    *Defendant - Appellee*,

Hearst Magazine Media, Inc.,

    *Defendant - Appellee*.
_____

Appeal from United States District Court
for the Northern District of Iowa - Western
_____

Submitted: April 14, 2021
Filed: September 15, 2021
_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

  Devin Nunes, a Member of Congress from California, appeals an order of the district court dismissing his complaint alleging defamation and conspiracy claims

against Ryan Lizza and Hearst Magazine Media, Inc. The claims are based on an article published in *Esquire* magazine. Although we agree that there are insufficient allegations of express defamation, we conclude that the complaint does state a claim for defamation by implication as to a republication of the article. We thus affirm in part, reverse in part, and remand for further proceedings.

I.

Representative Nunes has been a Member of Congress since 2003, and he serves as the Ranking Member of the House Permanent Select Committee on Intelligence. He worked on his family's farm in California as a child, and later owned farmland with his brother. In 2006, the Nunes family sold its farmland in California, and the Congressman's parents and brother moved to Sibley, Iowa, where his father purchased a dairy farm, NuStar Farms. According to the complaint, the farm is operated by the Congressman's family without his involvement, and the Congressman has no financial interest in the farm.

On September 30, 2018, *Esquire* magazine (then owned by Hearst) published an article about Representative Nunes and the farm. Lizza authored the piece. The online version is entitled "Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret." The print version is entitled "Milking the System," and includes a caption that asks two questions about a Congressman who has "spun himself as a straight talker whose no-BS values are rooted in his family's California dairy farm": "So why did his parents and brother cover their tracks after quietly moving the farm to Iowa? Are they hiding something politically explosive?"

The article maintains that Representative Nunes and his family hid the fact that the family farm is now in Iowa. The article states that Nunes (1) "has a secret" and (2) that "he and his parents seemed to have concealed basic facts about the family's move to Iowa." The article describes how his parents, "Anthony Jr. and Toni

-2-

Case 5:19-cv-04064-CJW-MAR   Document 60   Filed 09/15/21   Page 2 of 15
Appellate Case: 20-2710   Page: 2   Date Filed: 09/15/2021 Entry ID: 5076633

Dian, . . . used their cash from the sale to buy a dairy eighteen hundred miles away in Sibley," and declares it "strange . . . that the family has apparently tried to conceal the move from the public—for more than a decade." The article ponders: "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?" When the article was published, Steve King was the Member of Congress who represented the district in Iowa where the farm is located.

The article later asserts that the farm uses undocumented labor: "According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor. One source . . . had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs" and "assert[ed] that the farm was aware of their status."

Two statements insinuate that the farm's use of undocumented labor is the reason that Representative Nunes and his family were hiding the family's move and their operation of an Iowa dairy farm. Lizza wrote that "[o]ther dairy farmers in the area helped me understand why the Nunes family might be so secretive about the farm: Midwestern dairies tend to run on undocumented labor." The article also includes a quote from Lizza's interview with a local newspaper reporter, who said that the farm's workers "'are immigrants and Devin is a very strong supporter of Mr. Trump, and Mr. Trump wants to shut down all of the immigration, and here is his family benefiting from immigrant labor,' documented or not."

The article also accuses Representative Nunes of improper conduct during his tenure as Chairman of the House Intelligence Committee. The article says that he used his chairmanship (1) "to spin a baroque theory about alleged surveillance of the Trump campaign that began with a made-up Trump tweet about how 'Obama had my "wires tapped" in Trump Tower,'" and (2) as a "battering ram to discredit the Russia investigation and protect Donald Trump at all costs, even if it means shredding his

-3-

Case 5:19-cv-04064-CJW-MAR   Document 60   Filed 09/15/21   Page 3 of 15
Appellate Case: 20-2710   Page: 3   Date Filed: 09/15/2021 Entry ID: 5076633

own reputation and the independence of the historically nonpartisan committee in the process."

After the article was published, Nunes sued Lizza and Hearst in the district court, alleging common-law defamation and conspiracy. The complaint, as amended, claims express defamation based on eleven alleged false statements in the article, and defamation by implication. The alleged defamatory implication is that the article implies falsely that Representative Nunes "conspired or colluded with his family and with others to hide or cover-up" that the farm "employs undocumented labor."

Lizza and Hearst moved to dismiss the complaint for failure to state a claim, and the district court granted the motion. The court ruled that the individual statements and alleged implication were not defamatory as a matter of law. The court further concluded that even if the article was defamatory, the complaint still failed to state a claim because it did not allege plausibly that Lizza and Hearst acted with "actual malice" in publishing the article. Having determined that the complaint failed to allege defamation, the court dismissed the conspiracy claim as well.

