IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
Western Division

DEVIN G. NUNES                )
                                )
       Plaintiff,           )
                                )
v.                             )         <u>Case No. C19-4064-CJW-MAR</u>
                                )
                                )         **TRIAL BY JURY**
RYAN LIZZA               )         **IS DEMANDED**
                                )
-and-                    )
                                )
HEARST MAGAZINE MEDIA, INC.  )
                                )
       Defendants.        )
                                )

# <u>SECOND AMENDED COMPLAINT</u>

Plaintiff, Devin G. Nunes ("Plaintiff"), by counsel, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure (the "Rules"), ¶ 3 of the Court's Scheduling Order and Discovery Plan [*ECF No. 84*] and the Court's Order granting leave [*ECF No. 90*] entered on June 1, 2022, files the following Second Amended Complaint against defendants, Ryan Lizza ("Lizza") and Hearst Magazine Media, Inc., the publisher of *Esquire* magazine ("Hearst" or "*Esquire*"), jointly and severally.

Plaintiff seeks (a) compensatory damages and punitive damages in the sum of **$77,500,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from the date of the commencement of this action until the date of Judgment pursuant to Iowa Code § 668.13, and (c) costs incurred – arising out of the Defendants' defamation by implication and common law conspiracy.

1

In support of his claims, Plaintiff states the following facts:

## I. __INTRODUCTION__

1. Lizza is a high-profile, left-wing political journalist, well-known for his extreme bias towards Plaintiff and his long history of publishing libelous statements about Plaintiff. In April 2017, while employed by the *New Yorker* magazine, Lizza wrote a series of articles that falsely accused Plaintiff of colluding with the "Trump Administration" to "manufacture a fake scandal" and buttress a baseless claim of wiretapping Trump Tower. Lizza falsely stated that Plaintiff had leaked classified information, engaged in a "series of lies", misled the American public, and misrepresented the contents of intelligence files that Plaintiff had reviewed. Lizza informed the *New Yorker's* readers that the "fake scandal created by Trump and Nunes is not over yet." [https://www.newyorker.com/news/ryan-lizza/devin-nunes-and-the-ethics-watchdogs; https://www.newyorker.com/news/ryan-lizza/the-continuing-fallout-from-trump-and-nuness-fake-scandal].[1] In December 2017, the *New Yorker* fired Lizza. In June 2018, *Esquire* announced that it had hired Lizza as the magazine's chief political correspondent. Lizza only lasted a short time at *Esquire*. During his brief tenure, however, he physically traveled to Sibley, Iowa, to promote yet another fictitious

---

[1] Lizza's statements are defamatory. *See, e.g., Nunes v. WP Company, LLC*, 2021 WL 3550896, at * 4 (D. D.C. 2021) ("Taken as a whole, the article says (or at least a reasonable juror could understand the article to say) that Nunes had made baseless claims about spying on Trump Tower and then visited the White House to inspect documents that might support those baseless claims. And a reasonable juror could conclude that an elected official is ridiculous or unfit for office if he searched for evidence to support baseless claims … 'baseless' is the type of word that transforms the 'gist' of the article by insinuating that Nunes is the type of official who would spend his time searching for evidence to support claims with no foundation in fact.").

conspiracy theory about Plaintiff that *Esquire* published ahead of the November 2018 Congressional Election.

2.      On September 30, 2018, Lizza and Hearst published an article online and in *Esquire* magazine that knowingly and recklessly embroiled Plaintiff and his family in a wholly contrived controversy.  Lizza and Hearst manufactured the false narrative out of whole cloth.  They knowingly fabricated and falsified facts.  They falsely attributed statements to sources that the sources never made.  They destroyed evidence to cover-up and hide knowledge of their wrongdoing.  Directly and by implication, Lizza and Hearst accused Plaintiff's family of criminal conduct, conspiracy, deception, deceit, lack of integrity, and dishonest and shoddy business practices.  Lizza and Hearst accused Plaintiff, a sitting United States Congressman, of conspiring to cover it up.  Lizza and Hearst targeted Plaintiff excessively via a coordinated social media and main stream media campaign that included Lizza's girlfriend, Olivia Nuzzi ("Nuzzi").  Lizza and Hearst deliberately and recklessly conveyed false messages to sensationalize the news and to create a political bombshell ahead of the 2018 Congressional Election.  Lizza and Hearst excessively publicized the false and fictitious "conspiracy", which was foreseeably republished millions of times within the year preceding the filing of this action.  To make matters worse, on November 20, 2019, after Lizza and Hearst knew that Plaintiff denied knowledge of any undocumented labor on his family's dairy farm in Iowa and denied participation in any form of conspiracy to hide it, Lizza republished the false and defamatory statements.  Lizza and Hearst retweeted the false and defamatory statements after Plaintiff filed this lawsuit and denied the article's central implication of a conspiracy.  Lizza and Hearst engaged in the purposeful avoidance of the truth.

