IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| **Devin G. Nunes,** | ) | **Case No. 5:19-cv-04064-CJW-MAR** |
| Plaintiff, | ) | |
| v. | ) | |
| **Ryan Lizza** and **Hearst Magazine Media, Inc.,** | ) | |
| Defendants. | ) | |
| **NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III,** | ) | **Case No. 5:20-cv-04003-CJW-MAR** |
| Plaintiffs, | ) | |
| v. | ) | |
| **Ryan Lizza and Hearst Magazine Media, Inc.,** | ) | |
| Defendants. | ) | |

**Defendants' Brief in Support of Their Motion
to Preclude Plaintiffs from Relying on Belatedly Disclosed Witnesses**

# Table of Contents

Introduction ..................................................................................................................... 1

Background ..................................................................................................................... 2

    A.  Procedural History and Prior Disclosures ................................................... 2

    B.  Three Weeks Before the Close of Discovery, Nunes (Partially) Discloses, as Witnesses, Eleven Members of Current and Former Republican Leadership ............... 3

    C.  Two Weeks Before the Close of Discovery, Nunes (Partially) Discloses, as Witnesses, Sixteen More Prominent Republican Politicians, and Two Former Staffers ........................................................................................................ 5

    D.  These Witnesses May Not Have Any Relevant Knowledge .......................... 6

    E.  Nunes Refuses to Narrow His List of 29 Names, or to Provide Defendants with the Contact Information He Admittedly Has for These Witnesses ....... 6

Argument ......................................................................................................................... 7

    I.  Devin Nunes Should Be Precluded from Relying on These Late-Disclosed Witnesses ...................................................................................................... 7

    II.  As an Alternative, the Court Could Limit Nunes to Calling Only Those Persons Who Present Affidavits in Summary Judgment, and Afford Defendants an Opportunity to Take Discovery from Any Such Affiants, if Necessary ................................................................................................... 12

Conclusion ..................................................................................................................... 14

# Table of Authorities

Page(s)

**Cases**

*Am. Fam. Mut. Ins. Co. v. Kline*,
　No. 10-CV-00321, 2011 WL 13232555 (S.D. Iowa Apr. 21, 2011) ..........................8

*E-Pro. Techs. LLC v. Primehealth of Ill., Inc.*,
　No. 20-CV-338, 2020 WL 3962223 (M.D. Fla. July 13, 2020) ................................8

*Iowa Great Lakes Sanitary Dist. v. Travelers Cas. & Sur. Co. of Am.*,
　No. 15-CV-4252, 2017 WL 11461017 (N.D. Iowa Apr. 17, 2017).........................12

*Irish v. Tropical Emerald LLC*,
　No. 18-CV-82, 2021 WL 1827115 (S.D.N.Y. May 6, 2021) ..................................10

*Mod. Font Applications v. Alaska Airlines*,
　No. 19-CV-00561, 2020 WL 3065157 (D. Utah June 9, 2020)................................8

*Poitra v. Sch. Dist. No. 1 in the Cnty. of Denver*,
　311 F.R.D. 659 (D. Colo. 2015) ..............................................................................9

*Sellers v. Mineta*,
　350 F.3d 706 (8th Cir. 2003) ...................................................................................8

*Stambler v. RSA Sec., Inc.*,
　212 F.R.D. 470 (D. Del. 2003) ................................................................................8

*Vanderberg v. Petco Animal Supplies Stores, Inc.*,
　906 F.3d 698 (8th Cir. 2018) .................................................................................12

*Wegener v. Johnson*,
　527 F.3d 687 (8th Cir. 2008) ...................................................................................8

**Other Authorities**

Fed. R. Civ. P. 26............................................................................................. *passim*

Fed. R. Civ. P. 37..............................................................................................1, 8, 10, 12

Defendants Ryan Lizza and Hearst Magazine Media, Inc. ("Defendants") respectfully submit this brief in support of their motion (the "Motion") pursuant to Fed. R. Civ. P. 26(a)(1) and 37(c)(1), to preclude plaintiffs Devin G. Nunes ("Nunes"), NuStar Farms, LLC ("NuStar"), Anthony Nunes, Jr. ("Anthony Jr."), and Anthony Nunes, III ("Anthony III," together with NuStar and Anthony Jr., the "NuStar Plaintiffs") from relying on or introducing into evidence testimony or documents from any of the 29 current and former Republican politicians, officials, and staff that Plaintiffs purport to have disclosed at the end of the discovery period.[1]

