IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
Western Division

| | | |
|---|---|---|
| DEVIN G. NUNES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 5:19-cv-4064-CJW-MAR |
| | ) | |
| RYAN LIZZA | ) | |
| *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| NUSTAR FARMS, LLC | ) | |
| *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case 5:20-cv-04003-CJW-MAR |
| | ) | |
| RYAN LIZZA | ) | |
| *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# PLAINTIFFS' RESISTANCE AND BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE

Plaintiffs, Devin G. Nunes, NuStar Farms, LLC, Anthony Nunes, Jr. and Anthony Nunes, III ("Plaintiffs"), by counsel, pursuant to Local Civil Rule ("LR") 7(e), respectfully submit this Resistance and Brief in Opposition to Defendants, Ryan Lizza and Hearst Magazine Media, Inc.'s ("Defendants"), motion to preclude Plaintiffs from relying on disclosed witnesses. [*ECF No. 113*].

## DEFENDANTS' MOTION IS MERITLESS

This is a case about knowing and intentional falsehoods published with reckless disregard for the truth. The evidence paints a clear picture about Hearst corporation's motives and intent. The timeline is an indictment. Hearst's former "Chief Political Correspondent", Ryan Lizza, who is also a "Senior Political Analyst" for far-left CNN, showed up in Sibley, Iowa, in late August 2018, roughly two months before the 2018 Congressional Election, with a preconceived agenda: to smear prominent United States Congressman Devin Nunes with charges of conspiracy – conspiracy with his family, who privately operate a dairy farm in Sibley, and conspiracy with then-Iowa Representative Steve King (R-IA). Lizza, working in concert with seven (7) Hearst editors and an in-house attorney for Hearst, knowingly fabricated facts and lied about sources. In under a month, Hearst and Lizza concocted something that Lizza's girlfriend would call a "David Lynch black comedy set in a community of dairy farmers." After the story was written, and just before publication, Lizza contacted Devin Nunes and his Congressional communications director, Jack Langer, and misrepresented that he was writing a story about "immigration and the dairy industry". [*See* **PX 101-102**]. On September 30, 2018, Hearst and Lizza published a "BOMBSHELL POLITICAL" article in *Esquire* magazine entitled, "***Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret***". The intended and endorsed defamatory implication of the BOMBSHELL article was that Congressman Devin Nunes conspired or colluded with his family and Rep. King to hide or cover-up that NuStar Farms employs undocumented labor. Only a reckless person would have put these false criminal charges in circulation. Hearst and Lizza used Hearst's 11.5+ billion dollar publishing empire to blast the defamatory article to millions

of paid subscribers, readers, and Twitter followers throughout the world. After publication, Hearst and Lizza destroyed evidence. Hearst and Lizza were not done. In November 2019, at a time when Devin Nunes was "in the news" because of his central role in defending the President of the United States during the first impeachment inquiry, and after Plaintiffs notified Hearst and Lizza that the article contained false and defamatory statements – indeed **_after_** Devin Nunes filed this action – Hearst and Lizza chose to reopen the wounds and republish the scandalous article to millions and millions more.

During the discovery process and in writing, Plaintiffs notified Hearst and Lizza that publication and republication of the article, with its egregious misstatements and defamatory implication, caused substantial injury to Plaintiffs' reputations. Hearst's lawyers are well aware that Plaintiffs disclosed at least seven (7) different pieces of evidence that demonstrate injury to Plaintiffs' reputations:

1. Recordings of threatening phone calls received by the NuStar Plaintiffs *after* publication and republication of the article (**PX 180, 2729**);

2. Millions of tweets, quote tweets, retweets, replies and likes of the article (**PX 171-179, 2450-2451**) and the republication (https://twitter.com/search?q=https%3A%2F%2Ftwitter.com%2FRyanLizza%2Fstatus%2F1197322014572371969&src=typed_query);

3. Victim impact statement and testimony of Toni Dian Nunes that the reputation of NuStar and the Nuneses suffered in the Sibley, Iowa, community as a result of the Article (**TONI DIAN 1-3**);

4. Photographs of trespassers and Antifa activists, who converged on NuStar Farms after publication (**TONI DIAN 10-11**);

3

5.      Disclosure of Jesse Van De Stroet, who "has knowledge of the damage caused by the Defendants' false and defamatory statements, including the actual injury to Plaintiffs' reputation"
(***NuStar Plaintiffs' Amended and Supplemental Rule 26(a)(1) Disclosures, Served July 29, 2021***)

6.      Deposition testimony of Gerald Nunes, who has knowledge of the reputational risk created by the Article, the fact that the Article and continued publication gave the Nuneses a "bad name", and the fact that Gerald separated himself from Devin Nunes after the Article came out and did not want Devin at the family farm in California; and

7.      Deposition testimony of Devin Nunes, including the fact that he could no longer give tours of his family's farm in California to dignitaries and others as a result of the publication and republication of the article.

