| | | |
|---|---|---|
| **Devin G. Nunes,** | ) | Case No. 5:19-cv-04064-CJW-MAR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Ryan Lizza, Hearst Magazines, Inc., and Hearst Magazine Media, Inc.** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| **NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III,** | ) | Case No. 5:20-cv-04003-CJW-MAR |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Ryan Lizza and Hearst Magazine Media, Inc.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Defendants' Resistance to Plaintiffs' October 7, 2022 Motion to Compel Discovery
(Oral Argument Conditionally Requested)**

**Table of Contents**

Page

Resistance and Request for Oral Argument.................................................................................. 2

Introduction.................................................................................................................................... 3

Authority and Argument............................................................................................................... 6

  1.  Plaintiffs' requests for circulation and readership information come far too late, are presented without a conferral, and seek documents that are either equally available to Plaintiffs from public sources or that do not exist.

     *(Responding to Pls.' Br., § A, "Viewership and Circulation of the Article")* .................. 8

1

2. Plaintiffs' requests to Lizza for documents from Twitter sought records Defendants do not have and an order compelling Defendants to request and incur the burden of assembling information from third-party Twitter that could support Plaintiffs' claims is neither appropriate nor proportional to the needs of this case.

   *(Responding to Pls.' Br., § G, "Lizza's Twitter Followers and Direct Messages"* ...................................................... 12

3. Defendants' tax returns and net worth information, to the extent they exist, are not probative and forced disclosure of such sensitive information should not occur, if at all, until the Court first determines that Plaintiffs have shown actual malice by clear and convincing evidence and further decides that it will submit a punitive damages instruction to the jury.

   *(Responding to Pls.' Br., § B, "Tax Returns and Net Worth").* .................................... 15

4. Plaintiffs at all times have the burden of showing falsity, fault, and injury to reputation and their attempt through discovery requests to shift those obligations to Defendants by requesting evidence that Plaintiffs "did not suffer an injury to reputation" constitutes an impermissible use of interrogatories and production requests.

   *(Responding to Pls.' Br., § C, "The Defamatory Implication and Evidence of a Conspiracy")* ................................................................................................................. 19

5. The remaining contentions of the Motion to compel concern demands to produce documents and information that Defendants have already produced or do not possess.

   *(Responding to Pls.' Br., §§ D, E, and F).* ...................................................... 23

Conclusion ........................................................................................................................... 25

Certificate of Service .......................................................................................................... 27

**Resistance and Request for Oral Argument**

Pursuant in part to LR 7(e), Defendants Ryan Lizza ("Lizza") and Hearst Magazine Media, Inc. ("Hearst," together with Lizza, "Defendants") resist the October 7, 2022 Motion to Compel Discovery (the "Motion") in Case No. 5:19-cv-04064 by Plaintiff Devin Nunes (the "Congressman") and in Case No. 5:20-cv-04003 by Plaintiffs NuStar Farms, LLC ("NuStar"), Anthony Nunes, Jr. ("Anthony Jr."), and Anthony Nunes, III ("Anthony III," who together with

NuStar and Anthony Jr., are the "NuStar Plaintiffs," and with the Congressman are the "Plaintiffs").

Based on the information and authority that follows, this Court should deny the Motion in all respects, including its attorney fee request. As to that latter item, Plaintiffs' request for fees is particularly egregious and merits rejection out of hand considering their counsel's failure to comply with meet and confer obligations, their untimeliness in bringing these issues to the Court, and the lack of merit in their positions. If anything, the Court should award Defendants their fees for having to respond to the Motion when Plaintiff refused to meaningfully meet and confer beforehand.

Defendants conditionally request the opportunity to present oral argument in resistance to the Motion if the Court deems it appropriate and helpful.

## Introduction

The Motion asks the Court to impose discovery production and response duties on Defendants that are not required by or supportable under the Federal Rules of Civil Procedure. Plaintiffs also inappropriately seek to compel Defendants to gather non-existent documents (records they have advised Plaintiffs do not exist or are not in their care, custody, or control). In other Requests, Plaintiffs impermissibly ask the Court to compel Defendants to create records that are neither relevant nor necessary, or to produce records that are otherwise obtainable from less intrusive sources. And even though the Motion complains that "Defendants have not produced a single document in Case 4003 that is responsive to requests 1-7 and/or 10 above," Plaintiffs' Brief at 13, the above-captioned cases are now consolidated such that a party may use discovery from one case in the other. The Motion ignores that the document production and

discovery responses in the other case can satisfy, and have satisfied, the purported shortcomings it alleges.

Additionally, Defendants' timely interposed objections to the discovery requests at issue were proper, correct, and controlling under the applicable rules, privileges, and case law. Plaintiffs rarely raised any concerns about them—until now. Defendants' responses are compliant with the rules and proportionate to this case. Considering proportionality rules, the balance of interests in this discovery dispute weighs decidedly in favor of Defendants.

Beyond that, the Motion comes far too late and, as to many subjects, without any reasonable effort to meet and confer as the rules require. For example, rather than timely raise any issue regarding purported deficiencies in providing circulation information sought by Plaintiffs in November 2020 and timely objected to by Defendants, the motion to compel on this issue comes two years later, after the close of discovery.

Even Plaintiffs' meet and confer efforts did too little, too late. This email exchange below shows how Plaintiffs' counsel posited the meet and confer as an all or nothing proposition—where he would not accept anything short of the withdrawal of objections. Plaintiffs raised it on a Saturday night, and Defendants promptly responded the next business day:

**From:** Steven S. Biss <stevenbiss@earthlink.net>
**Sent:** Saturday, September 24, 2022 6:27 PM
**To:** Shah, Nina <Nina.Shah@hearst.com>; 'Bill McGinn' <bmcginn@mcginnlawfirm.com>
**Cc:** Donnellan, Jonathan <JDonnellan@hearst.com>; Sitwala, Ravi <RSitwala@hearst.com>; Hauser, Kristen <khauser@hearst.com>; Park, Sarah <Sarah.Park@hearst.com>; 'Giudicessi, Michael A.' <michael.giudicessi@faegredrinker.com>; 'Klinefeldt, Nicholas A.' <nick.klinefeldt@faegredrinker.com>; Boyer, Nathaniel <Nathaniel.Boyer@hearst.com>
**Subject:** [EXTERNAL] Re: Nunes v. Lizza et al.--Defendants' R&Os to Devin Nunes's Second Rogs and Third RFPs

Nina,

Let me know when you are available next week for a meet and confer about these "responses".

