**Exhibit W**

**(Unredacted)**



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III,<br><br>Plaintiffs,<br><br>v.<br><br>Ryan Lizza and Hearst Magazine Media, Inc.,<br><br>Defendants. | Case No. 5:20-cv-04003-CJW-MAR<br><br>**Defendants' Amended Notice of Video Recorded Deposition**<br><br>(NuStar Farms, LLC) |

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Defendants Ryan Lizza and Hearst Magazine Media, Inc. ("Defendants"), by and through their undersigned counsel, will take the deposition upon oral examination of NuStar Farms, LLC, commencing at 9:00 a.m. on July 14, 2021, at the offices of Faegre Drinker Biddle & Reath LLP, 801 Grand Avenue, Des Moines, Iowa 50309, before an officer fully authorized to administer oaths, and will be recorded by videographic, audio and/or stenographic means.

Pursuant to Rule 30(b)(6), NuStar Farms, LLC is required to designate appropriate persons to testify on its behalf with respect to each of the topics set forth in the attached Exhibit A, and the person(s) so designated shall be required to testify as to each of those topics known or reasonably available to NuStar Farms, LLC. By no later than five days before the deposition, NuStar Farms, LLC is directed to identify the name(s) of each designee for each topic who will testify on NuStar Farms, LLC's behalf.

Defendants will arrange for attendance and questioning by remote means using audio-visual conference technology. You are invited to attend and cross-examine, and you may attend in-person or remotely. If you choose to attend remotely, Defendants or the certified court

1

reporter will provide the parties and their counsel instructions, equipment standards and bandwidth requirements, and a link for such secure video conference sufficiently in advance of the deposition time and date.

June 5, 2021

**Ryan Lizza and Hearst Magazine Media, Inc., Defendants**

By: /s/ Nathaniel S. Boyer
Jonathan R. Donnellan, *Lead Counsel*\*
  jdonnellan@hearst.com
Ravi V. Sitwala*
  rsitwala@hearst.com
Nathaniel S. Boyer*
  nathaniel.boyer@hearst.com
Sarah S. Park*
  sarah.park@hearst.com
Nina N. Shah*
  nina.shah@hearst.com
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000
*Admitted Pro Hac Vice*

Michael A. Giudicessi
  michael.giudicessi@faegredrinker.com
Nicholas A. Klinefeldt
  nick.klinefeldt@faegredrinker.com
Susan P. Elgin
  susan.elgin@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

*Attorneys for Defendants*

## Exhibit A

### DEFINITIONS AND INSTRUCTIONS

1. "E-Verify" refers to the program and/or website, commonly referred to as "E-Verify," that is made available by the United States Government to businesses to determine the eligibility of their employees to work in the United States.

2. "NuStar" refers to plaintiff NuStar Farms, LLC, and those affiliates, subsidiaries, divisions, officers, directors, employees, agents, contractors, attorneys, and any other person who acted or purported to act on any or all of its behalf at any and all times relevant to the issues in this action.

3. "NuStar Employees" refers to all employees who were hired by and/or performed work of any kind for NuStar (as defined above) from January 1, 2006 to present.

4. "NuStar Workers" refers to all persons other than Employees who performed services for, or provided labor to, NuStar (as defined above), including but not limited to independent contractors or day/casual laborers, from January 1, 2006 to present.

5. "Second Amended Complaint" refers to the Second Amended Complaint filed in this action on September 17, 2020 by Plaintiffs NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III, *see* ECF No 51.

6. For any term used herein which is not otherwise specifically defined, the common and usual meaning of such term is intended. Any ambiguity in these Interrogatories shall be resolved so as to construe the Interrogatories as broadly as possible. Defined terms need not be capitalized to retain their defined meaning.