Nunes appeals the dismissal of his complaint, and we review the district court's decision *de novo*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).

II.

On appeal, Nunes contends that his complaint states a claim for express defamation and defamation by implication. We apply Iowa substantive law in this diversity action because the district court determined that there was no conflict between Iowa and California defamation law, and the parties do not challenge that

-4-

Case 5:19-cv-04064-CJW-MAR   Document 60   Filed 09/15/21   Page 4 of 15
Appellate Case: 20-2710   Page: 4   Date Filed: 09/15/2021 Entry ID: 5076633

conclusion on appeal. *See Oakdale Mall Assocs. v. Cincinnati Ins. Co.*, 702 F.3d 1119, 1122 (8th Cir. 2013).

Defamation is "an invasion of the interest in reputation and good name" that is comprised of the "twin torts of libel and slander—the former being written and the latter being oral." *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996). Nunes's complaint sounds in libel. To establish a *prima facie* case of express defamation under Iowa law, "the plaintiff must show the defendant (1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff." *Id.* Because Representative Nunes is a public figure, the Supreme Court's jurisprudence on the First Amendment also requires him to prove by clear and convincing evidence that the defamatory statement is false and was made with actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 659 (1989); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

A claim asserting defamation by implication requires proof of similar elements, except that a plaintiff need not show that individual statements are defamatory. Instead, defamation by implication arises from what is implied when a defendant "(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts." *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007) (quoting Dan B. Dobbs et al., *Prosser & Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp. 1988)). The implication constitutes defamation "even though the particular facts are correct," unless it qualifies as an "opinion." *Id.* (quoting *Prosser & Keeton on the Law of Torts* § 116, at 117). The court must determine whether an objectively reasonable reader could draw the alleged false implication from the article as a whole. *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 889-90 (9th Cir. 2016); *Toney v. WCCO Television, Midwest Cable & Satellite, Inc.*, 85 F.3d 383, 394-96 (8th Cir. 1996).

-5-

Case 5:19-cv-04064-CJW-MAR Document 60 Filed 09/15/21 Page 5 of 15
Appellate Case: 20-2710    Page: 5    Date Filed: 09/15/2021 Entry ID: 5076633

A.

Nunes first contends that the district court erred in dismissing his claim for express defamation. He challenges the court's ruling that the two statements about improper use of his position as Chairman of the House Permanent Select Committee on Intelligence are not actionable as defamation. We agree with the district court that the complaint fails to state a claim for express defamation based on the statements, and adopt the court's conclusions. *See* 8th Cir. R. 47B.

Nunes also argues that a third statement is defamatory: that he "attempt[ed] to undermine the Russia investigation by releasing a partisan report . . . that cherry-picked evidence to accuse the FBI of bias in its effort to obtain a warrant to monitor the communications of Carter Page." But Nunes failed to identify that statement as allegedly defamatory in his complaint, and we decline to consider the issue for the first time on appeal. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 705-06 (11th Cir. 2016).

B.

Second, Nunes contends that his complaint states a plausible claim for defamation by implication. He argues that the article implies the existence of a "politically explosive secret" that he "conspired with others" to hide the farm's use of undocumented labor. He alleges that the implication is false because he was not involved in the farm's operations, and "had no knowledge of who the dairy farm hired." The district court concluded that "no reasonable reader" could draw that implication from the article. We respectfully disagree.

Both the print and online versions of the article refer to a "politically explosive" secret involving the farm in either the title or caption. The article begins with the words: "Devin Nunes has a secret." The article then identifies the

-6-

"secret"—namely, that "[t]he Nunes family dairy of political lore . . . isn't in California. It's in Iowa." The first part ends by questioning why the Nuneses would "conspire" with others "to hide the fact that the congressman's family sold its farm and moved to Iowa?"

Soon thereafter, the article states that the use of undocumented labor at dairy farms in Sibley suggests "why the Nunes family might be so secretive about the farm." The article then explains the use of undocumented labor in the dairy industry and the complex political dynamics at work in communities that support President Trump but rely on undocumented labor. Next, the article reveals that two sources told Lizza that the farm did "rely, at least in part, on undocumented labor." Later, the article describes Nunes as "one of Trump's most important allies," cites the Congressman's "unwavering support" for Immigration and Customs Enforcement, and recounts that "Trump, King, and their allies" describe guest-worker programs for undocumented dairy workers as "amnesty."