3.     In this case, Plaintiff seeks money damages for the insult, pain, embarrassment, humiliation, mental suffering and distress, anguish, and injury to his good name and professional reputation in Iowa and elsewhere, caused by Defendants' defamation and conspiracy.

## II.  PARTIES

4.     Plaintiff is a citizen of California.  Born October 1, 1973, Plaintiff served in the United States House of Representatives from 2003 until December 2021. Plaintiff's parents, brother and sister-in-law live in Sibley, Iowa, and work at NuStar Farms ("NuStar").  They have operated a dairy farm in Sibley for more than a decade.  At the time Defendants published and republished the false statements at issue in this action, Plaintiff served as Ranking Member of the House Permanent Select Committee on Intelligence (the "House Intelligence Committee"), having been appointed to the Committee in the 112th Congress and serving as Committee Chairman during the 114th and 115th Congresses.  Plaintiff worked in Washington, D.C.  As a member of the House Intelligence Committee, he participated in oversight of the U.S. national security apparatus, including the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government.  Plaintiff is a Medal of Freedom recipient.   He retired from Congress at the end of December 2021 [https://nunes.house.gov/about/; https://www.devinnunes.com/bio].

5.     Plaintiff's career as a United States Congressman is distinguished by his honor, dedication and service to his constituents and his country, his honesty, integrity, ethics, and reputation for truthfulness and veracity.   The qualities disparaged by Defendants – Plaintiff's honesty, veracity, integrity, ethics, judgment and performance as

United States Congressman – are particularly valuable to Plaintiff and are absolutely necessary in the conduct of public office, including Plaintiff's then-role as Chairman of the House Intelligence Committee.

6.     Defendant, Lizza, was a senior correspondent for Hearst.  He now works for Politico.  Acting in a managerial capacity within the scope of his employment, Lizza wrote the article at issue in this action for Hearst for publication in *Esquire* magazine. Lizza is not an "opinion" writer.  He is a political news correspondent and self-acclaimed "political analyst" for Cable News Network, Inc. ("CNN").  The article at issue in this case did not appear in any "op-ed" column.

7.     Defendant, Hearst, is a Delaware corporation.  Its headquarters and principal place of business is New York.  Hearst publishes *Esquire* magazine.  Hearst is a unit of Hearst Corporation, a global media, information and services company.  Hearst's print and digital assets reach 155 million readers and site visitors each month – two-thirds of all millennials, and over 80% of Gen Z and millennial women in the country.  *Esquire* magazine has a total print circulation of 759,922, 97% of which are subscriptions. [http://www.esquiremediakit.com/r5/home.asp].   Hearst has hundreds of thousands of print and digital subscribers and viewers who live and work in Iowa, and has sold millions of copies of *Esquire* to Iowans.  Hearst encouraged, authorized and ratified publication of the article at issue in this action, and actively participated in its multiple republications online and via social media.

### III.  <u>JURISDICTION AND VENUE</u>

8.     The United States District Court for the Northern District of Iowa has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The parties are

citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees.

9.     The Defendants are subject to specific personal jurisdiction in Iowa. They transact substantial business in Iowa and committed multiple acts of defamation in whole or in part in Iowa. They have minimum contacts with Iowa such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution. Defendants purposefully availed themselves of the privilege of doing business in Iowa. Defendants' defamation was purposefully directed at Iowa. Plaintiff's claims arise directly from and specifically relate to Defendants' publication of false and defamatory statements in Iowa. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

10.     Venue is proper in the Western Division of the United States District Court for the Northern District of Iowa. A substantial part of the events giving rise to the claims stated in this action, including injury to Plaintiff's name and reputation, occurred in Osceola County within the Western Division of the United States District Court for the Northern District of Iowa.

## IV.  STATEMENT OF THE FACTS

11.     NuStar operates a dairy farm in Sibley, Iowa. Anthony Nunes, Jr. ("Anthony Jr.") and Anthony Nunes III ("Anthony III") (collectively "the Nuneses") manage NuStar. The business of NuStar is managed professionally. NuStar documents all labor and employment decisions. Those records, including documents establishing both employment authorization and identity as well as Forms 1-9 – Employment Eligibility Verifications, are kept and maintained by NuStar in the ordinary course of its

6

business in accordance with Federal law. NuStar has never employed an alien knowing that such person is an unauthorized alien.

12. Plaintiff is Anthony, Jr.'s son and Anthony III's brother.

13. The Nunes family has long owned and managed a dairy farm located in Tulare, California. The farm in California is closely associated with Plaintiff's political profile.[2]

14. In 2006, Anthony Jr., Anthony Jr.'s wife Toni Dian ("Dian"), Anthony III and his family moved to Iowa, formed NuStar, and started a new dairy farm. Plaintiff has never had any ownership, managerial or financial interest whatsoever in NuStar or any involvement of any kind in its operations, including, without limitation, any of NuStar's labor and employment, hiring or business/immigration compliance practices.