## Introduction

Nunes's case was filed in September 2019. Initial disclosures were served in January 2020. Then, weeks before the close of discovery in September 2022, Plaintiffs disclosed—for the first time—27 high-profile Republican politicians (plus a couple staffers) as damages witnesses on whom he intends to rely at trial. At his deposition, Nunes admitted that he has known, for years, that these 29 witnesses possessed relevant knowledge. Yet he waited until the close of discovery to disclose them, when there was obviously insufficient time to take discovery from these busy individuals, or to work through the various objections the witnesses will have to producing documents and sitting for depositions.

Thirteen of the 29 names were "disclosed" in "supplemental" disclosures, but those disclosures lacked contact information, and Nunes refused (and still refuses) to provide Defendants with the direct contact information that he has for these persons. The other 16 witnesses were just mentioned in a deposition, yet Nunes insists that he may call any or all of

---

[1] Though none of these witnesses are described as having any knowledge relating to damages sustained by any of the NuStar Plaintiffs, the disclosures at issue purport to disclose them as witnesses who may be called by Nunes and/or the NuStar Plaintiffs (collectively, "Plaintiffs"). For this reason, Defendants move to preclude all Plaintiffs from relying on these witnesses.

them at trial. And through it all, it remains unclear what admissible evidence of damages these witnesses—Kevin McCarthy, Jim Jordan, Trey Gowdy, and the like—could offer.

Given the timing and nature of these last-minute disclosures, Nunes should be precluded from calling any of these witnesses at trial, or from submitting declarations from these persons in connection with the forthcoming motion(s) for summary judgment. This is an appropriate sanction for his failure to comply with Federal Rules of Civil Procedure 26(a) and (e), and with this Court's February 14, 2022 Scheduling Order. *See* ECF No. 84.

If the Court is inclined to allow Nunes to call at least some of these witnesses at trial, then Nunes should be limited to only witnesses, identified in Rule 26(a)(1) disclosures, who come forward with declarations in connection with the imminent summary judgment briefing. And if such witnesses exist, then Defendants should be provided with the declarants' direct contact information and granted leave to take discovery from them (including document discovery and depositions), should Defendants choose to do so. Though more than Nunes deserves, this approach would narrow Nunes's blunderbuss "list" to a discrete set of persons who are committing to being meaningfully involved in this litigation, on the off chance they have potentially relevant and admissible evidence to offer.

**Background**

**A. Procedural History and Prior Disclosures.**

Nunes first served Rule 26 Initial Disclosures on January 13, 2020. None of the now-challenged witnesses were listed. *See* October 7, 2022 Declaration of Nathaniel S. Boyer ("Boyer Decl."), Ex. A.[2] The scheduling order entered on February 14, 2022, provided that Rule

---

[2] None of these witnesses were listed in any of the NuStar Plaintiffs' disclosures, either, Boyer Decl. ¶ 3—though again, none of these witnesses are described as having any knowledge relating to the NuStar Plaintiffs' claim, even though they are purportedly disclosed on behalf of the NuStar Plaintiffs, too, *see supra* note 1.

26(a) disclosures were "[c]ompleted," based on the parties' representations at that time, and set September 23, 2022 as the close of discovery. *See* ECF No. 84 ¶¶ 1, 5. On August 25, Nunes (together with the other Plaintiffs in this consolidated case) served Amended and Supplemental Rule 26(a)(1) Disclosures. *See* Boyer Decl., Ex. B. Again, these disclosures did not identify any of the now-challenged witnesses.

On August 26, Nunes's counsel served Nunes's Second Amended and Supplemental Rule 26(a)(1) Disclosures. *See* Boyer Decl., Ex. C. That document stated that "Republican Leadership, including Republican Members of the House Permanent Select Committee on Intelligence ("HPSCI") and Republican Members of the Ways and Means Committee" "had concerns when they first learned about the libelous accusations." *See* Boyer Decl., Ex. C, at 2. The disclosures did not specify which members of "Republican Leadership" had such "concerns." Instead, Nunes would tell Defendants the names at his then-forthcoming deposition, the disclosures said. *See id.* When Defendants' counsel objected, on the next business day, to Nunes's "disclosure" of witnesses-to-be-identified-later, Nunes's counsel replied simply, "[r]ight on cue," reflecting his recognition that Defendants would object to the improper disclosures. *See* Boyer Decl., Ex. D.