During the discovery process, Devin Nunes also identified the names of specific colleagues in Congress with express knowledge of the injury to his reputation caused by the article and republication. Among those identified are:

Randy Feenstra;
Trey Gowdy;
George Holding;
Kevin McCarthy; and
John Ratcliffe.

Devin Nunes fully complied with Rules 26(a)(1)(i) and 26(e). Despite ample opportunity and manpower (ten lawyers), Hearst and Lizza made no effort to contact ***any*** of the witnesses identified by Devin Nunes. Counsel for Hearst and Lizza deliberately avoided contact because Hearst and Lizza know that these witnesses are unimpeachable and that they will devastate Hearst and Lizza at trial. Hearst and Lizza will do and say anything to deprive Plaintiffs of a full and fair opportunity to present their case at trial.

Defendants' request to exclude Devin Nunes's disclosed witnesses should be rejected out of hand.

# I. HEARST'S MOTION IS A COMPLETE SHAM

A chronological summary of events from July 25, 2022 to the present demonstrates that Hearst had no intention of deposing **_any_** of Devin Nunes's witnesses, which proves that the instant motion is a complete sham:

1. On July 25, 2022, Hearst and Lizza disclosed that Mark J. Hosfield ("Hosfield") intends to offer an expert opinion (1) that Devin Nunes's claim for damages is unsupported and unreliable; and (2) that there are no data or documents produced in this matter that demonstrate Devin Nunes has suffered any quantifiable[1] damages.

2. Upon review of Hosfield's disclosure, Devin Nunes recalled that the article and republication caused concern amongst several of his former colleagues. Devin Nunes reached out to his former colleagues to determine whether supplemental disclosure was warranted.

3. At all relevant times, Hearst and Lizza were represented by a small platoon of ten (10) lawyers. On July 27, 2022, and many times thereafter, Hearst composed lengthy, gratuitous emails that addressed various perceived deficiencies in Plaintiffs' discovery responses, disclosures and documents. Hearst aggressively pursued important discovery issues, including how much money Devin Nunes paid to local counsel, Joe Feller. However, in the case of the 27 Republican Leaders whose identities were disclosed during the discovery process, Hearst sat on its hands and did **_nothing_**. Hearst's lawyers made no attempt to contact a single witness. The outrage expressed in Hearst's motion to preclude is fake. The prejudice is feigned. Any prejudice was caused by the calculated inaction of Hearst's ten (10) lawyers.

4. On July 28, 2022, Hearst and Lizza provided notice of a deposition subpoena, which stated that Defendants intended to take the deposition of Gerald Nunes – Devin Nunes's uncle – on August 12, 2022. Gerald Nunes was not a person identified on any party's Rule 26(a)(1)(i) disclosures. As was its usual custom and practice throughout the discovery process, Hearst unilaterally scheduled the deposition without consulting with Plaintiffs' counsel. After Plaintiffs' counsel objected, Hearst begrudgingly rescheduled the deposition.

---

[1] Hosfield's threadbare report contains no discussion of the elements of "actual injury" in a defamation case, and completely disregards Plaintiffs' evidence. Counsel for Hearst and Lizza failed to supplement Hosfield's report prior to the close of discovery.

5.    On July 29, 2022 and August 1, 2022, Hearst provided copies of pleadings and orders in the matter of *Ryan Lizza and Hearst v. Trump Media & Technology Group, Inc.*, Case 9:22-cv-81070, an action filed in the United States District Court for the Southern District of Florida for the purpose of acquiring documents from Devin Nunes' employer, Trump Media & Technology Group ("TMTG"). Hearst and Lizza aggressively pursued the matter. The lawyers were in constant contact with counsel for TMTG and Plaintiffs. The lawyers sought and obtained an expedited briefing schedule and hearing. At all times, Hearst's lawyers were well-aware of the many procedures available for expediting the resolution of discovery disputes and obtaining extensions of deadlines to facilitate discovery. In the case of the 27 Republication Leaders and other persons disclosed by Devin Nunes, Hearst and its lawyers neglected to avail themselves of the procedures and remedies afforded by the Federal Rules of Civil Rules and the Local Rules of the Northern District of Iowa.

**In its motion to preclude, Hearst asks the Court to reward Hearst's inexcusable neglect and to punish Devin Nunes**.

6.    On August 2, 2022, Hearst served notice that it intended to take the depositions of Anthony Nunes, Jr., Anthony Nunes, III and Lori Nunes on August 15 and 16 in Des Moines. During the discovery process, Hearst employed former United States Marshalls and otherwise exhibited the operational and financial wherewithal and inclination to find and harass witnesses. Hearst and its ten (10) lawyers could have easily prepared notices of deposition to any of the 29 people who are the subject of the motion to preclude. Hearst could have had its U.S. Marshall's serve subpoenas. **Hearst and its lawyers and its U.S. Marshalls did nothing. They did even *try* to do anything**.