Motions to compel must be filed within 14 days of the close of discovery, so please email me a few dates. Thank you.

**From:** Shah, Nina
**Sent:** Monday, September 26, 2022 1:39 PM
**To:** Steven S. Biss ; 'Bill McGinn'
**Cc:** Donnellan, Jonathan ; Sitwala, Ravi ; Hauser, Kristen ; Park, Sarah ; 'Giudicessi, Michael A.' ; 'Klinefeldt, Nicholas A.' ; Boyer, Nathaniel
**Subject:** RE: [EXTERNAL] Re: Nunes v. Lizza et al.--Defendants' R&Os to Devin Nunes's Second Rogs and Third RFPs

Hi Steve:

We're available to meet and confer at the following times:
- Tomorrow any time between 3:30pm and 5pm
- Wednesday any time before 5pm

Let us know what works for you.

Best,
Nina

The telephone conference among counsel the next day yielded this follow-up response from Defendants:

**From:** Boyer, Nathaniel
**Sent:** Wednesday, September 28, 2022 10:00 AM
**To:** Steven S. Biss ; Shah, Nina ; 'Bill McGinn'
**Cc:** Donnellan, Jonathan ; Sitwala, Ravi ; Hauser, Kristen ; Park, Sarah ; 'Giudicessi, Michael A.' ; 'Klinefeldt, Nicholas A.'
**Subject:** RE: [EXTERNAL] Re: Nunes v. Lizza et al.--Defendants' R&Os to Devin Nunes's Second Rogs and Third RFPs

Steve,

On our call at 3:30 yesterday, you said that we should withdraw all objections and amend our responses to all of the documents requests and interrogatories to which we responded on September 15, 2022. You asked us to consider this, and to get back to you with our position. I write to get back to you on that.

As I said on the call, we need to know, specifically, what responses you are challenging, and what concerns you have with our responses. Every request/interrogatory is different, and the responses are different. It is not helpful to simply say that you disagree with everything.

I reiterate what I said on the call: If you can be prepared to specify what issues you have with what specific responses, then we'd be happy to speak again, to try to identify or narrow any disputes.

Nate

**Nathaniel S. Boyer** | Counsel | The Hearst Corporation | Office of General Counsel | 300 W. 57th St. - 40th Fl. | New York, NY 10019 | Tel. 212 649 2030 | Fax. 212 649 2035 | nathaniel.boyer@hearst.com

Rather than provide the context and requested information, Plaintiffs' counsel returned with an unreasonable ultimatum that turned into the pending motion to compel, despite the admonition of Fed. R. Civ. P. 37(a)(1) and L.R. 37 that the movant must certify it has "in good faith conferred" to resolve *or narrow* the discovery dispute without court intervention:



**This Message originated outside your organization.**

Nate,

We reject your attempt to avoid a motion to compel.

None of your objections were proper. Since you refuse to withdraw the objections, and answer the interrogatories and provide the documents (or admit you have no documents), we intend to move to compel and request summary judgment on the issue of the falsity of the defamatory implication.

The Eighth Circuit clearly and emphatically held that the article s capable of a defamatory meaning. It borders on ethical misconduct for you to recklessly disregard the law of this case.

Plaintiffs refused to engage in a meaningful dialogue in the meet and confer, choosing instead to withhold any specificity about their complaints and/or offers to narrow the scope of the disagreement and demanding withdrawal of all objections. In so doing, they failed to comply with Rule 37.

So, yet again, Plaintiffs present the Court with specious, if not frivolous complaints about supposed discovery deficiencies, in a groundless effort to leave the Court with the false impression that there is some equivalence between the Plaintiffs' and Defendants' conduct during discovery in these now-consolidated cases. *Cf.* ECF No. 113 (Defendants' recent motion regarding late-disclosed witnesses). The Court should deny the Motion.

### Authority and Argument

Federal Rule of Civil Procedure 26(b)(1) declares "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Rule 26(b)(1) further states discovery must remain "proportional to the needs of the case," with proportionality measured by considering:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

As Chief Justice John Roberts noted in his 2015 year-end report, the proportionality changes to Rule 26 require judges to inject practicality and sensibility into discovery disputes. "The key here is careful and realistic assessment of actual need. That assessment may, as a practical matter, require the active involvement of a neutral arbiter—the federal judge—to guide decisions respecting the scope of discovery." 2015 Year-End Report at p. 7.

Rule 26(b)(2)(C)(iii) enumerates the following proportionality factors:

(1)     the importance of the issues at stake in the action;

(2)     the amount in controversy;

(3)     the parties' relative access to relevant information;

(4)     the importance of the discovery in resolving the issues; and

(5)     whether the burden or expense of the proposed discovery outweighs its likely benefit.

Beyond those factors, courts may limit discoverable evidence if the requested information is unreasonably cumulative, not relevant to a claim or defense in the case, or cheaper or easier to obtain from some other source. *Id*.

Even in the absence of a privilege, courts limit the scope of discovery to information that is closely related to a plaintiff's allegations. *See Hofer v. Mack Trucks, Inc*., 981 F.2d 377, 380 (8th Cir. 1992) ("[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case"); *Onwuka v. Federal Express Corp*., 178 F.R.D. 508, 516 (D. Minn. 1997) (noting "we will remain reluctant to allow any party to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so").

Additionally, even when information sought is otherwise discoverable under the Federal

Rules of Civil Procedure, courts correctly limit its production if it is:

- "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" . . . or

- "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

*See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Each of the challenged requests and interrogatories are addressed below.