7. Unless otherwise specified, these topics cover the time period from January 1, 2006 to the present.

## TOPICS

1. The solicitation, recruitment, interviewing, hiring, onboarding, remuneration, retention, and termination of NuStar Employees and/or NuStar Workers by NuStar, or by any NuStar Employees, including but not limited to job descriptions, job posting, job listings, job application forms, and any other documents indicating the essential functions and minimum qualifications for each position of employment with NuStar.

2. All Forms I-9 (including the related and supporting documentation, such as documents establishing identity and authorization to work in the United States) and W-4 for all current and former NuStar Employees and NuStar Workers, including but not limited to NuStar's provision of, requests for, communications regarding, translations of, and acceptance, review, consideration, completion, retention, loss, or destruction of such records.

3. NuStar's processes for obtaining, requiring, accepting, reviewing, verifying, considering, and analyzing its employees' Forms I-9 and supporting documents, including but not limited to all factual bases for NuStar's allegation, in Paragraph 19 of the Second Amended Complaint, that it "fully documented all hiring decisions in accordance with Federal law," including NuStar's understanding of the requirements of the "Federal law(s)" referenced in this paragraph.

4. NuStar's efforts to confirm, or investigations into, any of or all of the NuStar Employees' and/or the NuStar Workers' eligibility for employment, including any written policy on how to investigate reports, allegations, or suspicions regarding a NuStar Employee or NuStar Worker not being authorized to work in the United States, and any such investigations.

4

5. Plaintiffs' use of E-Verify, including but not limited to Plaintiffs' decision to use (or not use) E-Verify, all correspondence relating to that decision, and all documents relating to the employment status of any or all NuStar Employees and/or NuStar Workers for whom Plaintiffs confirmed, or attempted to confirm, their eligibility for employment through E-Verify, or for whom Plaintiffs determined to refrain from using E-Verify.

6. NuStar's responses and objections to all interrogatories and document requests served on NuStar in this case, including but not limited to NuStar's search for and review of materials that may have been responsive to the requests.

7. The No-Match Letters from the Social Security Administration received by NuStar, *see* PX 2265-75, 2268-2775, including but not limited to what actions, if any, NuStar took in response to these letters.

8. The I-9 audit of NuStar in or around October 2018, including but not limited to (i) the audit's purpose, (ii) who requested the audit, (iii) who performed the audit, (iv) how and why Woods Fuller Shultz & Smith P.C. ("Woods Fuller") was engaged, (v) what work was performed as part of the audit, (vi) the results of the audit, and (vii) what actions, if any, were taken as a result of the audit, and (viii) and all communications with Woods Fuller regarding the audit, including the documents identified on Plaintiffs' privilege log.

9. Any other I-9 audits or other employment eligibility audits NuStar considered, initiated but did not complete, or for which it engaged others to assist or advise.

10. Any audits, investigations, or other correspondence between NuStar and U.S. Immigration and Customs Enforcement or any other federal government agency regarding immigration compliance.

11. All real properties owned or rented by NuStar, or by Anthony Nunes, III, Lori Nunes, Anthony Nunes, Jr., or Toni Dian Nunes (collectively, the "Nuneses"), which have been used at any time to rent or otherwise provide housing to any NuStar Employees or NuStar Workers, including (i) why and when NuStar and/or the Nuneses rent(ed) or provide(d) housing to NuStar Employees or NuStar Workers, (ii) the NuStar Employees or NuStar Workers to whom NuStar and/or the Nuneses rent(ed) or provide(d) housing, and (iii) the terms by which NuStar and/or the Nuneses rented or provided or currently rent or provide housing to the NuStar Employees or NuStar Workers, including (a) any lease agreements, (b) credit checks or background reviews performed by NuStar and/or the Nuneses prior to renting or providing housing to the NuStar Employees or NuStar Workers, (c) rental applications that must be completed by proposed tenants or residents, and (d) letters of recommendation that must be submitted by proposed tenants or residents.

12. NuStar's awareness of the arrest and/or deportation of any NuStar Employees or NuStar Workers, whether or not currently engaged by NuStar, including any documentation, financial consideration (such as a bail bond or cash bond), insurance verification, or other records or information NuStar provided to federal, state, or local officials to secure the release of a current or former NuStar Employee or NuStar Worker who was in custody of or jailed by a public official.