Based on the article's presentation of facts, we think the complaint plausibly alleges that a reasonable reader could draw the implication that Representative Nunes conspired to hide the farm's use of undocumented labor. *See Manzari*, 830 F.3d at 889; *Stevens*, 728 N.W.2d at 827. In reaching a contrary conclusion, the district court relied on the location of the relevant facts in the article. The court determined that the facts about Nunes conspiring to hide the farm's move and the facts about the farm's use of undocumented labor were "scattered at disparate points" and thus not "juxtaposed."

But defamation-by-implication claims, like defamation claims generally, must be analyzed by considering the article as a whole. *Toney*, 85 F.3d at 396. Although the Iowa court in *Stevens* posited a defendant who "juxtaposes a series of facts," 728 N.W.2d at 827 (internal quotation omitted), we do not believe the theory is limited to situations in which the implication arises from, say, consecutive sentences. "It is

-7-

well settled that the 'arrangement and phrasing of apparently nonlibelous statements' cannot hide the existence of a defamatory meaning." *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984) (quoting *Kapellas v. Kofman*, 459 P.2d 912, 919-20 (Cal. 1969)). When a reader, "connecting the dots," could reasonably arrive at the implication, the author may be accountable. *Elias v. Rolling Stone LLC*, 872 F.3d 97, 109 (2d Cir. 2017). Whether the "arrangement and phrasing" of facts creates a defamatory implication depends on the particular context; an intervening section break does not necessarily avoid liability.

Here, the article's principal theme is that Nunes and his family hid the farm's move to Iowa—the "politically explosive" secret. The article then sets forth a series of facts about the supposed conspiracy to hide the farm's move, the use of undocumented labor at Midwestern dairy farms, the Nunes family farm's alleged use of undocumented labor, and the Congressman's position on immigration enforcement, in a way that reasonably implies a connection among those asserted facts. A reasonable reader could conclude, from reading the article as a whole, that the identified "secret" is "politically explosive" because Nunes knew about his family's employment of undocumented labor. And revelation of that fact could be politically damaging to a Member of Congress who demonstrates "unwavering support for ICE" and who is among the "allies" of President Trump who have denounced "amnesty" for undocumented workers.

Lizza and Hearst argue that even if a reasonable reader could draw the defamatory implication from the article, the First Amendment precludes Nunes's claim. First, Lizza and Hearst assert that the implication is protected opinion. The First Amendment does not provide absolute protection for opinions, but "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990).

-8-

Before *Milkovich*, this court employed a four-factor analysis for determining whether a statement constitutes fact or protectible opinion. *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1302-03 (8th Cir. 1986) (en banc). These factors included (1) "the precision and specificity of the disputed statement," (2) whether the disputed statement is verifiable, (3) the "literary context" in which the statement was made, and (4) the "public context" in which the statement was made. *Id*. After *Milkovich*, however, we clarified that the *Janklow* factors "no longer control our analysis," and that the proper inquiry is whether the statement or implication "is factual and provable." *Toney*, 85 F.3d at 393-94.

Drawing nonetheless on the *Janklow* factors, Lizza and Hearst contend that the alleged defamatory implication is protected opinion. They first argue that the implication is "rhetorical hyperbole" contained in a "work of literary journalism." We reject that argument because there is a reasonable inference that the article implies the assertion of objective facts—that the farm employs undocumented labor, and that Nunes agreed with others to hide the farm's use of undocumented labor. *See Turntine v. Peterson*, 959 F.3d 873, 886 (8th Cir. 2020). Nor does the "literary context" make the implication a protected opinion. The article is based on Lizza's investigation of the farm and presents his assertion that the Congressman and his family tried to "hide" the family's move to Iowa. A reasonable reader would expect a piece of investigative journalism to convey facts, *see Michel*, 816 F.3d at 699, and the article's "literary context" does not support the conclusion that the implication is a protected opinion.

Lizza and Hearst also assert that the alleged implication is not verifiable. But the important facts can be confirmed or refuted. Nunes alleges that the article implies the existence of a "politically explosive secret" that he "conspired with others" to hide the farm's use of undocumented labor. A conspiracy is an agreement that requires knowledge—here, knowledge that the farm employed undocumented labor and a knowing agreement to cover up that politically embarrassing fact. Yet the

-9-

Congressman's complaint says that he was "not involved" in the farm's "operations," had "no knowledge of who the dairy farm hired," and thus "was not involved in any conspiracy or cover-up." Whether Nunes knew about the farm's hiring practices, including the potential use of undocumented labor, and whether he agreed with others to keep that information secret, are issues of verifiable fact. We thus conclude that the implication is "sufficiently factual to be susceptible of being proved true or false," so it is not a protected opinion. *Milkovich*, 497 U.S. at 21.