15. The article at issue in this action was the product of a conspiracy between Lizza and one or more third-parties to defame Plaintiff and his family. The conspiracy began in 2017 and continued through at least November 2019. Between March 24, 2017 and April 18, 2017, while employed by the *New Yorker*, Lizza wrote five (5) hit pieces about Plaintiff. In one of those hit pieces, Lizza made charges that Plaintiff conspired with others to engage in illegal or wrongful acts, similar to the false implication espoused in the article at issue in this case. The narrative for the article at issue in this case – *e.g.*, a

---

[2] The Nunes family dairy farm of political lore – the farm that has been central to Plaintiff's identity and a feature of every major political profile written about him – is located in Tulare, California. It has always been in Tulare, California. It has never moved. The family farm was owned by Anthony Jr.'s parents. After Anthony Jr.'s father died, Plaintiff started working with his uncle Gerald Nunes ("Gerald"), managing the family farm, as well as working on his own farmland. The Nunes family never sold the family farm. As of September 30, 2018, Gerald continued to manage the Nunes family farm in California, a fact that was well-known to Lizza and Hearst when they published the article at issue in this case.

conspiracy to hide a politically explosive secret – was presented to Lizza in or about August 2018. Lizza did not ▮▮▮ the story to Hearst. Hearst does not know where ▮▮▮ ▮▮▮▮▮▮▮▮▮▮ in the article. In truth, the "politically explosive" storyline – that Plaintiff conspired with his father, brother, and Iowa Representative Steve King ("Rep. King") to conceal the fact NuStar knowingly employed undocumented workers in violation of Federal law – came from one or more political operatives and/or opposition research firms. In telephone calls and private messages with these operatives exchanged in 2018, Lizza agreed to write the scandalous story about conspiracy and immigration law violations to defame Plaintiff and his family.

## A. ***Knowledge of Falsity***

16. In late August 2018, Lizza traveled to Sibley, Iowa, to find sources to support the fake narrative he had been provided. He found none.

17. He interviewed a Hispanic woman named ▮▮▮▮▮▮ ("▮▮▮▮"). Lizza ▮▮▮ the interview. ▮▮▮▮ told Lizza that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮



▮▮▮▮ in Sibley. Lizza avoided asking ▮▮▮▮▮▮▮▮▮▮▮▮. If he had asked, Lizza would have discovered that ▮▮▮ sent ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮. The audiotape reveals that Lizza peppered ▮▮▮ with leading questions that suggested the answers Lizza wanted. Lizza asked ▮▮▮▮▮▮▮▮ ▮▮▮" ▮▮▮ clearly stated to Lizza, "▮▮▮▮▮▮▮▮ ▮". ▮▮▮ never told Lizza that NuStar was aware of the immigration status of any workers that ▮▮▮ sent. Indeed, ▮▮▮ has never met and never spoken with Anthony Nunes, Jr., Anthony Nunes, III, or anyone else from NuStar Farms.

18.    Lizza also interviewed an anonymous source identified only as "█████████". Lizza ████ the telephone interview. ██████████ told Lizza that ████████████ ██████████████████████████████████████. ██████████ did not claim to be ███████████████. Rather, the ████████ reveals that in response to Lizza's question, "█████████████████████████████████████████", ████████████ said "████". Lizza did nothing to corroborate whether ██████████ was authorized to work in the United States. In truth, ████████ was ████████████████. ████████████ told Lizza that ██████████████████████████████████.

19.    Other than ██████████ and "███████████", Lizza never spoke with anyone in connection with his reporting who had any knowledge of the employment and hiring practices at NuStar.

20.    While he was in Sibley, Iowa, Lizza took notes and communicated with sources via text message and email. Sometime prior to the filing of this action, Lizza destroyed his notes and the original texts and emails.

21.    Hearst fact-checker, Kevin McDonnell, also ██████████████████████ ████████████ of Lizza's interviews.

**B**.    ***Publication and Republication***

22.    On September 30, 2018, Hearst published in its *Esquire* magazine an article written by Lizza about Plaintiff, the Nuneses and NuStar ("the Article"). The online version of the Article was headlined "**Devin Nunes's Family Farm is Hiding a Politically Explosive Secret**". It was (and still is) accessed by clicking the following hyperlink:  https://www.esquire.com/news-politics/a23471864/devin-nunes-family-farm-iowa-california/. The print version was entitled "**Milking the System**" and the text under

9

the title, in part, asks "So why did [Devin Nunes's] parents and brother cover their tracks after quietly moving the farm to Iowa? Are they hiding something politically explosive?"