> **B. Three Weeks Before the Close of Discovery, Nunes (Partially) Discloses, as Witnesses, Eleven Members of Current and Former Republican Leadership.**

After an apparent change of heart, Nunes's counsel replied again on August 31: "After receiving your expert's damages report"—which was produced more than a month prior, on July 25, 2022—"my client began to compile a list of names of colleagues who have knowledge of the injuries to reputation caused by Hearst and Lizza." *See* Boyer Decl., Ex. D. On September 1—22 days before the close of discovery, and after the deadline for serving written discovery on the parties—Nunes's counsel sent a disclosure with the names of 11 current and former members of

the House of Representatives.  *See* Boyer Decl., Ex. E.[3]  The listed witnesses are:

1. Rep. Randy Feenstra (R-IA), former Iowa State Senator who, as of 2021, represents Iowa's 4th Congressional District

2. former Rep. Trey Gowdy (R-SC), former chair of the United States House Select Committee on Benghazi and former chair of the House Oversight Committee, and current host of Fox News primetime programming

3. former Rep. George Holding (R-NC), now a Managing Director with the Blackstone Group's Government Relations Practice

4. Rep. Jim Jordan (R-OH), former ranking member of the House Oversight Committee and current ranking member of the House Judiciary Committee

5. Rep. Darin LaHood (R-IL)

6. Rep. Kevin McCarthy (R-CA), current House Minority Leader

7. former Rep. and former Director of National Intelligence John Ratcliffe (R-TX), now a senior advisor with American Global Strategies

8. Rep. Steve Scalise (R-LA), current House Minority Whip

9. Rep. Elise Stefanik (R-NY), current chair of the House Republican Conference

10. Rep. Chris Stewart (R-UT)

11. Rep. Brad Wenstrup (R-OH)

*See* Boyer Decl., Ex. E.  For each, Nunes did not provide any contact information, as required by the Rule; just a link to their official government website, lobbying firm profile, or now-former campaign website.  *See* Boyer Decl., Ex. E.

Nunes has still not provided contact information for these individuals, who purportedly know something about the damages Nunes has sustained.  At his deposition, Nunes admitted that he had direct telephone numbers for these witnesses, but refused to provide them on the grounds

---

[3] September 1 was also the Thursday before Labor Day weekend, and on the eve of party depositions and associated preparations and travel; Devin Nunes was deposed in California on September 8, and Ryan Lizza was deposed in Washington, D.C. on September 14.  Boyer Decl. ¶ 7.

that he does not like or trust Defendants' counsel. *See* Boyer Decl., Ex. F, at 381:4-17; 385:6-386:15 (calling the undersigned "sick individuals"). He and his counsel insisted (incorrectly) that their reference to website URLs had sufficient telephone contact information, accused Defendants' counsel of lying, and called each of the Defendants' counsel in attendance a "joke." *See* Boyer Decl., Ex. F, at 381:4-17; 385:6-386:15. In fact, at least two of these witnesses' websites (Gowdy and Ratcliffe) do not list any telephone contact information. *See* Boyer Decl. ¶ 9, Ex. G. And of course, the websites for the current Congresspersons only provide a general office number at the U.S. House of Representatives, not a phone number through which one might expect to directly reach the Congressperson to ask questions about their knowledge of Nunes's harm. *See* Boyer Decl. ¶ 10.

### C. Two Weeks Before the Close of Discovery, Nunes (Partially) Discloses, as Witnesses, Sixteen More Prominent Republican Politicians, and Two Former Staffers.

Beyond those listed on his September 1 disclosures, at his deposition on September 9, Nunes identified sixteen (16) additional individuals who, supposedly, have knowledge of his damages, and who may testify on his behalf. *See* Boyer Decl., Ex. F, at 331:14-345:2 (naming: (1) former Iowa Rep. Tom Latham, (2) Sen. Chuck Grassley, (3) former Speaker of the House Rep. John Boehner; (4) South Dakota Gov. Kristi Noem, (5) Sen. John Thune, (6) Sen. Ken Cramer, (7) Rep. Ken Calvert, and (8) former Rep. Mac Thornberry); 345:3-345:17; 347:23-362:12 (naming: (9) Rep. Ken Marchant, (10) Rep. Tom Cole, (11) Rep. Billy Long, (12) Retired U.S. Air Force Gen. and now Rep. Don Bacon, (13) former Rep. Lee Terry, (14) Rep. Adrian Smith, (15) Chair of the NRCC Rep. Tom Emmer, and (16) former Chair of the NRCC Rep. Steve Stivers). Nunes also confirmed his counsel's representation that he did not consider disclosing these names until Defendants "asked for names" on August 29, and that he had never been asked to do so at any prior point in this case. *See* Boyer Decl., Ex. F, at 331:8-23. Nunes's