7.    On August 5, 2022, Hearst served notice that it intended to take the deposition of Devin Nunes on September 9, 2022. **Hearst agreed to conduct the deposition late in the discovery process**. Hearst unilaterally chose to conduct the deposition in crime-ridden Los Angeles, California, with its gangs and murderers, which put Devin Nunes's life at risk. Hearst belatedly agreed to conduct the deposition in a safe location in Visalia, California, but not after suggesting that Devin Nunes travel to San Francisco, now famous only for its rampant drug dealing, heroin addicts, and homeless encampments.

8.    On August 8, 2022, Hearst requested a discovery status conference with the Court to discuss alleged deficiencies in Plaintiffs' discovery responses. This dhows that Hearst could have immediately brought any concern it had with Devin Nunes's disclosures to the Court's attention on August 26.

**Hearst and its lawyers did nothing. They waited until September 20 to belatedly bring their "concern" to the Court's attention and seek a discovery status conference**.

9.    On August 9, 2022, the NuStar Plaintiffs provided additional responsive documents, including supplemental I-9s.

10.   On August 9, 2022, Hearst unilaterally canceled the August 15/16 depositions of the NuStar Plaintiffs, claiming that ten (10) lawyers would "not receive any of the outstanding materials with sufficient time to analyze them, and then prepare for depositions next week". **Hearst agreed to reschedule the depositions for September 09/19-20**.

11.   On August 10, 2022, Hearst stated that it intended to proceed with the deposition of Eugene Nunes – Devin Nunes' other uncle. Eugene Nunes was not a person identified on any party's Rule 26(a)(1)(i) disclosures. Hearst aggressively pursued the deposition. On August 12, 2022, Hearst sought available dates. Dates were promptly provided, and on August 14, 2022, Hearst locked in the date (09/07). Hearst dispatched its U.S. Marshalls or other security professionals to stake out Eugene Nunes in an attempt to serve a subpoena.

      **Unlike Eugene Nunes, Hearst exhibited _no_ diligence with respect to _any_ of the 27 Republican Leaders and other persons identified by Devin Nunes during the discovery process**.

12.   On August 11, 2022, Counsel for Devin Nunes issued Rule 45 subpoenas to the Hearst Winery, Steve Hearst and Ben Higgins, for documents relevant to impeach representations made by Defendants' immigration experts in their reports and to show bias. All ten (10) lawyers for Hearst and Lizza mobilized immediately and were thoroughly involved in the objections to the subpoenas.

13.   On August 15, 2022, Devin Nunes produced additional documents and served supplemental responses to Defendants' request for production of documents in which Devin Nunes specifically disclosed that he intended to rely on "any testimony from witnesses as to the impact of the Defendants' false statements and defamatory implications".

14.   On August 16, 2022, the Court conducted a discovery status conference. At that conference, counsel for Hearst notified the Court, *inter alia*, that it intended to take a deposition of Plaintiffs' former local counsel, Joe Feller, to determine who paid Mr. Feller $1,625 for legal services rendered on behalf of Devin Nunes. Throughout this litigation, Hearst exhibited an unhealthy messianic obsession with the question who is paying counsel for Devin Nunes.

7

**Yet, Hearst was listless and indifferent when Devin Nunes disclosed the names of eleven (11) Republican Leaders who had direct knowledge of the jury to Devin Nunes's reputation. Hearst did nothing**.

15.     On August 16, 2022, the parties also engaged in lengthy email communications regarding Twitter's objections and failure to respond to Devin Nunes' Rule 45 subpoena to Twitter. Hearst represented that it was "considering" Plaintiffs' efforts to resolve Twitter's objections, and facilitate production of documents relating to Lizza's Twitter account. A few days later, the lawyers for Lizza agreed to sign a consent so Plaintiffs could get some of the information from Twitter.

16.     On August 17, 2022, Defendants took the deposition of Gerald Nunes – Devin Nunes's uncle. Gerald Nunes testified about the impact of the Defendants' false statements and defamatory implication, including specific injury to Devin Nunes and the NuStar Plaintiffs' reputations caused by Defendants' false statements and defamatory implication.

        The testimony was so devastating to Hearst and Lizza that they terminated the deposition prematurely after Gerald Nunes testified about the injury to Devin Nunes's reputation.

17.     On August 22, 2022, Hearst served a subpoena to take the deposition of Joe Feller's law firm. Hearst noticed the deposition for September 6. In an effort to avoid a colossal waste of resources, Joe Feller informed counsel for Hearst as follows:

        "Nate,

        Today we checked our general ledger which shows all receipts and disbursements for our small business. That ledger shows that we deposited $ 1125 from Devin Nunes on January 9, 2020 (the check signed by Elizabeth) and another check deposited on April 10, 2020 in the amount of $ 500 from Devin Nunes.

        Joe"

        Hearst had no choice but to withdraw the subpoena to Joe Feller.