**1.    Plaintiffs' requests for circulation and readership information come far too late, are presented without a conferral, and seek documents that are either equally available to Plaintiffs from public sources or that do not exist.**

*(Responding to Pls.' Br., § A, "Viewership and Circulation of the Article").*

**Requests at Issue and Responses:**  The Motion challenges certain responses to

Plaintiffs' Third Request for Production of Documents to Hearst.  These requests sought the

following information:

- 6.  Documents sufficient to identify the readership, circulation, number of subscribers, page views, and the daily, monthly and/or unique visitors to the website www.esquire.com;

- 7.  Documents sufficient to identify the number of times the Article has been viewed online.

- 8.  Documents sufficient to identify the readership, circulation, and number of subscribers to *Esquire* magazine, and the total number of copies of the magazine that contained the Article that were printed and/or sold anywhere in the World.

*See* ECF No. 112-1, Mot. Ex. A.

Hearst responded to these requests on December 4, 2020.  Hearst's responses explained

that the requests were vague, Hearst did not have possession, custody, or control of some of the

requested documents or information (with respect to requests 6 and 8), the documents requested were not relevant to the remaining claims, and the documents requested were overbroad and unduly burdensome. *See* ECF No. 112-1, Mot. Ex. A.

**Analysis:** The Motion has two procedural defects that support denying Plaintiffs' motion to compel: it is untimely and it was filed without conferral. First, Local Rule 7(c) anticipates a party will file a motion to compel "as soon as practicable" even though the rule includes a proviso allowing them within 14 days after the close of discovery. Here, the Motion comes nearly two years after Defendants produced their responses, and Plaintiffs have presented no good cause to explain their unreasonable delay in alleging that those responses are somehow insufficient or why it was impracticable to seek relief earlier. This alone supports denial. *See Firefighter's Inst. for Racial Equal. ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (upholding denial of motion to compel for being filed three days after deadline without justification).

Independently, the Court should deny the Motion because there was no conferral whatsoever about these requests. Again, Local Rule 37 *requires* conferral to try to "resolve or narrow by agreement the issues raised by the motion." Here, Plaintiffs did not even call.

Even if this Court could overlook the Motion's procedural defects, which it should not do, it should deny this category of requests on the merits because there is proportionally sufficient information that is publicly available, and equally accessible to Plaintiffs. The time and cost of trying to create all of the measurements Plaintiffs demand would dwarf any value of what Plaintiffs claim to need for "the issues of publication and damages." Plaintiffs' Brief at 3.

It is also questionable what value any of the sought information would be to Plaintiffs now, anyway. In a defamation case, it is incumbent on Plaintiffs to provide evidence that

*readers of the article* held a positive opinion about them that was diminished by falsity in the publication. No statistical circulation or objective readership figures will ascertain that no matter the cost or time expended to create it. Plaintiffs did not engage an expert to gather that type of survey information—much the same as a plaintiff in a trademark infringement case would generate through canvassing affected individuals on a question of likelihood of confusion to create impact data—and it is too late for them to do so now. This is an additional reason the requests are not proportional to the needs of the case, even as Plaintiff articulates them, and are not relevant to proving diminution of reputation based on information held or reasonably attainable by Defendants.

Had Plaintiffs conferred with Defendants, Defendants could have directed them to one source of the type of circulation information they sought. *Esquire* magazine held a second-class mailing permit from the U.S. Postal Service in 2018, when the article at issue in this ligation (the "Article") appeared in print. In connection with that permit, the December 2018 (Winter 2019) issue of the magazine included a Statement of Ownership, as required by the post office. That statement, available from the USPS or by reviewing the Winter 2019 issue, included paid circulation, free copy distribution, and web edition numbers.

Defendants provide it here for the convenience of the Court in an effort to resolve this issue, notwithstanding Plaintiffs' failure to engage in timely and reasonable efforts to narrow and resolve this discovery dispute even though it was publicly available to them:

## Statement of Ownership, Management, and Circulation

1. Publication title: Esquire.
2. Publication number: 0561-9100.
3. Filing date: October 1, 2018.
4. Issue frequency: Monthly, except combined issue in June/July.
5. Number of issues published annually: 9.
6. Annual subscription price: $7.97.
7. Complete mailing address of known office of publication: 300 West 57th Street, New York, NY 10019. Contact person: Kolin Rankin. Telephone: 212-649-2816.
8. Complete mailing address of headquarters or general business office of publisher: 300 West 57th Street, New York, NY 10019.
9. Full names and complete mailing addresses of publisher, editor, and managing editor. Publisher: Jack Essig, 300 West 57th Street, New York, NY 10019. Editor: Jay Fielden, 300 West 57th Street, New York, NY 10019. Managing editor: Helene Rubinstein, 300 West 57th Street, New York, NY 10019.
10. Owner: Hearst Communications, Inc., registered office: 300 West 57th Street, New York, NY 10019. Stockholders of Hearst Communications, Inc., are: Hearst Holdings, Inc., registered office: 300 West 57th Street, New York, NY 10019, and CDS Global, Inc., registered office: 1901 Bell Avenue, Des Moines, Iowa 50315.
11. None.
12. Not applicable.
13. Publication title: Esquire.
14. Issue date for circulation data below: September 2018.
15. Extent and nature of circulation:

Average no. copies each issue during preceding 12 months

| | | |
|---|---|---|
| A. | Total number of copies: | 774,778 |
| B. | Paid circulation (by mail and outside the mail) | |
| | 1. Mailed outside-county paid subscriptions stated on PS Form 3541: | 531,373 |
| | 2. Mailed in-county paid subscriptions stated on PS Form 3541: | not applicable |
| | 3. Paid distribution outside the mails including sales through dealers and carriers, street vendors, counter sales, and other paid distribution outside USPS: | 21,793 |
| | 4. Paid distribution by other classes of mail through the USPS: | not applicable |
| C. | Total paid distribution: | 553,165 |
| D. | Free or nominal rate distribution (by mail and outside the mail) | |
| | 1. Free or nominal rate outside-county copies included on PS Form 3541: | 149,002 |
| | 2. Free or nominal rate in-county copies included on PS Form 3541: | not applicable |
| | 3. Free or nominal rate copies mailed at other classes through the USPS: | not applicable |
| | 4. Free or nominal rate distribution outside the mail: | 8,945 |
| E. | Total free or nominal rate distribution: | 157,947 |
| F. | Total distribution: | 711,112 |
| G. | Copies not distributed: | 63,665 |
| H. | Total: | 774,778 |
| I. | Percent paid: | 77.79% |

| | | |
|---|---|---|
| 16. | A. Requested and paid electronic copies: | 59,806 |
| | B. Total requested and paid print copies and requested/paid electronic copies: | 612,972 |
| | C. Total requested copy distribution and requested/paid electronic copies: | 770,919 |
| | D. Percent paid and/or requested circulation (both print and electronic copies): | 79.51% |

No. copies of single issue published nearest to filing date

| | | |
|---|---|---|
| A. | Total number of copies: | 757,400 |
| B. | Paid circulation (by mail and outside the mail) | |
| | 1. Mailed outside-county paid subscriptions stated on PS Form 3541: | 525,308 |
| | 2. Mailed in-county paid subscriptions stated on PS Form 3541: | not applicable |
| | 3. Paid distribution outside the mails including sales through dealers and carriers, street vendors, counter sales, and other paid distribution outside USPS: | 21,000 |
| | 4. Paid distribution by other classes of mail through the USPS: | not applicable |
| C. | Total paid distribution: | 546,308 |
| D. | Free or nominal rate distribution | |
| | 1. Free or nominal rate outside-county copies included on PS Form 3541: | 147,292 |
| | 2. Free or nominal rate in-county copies included on PS Form 3541: | not applicable |
| | 3. Free or nominal rate copies mailed at other classes through the USPS: | not applicable |
| | 4. Free or nominal rate distribution outside the mail: | 5,800 |
| E. | Total free or nominal rate distribution: | 153,092 |
| F. | Total distribution: | 699,400 |
| G. | Copies not distributed: | 58,000 |
| H. | Total: | 757,400 |
| I. | Percent paid: | 78.11% |

| | | |
|---|---|---|
| 16. | A. Requested and paid electronic copies: | 44,000 |
| | B. Total requested and paid print copies and requested/paid electronic copies: | 590,308 |
| | C. Total requested copy distribution and requested/paid electronic copies: | 343,400 |
| | D. Percent paid and/or requested circulation (both print and electronic copies): | 79.41% |

17. Publication of statement of ownership. If the publication is a general publication, publication of this statement is required. Will be printed in the December/January 2018 issue of this publication.
18. Signature and title of editor, publisher, business manager, or owner: Jack Essig, Publisher

I certify that all information furnished on this form is true and complete. I understand that anyone who furnishes false or misleading information on this form or who omits material or information requested on the form may be subject to criminal sanctions (including fines and imprisonment) and/or civil sanctions (including civil penalties).

2. **Plaintiffs' requests to Lizza for documents from Twitter sought records Defendants do not have and an order compelling Defendants to request and incur the burden of assembling information from third-party Twitter that could support Plaintiffs' claims is neither appropriate nor proportional to the needs of this case.**

*(Responding to Pls.' Br., § G, "Lizza's Twitter Followers and Direct Messages").*

**Requests at Issue and Responses:** Plaintiffs also argue that Lizza should have produced information about "Twitter Followers and Direct Messages." These requests sought the following:

- 11. Documents sufficient to identify the followers of Lizza's twitter account, @RyanLizza, between September 30, 2018 and November 20, 2019.

- 1. Documents sufficient to identify the number of persons or accounts following Twitter account @RyanLizza (the "Lizza Account") on November 20, 2019.

- 2. Documents sufficient to identify the names/handles of the followers of the Lizza Account on November 20, 2019.

- 3. The entire Republication, including all retweets, quote tweets, replies and likes.

- 4. All tweets, retweets, replies and likes of the Republication.

- 5. All Twitter direct messages or private messages sent or received by Lizza (excluding only messages exchanged with legal counsel) between September 30, 2018 and the present that mention [Devin Nunes], any member of Devin Nunes's family, the Article, the Republication, or this action.

*See* ECF No. 112-4 and 112-5, Mot. Exs. D, E.

Defendants responded to these requests by noting that they were overbroad, unduly burdensome, disproportionate and irrelevant, and requested information that was outside of Defendants' possession, custody, or control.

With respect to Requests 1, 2, 5, and 11, Defendants performed a reasonably diligent search and informed Plaintiffs that there were no responsive documents or information. *See* ECF No. 112-4 and 112-5, Mot. Exs. D, E.

**Analysis:** Discovery does not require Defendants to create records that do not exist or to obtain them from third parties such as Twitter when Plaintiffs could have sought the third-party records directly or through use of their subpoena power. *See, e.g.*, *Mary Imogene Bassett Hosp. v. Cannon Design, Inc*., 97 A.D.3d 1030, 1032, 949 N.Y.S.2d 229 (N.Y. App. Div. 3d Dept. 2012) ("[A] party cannot be compelled to produce documents that do not exist."); *Master Craft v. Stanley Works*, 2005 WL 8158996, at *6 (D. Minn. May 24, 2005) ("The Court agrees with defendants' assertion that they are not under any duty to create responsive documents that do not exist."). And, a party is not required to produce records it does not have in its care, custody, or control. *See generally In re Pork Antitrust Litig.*, 2022 WL 972401, at *3–6 (D. Minn. Mar. 31, 2022) (denying motion to compel cell phone data that was not in party's care, custody, or control); *Sonnino v. University of Kansas Hosp. Authority*, 220 F.R.D. 633, 640 (D. Kan. 2004) (holding courts "cannot compel a party to produce documents that do not exist or that are not in that party's possession, custody, or control" (citing *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501 (D. Kan. 2001))).