13. NuStar's financial and tax records, including but not limited to (i) federal and state tax returns, and the exhibits and attachments thereto and information regarding if any tax years were or are under audit, (ii) any Forms K-1 issued by NuStar, (iii) Iowa State Quarterly Wage Reports, (iv) financial statements (whether audited or not), including footnotes and copies of any and all auditors' reports., (v) income statements, (vi) monthly
6

bank statements, and (vii) NuStar's payroll management system(s), including but not limited to NuStar's use of Quickbooks software.

14. The formation and organization of NuStar.

15. NuStar's applications for farm subsidies and/or COVID-19 relief and/or stimulus funds, including the representations made to secure such subsidies or funds, and what subsidies or funds NuStar has received such as, by example, its receipt of Payroll Protection Act funds.

16. All trade organizations or trade groups in which NuStar or any of the Nuneses participate.

17. All communications between any or all of the Plaintiffs, on the one hand, and any reporters or representatives of the media or press, on the other hand, including but not limited to copies of all communications with Mollie Hemingway or any reporters or editors for *The Federalist*, and copies of all communications with any reporters or editors for *The Dairy Star*.

18. Any death threats, threatening phone calls, emails, or other communications received by NuStar from persons who claimed to have read the article at issue in this case.

19. All damages NuStar claims it has sustained as a result of the article at issue in this case.

20. The identity of NuStar's clients and customers, and the nature and terms of the relationship between NuStar and those clients and customers, including without limitation any agreements under which it purchases materials or livestock or sells milk.

21. All factual bases for NuStar's allegations, in the Second Amended Complaint, that "Defendants intentionally timed the original publication of the Article to

occur within close proximity to the November 6, 2018 Congressional Election," and "it was the Defendants' intent to hurt Devin Nunes politically with false statements of fact and impair his voter bases (both agricultural and Republican) ahead of the Election," including but not limited to all communications with Devin Nunes concerning these allegations.

22. NuStar's communications with Steve Biss or Joseph Feller relating to this lawsuit prior to the original complaint being filed with the Court on January 16, 2020. If NuStar will assert the attorney-client privilege concerning the substance of those communications, then, (i) the date, time, and location of those communications, (ii) the method of communication (*e.g.*, email, text, telephone), and (iii) every person who participated in each conversation.

23. All communication between NuStar and Devin Nunes regarding this litigation, including (i) the substance of the communications, (ii) the date, time, and location of those communications, (iii) the method of communication (*e.g.*, email, text, telephone), and (iv) every person who participated in each conversation.

24. The person or persons who, or entity or entities that, are funding in whole or in part Plaintiffs' prosecution of this action, including but not limited to the person or persons who, or entity or entities that, are paying Mr. Biss's and/or Mr. Feller's legal fees; and the person or persons who, or entity or entities that, stand to benefit from a recovery by Plaintiffs.

25. The factual bases underlying the allegations and defenses asserted by NuStar in *Doeden v. NuStar Farms, LLC*, No. LACV020959 (Iowa Dist. Ct., Osceola County), *NuStar Farms, LLC v. Zylstra et al.*, No. EQCV019385 (Iowa Dist. Ct., Osceola County), and *NuStar Farms, LLC v. Eben*, No. 03601 LACV014543 (Iowa Dist. Ct., Lyon County).

## Certificate of Service

The undersigned certifies that a true and correct copy of the foregoing **Defendants' Amended Notice of Video Recorded Deposition (NuStar Farms, LLC)** was served upon the following counsel by email on June 5, 2021:

Joseph M. Feller
*jfeller@kkfellerlaw.com*

Steven S. Biss
*stevenbiss@earthlink.net*

*Attorneys for Plaintiff*

/s/ Nathaniel S. Boyer
Nathaniel S. Boyer