Lizza and Hearst also argue that the First Amendment imposes an additional burden on Nunes in a defamation-by-implication action: he must allege and prove that Lizza and Hearst intended or endorsed the implication. *See White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990). The district court agreed, and concluded that "there is no evidence defendants intended the Article to imply that [Nunes] conspired to hide NuStar's use of undocumented labor."[*]

On appeal, Nunes does not challenge the district court's conclusion that the First Amendment imposes a subjective intent requirement in defamation-by-implication cases. He contends instead that the complaint plausibly alleges that Lizza and Hearst "subjectively intended or endorsed the defamatory implication." We therefore assume for the sake of analysis that the law requires such a showing, and consider whether Nunes has made a sufficient allegation.

---

[*]The district court also concluded that Nunes waived the issue by failing to argue that Lizza and Hearst subjectively intended the defamatory implication. On appeal, Lizza and Hearst contend that this waiver dooms Nunes's defamation-by-implication claim. But Nunes argued in the district court that the "Politically Explosive Secret" to which the article refers is that he conspired with his family and Representative King to hide the fact that NuStar Farms employs undocumented labor, and "[t]hat is precisely the meaning that was intended" by Lizza and Hearst. R. Doc. 38, at 16. There was no waiver.

-10-

Case 5:19-cv-04064-CJW-MAR   Document 60   Filed 09/15/21   Page 10 of 15
Appellate Case: 20-2710   Page: 10   Date Filed: 09/15/2021 Entry ID: 5076633

To demonstrate that a defendant intended subjectively an implication, it is sufficient to show that "the particular manner or language in which the true facts are conveyed, supplies . . . affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference." *White*, 909 F.2d at 520. Applying this standard, Nunes has plausibly alleged that Lizza and Hearst intended or endorsed the implication that Nunes conspired to cover up the farm's use of undocumented labor. The complaint points to the article's "click-bait headline" that Nunes is hiding a "politically explosive secret," its discussion of his efforts to conceal the farm's move to Iowa, and its claim that the farm employs undocumented labor. The manner in which the article presents the discussion of the farm's use of undocumented labor permits a plausible inference that Lizza and Hearst intended or endorsed the implication. Thus, the complaint states a plausible claim for defamation by implication.

C.

The next issue for consideration is "actual malice." The Supreme Court's interpretation of the First Amendment requires a public official to prove that defamatory statements or implications are made with "actual malice," meaning "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 279-80. In this context, "reckless conduct is not measured by whether a reasonably prudent man would have published." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Instead, "the defendant must have made the false publication with a high degree of awareness of . . . probable falsity, or must have entertained serious doubts as to the truth of his publication." *Harte-Hanks*, 491 U.S. at 667 (internal quotations and citation omitted).

To survive a motion to dismiss, a public figure's complaint must allege "facts sufficient to give rise to a reasonable inference of actual malice." *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) (internal

-11-

quotation omitted). The district court concluded that the complaint does not meet that burden. On appeal, Nunes suggests that the actual malice standard of *New York Times v. Sullivan* should be reconsidered, *see McKee v. Cosby*, 139 S. Ct. 675 (2019) (Thomas, J., concurring in denial of certiorari); *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 251-56 (D.C. Cir. 2021) (Silberman, J., dissenting in part), but of course we are bound to apply it. Under that demanding standard, we agree with the district court that the complaint is insufficient to state a claim of actual malice as to the original publication.

The district court went further, however, and ruled that the complaint does not state a plausible allegation that Lizza acted with actual malice by republishing the article on his Twitter account after this lawsuit was filed. On this point, we respectfully disagree.

There is a distinction in defamation law between an original publication and a republication. The "single publication" rule provides that any one edition of a book or newspaper, even if distributed to a multitude, constitutes one publication that may support only one cause of action. Restatement (Second) of Torts § 577A(3) (Am. L. Inst. 1977). But that rule does not include "separate aggregate publications on different occasions." *Id*. § 577A cmt. d. So, for example, "if the same defamatory statement is published in the morning and evening editions of a newspaper, each edition is a separate single publication and there are two causes of action." *Id*. In that situation, "the publication reaches a new group and the repetition justifies a new cause of action." *Id*. The justification for this exception to the "single publication" rule is that "the subsequent publication is intended to and actually reaches a new audience." *Firth v. State*, 775 N.E.2d 463, 466 (N.Y. 2002); *see Wheeler v. Dell Publ'g Co.*, 300 F.2d 372, 375 (7th Cir. 1962).