23.     Lizza republished the Article to his then 230,000+ followers on Twitter:



24.     Nuzzi is a high-profile Washington, D.C. correspondent for *New York Magazine*. Like Lizza, Nuzzi has a massive following on Twitter. Prior to publication of the Article, Lizza and Nuzzi discussed and coordinated ways to harm Plaintiff and his family by increasing the breadth of the publication. With full awareness of the Article's defamatory implication, Nuzzi agreed to tweet out the Article to her 200,000 followers. Shortly after Lizza tweeted, Nuzzi published the following tweet:



**Olivia Nuzzi**
@Olivianuzzi

Devin Nunes has a secret, one that his family has gone to great lengths to protect – including stalking @RyanLizza around Iowa and intimidating his sources. The results are like some kind of David Lynch black comedy set in a community of dairy farmers:

Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret
Why did Devin Nunes's parents and brother cover their tracks after quietly moving their family farm to Iowa? Ryan Lizza went to Iowa in search of the trut...
🔗 esquire.com

8:04 PM · Sep 30, 2018 · Twitter for iPhone

25.     Lizza and Hearst intentionally timed the original publication of the Article to occur within close proximity to the November 6, 2018 Congressional Election.  It was Defendants' intent to hurt Plaintiff politically with false statements of fact and false implications, and impair his voter bases (both agricultural and Republican) ahead of the Election.  The false statements and implication in the Article (a) that NuStar knowingly received, relied on and employed undocumented labor and (b) that Plaintiff conspired

with the Nuneses and Rep. Steve King to hide the fact that NuStar knowingly employed illegal labor were expressly intended to mislead conservative Republicans into believing that Plaintiff was a "hypocrite" whose family knowingly employed illegal immigrants.

26.     The Defendants intentionally republished the Article multiple times after September 30, 2018 without regard for Plaintiff's rights and interests.  Hearst republished the Article to its 400,000+ Twitter followers on October 1, 2018:



Hearst's editor-in-chief, Jay Fielden, tweeted out the Article:



Jay Fielden ✓
@JayFielden

Tune in to @CNN at 1:45 to hear more about @RyanLizza 's Coen-Brothers-esque odyssey tracking down why @RepDevinNunes hasn't exactly been honest about where his family's 2,000 dairy cows call home. #strangerthanfiction esquire.com/news-politics/… via @Esquire

Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret
Why did Devin Nunes's parents and brother cover their tracks after quietly moving their family farm to Iowa? Ryan Lizza went to Iowa in search of the trut...
🔗 esquire.com

10:40 AM · Oct 1, 2018 · Twitter Web Client

27.     On December 28, 2018, Lizza again republished the Article. He repeated that the "Nunes family dairy, in Iowa, has for years relied on undocumented labor":



**Ryan Lizza** ✔
@RyanLizza

○○○

Replying to @RyanLizza

This is an unusual tweet for 2 reasons: 1. Until the Trump era Rep. Nunes had not been a demagogue about undocumented immigrants and crime. 2. The Nunes family dairy, in Iowa, has for years relied on undocumented labor, as reported here



Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret
🔗 esquire.com

9:23 AM · Dec 28, 2018 · Twitter for iPhone

28.     In 2019, each time a major news story broke concerning Plaintiff, Defendants republished the Article.  For instance, on March 22, 2019, Special Counsel Robert Mueller submitted his confidential report entitled "Report on the Investigation into Russian Interference in the 2016 Presidential Election" (the "Mueller Report").   The Mueller Report vindicated Plaintiff's long-standing insistence that there was no evidence that Trump associates colluded with Russia to steal the 2016 U.S. Presidential Election.  Within days of the publication of the Mueller Report, Hearst retaliated against Plaintiff and his family and republished the Article:



29.     During the impeachment hearings before the House Intelligence Committee in November 2019, Plaintiff led the Republican criticism of House Democrats for their handling of the impeachment inquiry and other investigations into President Trump.   The Defendants again seized the opportunity to republish the Article.   Lizza tweeted:



By November 20, 2019, Defendants knew that *both* Plaintiff *and* the Nuneses had denied that NuStar knowingly employed undocumented labor and further expressly denied that there was any conspiracy to hide it. On September 25, 2019, Plaintiff delivered notice and demand for retraction to Lizza and Hearst, putting them on notice that Plaintiff contended the statements in the Article to be false and defamatory. Similarly, on November 14, 2019, Anthony, Jr. and NuStar delivered notice and demand for retraction to Hearst that put Hearst on notice of the false and defamatory statements in the Article. The Defendants disregarded both letters. The November 2019 tweet was a slap in the face, published with actual malice and reckless disregard for truth and consequences to Plaintiff.