counsel updated the Rule 26 Disclosures again on September 12—only 11 days before the close of discovery—this time adding two members of the former Congressman's campaign team: Matt Butler (technology strategist) and Jack Langer (spokesperson). Both had also been revealed for the first time at his deposition three days prior. *See* Boyer Decl., Ex. H, *see also id.*, Ex. F, at 226:24, 230:22-25.

**D. These Witnesses May Not Have Any Relevant Knowledge.**

It is not apparent from Nunes's blunderbuss testimony whether any of the individuals listed in the late disclosures or identified in the deposition possess relevant (and/or non-cumulative) knowledge about harm or damage to Nunes arising from Lizza's November 20, 2019 tweet. Nunes's testimony was vague as to how if at all these witnesses were affected by any publication of the Article. To take just one example, Nunes testified that he talked with Rep. Holding several times in 2018 and 2019, that Rep. Holding "knew that there was no secret," and would call to check in on Nunes. Boyer Decl., Ex. F, at 370:5-375:13. Nunes also suggested that the "biggest -- most important thing" was that, after the Article was published, there were questions about who owned the dairy farm in Iowa. *See* Boyer Decl., Ex. F, at 323:8-324:1.

**E. Nunes Refuses to Narrow His List of 29 Names, or to Provide Defendants with the Contact Information He Admittedly Has for These Witnesses.**

The issues presented here were previewed for the Court during a telephone conference on September 23, 2022. During the conference, the Court expressed skepticism regarding the adequacy of the disclosures of names that were "simply mentioned in the course of [Nunes] deposition" but never actually listed in a Rule 26(a)(1) disclosure. ECF No. 111, at 6:19-7:23. The Court also observed that, even still, "there are a lot of names" on Devin Nunes's disclosures, adding that Nunes could "narrow that list as . . . much as possible." ECF No. 111, at 9:16-18. The Court also noted that Nunes could, if he wanted to narrow the parties' dispute, "give the

defendants the contact numbers that at least Former Congressman Nunes has for these people to make direct contact with them." ECF No. 111, at 9:19-21.

Nunes did not do any of the above. On September 26 (three days after the close of discovery), Nunes sent an email to Defendants' counsel stating that he maintained the "right to call at trial any witness identified by Devin Nunes and/or the NuStar Plaintiffs during the discovery process." Boyer Decl., Ex. I. While he purported to "narrow" to five witnesses "the list" of eleven he had served on September 1, Boyer Decl., Ex. I,[4] this is a meaningless gesture if Nunes insists on being able to call "any witness identified . . . during the discovery process" anyway, as he does. Nunes apparently maintains that he may still rely on the other six witnesses on that September 1 disclosure, Boyer Decl., Ex. E; his two former staffers, disclosed only eleven days before the discovery cut-off, *see* Boyer Decl., Ex. H; and the 16 politicians he mentioned during his deposition, *see supra* 5-6. Moreover, Nunes continues to refuse to provide Defendants with contact information for any of these witnesses, instead offering to help "facilitate contact" if Defendants are "unable to reach a witness," Boyer Decl., Ex. I, even though Nunes's counsel does not claim to represent or speak for these witnesses.

**Argument**

**I.      Devin Nunes Should Be Precluded from Relying on These Late-Disclosed Witnesses.**

Rule 26(a)(1) requires parties to, "without awaiting a discovery request," disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." The purpose of this "requirement" is to "assist other parties in deciding which depositions will

---

[4]     This "narrowed" list includes Kevin McCarthy, John Ratcliffe, Trey Gowdy, George Holding, and Rep. Feenstra. Boyer Decl., Ex. I.