18.     On August 23, 2022, because of Gerald Nunes' testimony about Plaintiffs' damages, Hearst withdrew its subpoena and decided not to take the deposition of Eugene Nunes.

19. On August 25, 2022, Devin Nunes, NuStar Farms, LLC ("NuStar"), Anthony Nunes, Jr. ("Anthony") and Anthony Nunes, III ("Anthony III") served amended and supplemental disclosures. In those disclosures, Plaintiffs expressly stated that Defendants' publication and republication of false and defamatory statements and implications, including that Plaintiffs conspired to conceal the commission of federal crimes, caused Devin Nunes to suffer, *inter alia*, "fear that the defaming remarks and implications reached … **colleagues in Congress** and other members of the public beyond those who are identified in the Third Amended Complaint". (Emphasis added).

**Hearst knew that Devin Nunes's <u>colleagues in Congress</u> were witnesses to the injury to Devin Nunes's reputation**.

20. On August 25, 2022, Hearst advised that "Defendants intend to move the Court, in the underlying case in the Northern District of Iowa, for a protective order regarding your subpoena to 'Hearst Ranch Winery,' a non-Hearst entity." Hearst never filed such a motion.

22. On August 26, 2022, the NuStar Plaintiffs produced detailed supplemental interrogatory answers and additional documents, including telephone records.

23. On August 26, 2022, after confirming with several former colleagues on the House Intelligence Committee and Ways and Means Committee, Devin Nunes disclosed that he had spoken with several Republican leaders, who expressed that they had concerns when they first learned about Hearst and Lizza's libelous accusations. Devin Nunes expressly notified Hearst that he intended to identify the names of several individuals at his deposition, which was scheduled for September 9, 2022.

24. **Defendants said nothing for <u>three (3) days</u>.**

25. On August 29, 2022, one of Hearst's lawyers requested a list of names of the Republican leaders identified in Devin Nunes's August 26, 2022 disclosure. At the time, Plaintiffs' counsel was in a jury trial in Richmond, Virginia, and could not provide the list of names.

26. On August 31, 2022, Plaintiffs' counsel emailed Defendants' counsel as follows:

"Kristen,

I am still in Court. The Jury continues to deliberate. I will email you the list of names in the morning. I will not be back to the office in time to send it tonight."

27. On September 1, 2022 at 7:16 a.m., Plaintiffs' counsel supplemented Devin Nunes's disclosures and identified the names of eleven (11) individuals with knowledge of injury to reputation "that we may call to testify at trial".

   **Defendants stated no objection and raised no concerns about Devin Nunes's disclosures.**[2]

28. On September 2, 2022, Defendants' counsel served notices that Defendants intended to take the depositions of the NuStar Plaintiffs on September 19 and 20.

   **Defendants stated no objection and raised no concerns about Devin Nunes's disclosures.**

29. **Hearst and its lawyers said nothing for _seven (7) more days_.**

   **They made no attempt to contact any of the eleven (11) witnesses. They made no contact with Plaintiffs' counsel. They filed nothing with the Court.**

30. On September 9, 2022, two Hearst lawyers (Sitwala and Boyer) appeared in Visalia, California, for Devin Nunes's deposition. Hearst deposed Devin Nunes for over six (6) hours. During the deposition the lawyers questioned Devin Nunes at length about his disclosures, including the identity of "others" who, in addition to the eleven (11) people identified on September 1, had knowledge of Devin Nunes's actual injuries. The disclosures were introduced in evidence during the discovery process. Devin Nunes fully answered every question.

   **At no time during the deposition did Defendants or their counsel object to Devin Nunes's disclosures or raise any concerns of any kind.**

31. **Defendants said absolutely nothing for _another five (5) days_.**

32. On September 11, 2022, Hearst and Lizza unilaterally cancelled the depositions of the NuStar Plaintiffs, after forcing the NuStar Plaintiffs and their counsel to rearrange schedules in order to be in Iowa on September 19-20. In an accompanying email, counsel for Hearst wrote, "[k]eeping with the Court's direction to avoid unnecessarily burdening witnesses, we have decided to not go forward with the NuStar Plaintiffs' depositions next week. Consider the notices withdrawn."

---

[2] Defendants' brief in support of motion to preclude, p. 4, misrepresents that Plaintiffs' disclosure "lacked contact information".

33. During his deposition, Devin Nunes identified two (2) additional witnesses who he remembered speaking with on September 30, 2018 about the article: Matt Butler and Jack Langer. Although he had no duty to formally supplement his Rule 26(a)(1)(i) disclosures, on September 12, 2022, Devin Nunes served an amended and supplemental disclosure to identify these two witnesses: Matt Butler and Jack Langer.

   **Hearst's lawyers made no effort to contact Mr. Butler or Mr. Langer**.

34. On September 14, 2022, Plaintiffs' counsel and Devin Nunes appeared in Washington, D.C. for the deposition of Ryan Lizza. At no point during the deposition did Hearst's counsel, including outside counsel in Des Moines (Mr. Klinefeld) who participated by telephone, raise any concern about the disclosures.