Yet, Plaintiffs seek to compel Defendants to provide information about Twitter circulation, readership, and identifications that is uniquely held by that social media operation, not Defendants. For example, the request for information about "retweets" or "quotes" appears to seek data about tweets posted by others, which Defendants certainly do not have. *See, e.g.*, ECF No. 112-5, at 3–4. Plaintiffs cannot force Defendants to produce information that "can be obtained from *some other source that is more convenient*, less burdensome, or less expensive;" instead, when the Court determines that the discovery requested falls within these categories, "the Court *must* limit the frequency or extent of discovery." Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added).

13

Here, even if it were appropriate to compel Defendants to gather this information, which it is not, they lack the means to do so except by subpoena to Twitter. Plaintiffs served a subpoena on Twitter—and, when Twitter objected to disclosing its users' data, Defendants *consented* to Twitter producing the information; Defendants just asked Plaintiffs to send Defendants any necessary waivers required to request or subpoena this information from Twitter.

But then, Plaintiffs appeared to drop the matter; they never presented any such consent form to Defendants for them to complete.

Further, certain requests by Plaintiffs insisted that responses contain information as of specific dates in the past (e.g., "identify the followers of Lizza's twitter account, @RyanLizza, between September 30, 2018 and November 20, 2019"). Defendants have neither this information nor any means by which they could re-create this state of affairs, on Twitter, for some period of time in the past. In short, these requests call for documents that are impossible for Defendants to produce. Plaintiffs could and should have, instead, sought this information by subpoena or request to Twitter—which, again, Defendants did not oppose.

Simply put, Defendants do not have this information, and Defendants told Plaintiffs that during the conferral process. *See* ECF No. 112-4, Request 11; ECF No. 112-5, Requests 1–2. This burden, in combination with Plaintiffs' equal ability to access the information and documents, supports denial of the Motion. *See generally* Fed. R. Civ. P. 26(b)(1) (stating proportionality is evaluated by "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").

Finally, to the extent it was feasible, Defendants *did* conduct a reasonable search and confirmed that no responsive information existed. For example, with respect to Request 5 involving direct or private messages, Defendants searched and did not find responsive information. *See* ECF No. 112-5, Mot. Ex. E. Because there is nothing to compel, the Court should deny the Motion.

> **3. Defendants' tax returns and net worth information, to the extent they exist, are not probative and forced disclosure of such sensitive information should not occur, if at all, until the Court first determines that Plaintiffs have shown actual malice by clear and convincing evidence and further decides that it will submit a punitive damages instruction to the jury.**
>
> *(Responding to Pls.' Br., § B, "Tax Returns and Net Worth").*

**Requests at Issue and Responses:** Plaintiffs argue that Lizza and Hearst should have produced information about their "net worth" and Lizza's "Federal income tax returns." These requests sought the following:

- 1. Lizza's most recent financial statement, income and expense statement, statements of assets and liabilities, balance sheet, and/or statement of net worth.

- 2. Hearst's most recent financial statement, income and expense statement, statements of assets and liabilities, balance sheet, and/or statement of net worth.

- 3. Lizza's 2018 Federal income tax returns, together with all accompanying schedules and statements, showing income received from all sources.

*See* ECF No. 112-2, Mot. Ex. B.

Defendants responded to these requests by noting that they were irrelevant to the prosecution or defense of the only claim that remains in this case.

With respect to Request 1, Defendants performed a reasonably diligent search and informed Plaintiffs that there were no responsive documents. *See* ECF No. 112-2, Mot. Ex. B.

**Analysis:** Plaintiffs' arguments about Lizza's tax returns also suffer from serious procedural defects. Defendants responded to these requests in April 2021. Although Plaintiffs

15

complained about Lizza's tax returns to the Court at that time and received little sympathy and no redress, Plaintiffs' only basis for requesting production was to establish actual malice. The Court correctly observed then that Lizza's tax returns are not relevant to actual malice. After hearing this, Plaintiffs sat on these requests — for both Lizza and Hearst — until after the close of fact discovery. Like Plaintiffs' circulation requests, this motion comes far too late, and Plaintiffs have not identified any good cause for the delay. *See* L.R. 37(c). The Court therefore should deny the Motion.

The Motion's request for tax returns fails on the merits, too. Plaintiffs' proclaimed need to see net worth and compensation information regarding Defendants is illusory (and irrelevant) until the question of *New York Times v. Sullivan* constitutional actual malice is resolved and proven in what should merit a bifurcated proceeding (which in turn requires a legal determination on the public figure status of Plaintiffs and the joinder of a punitive damages submission, quite possibly in a bifurcated trial as Defendants will seek).[1] Thus, net worth and compensation information is not relevant and likely never will become so.

_____

[1] Custom and practice in this Court favors bifurcation of any punitive damages submission. Writing on that issue in 2014, Judge O'Brien noted, "The Court's typical custom is to consider claims related to punitive damages (and the attendant motions in limine) at the close of the case. After jury instructions have been completed, the Court will ask the Plaintiffs to set out what facts support a claim that the Defendants' actions were willful and wanton. Based on the facts presented during the case, the Court will determine whether the issue of punitive damages should be submitted to the jury." *Sagez v. Global Agricultural Investments, LLC*, No. 11-CV-3059-DEO, 2014 WL 3779072, *30 (N.D. Iowa July 31, 2014). In a libel case, clear and convincing evidence is required to show that a defendant knew its publication was false or had subjective awareness of probable falsity. *See e.g.*, *Caveman Adventures UN, Ltd. v. Press-Citizen Co., Inc.*, 633 N.W.2d 757 (Iowa 2001). Further, in this case where the cause of action is libel by implication, Plaintiffs must show that Lizza intended a false inference in his Twitter posting that Devin Nunes alleges impugned his reputation by implication. *See Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823 (Iowa 2007). These elements and heightened degrees of proof make submission of punitive damages in this defamation by implication case even more unlikely and

Indeed, courts have held that pretrial disclosure of financial information only potentially relevant to the determination of punitive damages is not warranted in the discovery phase of the case. *See e.g.*, *Pasternak v. Dow Kim*, 275 F.R.D. 461 (S.D. N.Y. 2011).