A speaker who repeats a defamatory statement or implication after being informed of its falsity "does so at the peril of generating an inference of actual

-12-

Case 5:19-cv-04064-CJW-MAR Document 60 Filed 09/15/21 Page 12 of 15
Appellate Case: 20-2710 Page: 12 Date Filed: 09/15/2021 Entry ID: 5076633

malice." *Bertrand v. Mullin*, 846 N.W.2d 884, 901 (Iowa 2014). "[O]nce the publisher knows that the story is erroneous . . . the argument for weighting the scales on the side of [its] first amendment interests becomes less compelling." *Nelson*, 951 F.3d at 959 (quoting *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1072 (5th Cir. 1987)).

Nunes's initial complaint was filed on September 30, 2019. The complaint alleged that the "strong defamatory gist and false implication" of the article was that he "was involved in, covered-up, used his office to cover up, conspired with others to conceal, or was aware of criminal wrongdoing." The next paragraph of the complaint makes clear that the "criminal wrongdoing" to which Nunes referred was the farm's alleged use of undocumented labor. The complaint denied that Nunes had any involvement in the farm's "operations," denied that there was a "secret" involving the farm's move to Iowa and his alleged hypocrisy on immigration policy, and denied that he "was involved in, covered-up, . . . conspired with others to conceal, or was aware of criminal wrongdoing."

Nonetheless, on November 20, 2019, Lizza posted a tweet with a link to the article. Lizza's tweet stated: "I noticed that Devin Nunes is in the news. If you're interested in a strange tale about Nunes, small-town Iowa, the complexities of immigration policy, a few car chases, and lots of cows, I've got a story for you." As discussed, the complaint plausibly alleges that the article defames Nunes by implication.

Lizza and Hearst contend that Lizza's tweet of a link to the original article does not constitute republication of the article. They cite *Sundance Image Technology, Inc. v. Cone Editions Press, Ltd.*, No. 02-CV-2258, 2007 WL 935703 (S.D. Cal. Mar. 7, 2007), which held that providing links to previous publications on a website, without more, was not republication. *Id.* at *7. And other courts have concluded that "mere reference to an article," *In re Phila. Newspapers, LLC,* 690 F.3d 161, 175 (3d

-13-

Cir. 2012), or a "mere hyperlink," *Lokhova v. Halper*, 995 F.3d 134, 143 (4th Cir. 2021), without more, is not a republication. But these decisions do not hold categorically that hyperlinking to an original publication never constitutes republication.

The complaint here adequately alleges that Lizza intended to reach and actually reached a new audience by publishing a tweet about Nunes and a link to the article. In November 2019, Lizza was on notice of the article's alleged defamatory implication by virtue of this lawsuit. The complaint alleges that he then consciously presented the material to a new audience by encouraging readers to peruse his "strange tale" about "immigration policy," and promoting that "I've got a story for you." Under those circumstances, the complaint sufficiently alleges that Lizza republished the article after he knew that the Congressman denied knowledge of undocumented labor on the farm or participation in any conspiracy to hide it.

Lizza and Hearst argue that even if the tweet is a republication, Nunes's complaint still fails to raise a plausible inference of actual malice. Citing *Edwards v. National Audubon Society, Inc.*, 556 F.2d 113 (2d Cir. 1977), Lizza and Hearst maintain that Nunes's filing of a defamation lawsuit is a "mere denial" that cannot support clear and convincing evidence of actual malice. *Id.* at 121. *Edwards*, however, reversed a *jury verdict* in favor of defamation plaintiffs after a trial. The court concluded that the plaintiffs' denial of a reporter's allegations before publication, standing alone, was insufficient evidence of actual malice. *Id.* at 120-21.

In reviewing a ruling on a motion to dismiss, however, we consider only whether Nunes's complaint states enough factual matter, accepted as true, to raise a "reasonable expectation that discovery will reveal evidence" of actual malice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The rules of procedure do not impose "a probability requirement" at the pleading stage. *Id*. "Republication of a statement after the defendant has been notified that the plaintiff contends that it is

-14-

false and defamatory may be treated as evidence of reckless disregard." Restatement (Second) of Torts § 580A cmt. d (Am. L. Inst. 1977). Lizza tweeted the article in November 2019 after Nunes filed this lawsuit and denied the article's implication. The pleaded facts are suggestive enough to render it plausible that Lizza, at that point, engaged in "the purposeful avoidance of the truth." *Harte-Hanks*, 491 U.S. at 692.

\*     \*     \*

The judgment of the district is affirmed in part and reversed in part. We remand for further proceedings on Nunes's claim alleging defamation by implication, and the related claim alleging a common-law conspiracy, as to the publication of November 20, 2019.

_____