30.     Within the year preceding the filing of this action, Defendants' combined 660,000+ Twitter followers and other third-parties republished the Article millions of times.

**C.**     ***The False Statements And Why They Are False***

31.     The Article makes the following express statements of fact:

a.     "**There was no doubt about why I was being followed. According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor. One source, who was deeply connected in the local Hispanic community, had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs … asserting that the farm was aware of their status … A second source, who claimed to be an undocumented immigrant, also claimed to have worked at NuStar for several years, only recently leaving the dairy … This source**

**was nervous to talk to me and did not want to speculate about the immigration status of fellow employees**".

b.      These statements are false because (a) contrary to Defendants' central allegation, neither of the two sources had firsthand knowledge that NuStar relied on undocumented labor, (b) the first source (████) never "personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs" – indeed, ███████████ ████████████████████████████, (c) the first source (█████) did not assert that "the farm was aware of their status" – in fact, she had never met or spoken with the Nuneses or anyone at NuStar, (d) the second source (██████) did not "claim[] to be an undocumented immigrant", (e) the second source (██████) was ████████████ by NuStar, (f) the second source (██████) did not "recently" leave the dairy, (g) far from not wanting to "speculate", the second source (██████) unequivocally stated that █████████████████████████████, (h) NuStar did not hire undocumented labor as its business records attest; (i) NuStar was not "aware of their status" and did not violate Federal law (Title 8 U.S.C. § 1324a) by knowingly hiring an unauthorized alien.  NuStar fully documented all hiring decisions in accordance with Federal law.  Indeed,  there were never any reported cases of NuStar's use of undocumented or unauthorized workers.

### D.      _Defamation by Implication_

32.      The Article juxtaposes a series of facts so as to imply a defamatory connection between them.  The Article also creates a defamatory implication by omitting facts, such that Defendants may be held responsible for the defamatory implication.

33.     The Article is premised on false suggestions, impressions and implications arising from a series of factual statements.  The Article maintains that Plaintiff and his family hid the fact that the family farm is now in Iowa.  The Article states that Plaintiff (1) "has a secret" and (2) that "he and his parents seemed to have concealed basic facts about the family's move to Iowa."   The Article describes how Plaintiff's parents, "Anthony Jr. and Toni Dian … used their cash from the sale to buy a dairy eighteen hundred miles away in Sibley," and declares it "strange … that the family has apparently tried to conceal the move from the public—for more than a decade."   The Article ponders: "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?"  The Article later asserts that the farm uses undocumented labor: "According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor.  One source … had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs" and "assert[ed] that the farm was aware of their status."   Two statements insinuate that the farm's use of undocumented labor is the reason that Plaintiff and his family were hiding the family's move and their operation of an Iowa dairy farm.  Lizza writes that "[o]ther dairy farmers in the area helped me understand why the Nunes family might be so secretive about the farm: Midwestern dairies tend to run on undocumented labor."  The Article also includes a quote from Lizza's interview with a local newspaper reporter, who said that the farm's workers "'are immigrants and Devin is a very strong supporter of Mr. Trump, and Mr. Trump wants to shut down all of the immigration, and here is his family benefiting from immigrant labor,' documented or not."

34.     The defamatory gist and implication of the Article is that Plaintiff conspired or colluded with his family, Rep. King and with others to hide or cover-up that NuStar employs undocumented labor.

35.     Based on the Article's presentation of facts, an objectively reasonable reader could draw the false implication from the Article as a whole.

36.     The implication is false because Plaintiff was not involved in NuStar's operations, had no knowledge of who the dairy farm hired, and, therefore, did not, indeed could not have conspired with his family.  Further, Plaintiff never conspired, colluded, combined, associated, plotted, schemed or agreed with Rep. King to do anything.  At the time Defendants published the false and defamatory implication, they knew they did not have a scintilla of supporting evidence.

37.     The defamatory implication is verifiable.  The Defendants' false facts can be confirmed and refuted.   A conspiracy is an agreement that requires knowledge—here, knowledge that the farm employed undocumented labor and a knowing agreement to cover up that politically embarrassing fact.  Whether Plaintiff or Rep. King knew about NuStar's hiring practices, including the potential use of undocumented labor, and whether they agreed with NuStar or Plaintiff's family to keep that information secret, are issues of verifiable fact.

38.     The Defendants intended or endorsed the defamatory implication that Plaintiff conspired with his family and Rep. King to cover up NuStar's use of undocumented labor.  The Article's click-bait headline that "Devin Nunes's family farm" is hiding a "politically explosive secret," its discussion of Plaintiff and his family's efforts to conceal the farm's move to Iowa, its claim that NuStar employs undocumented

labor, and the manner in which the Article presents the discussion of NuStar's use of undocumented labor, including the use of a menacing cartoon and stock photographs of ICE agents, permits a plausible inference that Lizza and Hearst intended or endorsed the implication.