7

actually be needed." *Am. Fam. Mut. Ins. Co. v. Kline*, No. 10-CV-00321, 2011 WL 13232555, at *1 (S.D. Iowa Apr. 21, 2011) (quoting Fed. R. Civ. P. 26(a)(1)(A) advisory committee notes to 1993 Amendments). "A party who fails to provide initial disclosure information which could have been obtained with reasonable inquiry" —such as the disclosed persons' contact information—"is at risk, depending on the circumstances, of not being allowed to use the witness for trial." *Id.* (address potential failure to provide known contact information, citing Fed. R. Civ. P. 37(c)(1)); *see also E-Pro. Techs. LLC v. Primehealth of Ill., Inc.*, No. 20-CV-338, 2020 WL 3962223, at *1 (M.D. Fla. July 13, 2020) (failure to provide known contact information for the witnesses is failure to make proper disclosure); *Mod. Font Applications v. Alaska Airlines*, No. 19-CV-00561, 2020 WL 3065157, at *1 (D. Utah June 9, 2020) (same).

The consequence for a party's failure to make the disclosures is self-executing; that party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1). The exception would be if that "failure was substantially justified or is harmless." Four factors are relevant to that determination:

- whether there was a legitimate reason for the party's belated disclosure;

- whether the belated disclosure resulted in surprise and prejudice to the opposing party;

- whether permitting the belated disclosure would disrupt case management or trial; and

- whether the belatedly-disclosed witness's testimony is important to the proffering party's claim or defense.

*See, e.g.*, *Sellers v. Mineta*, 350 F.3d 706, 711-12 (8th Cir. 2003); *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (affirming trial court's preclusion of witness testimony because the late disclosure was "neither substantially justified nor harmless, [and] a continuance would have postponed a much-delayed trial"); *Stambler v. RSA Sec., Inc.*, 212 F.R.D. 470, 472 (D. Del.

2003) (excluding witnesses who were disclosed six weeks before trial, finding no justification for the belated disclosure, and that re-opening discovery for depositions for the six witnesses would create "more problems than it solves" and prejudice the opposing party's arguments on summary judgment).

***Devin Nunes Has Not Properly Disclosed Any of These 29 Witnesses.*** Before considering the timing and context of these disclosures, they suffer from a threshold problem: None satisfy the requirements of Fed. R. Civ. P. 26(a)(1). To start, merely mentioning names during a deposition is insufficient. Rather, a disclosure must be in a document "signed by at least one attorney of record in the attorney's own name," representing that the disclosure "is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1). The 16 current and former Republican politicians that Nunes mentioned during his deposition, but which never appeared in a written disclosure, are obviously not properly disclosed. *Poitra v. Sch. Dist. No. 1 in the Cnty. of Denver*, 311 F.R.D. 659, 666 (D. Colo. 2015) (rejecting argument that "a party's duty to supplement Rule 26(a)(1)(A)(i) disclosures is satisfied if an individual that may have relevant information is mentioned . . . during a deposition," as "[t]hat argument is predicated on an incomplete reading of Rule 26(a)(1)(A)(i) and would effectively undermine the very purpose for initial disclosures.").

As for the other 13 witnesses (that is, the 11 listed in Nunes's September 1 disclosure, and the 2 former staffers listed in Nunes's September 12 disclosure): Nunes admits that he "know[s]" the contact information for these persons, but he refuses to provide it to Defendants, on the grounds that he does not like or trust Defendants' counsel. Boyer Decl., Ex. F, at 381:4-17; 385:6-386:15. This common attribute of litigants is not an excuse for refusing to make the disclosures required by Rule 26. And hyperlinks to websites which may, in some (but not all)

9

instances, have general office numbers is (i) by Nunes's own admission, not a disclosure of the contact information "known" by him, *see* Fed. R. Civ. P. 26(a), (ii) obviously, not the best way to promptly contact these individuals. Having not made an effective disclosure of any of these 29 witnesses, Nunes should be precluded from relying on them. Fed. R. Civ. P. 37(a)(4) ("An evasive or incomplete disclosure . . . must be treated as a failure to disclose . . . .").

***Even Excusing Nunes's Insufficient Disclosure of The Witnesses, The Belated Disclosure Is Not "Substantially Justified."*** Applying the above-described four factors here, neither Nunes's testimony nor correspondence from his counsel offers any justification for the late disclosures. There is no legitimate reason for Nunes waiting years, until the eve of the close of discovery, to reveal these names. Nunes confirmed that there was no effort to identify these individuals until a few weeks ago. Boyer Decl., Ex. F, at 331:12-23. And Nunes knew about the relevant knowledge possessed by these witnesses in 2018 and 2019, prior to his January 13, 2020 Initial Disclosures. *See Irish v. Tropical Emerald LLC*, No. 18-CV-82, 2021 WL 1827115, at *3 (S.D.N.Y. May 6, 2021) (denying motion for reconsideration of order striking witnesses: "Disclosing a new witness at the end or after the discovery period gives little to no time to notice a deposition or to obtain documents from the witness in a reasonable manner, unless there is an extension of the discovery deadline.").