35. **At no point did Defendants make any effort to contact *any* of the persons identified on Devin's Nunes's disclosures**.

36. **At no point did Defendants reach out to Plaintiffs' counsel for available dates for depositions**.

37. **At no point did Defendants ask for consent to a motion to extend the discovery cutoff to facilitate any depositions**.

38. **At no point did Defendants file a motion to extend the discovery cutoff to facilitate any depositions**.

39. On September 15, 2022 – after close of business – Defendants' counsel raised a concern about Devin Nunes's disclosures.

40. On September 20, 2022, Hearst requested a discovery status conference with the Court "to discuss Plaintiff Devin Nunes's recent and belated disclosure of 29 high-profile politicians as witnesses on whom he intends to rely at trial."

   **At the time they contacted the Court, _none_ of Hearst's ten (10) lawyers had any intention to take any deposition of any witness. The complaint about "prejudice" is completely fabricated. It is a fraud upon the Court**.

41. On September 23, 2022, discovery closed.

42. On Friday, September 23, 2022, the parties appeared by telephone for a discovery status conference. During the conference, the Court suggested that Plaintiffs might narrow the list of witnesses to 3-5, so the dispute could be resolved and Defendants could take any desired depositions.

Plaintiffs' counsel stated their intention to fully cooperate with Defendants' counsel in facilitating any depositions.

43. On Monday, September 26, 2022, Plaintiffs' counsel emailed Defendants' counsel as follows:

"Jonathan,

Per Judge Roberts' direction, and without waiver of the right to call at trial any witness identified by Devin Nunes and/or the NuStar Plaintiffs during the discovery process, we will narrow the list of eleven Republican Leaders, whose specific names were disclosed on September 1, 2022 in a supplemental discovery response, to the following five (5):

1. Randy Feenstra;
2. Trey Gowdy;
3. George Holding;
4. Kevin McCarthy;
5. John Ratcliffe.

Let me know ASAP if you intend to depose any of the above individuals. To the extent that you are unable to reach a witness, we would be happy to facilitate contact."

**Counsel for Hearst and Lizza never bothered to respond**.[3]

44. On September 28, 2022, Plaintiffs' counsel again reached out to the ten (10) lawyers for Hearst to determine whether any member of the Hearst "Team" had contacted any of the five (5) witnesses identified in Plaintiffs' 09/26 email.

**Again, counsel for Hearst and Lizza did not respond**.

Defendants' unexplained neglect, delay, contrived and phony excuses do not constitute good cause for any relief. Defendants sat on their hands. Even after Plaintiffs' counsel narrowed the list to five witnesses, Defendants slept on their rights. Hearst wants

---

[3] Defendants' brief in support of motion to preclude, p. 9, flagrantly misrepresents that "Nunes Refuses to Narrow His List of 29 Names". It is impossible to view Defendants' counsel's misrepresentations as anything other than an intentional effort to deceive the Court.

to be rewarded for its dilatory conduct.[4]  The Court should deny Hearst's motion to preclude.

## II.  DEVIN NUNES HAD NO DUTY TO SUPPLEMENT

Rule 26(e)(1)(A) plainly states that a party who has made a disclosure under Rule 26(a) "must supplement or correct its disclosure or response:

"(A)  in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing*".

(Emphasis added).  The Advisory Committee Notes to Rule 26(e) clearly explain that "[t]here is ... no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, ***as when a witness not previously disclosed is identified during the taking of a deposition***[.]" (Emphasis added); *see id.* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2049.1 (3rd ed. 1993) ("there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery.") (cited in *Fiumano v. Metro Diner Management, LLC*, 2022 WL 2541354, at * 7 (E.D. Pa. 2022) (the information had "otherwise been made known" to plaintiffs when defendant responded to interrogatories); *see CGB Diversified Services, Inc. v. Forsythe*, 2021 WL 7710877, at * 4 (D. Kansas 2021) ("Defendant's [deposition] testimony was before both the supplementation deadline and the discovery deadline.  And because the information was

---

[4]  On August 4, 2021, after the NuStar Plaintiffs disclosed Jesse Van de Stroet and Darin Dystra as witnesses, Defendants' counsel immediately served notice and subpoenas for depositions.  **By comparison, Defendants' counsel did absolutely *nothing* after Plaintiff's counsel identified the eleven (11) Republican Leaders on September 1, 2022**.