As noted by Judge Scoles in *East Iowa Plastics, Inc. v. PI, Inc*., No. C12–2088, 2014 WL 2121502 (N.D. Iowa May 21, 2014), discovery regarding corporate-wide or general business revenues, profits, and work has necessary boundaries and the party seeking to compel responses must show relevancy. *Id*. at *6-7.

Importantly, in *East Iowa Plastics, Inc.*, Judge Scoles refused to compel disclosure of financial information and tax returns for reasons equally applicable here. First, as to net worth information, because the claim for punitive damages arose only under state law (as it does here), Judge Scoles deemed reference to state law appropriate and dispositive:

> Because EIP's claim for punitive damages is a function of state law, the Court concludes that Iowa Code § 668A.1(3) applies. Specifically, "[t]he mere allegation or assertion of a claim for punitive damages shall not form the basis for discovery of the wealth or ability to respond in damages on behalf of the party from whom punitive damages are claimed." Discovery of a defendant's wealth or value is not permitted "until such time as the claimant has established that sufficient admissible evidence exists to support a *prima facie* case" for punitive damages. As its final fall-back position, EIP asserts "it should be determined that this showing has been made." In support of its position, however, EIP offers merely argument, without any citation to the record. The Court declines at this time to make a finding of a *prima facie* case for punitive damages.

*Id*. at *6.

Judge Scoles further had occasion to discuss compelled disclosure of tax returns, as Plaintiffs ask this Court to do with respect to Defendant Lizza. He observed,

---

reinforce why other jurisdictions, such as New York, defer compelled disclosure of defendant's wealth or financial condition in discovery until after the trier of fact has determined the defendant's liability for punitive damages. *See e.g.*, *Rupert v. Sellers,* 48 A.D.2d 265, 368 N.Y.S.2d 904 (N.Y. App. Div. 1975) (discovery allowed only after special verdict of liability for punitive damages).

> [I]t appears that most district courts in the Eighth Circuit have adopted the two-prong test described in *Terwilliger. See, e.g., E–P Intern. Distribution, Inc. v. A & A Drug Co.*, 2009 WL 1442534 (D. Neb. 2009) (observing that "many courts require a heightened showing of relevance and necessity before ordering the disclosure" of tax returns, and that "[w]hen applying this standard, most courts use a burden-shifting test"); *Sowers v. Gatehouse Media Missouri Holdings, Inc.*, 2009 WL 1106946 (E.D. Mo. 2009) (noting that "most courts apply a two-part test"); *EEOC v. Ceridian Corp.*, 610 F. Supp. 2d 995, 997 (D. Minn. 2008) (finding that "a preponderance of authorities set out a two-part standard for deciding whether tax returns should be disclosed").

*Id.* at *7, citing *Terwilliger v. York Intern. Corp.*, 176 F.R.D. 214, 216–17 (W.D. Va. 1997).

He then denied the motion to compel disclosure of the defendant's tax returns, holding the plaintiff failed to carry the burdens of showing relevance and necessity such that he should disregard the general rule that "courts do not require production of tax returns." *Id.*, citing *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006); *see also PSK, L.L.C. v. Hicklin*, No. C09–0105, 2010 WL 2710507 (N.D. Iowa July 8, 2010) (applying two-part test and noting that the issue of confidentiality is not part of the analysis under the two-prong test making the existence of a protective order irrelevant).

Here, it is premature to require net worth information potentially relevant only to punitive damages, just as it is overly intrusive and not probative to require Ryan Lizza to provide tax returns and revenue information that bears no relationship to the elements of Plaintiffs' defamation by implication claim or an assessment of damages to reputation.

Application of the *East Iowa Plastics, Inc.* and *PSK, L.L.C.* holdings from this Court warrants denial of the motion to compel as to net worth and tax information as neither are relevant nor necessary in pretrial discovery. [2]

---

[2] Plaintiffs' Brief cites a discovery ruling in *Dershowitz v. CNN*, No. 20-61872, 2022 WL 2662352, at * 1-2 (S.D. Fla., filed June 15, 2022) for the proposition that "employment agreements could shed light on reporters' sources of income, bias and actual malice." Brief at 6.

Beyond this, as noted earlier, Lizza lacks net worth statements or information and much of the information held by various Hearst entities, including the defendant entity, are not necessarily segregated as to the operations of *Esquire Magazine*. As with other aspects of their motion, some of the records Plaintiffs seek do not exist or contain information that is not relevant or admissible.

4. **Plaintiffs at all times have the burden of showing falsity, fault, and injury to reputation and their attempt through discovery requests to shift those obligations to Defendants by requesting evidence that Plaintiffs "did not suffer an injury to reputation" constitutes an impermissible use of interrogatories and production requests.**

*(Responding to Pls.' Br., § C, "The Defamatory Implication and Evidence of a Conspiracy").*

**Requests at Issue and Responses:** This series of requests sought disclosure of Defendants' counsel's strategies in responding to the Eighth Circuit Court of Appeals' September 15, 2021 Ruling. These interrogatories sought the following:

- 10. On September 15, 2021, the Eighth Circuit Court of Appeals ruled that Plaintiff's complaint "does not state a claim for defamation by implication as to a

---

However, in *Dershowitz*, the district court reviewed a magistrate judge's discovery order under a *clear error* standard and accepted that employment contracts for on-air commentators who made purportedly defamatory statements were, as the plaintiff argued, potentially relevant because they "could shed light on whether commentators were offered incentives depending on 'viewership or click volume generated by their work or how many other news organizations picked up the CNN content . . .'" or could "lead to evidence regarding any rules, procedures or obligations which will in turn allow plaintiff to learn if violations occurred." *Id*. at *2.