E.    *Readers Understood The Article to Convey a Defamatory Meaning*

39.    Viewing the defamatory statements in the Article as a whole and in the context of the surrounding circumstances, third persons immediately understood that Defendants were accusing Plaintiff of conspiring with his family, Rep. King and others to hide the "politically explosive secret".  A few examples suffice:

https://twitter.com/dregg_r/status/1046609910098608128
("I'd like to report an ongoing criminal conspiracy to unlawfully employ aliens in violation of US Code-Title 8-Ch12-SubchII-Part VIII-§1324a @ICEgov by Nustar farms and its proprietors the Nunes family from Sibley Iowa");

https://twitter.com/showusyourwork/status/1046835542170701833
("Today's required reading is about Devin Nunes' family farm and the shadowy conspiracy surrounding it");

https://twitter.com/MatkovichTony/status/1108543305791475712
("Devin... have you talked to your family @NuStar Farms about hiring undocumented labor?  Has ICE visited your farm up in Sibley, Iowa to make sure it is on the up and up?");

https://twitter.com/hoopsnut/status/1046576975094181888
("Really a heckuva read[.]  Nunes and family hide their Iowa farm because his and King's kissing up to DT and anti-immigration policy runs against Iowa farm economy built on undocumented labor");

https://twitter.com/MsToucanSami/status/1177420842910830593
("Nunes part of a thoroughly corrupt family unit.  Read this appalling Esquire story about his family, moving their farm to Iowa to hide hiring undocumented workers while Nunes supports Trump's immigration policy.  Threatening reporters, too");

https://twitter.com/brainsdavis1/status/1047155521516527617
("So a new conspiracy theory has come to light, does Senator Nunes have something to hide by concealing his family dairy farm has moved from California to Iowa?");

https://twitter.com/universeiscool5/status/1071416859302551552
("Make that MAJOR BIG TIME OBSTRUCTION and LYING and involved in CONSPIRACY!!!  I can't stand the sight of that man. Family farm in Iowa— illegals supposedly working there.  Read that in article.  Hypocrite!!).

**F.**    ***The False And Defamatory Statements Are Of Or Concerning Plaintiff***

40.    The Article expressly identifies Plaintiff by name and contains matters of description or other references, including images, video, extraneous facts and circumstances, which clearly show that Plaintiff was intended to be the object of the Defendants' libel, and that it was so understood by others.

41.    Plaintiff's name and references to Plaintiff are all over the Article.  The publication refers explicitly to Plaintiff and identifies him by name.  The millions of recipients of the Article understood that it was referring to Plaintiff explicitly in a defamatory way.

**H.**    ***Actual Malice***

42.    Lizza and Hearst published and republished the Article with actual malice and reckless disregard for the truth:

a.    The ███████████ demonstrate that Defendants published statements in the Article that they knew to be false.  For instance, ████████ did not assert that "the farm was aware of their status".  In fact, ████████ told Lizza that ████████████████ ██████████████████████████████████████████████████████████████ ████████████████.  ████████ did not claim to be an ████████████████.  The Defendants fabricated facts and falsely attributed them to sources who had no firsthand

knowledge and never professed to have any firsthand knowledge. The Defendants concealed material facts and knowingly misled readers. They published statements that were a product of their imagination. They made up facts out of whole cloth in order to impute intentional wrongdoing to Plaintiff and his family. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his imagination").

   b. Lizza published additional defamatory statements similar to the statements and implication at issue in this case. *Cowman v. LaVine*, 234 N.W.2d 114, 121 (Iowa 1975) ("other defamatory publications similar to the one charged are generally admissible on the issue of actual malice, provided they are not privileged … Where it occurs outside court, republication may be relevant as circumstantial evidence probative of the declarant's state of mind—an issue upon which direct evidence is generally lacking").

   c. "Republication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard." Restatement (Second) of Torts § 580A cmt. d (Am. L. Inst. 1977). Here, Lizza republished the Article in November 2019 after Plaintiff sent Lizza and Hearst notice and a demand to retract and after Plaintiff filed a lawsuit and denied the Article's defamatory implication. In November 2019, Lizza and Hearst engaged in purposeful avoidance of the truth, which constitutes actual malice.