While it could not have been a surprise to Nunes and his counsel that Defendants would argue that he has not sustained damages, it is Nunes's obligation to introduce evidence of this element of his claim. And he knows this: As early as January 2020, he was disclosing himself as a witness with knowledge of the damages he has sustained. Boyer Decl., Ex. A. If these other Republican politicians were somehow relevant to him proving his theory of damages, he should have disclosed them at that time, as well. He did not.

These disclosures surprised Defendants. None of these 29 people were mentioned in any document produced by any party or third party in this case. Boyer Decl. ¶ 13. None have been mentioned in any motion or pleading in this case. Boyer Decl. ¶ 13. And none would have ever seemed relevant to any theory (or lack thereof) of damages that Nunes may have hinted at in his prior disclosures.

Taking time to take discovery from this many witnesses will derail and prejudice, at the very least, the dispositive motion schedule. These are high-profile, busy individuals, most of whom are in the midst of an election. Almost certainly, they would resist document requests and depositions altogether. At the very least, we would expect that these witnesses (i) would be unavailable until after the election cycle, and (ii) would insist on limiting the document requests and questioning to narrow topics (to which Defendants would likely not agree, as the witnesses' biases and credibility are now at issue, due to Nunes listing them as witnesses).

Either way, this gambit by Nunes frustrates this Court's administration of this case. To obtain discovery from and relating to these witnesses, Defendants' counsel would need to pursue compliance in various forums for the next several months, at least. And it may all be a wild goose chase, designed to cause Defendants to expend unnecessary resources. It is not clear that the knowledge these witnesses possess is important to Nunes's case such that the massive expense and effort to pursue discovery of all 29 of them would move the needle. Indeed, Nunes testified he wasn't even sure whether he or his counsel would call these witnesses to testify at trial or otherwise, and his descriptions of their potential knowledge was vague and amorphous. *See, e.g.*, Boyer Decl., Ex. F, at 345:3-345:17 (Nunes could rely at trial on every name he mentioned other than former Rep. Latham).

The former Congressman and his counsel's disregard for their obligations under Rule 26
14

and the Scheduling Order are inexcusable, and follow a pattern of disregard for the Court and Defendants. *See, e.g.*, Boyer Decl., Ex. F, at 243:11-13 ("I know you guys went to the judge and whined and cried, and then the judge ruled in your favor to hide evidence from me."); *id.* at 328:6 (beginning answer to question with "Screw you"). They put Defendants in a bind, as was probably their intent, and have prejudiced the judicial process. Preclusion is, therefore, the appropriate remedy.

II.     **As an Alternative, the Court Could Limit Nunes to Calling Only Those Persons Who Present Affidavits in Summary Judgment, and Afford Defendants an Opportunity to Take Discovery from Any Such Affiants, if Necessary.**

"In addition to or instead of this sanction" of preclusion, the Court "may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C). Though exclusion is the "default, self-executing sanction for the failure to comply with Rule 26(a)," "[a] district court has broad discretion to fashion its own remedy for a party's" failure to comply, should it choose to do so. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2018) (describing broad discretion afforded under Rule 37(b), which are incorporated by reference as possible alternative sanctions under Rule 37(c)(1)(C)); *see also Iowa Great Lakes Sanitary Dist. v. Travelers Cas. & Sur. Co. of Am.*, No. 15-CV-4252, 2017 WL 11461017, at *4 (N.D. Iowa Apr. 17, 2017) ("[T]he Court has great discretion in determining" the appropriate sanction under Rule 37(c)).

The nature and timing of Nunes's disclosures—coupled with his refusal to narrow the list of possible witnesses—pose an acute risk to the orderly administration of this case, scheduled for trial in April 2023. That none of these witnesses are likely to have any admissible evidence to offer, anyway, strongly suggests that disrupting the Court's long-established schedule is not worth it.