made known to Defendant (indeed, it came out through Defendant's own testimony), pursuant to Fed. R. Civ. P. 26(e)(1)(A), there was no requirement that Plaintiff supplement its disclosures"); *Ramirez v. Zimmerman*, 2020 WL 905603, at * 11 (C.D. Cal. 2020) ("although County Defendants did ultimately rely on Captain Cinnamo to support their defenses, County Defendants' duty to supplement their initial disclosures was extinguished the moment Plaintiffs learned of his identity during Lieutenant Boudreau's deposition"); *Nix v. McMaster Carr Supply Co.*, 2018 WL 7348862, at * 2 (N.D. Ga. 2018) ("the requirement of Rule 26(e)(1) [to supplement or correct disclosures in a timely manner] only applies 'if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]' … Plaintiff asserts, and Defendant makes no argument to the contrary, that the declarants were disclosed during discovery"); *SE Property Holdings, LLC v. Center*, 2017 WL 1349174, at * 4 (S.D. Ala. 2017) ("The trouble with SEPH's objection to the timeliness of Pope's nondisclosure is that, by its own admission, plaintiff was made aware during discovery that Pope was the Trammells' primary accountant.  That revelation certainly sufficed to place SEPH on notice that Jim Pope was someone with discoverable information relating to the Trammells' assets that defendants might utilize at trial.  As such, it was unnecessary for defendants formally to supplement their disclosures to list Pope by name."); *BVS, Inc. v. CDW Direct, LLC*, 2013 WL 12140978, at * 5 (N.D. Iowa 2013) ("the court finds that CDW was not required to supplement its Rule 26 Disclosure because, even if its disclosures were incomplete with respect to the subject matter of Harb's testimony, any omission became known to BVS during the discovery process when counsel deposed Harb and Reinhard.").

In *Mitre Sports Intern. Ltd. v. Home Box Office, Inc.*, 304 F.R.D. 369 (S.D.N.Y. 2015), a manufacturer of sports equipment sued a television network (HBO) for defamation after the network broadcast a program which implied that the manufacturer used child labor in India to stitch soccer balls. Discovery disputes arose. Plaintiff sought to bar the use of a declaration of a witness "on the ground that HBO did not disclose Cottingham as a potential witness in its disclosures pursuant to Fed.R.Civ. P. 26(a)(1)." *Id.* at 377. There was no dispute that "HBO did not list Cottingham in its 26(a)(1) disclosures or in any formal supplementation of its 26(a)(1) disclosure ." HBO argued that "its identification of Cottingham as a potential witness in discovery obviated the need for a more formal supplementation. Specifically, HBO noted that Cottingham was identified in a Request for International Judicial Assistance Pursuant to the Hague Convention that was served and submitted to the Court (the "Hague Request"). The Hague Request provide the witness's address and telephone numbers and contained a description of the subject matter of his proposed testimony. Counsel for HBO also attached the witness's report to a declaration submitted in support of a motion for partial summary judgment. The District Court concluded that the witness was "sufficiently disclosed in the Hague Request and the Bolger Declaration that there was no need for HBO to serve a formal supplement to its Rule 26(a)(1) disclosures. Although the Hague Request was not denominated as a supplement to HBO's Rule 26(a)(1) disclosures, it literally provided all the information required by Rule 26(a)(1)(A)(i)." *Id.* at 378. The Court further observed that "a number of judges and commentators have held that identification of potential witnesses through deposition testimony obviates the need for a formal supplementation to Rule 26(a)(1) disclosures." *Mitre Sports Intern.*, 304 F.R.D. at

379 (collecting cases).; *id. Barnes v. Black*, 2008 WL 11366274, at * 2 (C.D. Ill. 2008)

("Defendants were made aware [at Plaintiff's deposition] that Dr. Mohsin had relevant

information regarding the suggestion that Plaintiff have spine surgery; surgery that

Plaintiff contends was due to the accident at issue.  As Defendants were sufficiently and

timely notified of this potential witness, Plaintiff was not required to formally supplement

his discovery responses pursuant to Rule 26(e).").

Devin Nunes had no duty to supplement his Rule 26(a)(1)(A)(i) disclosures

because the names of the 27 Republican Leaders, the subjects of the discoverable

information they had, and  the fact that Devin Nunes may use these witnesses to support

his claims was made known to Hearst and Lizza during the discovery process.[5]  Hearst

and Lizza have always known that Devin Nunes was a United States Congressman, that

---

[5]     On August 10, 2021, Defendants took Devin Nunes's deposition.  At the time, Devin Nunes was not a party.  His appeal to the Eighth Circuit was pending. Defendants asked Devin Nunes multiple questions about the damages that he and his family suffered as a result of the article.  Devin Nunes described the impact of the article on his own security, the security of his staff in Washington, and the safety and security of his family in Iowa and California, including from trespassers (Antifa) showing up at NuStar in Sibley, Iowa.  Devin Nunes testified about death threats, including a recent call from a person "threatening to kill me and my father", who also said he "knew where my family farm was".  Devin Nunes testified about the coordination between Hearst and CNN, who showed up at Devin Nunes' grandmother's home on October 1, 2018, right before Lizza was scheduled to appear on TV with CNN's Wolf Blitzer.  Devin Nunes testified about the continuing online harassment as a result of the publication and republication of the article.  Devin Nunes also testified that the article impacted his Congressional "staff" and led to increased "security protocols" and dealings with the FBI, Capitol Police, local police and sheriffs.  Devin Nunes confirmed that at the time the article was published it was "election season" and "everybody" was asking him about the article.  Devin Nunes flatly denied the defamatory implication of the article: he notified the Hearst lawyers that "your whole story is fake and phoney and you ought to pull it down … there was no hiding, no nothing, you guys just made that up out of thin air with whoever fed that story … Steve king and I weren't conspiring to commit federal crimes. That's all a figment of your psychopathic imagination, of your reporter Lizza and your editors and whoever wrote it." [*Dep. Tr., pp. 63-74, 77-78, 110, 147-150, 167, 169, 171*].