Moreover, Plaintiffs seek Lizza's tax returns, net worth statements (which do not exist), and income information without reference to viewership benchmarks, click volume, or incentive compensation. In *Dershowitz*, the plaintiff narrowly tailored his discovery requests and the ruling cited reviewed the discovery ruling on a "clear error" standard. Here, Plaintiffs made broadside requests for unlimited income information from Lizza (and Hearst) without tethering them to employment contracts or incentive arrangements. As such, as a matter of initial consideration, this Court should find that Plaintiffs' requests for tax returns, net worth statements, and 1099 or W-2 forms lack relevancy and proportionality because that broad information cannot yield insight into Lizza's state of mind toward the facts of his Twitter post or the original *Esquire* Article, or whether any Defendant subjectively intended to make any purportedly false implication.

republication of the article." The Court of Appeals further ruled that the "alleged defamatory implication is that the article implies falsely that Representative Nunes 'conspired or colluded with his family and with others to hide or cover-up' that the farm 'employs undocumented labor.'" If you deny or dispute that the defamatory implication of the Article is that Plaintiff conspired or colluded with his family and with others to hide or cover-up that NuStar Farms employs undocumented labor, describe in detail and identify ALL facts and evidence that support your denial and/or that establish that no reasonable reader could draw that implication from the Article.

- 11. The Eighth Circuit Court of Appeals found that "[a] reasonable reader could conclude, from reading the Article as a whole, that the identified 'secret' is 'politically explosive' because Nunes knew about his family's employment of undocumented labor." If you deny or dispute this finding, describe in detail and identify ALL facts and evidence that support your contention, including any facts or evidence that proves, demonstrates or shows that Plaintiff knew about his family's employment of undocumented labor.

- 12. The Eighth Circuit Court of Appeals ruled that "[w]hether Nunes knew about the farm's hiring practices, including the potential use of undocumented labor, and whether he agreed with others to keep that information secret, are issues of verifiable fact." Describe in detail and identify any and ALL facts and evidence that prove, demonstrate or show that Plaintiff knew about NuStar Farm's hiring practices, including the potential use of undocumented labor, and that he agreed with others to keep that information secret.

- 13. The Eight[h] Circuit Court of Appeals found that "Nunes has plausibly alleged that Lizza and Hearst intended or endorsed the implication that Nunes conspired to cover up the farm's use of undocumented labor." If you deny or dispute this finding, describe in detail and identify ALL facts and evidence that proves, demonstrates or shows that Lizza and Hearst did not intend or endorse the implication that Plaintiff conspired to cover up NuStar Farm's use of undocumented labor.

- 14. Describe in detail and identify any and ALL facts and evidence that proves, demonstrates or shows that on either September 30, 2018 or November 20, 2019 Lizza and Hearst had knowledge of facts which would lead them to believe that Plaintiff conspired to cover up NuStar Farm's use of undocumented labor.

- 15. Describe in detail and identify any and ALL facts and evidence that proves, demonstrates or shows that on either September 30, 2018 or November 20, 2019 Lizza and Hearst had knowledge of facts which would lead them to believe that Plaintiff had engaged in a conspiracy with anyone.

- 18. If you contend that Plaintiff did not suffer an injury to his reputation as a result of the Republication of the Article on November 20, 2019, describe in detail and identify ALL facts and evidence that support your contention.

*See* ECF No. 112-3, Mot. Ex. C., Plaintiffs' Interrogatories 14, 15, 18.

Defendants objected to these interrogatories to the extent they called for a legal conclusion because, among other reasons, they required Defendants to offer views on what the text of the Article conveyed and what a "reasonable reader" could conclude from the Article.

Additionally, Defendants further objected on the grounds that the information sought could be obtained through more practical methods, and Defendants have already sought and obtained potentially responsive information through more appropriate methods including Defendants' prior depositions in this action and Defendants' document productions. Defendants also objected to these interrogatories as seeking irrelevant information, being unduly burdensome and to the extent it calls for Defendants to identify information from public records.

**Analysis:** Plaintiffs' next batch of complaints regarding their requests involving falsity, fault, and injury to reputation are not sufficient to compel Defendants to respond further.

At the outset, Plaintiffs failed to meaningfully meet and confer regarding these requests. The email correspondence, screenshot above at pages 4-6, concern Plaintiffs supposed effort to meet and confer about this. As noted, that was not genuine; there was no effort to narrow the scope of the parties' dispute; and Plaintiffs' counsel refused to have conversations about the individual requests. This was not in good faith, and under L.R. 7(k) and L.R. 37 is reason enough to deny Plaintiffs' motion with regard to these requests.

Turning to the merits, first, with respect to Interrogatory 10, Defendants fully answered the interrogatory by directing Plaintiffs to the Article. The Article is the "fact" at issue, and there is nothing more that is responsive to this request. To the extent that Plaintiffs seek more than that — such as Defendants' legal conclusions — Defendants are properly standing on their objections and the Court should refrain from entry of any order compelling otherwise.

Second, Interrogatories 11 and 12 ask if Defendants "deny or dispute" a finding of the "Eighth Circuit Court of Appeals." These interrogatories do not seek information or evidence from Defendants, they seek Defendants' attorneys' analysis of the law. Therefore, Defendants' objections to these requests remain well-grounded and the Court should sustain them.

Third – more broadly, and as to all of the interrogatories at issue here—Plaintiffs seek to compel answers to interrogatories that in essence sought to shift the burden of proof incumbent on a libel plaintiff, and that they now make clear were intended to serve as admission requests under Fed. R. Civ. P. 36 but were never served as such.