   d. The Defendants harbored an institutional hostility, hatred, extreme bias, spite and ill-will towards Plaintiff. They published false statements for the sole

purpose of inflicting harm on Plaintiff and his family ahead of the 2018 Congressional Election. As evidenced by the words Defendants chose and the timing and tenor of the Article, Defendants intended to inflict harm through knowing or reckless falsehoods. *See Don King Productions, Inc. v. Walt Disney Co.*, 40 So.3d 40, 45 (Fla. 4th DCA 2010) ("[a]n intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood.") (citing *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964)); *Cochran v. Indianapolis Newspapers, Inc.*, 175 Ind.App. 548, 372 N.E.2d 1211, 1221 (1978) (evidence of ill will creates jury question on actual malice where "[t]here are no facts or statements of record which even remotely support" the defamatory implication at issue). The Defendants' motive in publishing the false and defamatory statements supports an inference of actual malice. *Farmland Partners Inc. v. Fortunae*, 2021 WL 1978739, at * 2 (D. Colo. 2021); *Tomblin v. WCHS-TV8*, 2011 WL 1789770, at * 5 (4th Cir. 2011) (unpublished) ("on the question of whether WCHS-TV8 deliberately or recklessly conveyed a false message to sensationalize the news and thus to provide factual support for a finding of malice, there are disputed facts").

e.     The Defendants intentionally abandoned all journalistic standards and integrity in publishing and republishing the Statements. They did not seek the truth or report it. They betrayed the truth for the sake of their institutional bias against Plaintiff and ratings. Rather than minimize harm, Defendants set out to inflict maximum pain and suffering on Plaintiff in order to harm Plaintiff's reputation. The Defendants published the false statements in the broadest manner possible for the sole purpose of injuring

Plaintiff's reputation. The Defendants' intentional abandonment of their journalistic integrity supports an inference of actual malice.

        f.    The Defendants have never had a factual basis for implying that Plaintiff conspired with his family and Rep. King to conceal crimes perpetrated by NuStar. *Blessum v. Howard County Bd. of Sup'rs*, 295 N.W.2d 836, 843 (Iowa 1980) ("Plaintiff's position is that at the time the statements were made, Caffrey knew the statement was false or acted in reckless disregard for its truth. To satisfy the test, plaintiff produced defendant's own testimony from his deposition taken on June 1, 1977, in which he admitted that on the date of the March 18, 1976, meeting he did not have knowledge of any facts which would lead him to believe that Blessum was a crook, nor did he have knowledge of any information which would lead him to believe that Blessum had done anything crooked. Plaintiff says this evidence was sufficient to submit the actual malice charge of slander to the jury. We agree."). The Defendants did no investigation into the matter and any investigation they conducted was grossly inadequate. They willfully chose not to learn the truth. Their failure to verify the defamatory implication of the statements meant that many of the asserted "facts" were merely fabrications. As an experienced reporter, Lizza was keenly aware of the need to corroborate the serious charges of conspiracy levelled against Iowa dairy farmers and two sitting Congressmen, especially regarding the emotionally and politically super-charged subject of immigration and the probability that conspiracy charges would cause substantial harm. The words chosen by Defendants had an instantaneous opprobrious connotation. The use of terms with obvious pejorative connotations without underlying factual support is evidence of Defendants' reckless disregard.

## I.    *Plaintiff Suffered Actual Injury And Damages*

43.    Prior to publication of the Article, Plaintiff enjoyed an untarnished reputation.

44.    The Defendants chose to publish and excessively republish the Article to the broadest possible audience in print, online and via social media.  The nature and character of the Defendants' insults had an immediate effect on those who read the Article.  Plaintiff was universally condemned, ridiculed and exposed to contempt.  The Article directly impacted Plaintiff's reputation and his standing in the community and in business.

45.    Defendants' publication and republication of the Article inflicted actual injury on Plaintiff, including impairment of personal and professional reputations and standing in the community, insult, humiliation, embarrassment, mental anguish and distress, pain and suffering.

46.    Prior to filing this action, Plaintiff gave notice to the Defendants and made a demand for retraction of the defamatory statements at issue.  The Defendants failed and/or refuse to retract or withdraw the defamatory statements.

### COUNT I – <u>DEFAMATION BY IMPLICATION</u>

47.    Plaintiff restates paragraphs 1 through 46 of this Amended Complaint, and incorporate them herein by reference.

48.    The strong defamatory gist and false implication from the Article is that Plaintiff conspired with others (including his family and Rep. King) to hide and conceal a "politically explosive secret" – that NuStar knowingly employs undocumented labor on its dairy farm.  The Article implies that Plaintiff is dishonest, deceitful, unethical, that he

aided, abetted and is an accessory to Federal crimes, and that he conspired with sitting members of Congress to hide crimes.