The forthcoming summary judgment briefing, due October 25, could help focus this

12

matter. Defendants will move on Nunes's lack of evidence that he has sustained any damage to his reputation as a result of the alleged November 20, 2019 republication, among other grounds. Should Nunes seek to resist that motion on those grounds, it will be incumbent on him to introduce relevant material evidence.

This procedural posture presents an opportunity to fashion an alternative approach: If Nunes truly intends to rely on any these individuals as damages witnesses in his case,[5] then he must obtain affidavits from them and submit those affidavits with his resistance, and concurrently provide Defendants the witnesses' direct contact information that Nunes admits he knows. He should not then be allowed to rely, at trial, on persons for whom he does not submit such affidavits. And if any such affidavits are presented, then Defendants should be afforded an opportunity to, if they want, take discovery from these affiants, including document discovery and depositions. The Court could then adjust the summary judgment reply deadline as necessary to accommodate that supplemental discovery.

This alternative approach will serve at least two objectives. First, it should narrow the list to those witnesses on whom Nunes truly intends to rely in this case. Second, it will allow Defendants to consider whether what these witnesses have to say is relevant and admissible. Likely, the answer will be "no," and this issue will be effectively mooted, with no need to disrupt the summary judgment briefing schedule.

To be clear: The alternative approach set forth in this Point is more than Nunes deserves. His 11th hour surprise disclosure of 29 witnesses is a transparent attempt to burden and prejudice the media Defendants—and the Court—while trying to turn trial in this matter into a political

---

[5] Even under this alternative approach, none of the 16 Republican politicians and officials who were merely mentioned in Nunes's deposition should be permitted to offer evidence, for the reasons stated above.

13

Case 5:19-cv-04064-CJW-MAR    Document 113-1    Filed 10/07/22    Page 16 of 19

circus. The Court should not reward his theatrics by allowing him to rely on any of these witnesses.

## Conclusion

For the foregoing reasons, the Motion should be granted, and Plaintiffs should be precluded from relying on or introducing into evidence testimony or documents from any of the above-described 29 witnesses in their case, at either summary judgment or at trial.

[*signature block on next page*]

| | |
|---|---|
| Dated: October 7, 2022. | **Ryan Lizza and Hearst Magazine Media, Inc., Defendants** |
| | /s/ Nathaniel S. Boyer<br>Jonathan R. Donnellan, *Lead Counsel*\*<br>  jdonnellan@hearst.com<br>Ravi R. Sitwala\*<br>  rsitwala@hearst.com<br>Nathaniel S. Boyer\*<br>  nathaniel.boyer@hearst.com<br>Sarah S. Park\*<br>  sarah.park@hearst.com<br>Nina Shah\*<br>  nina.shah@hearst.com<br>Kristen Hauser<br>  khauser@hearst.com<br>THE HEARST CORPORATION<br>Office of General Counsel<br>300 West 57th Street<br>New York, New York 10019<br>Telephone: (212) 841-7000<br>Facsimile: (212) 554-7000<br><br>Michael A. Giudicessi<br>  michael.giudicessi@faegredrinker.com<br>Nicholas A. Klinefeldt<br>  nick.klinefeldt@faegredrinker.com<br>Susan P. Elgin<br>  susan.elgin@faegredrinker.com<br>FAEGRE DRINKER BIDDLE & REATH LLP<br>801 Grand Avenue, 33rd Floor<br>Des Moines, Iowa 50309-8003<br>Telephone: (515) 248-9000<br>Facsimile: (515) 248-9010<br><br>Scott W. Wright\*<br>  scott.wright@faegredrinker.com<br>FAEGRE DRINKER BIDDLE & REATH LLP<br>2200 Wells Fargo Center/90 S. 7th Street<br>Minneapolis, Minnesota 55402<br>Telephone: (612) 766-7000<br>Facsimile: (612) 766-1600<br><br>*\*Admitted Pro Hac Vice*<br><br>**Attorneys for Defendants** |

**Certificate of Service**

The undersigned certifies that a true copy of **Defendants' Brief in Support of Their Motion to Preclude Plaintiffs from Relying on Belatedly Disclosed Witnesses** was served upon the following parties through the Court's CM/ECF electronic filing system on October 7, 2022.

/s/ Nathaniel S. Boyer
Nathaniel S. Boyer

Copy to:

Bill McGinn
 bmcginn@mcginnlawfirm.com
Steven S. Biss
 stevenbiss@earthlink.net

*Attorneys for Plaintiffs*