he was Chairman of the House Intelligence Committee, and that he suffered injury to his reputation as a United States Congressman. The repeated references in the pleadings to the injury inflicted upon Devin Nunes's professional reputation as a United States Congressman and the interference with his duties as Chairman of the House Intelligence Committee [*see ECF No. 23 (Amended Complaint, ¶¶ 2, 4, 5, 14, 19, 33)*; *ECF No. 92 (Second Amended Complaint, ¶¶ 5, 25, 29, 44, 45, 51)*; *ECF No. 104, ¶¶ 4, 21, 38, 45)*] put Hearst and Lizza on notice of the need to conduct discovery on the specifics of the injury to Devin Nunes' Congressional reputation and the probable need to depose Devin Nunes's colleagues in Congress. In his initial disclosures served on January 13, 2020, Devin Nunes specifically advised Defendants' counsel that he had knowledge of the injury to his reputation. In their barebones initial disclosures served on January 17, 2020, Hearst and Lizza identified "the following witnesses likely to have discoverable information that Defendants may use to support their defenses: "[a]ll persons identified in Plaintiff's 26(a) disclosures, **supplemental disclosures**, discovery responses, and document production." (Emphasis added).[6]   On March 4, 2020, the Court granted Defendants' motion to stay discovery. [*ECF No. 26*]. The Court extended the stay until it ruled on Defendants' motion to dismiss. [*ECF No. 52*]. On August 5, 2020, the Court granted Defendants' motion to dismiss. [*ECF No. 53*]. The Eighth Circuit reversed. On November 30, 2021, mandate issued, after Defendants' petition for rehearing *en banc* was unanimously rejected. After Defendants served Holfield's preposterous expert

---

[6]   Defendants never supplemented or corrected their barebones initial disclosures pursuant to Rule 26(e). Since Defendants served Rule 26(a)(1)(A)(i) disclosures that identified "all persons identified in Plaintiff's 26(a) … supplemental disclosures", Defendants cannot credibly claim any prejudice as to the witnesses disclosed in Devin Nunes' supplemental disclosures served on August 26, 2022 and September 1, 2022.

witness disclosure on July 25, 2022, Plaintiffs' counsel investigated the sufficiency of the evidence of injury to Devin Nunes's reputation. Devin Nunes contacted colleagues in Congress in order to confirm whether they recalled the injury to his reputation caused by publication and republication of the article. Many did. Devin Nunes acted with reasonable diligence upon receipt of Holfield's report and the realization that his initial disclosures might need to be supplemented. Upon confirmation of their knowledge, Plaintiffs' counsel promptly identified eleven (11) Republican Leaders as potential witnesses with knowledge of the injury to Devin Nunes's reputation. In amended Rule 26(a) disclosures served on August 25, 2022 and August 26, 2022, Devin Nunes clearly and unambiguously made known to Defendants' counsel that several "colleagues in Congress", "Republican leaders, including Republican members of HPSCI and Ways and Means", had knowledge of the injury to his reputation, and that Devin Nunes intended to use these witnesses to support his claims. On September 1, 2022, **twenty-three (23) days _before_ the discovery cut-off**, those Republican Leaders were identified by name. The "additional" information in this case – the specific identities and subject matter of the testimony of the Republican Leaders and others – was further and expressly made known by Devin Nunes during his deposition on September 9, 2022, a deposition that was scheduled by agreement of counsel and that occurred "during the discovery process".[7]

---

[7]     Plaintiffs' counsel has found no case in which a witness disclosed 23 days before a discovery cut-off was ever precluded from testifying, and Hearst cites no such case. _Compare Lewter v. United States_, 2012 WL 13175860, at * 4 (S.D. Cal. 2012) (plaintiff disclosed witness for the first time ten days before the discovery cut-off, but withheld giving defendants the address and phone number until plaintiff produced a declaration on the discovery cut-off date).