Beyond that, Plaintiffs' efforts to compel responses to requests that seek all documents that may support the Defendants' positions are overbroad and objectionable as not describing the documents with "reasonable particularity." *See, e.g.*, *Fishel v. BASF Group*, 175 F.R.D. 525, 531 (S.D. Iowa 1997). Such requests are overbroad because parties already have obligations to "supplement [their] initial disclosures pertaining to documents [they] may use to support its claims or defenses, Fed. R. Civ. P. 26(a)(1)(A)(ii); (e)(1)(A), and to identify exhibits [they] may present at trial." *Peterson v. Northwestern Mut. Ins. Co.*, 4:13-cv-00018-RAW, 2013 WL 11616464, at *3 (S.D. Iowa Sept. 23, 2013). Courts are generally loathe to "require more" in response to broad discovery requests. *Id.*

Although some district courts require responses to contention discovery requests, Plaintiffs' requests are not proper contention discovery requests. Federal district courts generally caution that contention requests directed to defendants are "especially appropriate with regard to affirmative defenses" because such requests can narrow the issues for trial. *See, e.g.*, *Cmty. Voice Line, LLC v. Great Lakes Commc'n Corp.*, No. C12-4048-MWB, 2013 WL 4048495, at *8

(N.D. Iowa Aug. 1, 2013). This makes sense in that context because defendants have the burden of proof on affirmative defenses.

Here, Plaintiffs did not ask Defendants to narrow the issues for trial; instead, they seek to "compel [their] adversary to go to work for [them]" by identifying how Defendants intend to attack Plaintiffs' evidence of essential elements that they must prove, such as falsity, fault, or injury to reputation. *See Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Court*, 316 F.R.D. 254, 272 (D.S.D. 2016) (quoting *Poulos v. Summit Hotel Props., LLC*, No. Civ. 09-4062-RAL, 2010 WL 2640394, at *2 (D.S.D. July 1, 2010)). The Federal Rules of Civil Procedure simply do not permit or condone that. *Lawrence*, 169 F.R.D. at 663.

5. **The remaining contentions of the Motion to compel concern demands to produce documents and information that Defendants have already produced or do not possess.**

*(Responding to Pls.' Br., §§ D, E, and F).*

Defendants have made significant productions and responses to discovery in these combined cases. Defendants produced what was responsive and within their possession and control. That resolves the final three categories at issue in Plaintiffs' Motion.

Sections D and E of Plaintiffs' Brief concerns Plaintiffs' requests for documents evidencing communications and other matters relating to the use of undocumented workers on NuStar Farms, or facts that would be otherwise supportive of a "conspiracy" to hide the hiring of undocumented workers. Defendants responded that they have produced what they have, and that they are not withholding anything. Plaintiffs have not suggested that Defendants are withholding anything, or that Defendants have not done an adequate job of searching for responsive documents. There is nothing else to produce, and nothing is being withheld. That is the end of the matter.

To the extent that Plaintiffs would like to use this Motion as a platform to argue that the evidence that has been produced does not show that there were any such communications or conspiracy, it is misguided as a ground to compel discovery. Plaintiffs are welcome to make that argument, when the time comes in this case. But for present purposes, it fails to create a real discovery dispute about withheld documents.

Section F of Plaintiffs' Brief is similar. It concerns an interrogatory asking Defendants to identify facts that support that there was no injury to the Congressman's reputation. But of course, *Defendants* do not have possession of documents or information concerning the *Congressman's* lack of damages. That information and those documents would be in the Congressman's possession. To the extent Plaintiffs want to know Defendants' lawyers' arguments regarding why they are not liable or why the Congressman has not suffered any damages based on the evidence it has obtained in this case, the summary judgment filings will address that, and that is an inappropriate use of an interrogatory. Defendants declined to do Plaintiffs' work for them, just as this Court should do by denying the Motion. *See generally Breeland v. Yale & Towne Mfg. Co.*, 26 F.R.D. 119, 120 (E.D.N.Y. 1960) ("A litigant may not compel his adversary to go to work for him." (quotation omitted)).

It seems that, here again, the Congressman is using this motion as a platform to make an argument that Plaintiffs (and not just the Congressman, who is the one served interrogatory was issued) have been damaged. Indeed, he spends five pages of his on his 20-page brief on the topic. *See* Plaintiffs' Br. 14-19 (making legal arguments and identify evidence that, Plaintiffs contend, support the conclusion that they have suffered damages as a result of the allegedly defamatory publications). That is an inappropriate use of a discovery motion; Plaintiffs will

have their opportunity to make their arguments in response to Defendants' forthcoming motion for summary judgment.

## Conclusion

Based on the foregoing argument and authority, Defendants respectfully request that the Court deny Plaintiffs' October 7, 2022 Motion to Compel Discovery (ECF No. 112).

Dated:  October 21, 2022.

**Ryan Lizza, Hearst Magazines, Inc., and Hearst Magazine Media, Inc., Defendants**

/s/Michael A. Giudicessi

Jonathan R. Donnellan, *Lead Counsel\**
 *jdonnellan@hearst.com*
Ravi R. Sitwala*
 *rsitwala@hearst.com*
Nathaniel S. Boyer*
 *nathaniel.boyer@hearst.com*
Sarah S. Park*
 *sarah.park@hearst.com*
Nina Shah*
 *nina.shah@hearst.com*
Kristen Hauser*
 *khauser@hearst.com*
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000
*Admitted Pro Hac Vice*

Michael A. Giudicessi
 *michael.giudicessi@faegredrinker.com*
Nicholas A. Klinefeldt
 *nick.klinefeldt@faegredrinker.com*
Susan P. Elgin
 *susan.elgin@faegredrinker.com*
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

Scott W. Wright*
 *scott.wright@faegredrinker.com*
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center/90 S. 7th Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
*Admitted Pro Hac Vice*

**Attorneys for Defendants**

**Certificate of Service**

      The undersigned certifies that a true copy of **Defendants' Resistance to Plaintiffs' October 7, 2022 Motion to Compel Discovery (Oral Argument Conditionally Requested)** was served upon the following parties through the Court's CM/ECF electronic filing system on October 21, 2022.

/s/ Katie Miller

Copy to:

Bill McGinn
  *bmcginn@mcginnlawfirm.com*
Steven S. Biss
  *stevenbiss@earthlink.net*

*Attorneys for Plaintiffs*

US.352898528.21