49.     Defendants carefully chose their words and purposefully misrepresented facts.  In the Article, they juxtaposed a series of facts so as to imply a defamatory connection between them.  The first fact is the direct reference to a "**politically explosive secret**".  There was no secret, however; in fact, "Devin Nunes's family farm" never moved to Iowa.  Further, Plaintiff's family never moved "the farm" or any farm to Iowa, and never concealed their move in 2007.  The entire thematic foundation of the Article is knowingly false.  The next fact is the "**conspiracy**" to hide the secret.  Here, Lizza deliberately employs a series of falsehoods – including accusations that Plaintiff and his family were "hiding something politically explosive", "covered their tracks", "concealed" their actions, intimidated "sources", were "so secretive", and that "Anthony Jr. was seemingly starting to panic" – to create the appearance that the Plaintiff acted intentionally and surreptitiously in furtherance of an agreed goal.  The Article then rhetorically ponders: "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?"   The answer is supplied by Defendants' third juxtaposed fact: Defendants state that NuStar knowingly uses "**undocumented labor**".[3]   In addition, Defendants also left out facts, including statements ███ made to Lizza, in a way that intentionally conveyed a false meaning and that rendered the challenged statements in the Article defamatory.

_____

[3]     The Article begins by expressly declaring that NuStar is hiding a "**politically explosive**" secret.  In the context of this story, the use of undocumented labor is what makes the secret "**politically explosive**".

50.     The Defendants' statements and actions constitute defamation by implication.

51.     As a direct result of Defendants' defamation by implication, Plaintiff suffered actual injury and damages, including, but not limited to, insult, public ridicule, humiliation, embarrassment, damage and injury to personal and professional reputations, out-of-pocket expenses and costs, in the sum of $75,000,000.00 or such greater amount as is determined by the Jury.

### COUNT II – <u>COMMON LAW CONSPIRACY</u>

52.     Plaintiff restates paragraphs 1 through 51 of this Amended Complaint, and incorporates them herein by reference.

53.     Beginning in 2018 after *Esquire* hired him and continuing through the present, Lizza combined, associated, agreed or acted in concert with third-party Democrat operatives and/or opposition research firms, with Nuzzi, with agents of *Esquire*, including Fielden, with agents and employees of CNN, and with others in social media for the express purposes of promoting, publishing and republishing the Article, defaming and injuring Plaintiff, and intentionally and unlawfully impeding and interfering with his business and employment as a U.S. Congressman.  In furtherance of the conspiracy and preconceived plan, Lizza engaged in a joint scheme with others the unlawful purpose of which was to publish and republish false statements and implications, so as to injure Plaintiff's personal and professional reputations, advance the left-wing goals of Nuzzi, Hearst, CNN and others, interfere with Plaintiff's duties as a United States Congressman, and influence the outcome of the 2018 Congressional election.

54. The Article posted to the Internet on September 30, 2018. Lizza coordinated publication and republication of the defamation with CNN. CNN agreed to participate in the conspiracy and spread the false statements. Within hours, CNN had cameras on the ground in both Iowa and California at Plaintiff's family's farms seeking comment.

55. Lizza acted intentionally, purposefully, without lawful justification, and with the express knowledge that he and his confederates were defaming Plaintiff and impugning his character. As evidenced by the concerted action online and via Twitter, Lizza acted with the express and malicious intent to cause Plaintiff permanent harm.

56. Lizza's actions constitute a conspiracy at common law.

57. As a direct result of Lizza's willful misconduct, Plaintiff suffered actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, mental suffering, injury to his reputation, special damages, costs, and other out-of-pocket expenses, in the sum of $75,000,000.00 or such greater amount as is determined by the Jury.


Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession. Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of Lizza, Nuzzi, Fielden, Hearst, CNN and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves his right to amend this Complaint upon discovery of additional instances of the Defendants' wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Devin G. Nunes, respectfully requests the Court to enter Judgment against Lizza and Hearst, jointly and severally, as follows:

A.      Compensatory damages in the amount of $75,000,000.00 or such greater amount as is determined by the Jury;

B.      Punitive damages in the amount of $2,500,000.00 or the maximum amount allowed by Iowa law;

C.      Prejudgment interest from September 30, 2019 until the date Judgment is entered at the maximum rate allowed by law;

D.      Postjudgment interest at the maximum rate allowed by law;

E.      Costs and such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED:      June 11, 2022

Signature of Counsel on Next Page

DEVIN G. NUNES

By:   */s/ Steven S. Biss*
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:    (804) 501-8272
      Facsimile:    (202) 318-4098
      Email:      stevenbiss@earthlink.net
      (*Admitted Pro Hac Vice*)

      William F. McGinn #24477
      McGINN LAW FIRM
      20 North 16th Street
      Council Bluffs, Iowa 51501
      Telephone: (712) 328-1566
      Facsimile: (712) 328-3707
      Email: bmcginn@themcginnlawfirm.com

      *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2022 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: _/s/ Steven S. Biss_

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:     (804) 501-8272
Facsimile:     (202) 318-4098
Email:          stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

William F. McGinn #24477
McGINN LAW FIRM
20 North 16th Street
Council Bluffs, Iowa 51501
Telephone: (712) 328-1566
Facsimile: (712) 328-3707
Email: bmcginn@themcginnlawfirm.com

*Counsel for the Plaintiff*