### III.  HEARST FAILED TO SCHEDULE ANY DEPOSITIONS

Even assuming Rule 26(e)(1)(A) applies, any failure to comply with the Rule is substantially justified and harmless. *See Fed.R.Civ.P. 37(c)(1)*.  Holfield's expert report caused Devin Nunes to revisit his August 10, 2021 deposition.  Devin Nunes recalled that various colleagues in Congress had expressed concerns about the article and republication.  He reached out to determine whether any of those colleagues possessed information that was likely to support Plaintiffs' claim of defamation by implication.  When it became apparent that several Republication Leaders indicated that the article caused injury to reputation, Devin Nunes supplemented.  There can be no genuine dispute regarding Devin Nunes's compliance.  The discovery process was ongoing at the time he identified the eleven (11) Republican Leaders, the subject matter of their testimony, and the fact that he might call them as witnesses. *Compare Petersen v. Pan Am. Railways, Inc.*, 2015 WL 2451227, at * 4 (N.D.N.Y. 2015) ("With regard to the timeliness of Defendants' supplementation [which identified "deposed witnesses"], the Court finds that the fact that the supplementation occurred after the close of discovery is harmless.  Defendants served their supplemental disclosure only ten days after the discovery deadline had expired … this is not a case 'where the disclosing party waited until the eve of trial to disclose its witnesses'").  Hearst and Lizza had the ability to cure any prejudice from any "belated" disclosure, as Defendants' counsel had 23 days prior to the discovery cut-off in which to schedule any depositions.  **Counsel for Hearst and Lizza chose to do nothing.  They hoarded any opportunity to devise a cure away from the Court and Plaintiffs**. *Beebe v. Colorado*, 2019 WL 6044742, at * 12 (D. Colo. 2019) ("at the time Plaintiff discovered this alleged Rule 26 violation on May 22, 2019, such a violation

could have been cured.  For example, the Court could have ordered that Ms. Ortiz-Marquez's deposition be taken out of time and permitted supplemental briefing for Motions for Summary Judgment").  Additionally, after the discovery status conference on September 23, 2022, Plaintiffs' counsel threw Hearst another life line.  Plaintiffs' counsel narrowed the list of potential witnesses down to five (5) individuals and offered to assist Hearst if they had any trouble setting up a deposition.  Hearst and Lizza again did nothing.  Any prejudice to Defendants was the result of their own intransigence and neglect.

Even now, a "cure" may be possible, which would further the "strong federal policy in favor of resolution of disputes on the merits." *Howard v/ City of Los Angeles*, 2017 WL 11682193, at * 17 (C.D. Cal. 2017).  It may still be possible to reopen discovery for the limited purpose of facilitating depositions.  Trial is not set to begin until April 17, 2023. [*ECF No. 85 (Trial Management Order, p. 1, § II)*].  A limited reopening of fact discovery at this stage would not unduly delay the resolution of this case.  The dispositive motion deadline and/or briefing schedule could be moved to accommodate any deposition Defendants care to take, ***except*** that Defendants have not filed a motion to extend the discovery or disposition motions deadlines and have not evinced ***any*** desire at all to take any depositions. *See Energy Heating, LLC v. Heat-On-The-Fly, LLC*, 2015 WL 11156905, at * 3 (D. N.D. 2015) ("The discovery deadline was more than seven months ago, and trial is less than two months away.  Having been aware that Kelly was an important witness, and having chosen not to depose him, plaintiffs have not shown the good cause required by Federal Rule of Civil Procedure 16(b)(4) to modify the scheduling order to allow plaintiffs to take Kelly's deposition.").

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, Plaintiffs respectfully request the Court to deny Defendants' motion to preclude disclosed witnesses, and award Plaintiffs their attorney's fees incurred in defending this motion.


DATED:        October 21, 2022


                    DEVIN G. NUNES
                    NUSTAR FARMS, LLC
                    ANTHONY NUNES, JR.
                    ANTHONY NUNES, III


                    By: _/s/ Steven S. Biss_____
                        Steven S. Biss (VSB # 32972)
                        300 West Main Street, Suite 102
                        Charlottesville, Virginia 22903
                        Telephone: (804) 501-8272
                        Facsimile: (202) 318-4098
                        Email: stevenbiss@earthlink.net
                        (*Admitted Pro Hac Vice*)

                        William F. McGinn #24477
                        McGINN LAW FIRM
                        20 North 16th Street
                        Council Bluffs, Iowa 51501
                        Telephone: (712) 328-1566
                        Facsimile: (712) 328-3707
                        Email: bmcginn@themcginnlawfirm.com

                        *Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By:    */s/ Steven S. Biss*
            Steven S. Biss (VSB # 32972)
            300 West Main Street, Suite 102
            Charlottesville, Virginia 22903
            Telephone:  (804) 501-8272
            Facsimile:  (202) 318-4098
            Email:  stevenbiss@earthlink.net
            (*Admitted Pro Hac Vice*)

            William F. McGinn #24477
            McGINN LAW FIRM
            20 North 16th Street
            Council Bluffs, Iowa 51501
            Telephone: (712) 328-1566
            Facsimile: (712) 328-3707
            Email: bmcginn@themcginnlawfirm.com

            *Counsel for the Plaintiffs*